UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WILLIE THOMAS GOSIER,

                                    Plaintiff,

                                                                    6:23-cv-1485
v.                                                                  (DNH/TWD)

DAVID J. COLLINS, et al.,

                                    Defendants.

_____

APPEARANCES:

WILLIE THOMAS GOSIER
*Plaintiff, pro se*
22-B-2574
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

### I.     INTRODUCTION

The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie

Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims

arising out of June 11, 2023, traffic stop in Rome, New York.  (Dkt. No. 1.)  Plaintiff has not

paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt.

No. 2.)

### II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility.  (Dkt. Nos. 1, 2.)  Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.[1]  Based on that review, it does not appear Plaintiff acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.[2]

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District.  (Dkt. Nos. 2, 3.)  Accordingly, Plaintiff's IFP application is granted.[3]

---

[1]  *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]  *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118- (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023; closed on Jan. 30, 2024) ("*Gosier IV*").  The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

[3]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. §

### III.     SUFFICENCY OF THE COMPLAINT

#### A.     Standard of Review

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[4]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

---

1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).  Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[4]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure.  Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).  A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of

4

the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B.     Background

The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages.  (Dkt. No. 1.)  The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation.  *See id*. at 8-13.[5]  The Court will construe the allegations in the complaint with the utmost leniency.  *See Haines v. Kerne*r, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").  The following facts are taken from Plaintiff's complaint.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat.  *Id*. at 8.  The defendant police officers claimed Plaintiff was going "50 in a 30 zone."  *Id*.  But Plaintiff "was only doing 35 in a 30 zone which is legal."  *Id*.  Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person."  *Id*. at 11.  Plaintiff claims when a "person of color" has "valuable things" like a car, "they . . . label you as a drug dealer or a person who conduct's crime."  *Id*.

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspension," and instructed him to "get out of [the] car."  *Id*. at 8.

---

[5]  The Court will refer to the CM/ECF pagination when citing to the complaint.  Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car.  *Id*.  He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car.  *Id*. at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search."  *Id*. at 9.  They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]"  *Id*.  "They even took our cell phones" and "searched thru them with no warrent."  *Id*.  "Still to this date have not gotten my property back none of it they impounded my car.[6]  *Id*.

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search."  *Id*. at 12.  "It was a complete unlawful stop and all evidence need's to be suppressed."  *Id*.

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer.  *Id.* at 9-12.  "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id*. at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties."  *Id*. at 9.  On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm -other than person's home/business which charge is still pending against me till this day."  *Id*. at 9-10.

---

[6]  Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday.  (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side . . [and] had to pay to get inside of car done due to coffiee being spilt on . . . swade seats and glitter being all over."  *Id*.

Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights.  *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the defendant police officers "should have had a female cop come and conduct that search" of his female friend.  *Id*. at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever."  *Id*.  According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's."  *Id*. at 10.  Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States . . . it is protected by my con. Amendment right travel 4th, 5th amendment rights's." *Id*.

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct."  *Id*. at 4,13.

## C.    Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To establish liability against a government official under section 1983, "a plaintiff must

plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d  Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  Moreover, the theory of respondeat superior is not available in a section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Instead, "[t]he violation must be established  against the supervisory official directly."  *Tangreti*, 983 F.3d at 618.

## IV.    ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").  Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim.  Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A.    Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint."  *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014).  Ultimately, a complaint must give "fair notice" to the defendants.  *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations.  As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants.  Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B.    Official Capacity Claims

Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities.  "A claim asserted against an individual in his official capacity . . .  is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]").  Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691).  Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)

(quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

      Here, Plaintiff's claim construed against the City of Rome appears to stem from an

isolated instance of alleged unconstitutional conduct by the defendant police officers in the

course of a traffic stop.  Such an isolated act by a non-policymaking municipal employee is

"generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify

liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691

F.3d 72, 82 (2d Cir. 2012)).  But such isolated instances would be a basis for municipal liability

if they were done

> pursuant to municipal policy, or were sufficiently widespread and
> persistent to support a finding that they constituted a custom,
> policy, or usage of which supervisory authorities must have been
> aware, or if a municipal custom, policy, or usage would be inferred
> from evidence of deliberate indifference of supervisory officials to
> such abuses.

*Jones*, 691 F.3d at 81.  The only factual allegations potentially bearing on any such basis for

municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and

black mixed person of color." (Dkt. No. 1 at 11.)  Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling.
> That's a huge violation of my con. Amendment right's.  it's not
> okay or right one bit.  Just because im a young black mixed person
> of color.  it is not right that RPD get's a way with thing's like this
> all the time, nothing ever get's done about it.  They do as they
> please and they find it okay to do such conduct's its completely not
> okay or right for such act's.  This need's to change it's not right at
> all, right is right wrong is wrong."

*Id*. at 12.  The Court infers this is an allegation of racially motivated police conduct.  Plaintiff

also list "harassment" as a cause of action.[7]  *Id.* at 13.

"The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.'"  *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)).  In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability.  *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).  Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City.  Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior.  *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.  If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

---

[7]  To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim.  *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

### C.        Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant.  Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds.  The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th.  So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over."  (Dkt. No. 1 at 10.)  Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.  If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

**D.      Individual Capacity Claims Against Defendants John Doee # 1 and # 2**

     **1.      Unlawful Search and Seizure**

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S.

Const. amend. IV.  A police officer may briefly detain a suspect, consistent with the Fourth

Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot."

*Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a

sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic

stop."  *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009).  Even a "minor" traffic

violation meets this standard and provides probable cause for a stop.  *United States v. Scopo*, 19

F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not

signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic

stop are undermined by his own admissions in the complaint.[8]  Specifically, Plaintiff claims he

was pulled over for speeding.  (Dkt. No. 1 at 8.)  Contrary to Plaintiff's assertion, travelling over

maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing

probable cause for the traffic stop.  *See* N.Y. Veh. & Traf. Law § 1180(d).

Though Plaintiff contends the reason cited by the defendant police officers was

pretextual, the subjective intent of an officer performing a traffic stop is irrelevant.  *United States*

*v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a

---

[8]  As described above, Plaintiff also takes issue with the June 11, 2023, search of his female
friend.  However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff.  *See*
*Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for
oneself, a person may not appear on another person's behalf in the other's cause).

pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted).  Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000).  Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license.  Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car."  (Dkt. No. 1 at 8.)  The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties."  *Id*. at 8-9.  Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents,

cell phones, and book bags without consent or a warrant.  (Dkt. No. 1 at 3.)  Plaintiff was then

apparently taken to the Rome Police Department.  *Id*. at 11-12.  There are no allegations that the

stop lasted any longer than necessary.  As such, Plaintiff has not stated a constitutional claim

concerning a prolonged and unconstitutional seizure.  *See Rodriguez*, 575 U.S. at 354.

Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does

"not justify handcuffing and or conducting a patdown search," and "you do not need a license to

drive a car . . . in the United States of America," Plaintiff is mistaken.  (Dkt. No. 1 at 10, 12.)

Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a

motor vehicle.  *See* N.Y. Veh. & Traf. Law § 509; *see also id*. § 511 (prohibiting operating a car

without a valid license).  Thus, while the precise details are unclear, it appears the defendant

police officers likely had probable cause to believe Plaintiff had committed a criminal offense.

And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed

by the Fourth Amendment.[9]  *Riley v. California*, 573 U.S. 373, 382 (2014).

Additionally, the automobile exception to the warrant requirement of the Fourth

Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable

cause to believe it contains contraband or other evidence of a crime."  *United States v. Wilson*,

699 F.3d 235, 245 (2d Cir. 2012).  Probable cause requires only a "fair probability" that evidence

---

[9]  In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he
or she possesses a loaded firearm and does not have a license to possess such a firearm.  *See
Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing
N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680
(E.D.N.Y. Mar. 2, 2023).  Under New York law, the existence of a firearm in an automobile
creates a permissive presumption that all occupants of the vehicle have common constructive
possession of the firearm, absent certain statutory exceptions which are inapplicable here.  *Id.*
"If a jury may make a presumption of possession under the law, it is reasonable for a police
officer to do the same."  *Id*.  Thus, regardless of whether the firearm was found on the Plaintiff's
person or in his car, the officers had probable cause for his arrest.

of a relevant violation will be found in the place to be searched.  *Illinois v. Gates*, 462 U.S. 213,

238 (1983).  When the exception applies, officers may search any area of the vehicle in which

they have "probable cause to believe contraband or evidence is contained."  *California v.*

*Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If

probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every

part of the vehicle and its contents that may conceal the object of the search."); *see also United*

*States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the

defendant police officers likely had probable cause to stop and arrest Plaintiff.  Armed with

probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search

incident to arrest.  *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search

prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search");

*see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's

passenger compartment to be contemporaneous incident of arrest, though driver arrested outside

vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure

claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B),

1915A(b) for failure to state a claim.[10]

---

[10]  Plaintiff claims he was "charged" with "what they found" on his friend's person and also
charged with "possession of a weapon 2nd: loaded firearm -other than person's home/business."
(Dkt. No. 1 at 9-10.)  Plaintiff states "the loaded firearm charge" is "still pending against me till
this day."  *Id.* at 10.  The Court notes, however, that under abstention principles, the Court
typically refrains from intervening in a state-court criminal proceeding.  *See, e.g.*, *Sprint*
*Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).  Moreover, to the extent that Plaintiff seeks
the remedy of "suppression" of any items seized during the search, that remedy is simply

2.      **False Arrest**

"A [Section] 1983 claim for false arrest[] resting on the Fourth Amendment . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification."  *Id*.  Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983.  *Id*. (citation omitted).  Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Read liberally, the complaint may raise a claim for false arrest.  Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights.  (Dkt. No. 1 at 8-12.)  But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification.  Accordingly, it is recommended that

---

inapplicable in a § 1983 suit.  *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions.").

Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.[11]

### 3.    Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id*. at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from

---

[11] If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4.    Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court."  (Dkt. No. 1 at 12, 13.)  "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law."  *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

Generally, "'no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations."  *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)).  "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.'"  *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346).  "The remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements'

and 'not a § 1983 action.'"  *Id*. (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)

(internal quotations omitted).  However, "'[a] *Miranda* violation that amounts to actual coercion

based on outrageous government misconduct is a deprivation of a constitutional right that can be

the basis for a § 1983 suit, even when a confession is not used against the declarant in any

fashion.'"  *Id*. (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police

coercion led to inculpatory statements.  As a result, it is recommended that Plaintiff's Section

1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for

failure to state a claim.

### 5.      Right to Travel

The complaint lists "5th right to travel" as a claim.  (Dkt. No. 1 at 3, 13.)  "The

Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y.*

*Thruway Auth*., 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right

to the most convenient form of travel, and minor restrictions on that travel simply do not amount

to the denial of a fundamental right[.]"  *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022

WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E.*

*Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)),

*report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his

constitutional right to travel.  Plaintiff's allegations regarding his right to travel relate to the

traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim.  *See,*

*e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y.

July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3,

2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018)

(dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and

constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle.");[12]

*see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31,

2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel,

that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No.

15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir.

2016) (summary order)).

  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim

pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

  **6.**   **Right to Bear Arms**

  The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second

Amendment protects 'an individual right to keep and bear arms.'" *District of Columbia v. Heller*

*D.C. v. Heller*, 554 U.S. 570, 595 (2008)). But "[l]ike most rights, the right secured by the

Second Amendment is not unlimited" and is "not a right to keep and carry any weapon

whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the

Second Amendment allows "prohibitions on the possession of firearms by felons and the

---

[12] To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation.  Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.[13]

### E.     Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor."  *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981).  Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because

---

[13] *See also supra* note 10 and accompanying text.

prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]"  *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F.    Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise. ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## V.    OPPORTUNITY TO AMEND

Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above.[14]  Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted.  Fed. R. Civ. P. 8(a).  The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph.  Fed. R. Civ. 10.  No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle."  *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9.  Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd."  *Id.*  Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend.  *Id.*, ECF Dkt. Nos. 10, 12.  On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted.  *Id.*, ECF Dkt. No. 19.  At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action.  Plaintiff should explain the relationship, if any, between

---

[14]  Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation.  As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II.*

## VI.   CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024.[15]   Plaintiff is reminded that he must update his address with the Court immediately upon relocating.   For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes.   "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action."   L.R. 41.2(b).

## VII.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

---

[15]   *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[16]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**


Dated: March 8, 2024
          Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[16]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1]
    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

[4]     Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury.[5]

[5]     Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 31 of 197

2022 WL 17517312

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

[1]  Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff

may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)**
Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 32 of 197

2022 WL 17517312

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the

location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]   If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

---

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD  Document 4  Filed 03/08/24  Page 36 of 197

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

Myers v. Wolfowitz, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 37 of 197

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint
filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl.
(Dkt. No. 10). This amended complaint was submitted
in compliance with the Memorandum-Decision and Order
issued by this Court on November 27, 2006 ("November
Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he
must set forth facts demonstrating that Defendants were
personally involved in a violation of Plaintiff's rights. *Id.* at 4.
Plaintiff was also advised that in order to establish the liability
of a municipality, he must allege a custom or policy which is
the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants
and asserts numerous claims against them arising from his
confinement at Schenectady County Jail. Amended Compl.
(Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady
County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in
his amended Complaint. Therefore, "Schenectady County
Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby
dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint
mentions "Mr. Booth" and "Mr. Purdy" only in the caption,
and fails to allege any act or omission by these individuals.
Dismissal is appropriate where a defendant is listed in the
caption, but the body of the complaint fails to indicate what
the defendant did to the plaintiff. *Gonzalez v. City of New
York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2
(S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96
CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16,
1998) (mere inclusion of warden's name in complaint
insufficient to allege personal involvement) and *Taylor v. City
of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because
plaintiff has failed to allege any personal involvement on the
part of defendants "Mr. Booth" and "Mr. Purdy", they are
hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining
Defendants committed various violations of his constitutional
rights, including inadequate medical care, breach of doctor-
patient confidentiality, excessive force, denial of due process
in a disciplinary proceeding, and interference with the
grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as
against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot
effect service on a "John Doe" defendant. In the event
that plaintiff wishes to pursue this claim against the "John
Doe" defendants named in the amended Complaint, he must
take reasonable steps to ascertain their identities. Plaintiff
may then file a Motion to amend his complaint and seek
leave of the Court to add such individuals, by name, as
defendants to this lawsuit. Plaintiff is further advised that if
these individuals are not timely served, the action will be
against them will be dismissed.

 **\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady
County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are
**DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add
"Schenectady County," "Mr. Burns," "Mr. Jones," "Mr.
Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe
# 7," "John Doe # 10," and "Loraine Walker" as defendants
in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1] Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055

1998 WL 382055
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel GONZALEZ, Plaintiff,

v.

THE CITY OF NEW YORK; New York
City Department of Correction; Warden, Otis
Bantum Correctional Center; Corrections
Officer Summer, Shield No. 11856, Defendants.

No. 97 CIV. 2246(MGC).
|
July 9, 1998.

MEMORANDUM OPINION AND ORDER

CEDARBAUM, J.

**\*1** Plaintiff *pro se,* Angel Gonzalez, brings this action under 42 U.S.C. § 1983. He alleges that while in the custody of the New York City Department of Correction ("NYC DOC"), he was beaten by Correction Officer Summer. This is a motion to dismiss the complaint as against the City of New York, Warden of Otis Bantum Correctional Center (the "Warden") and NYC DOC pursuant to Fed.R.Civ.P. 12(b)(6).

On April 22, 1998, a letter was sent to Gonzalez directing him to respond to this motion by June 22, 1998. The letter advised Gonzalez that if he did not respond by June 22, the motion would be decided on the basis of the existing record, and the City of New York, New York City Department of Correction and Warden of Otis Bantum Correctional Facility might be dismissed from the action. Gonzalez has not responded. For the reasons that follow, the motion to dismiss is granted.

BACKGROUND

The complaint alleges that plaintiff was assaulted by Correction Officer Summer while he was incarcerated at Otis Bantum Correctional Center on Rikers Island, New York City. According to the complaint, as plaintiff was coming into the facility's recreation area from the "yard," he passed through a metal detector which registered that he had a metal object on his person. Defendant Summer then swore at plaintiff and told him to hurry up. As plaintiff passed through the

metal detector a second time, he said to Summer, "You don't have to act like that!" Summer then struck plaintiff in the face repeatedly until he lost consciousness. According to the complaint, when plaintiff regained consciousness, he found Summer "still abusing" him and swearing at him. Plaintiff left, found his way back to the housing area and felt as if he "had been hit with a bat to the face ." Plaintiff alleges that he suffered a cut under his left eye, serious swelling of his face and head, and lacerations of his scalp. He alleges that black and blue shadows still show under his eyes, and that he suffers from headaches. He seeks damages in the amount of three million dollars.

DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of the plaintiff, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. NYC DOC and the City of New York

Defendants argue that Gonzalez cannot assert a claim against NYC DOC based on any legal theory because it is not a suable entity. They also contend that the complaint fails to state a claim against the City of New York because it does not allege that the actions complained of were the result of an official policy, custom or practice of the City of New York.

**\*2** In addition to the defect that NYC DOC is an agency of the City of New York that is not a suable entity, [1] the complaint fails to state a claim upon which relief can be granted against either NYC DOC or the City. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity guaranteed by federal law. To state a claim against a municipality, a plaintiff must also plead that the wrongful action alleged was the result of an official policy, custom or practice of the municipality, and that that policy caused plaintiff's injury. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055

The complaint, however, alleges no official policy, custom or practice resulting in injury to Gonzalez. Indeed, the complaint does not even mention the City of New York or NYC DOC, except to the extent that they are listed as parties.

1    Defendants correctly point out that New York City agencies, such as NYC DOC, are organizational subdivisions of the City of New York lacking independent legal existence and are not themselves subject to suit. *See, e.g., Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) ("where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity").

2. Warden of Otis Bantum Correctional Center

Defendants also urge dismissal of the complaint against the Warden, on the ground that there are no allegations in the complaint concerning that defendant. When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or, (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As noted above, § 1983 imposes liability on a municipality only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell,* 436 U.S. at 690–91.

From the complaint, it is unclear whether the warden is being sued in his personal or official capacity. However, *pro se*

complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075, at *1 (S.D.N.Y. Nov.8, 1995) (citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

The complaint does not allege the personal involvement of the Warden. The complaint mentions the Warden only in the caption, and fails to allege any act or omission by that party. *See Crown v. Wagenstein,* 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same).

**\*3** Finally, to the extent that the complaint asserts an official-capacity claim against the Warden, the claim fails for the same reason that the claims against the City of New York and NYC DOC fail. There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation precludes a finding of liability against the Warden in his official capacity.

Accordingly, the complaint fails to the state a claim against the Warden upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against defendants the City of New York, New York City Department of Correction, and Warden of Otis Bantum Correctional Facility is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 382055

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 42 of 197

Crown v. Wagenstein, Not Reported in F.Supp. (1998)

1998 WL 118169

1998 WL 118169
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lakim CROWN, Plaintiff,

v.

Warden WAGENSTEIN; Parker T. # 10639 of
Emergency Response Unit, et al., Defendants.

No. 96 CIV. 3895(MGC).
|
March 16, 1998.

**Attorneys and Law Firms**

Lakim Crown, Brooklyn, for Plaintiff, Pro Se.

Paul A. Crotty, Esq., Corporation Counsel of the City of New
York, Attorney for Defendants Wangenstein and Parker, New
York, By Renee R. Nebens, Esq.

OPINION AND ORDER

CEDARBAUM, J.

 **\*1** This is an action for damages brought by a pro se plaintiff
pursuant to 42 U.S.C. § 1983. Defendant Wangenstein moves,
pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint
for failure to state a claim upon which relief can be granted
against him in either his personal or official capacity. For the
reasons discussed below, defendant's motion is granted.

The complaint alleges that on November 28, 1995, while
plaintiff was incarcerated at New York City's Otis Bantum
Correctional Center ("OBCC"), plaintiff was assaulted by a
number of correction officers. (Compl. at 3–4). As a result,
plaintiff alleges that he sustained injuries to his head, neck,
back, and right leg. (Compl. at 4). In addition to the officers
involved in the assault, plaintiff sues Wangenstein, the warden
of OBCC at the time of the alleged assault.

Discussion

A motion to dismiss for failure to state a claim must be granted
if, when viewed in the light most favorable to the plaintiff
and when all allegations of the complaint are accepted as true,
it appears beyond doubt that the plaintiff can prove no set

of facts in support of the claim which would entitle him to
relief. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465,
469 (2d Cir.1995). In addition, a complaint and supporting
papers prepared by a pro se plaintiff must be read liberally and
interpreted to "raise the strongest arguments they suggest."
*Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When an individual defendant is sued under § 1983, that
defendant's personal involvement in the alleged constitutional
deprivation is a prerequisite to an award of damages. *See
Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a
claim under § 1983, a complaint sufficiently alleges personal
involvement of a supervisory official if it alleges one of the
following: (a) direct participation in the alleged wrong; (b)
failure to remedy a violation after receiving notice of it; (c)
creation of a policy or custom under which unconstitutional
practices occur; or (d) grossly negligent management of
subordinates who cause the constitutional violation. *See Black
v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official
capacity is treated as a claim against the municipality itself.
*Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873,
83 L.Ed.2d 878 (1985). Section 1983 imposes liability on
municipalities only when the action that is alleged to be
unconstitutional implements or executes an official policy or
custom. *See Monell v. Department of Social Services,* 436
U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

From the complaint, it is unclear whether Wangenstein is
being sued in his personal or official capacity. However, pro
se complaints, if possible, should be construed as asserting
both claims. *Jackson v. Dinkins,* 1995 WL 657075 at *1
(S.D.N.Y. Nov.8, 1995)(citing *Frank v. Relin,* 1 F.3d 1317,
1326 (2d Cir.)("a plaintiff who has not clearly identified in her
complaint the capacity in which the defendant is sued should
not have the complaint automatically construed as focusing
on one capacity to the exclusion of the other"), *cert. denied,*
510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

 **\*2** The complaint does allege an assault by certain members
of the OBCC Emergency Response Unit. (Compl. at 3–4). It
alleges that while the plaintiff was making a telephone call,
members of the Emergency Response Unit entered housing
area 1N and defendant Parker verbally harassed the plaintiff,
and with the assistance of other members of the Emergency
Response Unit, assaulted him. (Compl. at 3–4). However,
the complaint does not allege the personal involvement
of Warden Wangenstein. The complaint mentions Warden

1998 WL 118169

Wangenstein only in the caption, and fails to allege any act or omission by Wangenstein. *See Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)(Edelstein, J.)(finding mere inclusion of warden's name in a complaint insufficient to allege personal involvement).

As for Warden Wangenstein's liability in his official capacity, the complaint fails to allege a municipal policy or custom that defendant was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation prevents a finding of liability for defendant Wangenstein in his official capacity. *See Monell,* 436 U.S. at 694.

Conclusion

Because the complaint fails to state a claim against Warden Wangenstein upon which relief can be granted, the motion to dismiss defendant Wangenstein is granted.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1998 WL 118169

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

636 F.Supp.3d 319
United States District Court, E.D. New York.

UNITED STATES of America
v.
Dennis HARRIS, Defendant.

21-CR-376(EK)
|
Signed October 21, 2022

**Synopsis**
**Background:** Defendant, who was charged with being felon in possession of firearm, moved to suppress.

**Holdings:** The District Court, Eric R. Komitee, J., held that:

[1] warrantless search of defendant's vehicle was justified under automobile exception, and

[2] inevitable discovery doctrine applied to gun found during warrantless search of fuse box in defendant's vehicle.

Motion denied.

**Procedural Posture(s):** Pre-Trial Hearing Motion.

West Headnotes (11)

[1]  **Search, Seizure, and Arrest**  ⚷  Probable or reasonable cause in general

Automobile exception to warrant requirement permits officers to conduct warrantless search of vehicle if they have probable cause to believe it contains contraband or other evidence of crime. U.S. Const. Amend. 4.

1 Case that cites this headnote

[2]  **Search, Seizure, and Arrest**  ⚷  Existence of criminal activity

Probable cause to search requires only fair probability that evidence of relevant violation will be found in place to be searched. U.S. Const. Amend. 4.

1 Case that cites this headnote

[3]  **Search, Seizure, and Arrest**  ⚷  Scope of Search

When automobile exception to warrant requirement applies, officers may search any area of vehicle in which they have probable cause to believe contraband or evidence is contained. U.S. Const. Amend. 4.

1 Case that cites this headnote

[4]  **Search, Seizure, and Arrest**  ⚷  Evidence of criminal activity in general
     **Search, Seizure, and Arrest**  ⚷  Location of vehicle
     **Search, Seizure, and Arrest**  ⚷  Plain view in general

Police officer had probable cause to believe that evidence of driving while under the influence of alcohol or drugs would be found within defendant's vehicle, and thus warrantless search of vehicle was justified under automobile exception; officer observed defendant sleeping, or passed out, in car, with engine running, in midst of active roadway, as officer reached across defendant's chest to secure transmission in "park" and remove keys from ignition, officer smelled alcohol on defendant's breath, defendant remained non-responsive, officer observed loose marijuana in door panel and vape pen on driver-side floor, when defendant exited vehicle, his speech was slurred, and he had bloodshot, watery eyes. U.S. Const. Amend. 4.

[5]  **Search, Seizure, and Arrest**  ⚷  Preventing Injury or Harm

Even if police officer's act of reaching through car window to put car in park and remove keys amounted to search and seizure, act was justified under emergency-aid exception to warrant requirement, where defendant was sleeping, or passed out, in car, with engine

running, in midst of active roadway. U.S. Const. Amend. 4.

**[6]** **Search, Seizure, and Arrest** 🔑 Nature of Offense in General

Police officers may effectuate arrest even for violation. U.S. Const. Amend. 4.

**[7]** **Search, Seizure, and Arrest** 🔑 Exception to warrant requirement in general

Automobile exception permits the warrantless search of a vehicle even in pursuit of evidence of a violation. U.S. Const. Amend. 4.

**[8]** **Criminal Law** 🔑 Inevitable discovery

Inevitable discovery doctrine applied to gun found during warrantless search of fuse box in defendant's vehicle; evidence would have been discovered in course of inventory search, police department was within its rights to remove car from active roadway, and, given defendant's inability to drive, police department was entitled to transport vehicle to impound lot and to conduct inventory search. U.S. Const. Amend. 4.

**[9]** **Criminal Law** 🔑 Inevitable discovery

Under "inevitable discovery doctrine," evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation. U.S. Const. Amend. 4.

**[10]** **Search, Seizure, and Arrest** 🔑 Impoundment and Inventory

Authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

**[11]** **Criminal Law** 🔑 Inevitable discovery

To invoke doctrine of inevitable discovery in context of inventory search, government must prove three things: (1) that police had legitimate custody of vehicle or other property being searched, so that inventory search would have been justified; (2) that when police in police agency in question conducted inventory searches, they did so pursuant to established or standardized procedures; and (3) that those inventory procedures would have inevitably led to discovery of challenged evidence.

**Attorneys and Law Firms**

**\*320** Patrick J. Campbell, Chand Warren Edwards-Balfour, Government Attorneys, United States Attorney's Office, Brooklyn, NY, for United States of America.

James Darrow, Public Defender, Federal Defenders of New York, Brooklyn, NY, for Defendant.

## MEMORANDUM & ORDER

ERIC KOMITEE, United States District Judge:

**\*\*1** **\*321** Defendant Dennis Harris is charged with violating the felon-in-possession statute, 18 U.S.C. § 922(g). He argues that the search that led to the discovery of the gun at issue violated the Fourth Amendment. Harris now moves to suppress the gun as well as other evidence resulting from that search. The Court held a suppression hearing on August 2, 2022. *See* Tr. of August 2, 2022 Suppression Hr'g ("Tr."), ECF No. 48. For the reasons set forth below, Harris's motion is denied.

### I. Background

The government called one witness at the hearing: Officer Benjamin Rodriguez of the New York City Police Department. Rodriguez's testimony and the government's physical evidence established the following. On the afternoon of March 14, 2021, NYPD officers responded to reports that a blue sedan was at a standstill on Fulton Street in Brooklyn. Tr. 9:17–10:21. Because Fulton Street has only one lane of traffic in each direction at that location, vehicles approaching

behind the sedan had to maneuver into the lane of oncoming traffic to get around the sedan. Tr. 85:16–86:14.

As Officer Rodriguez approached the sedan with two other officers, he saw Harris "sleeping" behind the wheel. Tr. 11:16–18. The officers gave verbal commands, such as "Sir, are you okay?" and "What's going on?"; Harris did not respond. Tr. 11:22–12:1. Noting that the sedan's engine was running and the transmission was in the "drive" position, Rodriguez reached through the open driver's side window and across Harris to the center console, put the vehicle into park, and removed the keys from the ignition. Tr. 12:2–13, 13:10–13. These maneuvers did not wake Harris. Tr. 12:14–15.

Rodriguez then opened the driver's side door and shook Harris. Tr. 13:3–5. When this did not work, he "applied four knuckles onto [Harris's] chest and began to rub it," upon which Harris gained consciousness. Tr. 13:4–7. Rodriguez's supervisor asked Harris to exit the vehicle, which he did without assistance. Tr. 13:17–23. Rodriguez observed Harris to be "tired" and "slurring his speech," with "watery" and "red" eyes. Tr. 13:24–14:5.

After Harris exited the sedan, but before he closed the door, Rodriguez saw (from about three feet away) "a plastic bag containing marijuana on the door panel, the driver's side," "in the center of the door" where "the door handle and electronic window controls are located. Tr. 15:2–11, 16:10–12, 26:22–27:20. Rodriguez testified that the bag could be seen in footage from Sergeant Lopez's body-worn camera. On video, the bag appears as a white, opaque object in the door panel. Tr. 45:7–47:20, 68:9–70:16; Gov't Ex. 2, at 0:00 to 0:02. In reality, it is a clear plastic bag containing marijuana, tied into a knot at the top. Tr. 44:23–45:2, 72:2–73:2.

Harris then closed the car door. Gov't Ex. 2, at 0:02 to 0:04. Rodriguez saw through the still-open window "a marijuana oil pen on the floor mat of the driver's side of the vehicle." Tr. 15:12–21, 27:21–28:5. The pen was located on the floor, on top of a brown napkin, near the center tunnel; its location is shown in a still image from Rodriguez's body camera footage. See Gov't Ex. 1-A; Tr. 18:2–10, 23:11–25, 50:5–13. (As discussed below, Harris argues that Rodriguez's testimony as to when he first saw these marijuana-related items contradicted his grand jury testimony.)

**\*\*2** **\*322** Accompanied by multiple officers, Harris then walked to a nearby ambulance that had arrived. Tr. 16:13–20. Meanwhile, Rodriguez searched Harris's sedan; while

searching in the driver's area, he opened a fuse compartment located near the steering wheel and saw a silver firearm. Tr. 28:21–29:1. Photographs of the driver's side dashboard, with the exterior and interior of the fuse compartment visible, were admitted into evidence. See Gov't Exs. 3, 4; Tr. 29:4–20, 30:14–31:3.

Rodriguez then signaled for other officers to arrest Harris. Tr. 29:1–3. After Harris's arrest, the NYPD towed his sedan to the precinct, where Rodriguez and other officers inventoried it later that day. Tr. 39:4–17. During the inventory search, Rodriguez recovered the bag of marijuana and vape pen that he previously saw in the sedan. Tr. 40:17–41:11.

## II. Discussion

The search of Harris's sedan was permitted under the Fourth Amendment, despite the officers' not having obtained a warrant, on two separate bases: the automobile exception to the warrant requirement, and the inevitable discovery doctrine.

### A. Automobile Exception

**[1]** **[2]** **[3]** The automobile exception to the warrant requirement permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012).[1] Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *see also United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

[1]     Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

1. The Officers Had Probable Cause to Arrest Harris

**[4]** **[5]** Officer Rodriguez testified that, prior to searching the fuse box that contained the gun, he had observed the following: Harris sleeping (or passed out) in a car, with the engine running, in the midst of an active roadway. Moreover, as he reached across Harris's chest to secure the transmission in "Park" and remove the keys from the ignition, Rodriguez smelled alcohol on Harris's breath. [2] Despite this **\*323** action, Harris remained non-responsive. As discussed below, I credit Rodriguez's testimony regarding these events. And these observations amounted to probable cause *even before* Rodriguez observed the loose marijuana in the door panel and the vape pen on the driver-side floor. Rodriguez's observation of those items — in plain view, through the open car door and window, respectively — only buttressed that cause. Accordingly, Rodriguez was justified in his belief that the fuse box drawer might contain additional evidence of criminality — specifically, driving under the influence.

[2]   One might reasonably ask whether Rodriguez's act of reaching through the car window to put the car in Park and remove the keys was a Fourth Amendment event. Several courts have suggested that it does not. *E.g.*, *United States v. Townsend*, 206 F. App'x 444, 449 (6th Cir. 2006) ("[S]eizure of the car keys from the ignition was a minimal intrusion, a reasonable and prudent safety precaution. Because [the defendant] [was asleep and] had not responded to verbal inquiry, the nature of his condition was unknown to the officers and they could not know how he would react when he awoke."); *United States v. Huff*, No. CRIM.A. 11-20111-01, 2013 WL 66032, at *3 (D. Kan. Jan. 4, 2013) ("Because Officer Lancaster reasonably believed that defendant might try to drive away, he opened the passenger door, leaned into the car and removed the keys from the ignition. Considering the totality of the circumstances, the Court concludes that Officer Lancaster's decision to remove the keys was reasonably necessary to secure officer safety and assume unquestioned command of the situation."), *modified on other grounds on reconsideration*, No. CRIM.A. 11-20111-01, 2013 WL 441063 (D. Kan. Feb. 5, 2013), *aff'd*, 782 F.3d 1221 (10th Cir. 2015). Even if Rodriguez's removal of the keys did amount to a search and seizure, no warrant was required: the act was justified under the emergency-aid exception to the warrant requirement. *See, e.g.*, *Batt v. Buccilli*, 725 F. App'x 23, 25–26 (2d Cir.

2018) (warrantless search valid under emergency aid exception where an individual "needed medical assistance" or "could [have been] in danger"); *United States v. Kelly*, 267 F. Supp. 2d 5, 8–9 (D.D.C. 2003) (no Fourth Amendment violation where officer entered car "to assist [the defendant], who was in obvious distress," having been involved in a car crash). *See generally United States v. Toussaint*, 838 F.3d 503, 508 (5th Cir. 2016) ("[A] person's privacy interest in his or her vehicle is less substantial than is the interest in one's house. Forcing officers to ignore other evidence when they stop vehicles to render emergency aid would not meet the needs of law enforcement or the demands of public safety.").

**\*\*3**   The Seventh Circuit addressed a similar situation in *United States v. Paige*, 870 F.3d 693 (7th Cir. 2017). In *Paige*, the defendant had fallen asleep in the driver's seat of his vehicle, which had been parked in the drive-through lane of an open McDonald's restaurant for an hour and which prompted an employee to call 911. *Id.* at 696. After a responding fire captain roused the defendant, a police officer detected a "strong odor of fresh marijuana" when she approached him. *Id.* at 697. She also "observ[ed] a bottle of alcohol on the driver's seat" of the defendant's car. *Id.* The officer testified that the defendant "appeared sleepy, keeping his eyes low and walking slowly." *Id.* The Seventh Circuit held that the officer's subsequent search of the vehicle was justified under the automobile exception because she "certainly had a reasonable basis for believing that the vehicle contained evidence of the offenses of arrest" — namely, "marijuana possession and impaired driving." *Id.* at 702.

The same is true here. The facts show that there was at least a fair probability that the officers would find evidence that Harris was driving under the influence of alcohol or drugs or was in unlawful possession of marijuana. It is undisputed that Harris was sleeping (or unconscious) behind the wheel of a vehicle stopped in the middle of an active roadway, that a baggie of marijuana and a marijuana vape pen were in plain view in the car, and that Harris did not respond to the officers' questions or even rouse when Rodriguez "shook" him. Tr. 11:16–12:18; 15:2–16:12, 26:12–28:5. While reaching into the sedan to turn it off, Rodriguez also smelled the odor of an alcoholic beverage coming from Harris. Tr. 76:17–18. That observation was later corroborated by a breath analysis test, which indicated a BAC of 0.166. Gov't Ex. 5; Tr. 33:1–34:19. [3]

3     As discussed below, Rodriguez's reaching into
      the sedan did not violate the Fourth Amendment
      because it did not constitute a search, and even if it
      did, the search was justified under the "emergency
      aid" exception.

The Second Circuit has, not surprisingly, held a similar state
of affairs to suggest **\*324** probable cause to believe a person
has been driving under the influence. *See Oquendo v. City of
New York*, 774 F. App'x 703, 705 (2d Cir. 2019) (probable
cause existed to support arrest for driving while intoxicated
where driver "had fallen asleep while his vehicle remained
in drive in a traffic lane after attending a party in the early
morning hours," his eyes were watery, and "there was an
open, half-full bottle of beer in the car's center console");
*United States v. Guy*, 1 F. App'x 410, 411, 413 (6th Cir. 2001)
(warrantless search justified under the automobile exception
where officers "found [the defendant] asleep with a crank
pipe in his hands" in a " 'pull-off' area on the side of the
road" because "the officers had probable cause to believe that
contraband would be found in [the defendant's] car"). [4]

4     *Cf. United States v. Hylton*, No. 2:17-CR-86,
      2017 WL 6521322, at *6 (D. Nev. Nov. 15,
      2017) (finding probable cause where defendant
      was "asleep in a running vehicle in the middle of
      an intersection; he was dazed and confused when
      he awoke; and he failed several steps of the Field
      Sobriety Tests," and officers detected a "strong
      odor of marijuana" coming from the vehicle),
      *report and recommendation adopted*, No. 2:17-
      CR-86, 2017 WL 6520915 (D. Nev. Dec. 20, 2017),
      *aff'd*, 30 F.4th 842 (9th Cir. 2022), *petition for cert.
      docketed*, No. 22-5741 (U.S. Oct 03, 2022); *United
      States v. Guy*, 1 F. App'x 410, 413 (6th Cir. 2001)
      ("Wampler first found Guy asleep with a crank
      pipe in his hands. The officers then arrested Guy
      for possession of the pipe and Driving Under the
      Influence. As a result, the officers had probable
      cause to believe that contraband would be found in
      his car.")

In this case, there was more: When Harris exited the vehicle,
his speech was slurred, and he had bloodshot, watery eyes.
Both a vape pen and a bag of marijuana were in plain view
in the vicinity of the driver's seat. Taken together, these
facts easily establish probable cause to believe that additional
"evidence of criminal activity," *i.e.* driving while under the
influence of alcohol or drugs, would be found within the
vehicle. *Paige*, 870 F.3d at 702; *see also, e.g., Ross*, 456 U.S.

at 825, 102 S.Ct. 2157; *Acevedo*, 500 U.S. at 580, 111 S.Ct.
1982; *United States v. Navas*, 597 F.3d 492, 497 (2d Cir.
2010). Thus, the search fell within the automobile exception.

### 2. Rodriguez's Alleged Inconsistencies Do Not Vitiate the Probable Cause

**\*\*4** During the suppression hearing, Harris argued that I
should find Rodriguez's testimony either "not credible" or "so
equivocal that it's not possible for the government to meet its
burden" of proving beyond a preponderance of the evidence
that the search happened under lawful circumstances. Tr.
92:17–93:6; *see United States v. Matlock*, 415 U.S. 164,
177 n.14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ("[T]he
controlling burden of proof at suppression hearings should
impose no greater burden than proof by a preponderance of
the evidence."). In support of this argument, Harris points to
two claimed inconsistencies between Rodriguez's testimony
at the hearing, on the one hand, and his testimony before
the grand jury and the state-court complaint he filed, on the
other. Harris also argues that Rodriguez could not have seen
marijuana through the plastic bag that held it. Tr. 105:5–
106:2. I discuss each of these arguments in turn.

### a. Rodriguez's Grand Jury Testimony: Timeline

The first alleged inconsistency relates to the timing of when
Rodriguez first saw the two marijuana items in Harris's car.
At the hearing, Rodriguez testified that he first observed
marijuana in Harris's sedan — both the vape pen and the
plastic bag — after Harris got out of the car, as described
in the background section above. *See* Tr. 14:24–15:6; 60:8–
17. Rodriguez **\*325** presented as credible throughout his
testimony; perhaps more importantly, this testimony was
corroborated by Sergeant Lopez's body camera footage,
which shows Harris exiting the vehicle while Rodriguez stood
very close to the vehicle, in a position to see the door panel.
*Compare* Tr. 21:22–22:1, 26:22–27:6, *with* Gov't Ex. 2, at
0:00 to 0:02. After Harris closes the door, the footage shows
Rodriguez peering into the open window with his flashlight,
at a natural angle to see the vape pen in its undisputed location.
*Compare* Tr. 27:6–10, 27:21–28:5, *with* Gov't Ex. 2, at 0:14
to 0:20.

However, at the hearing, defense counsel invoked Rodriguez's
grand jury testimony:

Q: What happened when you arrived?

A: We stopped the vehicle. We approached the blue sedan
   and we began to give verbal commands.

Q: What were those commands?

A: Sir, may you -- sir, what's going on?

Q: How did he respond?

A: He did not respond.

Q: What did you do next?

A: I then put the vehicle into park and removed the keys
   from the ignition.

Q: Did you smell anything as you opened the vehicle?

A: Yes.

Q: What did you smell?

A: I smelled the odor of alcohol.

Q: Where was the odor of alcohol coming from?

A: Eliminated from the defendant's breath.

*Q: Did you observe anything inside the vehicle?*

*A: Yes.*

*Q: What did you observe?*

*A: I observed a Ziploc containing marijuana on the door
   panel of the driver's side of the vehicle. I also observed
   the marijuana oil pen on the floor mat of the vehicle.*

Q: What did you with the defendant next?

A: I dispatched EMS to the scene and I asked the defendant
   to step out of the vehicle.

Tr. 62:13–63:19 (emphasis added).

At the hearing, Rodriguez reaffirmed that he gave this
testimony and that it was accurate and truthful. Tr. 63:21–
64:11. Harris argues that this testimony should be read in
chronological order and that, so viewed, Rodriguez should
be understood to have testified to the grand jury that he first
saw the marijuana when he reached into the car to turn it off.
Tr. 94:22–96:16. That would be inconsistent with his hearing
testimony that he only saw the marijuana once Harris exited
the car.

But viewed in context, the grand jury testimony is better
understood to reflect that the questioning proceeded without a
precise focus on the timeline. Rodriguez did not affirmatively
testify that he saw the marijuana-containing items *when he
reached in* to turn off the car; rather, he discussed observing
those items in response to a question by the prosecutor that
was about those items specifically. Direct examination is a
combined effort at storytelling by two partners — questioner
and witness. Because the lawyer frames the questions, it
can be difficult for the witness to ensure that the testimony
unfolds in strict chronological order. *See generally* Richard
B. Klein & Roberto Aron, *Trial Communication Skills* § 22:2
(2d ed.) ("In direct examination, the dialogue develops in
terms of questions and answers; the theme is established by
the lawyer, and the witness must answer, without changing
the subject of the question."). **\*326** Westlaw (Nov. 2021
Update). And "minor gaps in the record do not undermine
[the] conclusion that the officer[ ] testified credibly." *United
States v. Cancel*, 167 F. Supp. 3d 584, 590 (S.D.N.Y. 2016).
Here, the testimony and body camera footage, taken together,
make clear that Rodriguez testified credibly concerning the
order of events (an order that Harris does not affirmatively
dispute).

b. The "Ziploc" Bag Testimony

**\*\*5** The second claimed inconsistency relates to the type
of plastic bag that contained the marijuana. In his grand
jury testimony and the state-court complaint that he swore,
Rodriguez identified the bag as a "Ziploc" bag. Tr. 63:11–14,
75:19–76:12; State-Court Complaint 1 ("[T]he deponent did
observe one (1) cannabidiol vape pen on the floor in front
of the driver's seat of seat vehicle and one (1) ziplock bag
containing marihuana in the driver's door of said vehicle."),
ECF No. 14-2. At the hearing, Rodriguez testified that the
bag was knotted at the top, not "zip-locked." Tr. 72:6–18.
The government introduced the bag into evidence, and it
was indeed knotted. Tr. 106:24–107:14. But this difference
in terminology is immaterial: Rodriguez's use of the name
"Ziploc" can easily be understood to refer to the category of
plastic, sandwich-sized bags rather than any particular brand,
much like people use "Q-tips" to describe cotton swabs in
common parlance, and "Band-Aids" for adhesive bandages.

c. Rodriguez's Ability to See the Bag's Contents

Harris also asks the Court to reject Rodriguez's testimony that he could see through the bag to its contents while it was in the door panel. Tr. 48:3–30. This testimony, Harris claims, is belied by the body camera footage in which the bag appears as a small white (rather than clear) mass. Tr. 92:10–93:1. But it should go without saying that objects do not always appear on video as they do to the naked eye, and that this is especially true when the camera and the naked eye are observing from different vantage points. Here, the body camera footage that Harris invokes is from Sergeant Lopez's camera, not Rodriguez's. It shows Rodriguez looking at the bag from a position right next to the driver's door; Sergeant Lopez is standing near the rear of the car, at a considerably farther distance. *See generally* Seth W. Stoughton, *Police Body-Worn Cameras*, 96 N.C. L. Rev. 1363, 1402–05 (2018) (discussing the limitations of body-worn cameras, including effects of image compression).

In any event, the quality of Rodriguez's visibility into the marijuana bag is academic in the probable-cause analysis. Harris does not meaningfully dispute Rodriguez's testimony that could see the vape pen and identify it as containing marijuana, and one example of contraband is enough. For that matter, it is also undisputed that the officers discovered Harris asleep (or unconscious) behind the wheel in an active roadway, smelling of alcohol, and that he did not awaken even after police shouted commands at him and physically shook him. These indications provided sufficient cause to search the sedan, even in the total absence of the plastic bag.

### 3. Probable Cause For a "Violation" Was Sufficient

**[6]** **[7]** Harris argues that the suspected marijuana possession at issue here did not rise to the level of "criminal activity" because it was punishable only by a fine. Def. Letter in Supp. of Mot. to Suppress 5-6; *see Arizona v. Gant*, 556 U.S. 332, 347, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). This argument fails for two reasons. First, it is well established that police officers may effectuate an arrest even for a violation. **\*327** *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 345–55, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Kee v. City of New York*, 12 F.4th 150, 159–60 (2d Cir. 2021). Similarly, the automobile exception permits the warrantless search of a vehicle even in pursuit of evidence of a violation. *See Gant*, 556 U.S. at 343–44, 129 S.Ct. 1710. Marijuana possession remained a violation under New York law at the time the search here was effectuated (and for approximately two weeks thereafter). *See* N.Y. Penal Law § 221.05 (repealed effective Mar. 31, 2021); *see also* N.Y. Crim. Proc. Law § 140.10(1) (a); N.Y. Penal Law § 10.00(1). Thus, just as Harris could

be arrested based on probable cause that he had committed a violation, his vehicle could be searched based on probable cause that it contained additional evidence of that violation.

Second, *driving* while under the influence of marijuana of course remained, at all relevant times, a crime. *See* N.Y. Veh. & Traf. Law § 1192(4). And the facts established at the hearing show that the officers had ample cause to think that evidence of that offense, such as additional marijuana, could be contained in the vehicle. *Cf. United States v. Vereen*, 173 F. App'x 79, 81 (2d Cir. 2006) (holding that "the fact that a marijuana cigarette was seen in the open ashtray ... gave rise to a fair probability that contraband or evidence of a crime would be found" elsewhere in the vehicle); *United States v. Vereen*, No. 20-CR-566, 2021 WL 3771989, at \*6 (S.D.N.Y. Aug. 23, 2021) ("[W]hen a search is justified by the odor of marijuana and the officer then finds some amount of marijuana, it would be reasonable for him to conclude that, if he continues to search, there is a 'fair probability' that he will find more."). [5]

[5]   Harris does not argue that the officers violated the Fourth Amendment when they asked him to exit the vehicle. And in any event, the officers were plainly justified in asking him to exit the vehicle given the indications that he was in no condition to be driving and possibly needed medical attention. *See, e.g.*, *Sakoc v. Carlson*, No. 11-CV-290, 2012 WL 3929904, at \*8 (D. Vt. Sept. 10, 2012) (officers had reasonable suspicion sufficient to justify asking driver to exit vehicle where driver's "responses to questions were delayed and evidenced some confusion," among other indicia of impairment).

**\*\*6** Thus, Rodriguez's search of Harris's sedan was justified under the automobile exception.

### B. Inevitable Discovery Doctrine

**[8]** **[9]** **[10]** Even if the automobile exception did not apply, Rodriguez's search of the fuse box was justified by the doctrine of inevitable discovery. Under that doctrine, "evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation." *United States v. Mendez*, 315 F.3d 132, 138 (2d Cir. 2002). Here, the evidence would been discovered in the course of an "inventory search," even absent probable cause. This is because (a) the NYPD was within its rights to remove the car from the active roadway. "The authority of police to seize and remove from

the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). And (b) given Harris's inability to drive, the NYPD was entitled to transport the vehicle to an impound lot and, once there, to conduct an inventory search. *See United States v. Lopez,* 547 F.3d 364, 369 (2d Cir. 2008) (An inventory search "is not done to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; **\*328** (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger.").

 [11]  To invoke the doctrine of inevitable discovery in this context, "the government must prove three things":

> (1) that the police had legitimate custody of the vehicle or other property being searched, so that an inventory search would have been justified; (2) that when the police in the police agency in question conducted inventory searches, they did so pursuant to 'established' or 'standardized' procedures; and (3) that those inventory procedures would have 'inevitably' led to the 'discovery' of the challenged evidence.

*Mendez,* 315 F.3d at 138.

All three requirements are met here. First, it is undisputed that Harris's sedan was parked in an active roadway, which satisfies the first element. *Opperman,* 428 U.S. at 369, 96 S.Ct. 3092.

Second, the evidence showed that NYPD officers conduct inventory searches of vehicles regularly — as a standard practice, and pursuant to established procedures. Rodriguez testified that "any time" officers "take a vehicle into possession," they "search the vehicle for contraband, weapons, and basically any property left within the vehicle and ... document any such property being discovered." Tr. 34:23–35:3. These inventory searches are performed pursuant to the NYPD Patrol Guide, which officers are trained on (and which Rodriguez had reviewed prior to the search). Tr.

36:3–15. A portion of the Patrol Guide, which was introduced into evidence as Government's Exhibit 8, directs officers to "[s]earch the interior of the vehicle thoroughly," including "any area that may contain valuables." Gov't Ex. 8, at 1.

Harris has raised no objection to the way the inventory search of his sedan was actually conducted later that evening, despite body camera footage of that search having been produced and admitted into evidence. *See* Gov't Ex. 9.

 **\*\*7**  Finally, the inventory search procedures in the NYPD's Patrol Guide — introduced into evidence by the government — would inevitably have resulted in officers finding the firearm. Gov't Ex. 8, at 1. Rodriguez testified that although the Patrol Guide does not list fuse boxes specifically as a location to be searched, he would search a fuse box if he thought "something could be concealed" inside and that the tray could be opened without damage. Tr. 37:10–23. This is consistent with the Patrol Guide, which instructs officers to "[s]earch the interior of the vehicle thoroughly," "includ[ing] any area that may contain valuables." Gov't Ex. 8, at 1; *see also United States v. Miller,* No. 18-CR-395, 2019 WL 2088248, at \*6 (E.D.N.Y. May 13, 2019) ("The Patrol Guide ... describes *examples* of areas to be searched; it does not proscribe an exhaustive list.").

Indeed, officers are permitted to do even more than Rodriguez did — including to "[f]orce open [a] trunk, glove compartment, etc." if it "can be done with minimal damage" or if officers "[r]easonably suspect that the item contains weapons, explosives, hazardous materials or contraband." Gov't Ex. 8, at 1. Given that, it is permissible to open a fuse box during an inventory search. *See Miller,* 2019 WL 2088248, at \*6 (opening "a fuse box that ... was designed to and did open easily by hand ... is fundamentally different from forcing open door panels of a vehicle that were not designed to opened easily"); *accord United States v. Zimmerman,* 480 F. Supp. 3d 446, 454–55 (E.D.N.Y. 2020) (holding that a fuse box was properly subjected to an inventory search because "[t]hough not intended **\*329** for that purpose, the fuse box was large enough to hide valuables, including the firearm at issue, and an inventory search is designed to ferret out such hiding places to protect both the police and the vehicle's owner in the event property is claimed to be lost.").

Thus, the search was independently justified under the inevitable discovery doctrine.

2022 WL 13798289

**III. Conclusion**

For the foregoing reasons, the motion to suppress is denied.

SO ORDERED.

**All Citations**

636 F.Supp.3d 319, 2022 WL 13798289

---

**End of Document**                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

KeyCite Yellow Flag - Negative Treatment

On Reconsideration in Part  Johnson v. Harron,  N.D.N.Y.,  July 6, 1995

1995 WL 319943
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth B. JOHNSON, Plaintiff,

v.

John HARRON, Holly Middleton, George Lavigne,
Michael Murphey, Robert Richards, Thomas Jarvis, Mark
Phifer, Ronald Scott Ewing, Shawn P. Murphy, John
K. Triller, and United States of America, Defendants.

No. 91–CV–1460.
|
May 23, 1995.

**Attorneys and Law Firms**

Stephen J. Waite & Associates, Albany, NY (Brian P. Rohan, of counsel), for plaintiff.

United States Department of Justice, Torts Branch, Civil Division, Washington, DC (Richard Montague, of counsel), for defendants U.S. of America, John Harron, Holly Middleton, George Lavigne, Michael Murphey, Robert Richards, Thomas Jarvis, Mark Phifer, and Ronald Scott Ewing.

Dennis C. Vacco, Attorney General for the State of New York, Albany, NY (Dennis Acton, Asst. Atty. Gen., of counsel), for defendants Shawn P. Murphy and John K. Triller.

MEMORANDUM–DECISION AND ORDER

MCCURN, Senior District Judge.

*INTRODUCTION*

**\*1**  Presently before the court are a number of motions seeking summary judgment with respect to various claims or defenses contained in the pleadings filed in this action. First of all, plaintiff moves for summary judgment with respect to Defendant Triller's and Defendant Shawn Murphy's (hereinafter referred to as the "State Defendants") second defense alleging that the statute of limitations prohibits certain of plaintiff's state law claims. Secondly, the State

Defendants move for summary judgment with respect to all of plaintiff's causes of action and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Thirdly, Defendants Harron, Lavigne, Middleton, Michael Murphey, Phifer, Richards, Jarvis, and Ewing (hereinafter referred to as the "United States Defendants" or the "Customs Inspectors") move for summary judgment with respect to plaintiff's first and second causes of action. Finally, plaintiff cross-moves for partial summary judgment on his first cause of action with respect to the liability of Defendants Harron, Lavigne, Phifer, Richards, and Jarvis for their participation in the allegedly unconstitutional strip/cavity body search of plaintiff. The court will consider each of these motions *seriatim*.

*BACKGROUND*

Although the specific details of what transpired between plaintiff and defendants are hotly disputed, the underlying incidents are not. Sometime after 4:00 p.m. on September 27, 1990, plaintiff, an African–American, and his Caucasian wife were returning from a trip to Canada when they were stopped at the United States Customs Service Port of Entry —Interstate 87, Champlain, New York. After being stopped, plaintiff and his wife were directed to a secondary inspection area. They were asked to exit their car, a BMW, and to enter the Customs facility. While plaintiff and his spouse were inside the Customs facility, their car was thoroughly searched. In addition, plaintiff was asked to empty his pockets and was then subjected to a pat-down search and weapons frisk.

In addition, one of the Customs Inspectors asked plaintiff for his driver's license and upon receiving the same performed a computer search of Department of Motor Vehicles ("DMV") records. This search revealed that plaintiff was driving with a suspended license. [1] According to plaintiff, upon receiving this information, a Customs Inspector stated, "We got you now.... We are going to hang you." *See* Plaintiff's Seconded Amended Verified Complaint ("Plaintiff's Complaint") at ¶ 18. Based upon the result of this DMV search, a Customs Inspector advised plaintiff that the matter would have to be turned over to the New York State Police and that he would be detained pending their arrival. While plaintiff was awaiting the arrival of the State Trooper, he attempted to go to the restroom. According to plaintiff, as he headed toward the facilities, "[t]he verbal attacks and assaults again intensified, Plaintiff was physically accosted and forcibly escorted by five (5) Customs Inspectors, Defendants herein, towards a chair in the corner of the station/office where he was directed, ... to

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

'sit down and shut up or you will be arrested.' " *See* Plaintiff's Complaint at ¶ 20.

**\*2** In addition to a search of the DMV records, one of the Customs Inspectors performed a NCIC computer search to determine if plaintiff had a criminal history record. This search revealed that plaintiff had been arrested for a crime involving violence and assault. *See* United States Defendants' Statement of Material Facts Not Genuinely Disputed at ¶ 5 and Exhibit E attached thereto. After completing these searches, Defendant Lavigne, the supervising customs inspector who was in the Customs facility lobby at the time plaintiff arrived, requested that Defendant Harron and his Contraband Enforcement Team (Defendants Phifer, Richards and Jarvis) report to the lobby to assist him with the secondary inspection of plaintiff. When Defendant Harron arrived, Defendant Lavigne told him what he had learned regarding plaintiff's driver's license and his criminal history record.

According to plaintiff, after approximately one hour, Defendant Triller, a New York State Trooper, arrived. Defendant Triller told plaintiff that he was going to arrest him for driving with a suspended license. At this point, some conversation apparently ensued between the Customs Inspectors and Defendant Triller regarding whether or not plaintiff had been searched. Whether on his own initiative, or at the request of Defendants Triller and Lavigne, Defendant Harron instructed Defendants Phifer, Richards, and Jarvis to escort plaintiff to the back of the building for the purpose of conducting a strip/body cavity search. According to plaintiff, approximately seven customs inspectors approached him and physically escorted him to the rear of the office without his consent. *See id.* at ¶ 22. Moreover, plaintiff contends that

> [w]hile being forcibly escorted down the hallway to the rear of the building, the deliberate, malicious, offensive, abusive, profane and insulting language picked up a notch and the various Defendants proclaimed, *inter alia,* "We got your ass now, Nigger" and "You're not such a big man now, are you, Nigger? ... Say something so we can beat the fucking shit out of you." At the end of the hallway was a small room with no windows and merely a desk and a single chair inside. Plaintiff was loudly instructed to "[g]et your black ass in the room!"

*See id.* at ¶ 23.

At this point, according to plaintiff, "[a]pproximately five (5) Defendant Customs Inspectors forcibly escorted and accompanied the African–American Plaintiff into the 'cubby-

hole,' while two (2) other Defendant Customs Inspectors, including Holly Middleton, the sole female Inspector, watched from the doorway." *See id.* at ¶ 24. During the strip/body cavity search, plaintiff alleges that he experienced an "[o]nslaught of racial slurs and other abusive, profane and insulting threats and comments, including, but not limited to, '[w]e are going to fucking hang you, Nigger,' and '[Y]ou better not have anything on you, you stupid Nigger.' " *See* Plaintiff's Complaint at ¶ 25. Plaintiff also asserts that this search culminated "[i]n a highly intensive cavity search as Plaintiff was instructed to '[t]urn around and bend over' so that all Defendants present could visibly inspect his anal and genital areas." *See id.* at ¶ 26.

**\*3** After the strip/body cavity search was completed, the Customs Inspectors returned plaintiff to the lobby and turned him over to the custody of Defendant Triller who handcuffed plaintiff and transported him to a local magistrate, where he was booked and detained until he was released on $200 bail. *See id.* at ¶ 28. Plaintiff's car was impounded and towed. Approximately one and one-half hours later, plaintiff returned to the customs facility where, according to him, he was "[s]ubjected to further harassment, threats, insults, racial slurs and other profane language, until he was safely aboard a bus bound for Albany, New York, some two (2) hours later." *See id.* at ¶ 29.

The following day, after obtaining verification from the Department of Motor Vehicles that his driver's license was not suspended and retrieving his bail money and his car, plaintiff and his family returned to the customs facility to obtain the names of those who had been involved in the incident the previous evening. *See* Plaintiff's Complaint at ¶¶ 30–32. According to plaintiff, Defendant Harron gave him his business card, told him that no names would be provided or released and that any future inquiries should be directed to him personally. *See id.* at ¶¶ 32, 33. After leaving the building, plaintiff asserts that four customs inspectors and New York State Trooper Shawn Murphy rushed out of the office and harassed and intimidated him and his family. In this regard, plaintiff asserts that

> [t]he five (5) Defendants loudly shouted such offensive, discriminatory, profane, insulting and abusive threats and comments such as, *inter alia,* "Get the fuck in your car, Niggers, and go home," and "[W]e better not ever see your black asses up here again." Such unjustified and unprovoked verbal assaults were again accompanied by physical contact as the Defendant New York State Trooper, a large caucasian and physically intimidating individual,

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 55 of 197

1995 WL 319943

got right up in the face of Plaintiff and, pointing his finger in said Plaintiff's chest, threatened: "[g]et the fuck in your car now or I'll arrest you," while the four (4) Defendant Customs Inspectors forcibly yanked, pushed and shoved the remaining family members, including Plaintiff's elderly mother and infant children, all of African–American descent, towards the van.

*See id.* at ¶ 35.

As a result of these incidents, plaintiff commenced the present suit in New York State Supreme Court. Thereafter, the United States removed the matter to this court pursuant to 28 U.S.C. § 1442(a)(1). Plaintiff filed a second amended verified complaint on September 9, 1992. In his first cause of action asserted against all of the defendants, plaintiff alleges that defendants' actions violated several of his constitutional rights. In his second and related cause of action, plaintiff contends that defendants either conspired with each other to deprive plaintiff of his constitutional rights or did nothing to prevent such deprivations in violation of § 1985(3) and § 1986.

 **\*4** In addition to these federal civil rights claims, plaintiff purports to assert three other causes of action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, and against the State Defendants: (1) intentional infliction of emotional distress or, in the alternative, prima facie tort, *see* Plaintiff's Complaint at ¶ 57; (2) unlawful detention and false imprisonment, *see id.* at ¶ 64; and (3) assault and battery, *see id.* at ¶ 71.

Both plaintiff and defendants treat these last three causes of action as pendent state law claims. This is clearly an accurate description of plaintiff's intentional infliction of emotional distress and/or prima facie tort claim.[2] After carefully reviewing plaintiff's first cause of action, however, the court finds that his two purportedly separate state law causes of action for "unlawful detention/false imprisonment" and "assault and battery" are nothing more than a partial restatement of the allegations set forth in plaintiff's first cause of action to the extent that this first cause of action asserts that the United States Defendants and the State Defendants violated plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures and the use of excessive force. For this reason, the court concludes that plaintiff's fourth and fifth causes of action are subsumed by his first cause of action. Therefore, the court reads plaintiff's complaint as alleging three, and not five, separate causes

of action—two federal civil rights causes of action and a supplemental intentional infliction of emotional distress/ prima facie tort claim.[3]

DISCUSSION[4]

*I. Summary Judgment Standard*

The court may not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the burden of demonstrating that no genuine factual issue exists. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir.1994). In making its determination as to whether any genuine factual dispute exists, the court must resolve all ambiguities in favor of the nonmovant. *See Cronin,* 46 F.3d at 202 (citation omitted). Moreover, the court must view the inferences to be drawn from the underlying admissions, affidavits, exhibits, interrogatory answers, and depositions in the light most favorable to the nonmoving party. *See id.* (citations omitted).

 **\*5** The court may grant summary judgment if the movant shows that little or no evidence may be found to support the nonmovant's case. *See Gallo,* 22 F.3d at 1223. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Id.* at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Finally, the court must keep in mind that its "[t]ask at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue-resolution." *Id.* at 1224; *see also Cronin,* 46 F.3d at 203. It is with these guidelines in mind that the court must determine whether the parties are entitled to the relief they seek.

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 56 of 197

II. *Plaintiff's First Cause of Action—42 U.S.C. § 1983 and Bivens,* [5]

As the Second Circuit recently stated "[s]ection 1983 provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido,* 41 F.3d 865, 875 (2d Cir.1994) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981)). Moreover,

> [i]t is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.

*Id.* at 875–76 (quoting *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *see also Robinson v. The Town of Colonie,* 878 F.Supp. 387 (N.D.N.Y.1995) (McCurn, S.J.); *Flowers v. The TJX Companies, Inc.,* No. 91–CV–1339, 1994 WL 382515, *2–3, 1994 U.S.Dist. LEXIS 10453, *8–*9 (N.D.N.Y. July 15, 1994) (Munson, S.J.). [6]

Furthermore, to hold an individual liable for a deprivation of plaintiff's constitutional rights, plaintiff must prove that the particular individual was personally involved in the alleged deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). With respect to a defendant who occupies a supervisory position, such an individual may be found to have been involved personally in the deprivation of a plaintiff's constitutional rights in several ways:

> The defendant may have directly participated in the infraction.... A supervisory official after learning of the violation through a report or appeal, may have failed to remedy the wrong.... A supervisory official may be liable because he or she

> created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event....

**\*6** *Wright,* 21 F.3d at 501 (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted)).

In his complaint, plaintiff alleges that

> [d]efendants' racially-motivated acts and omissions were done under the color of their respective authority as state and/or federal agents and constituted a collective and blatant disregard for the constitutional and civil rights and liberties of the African–American Plaintiff herein. The conduct of Defendants, and each of them, deprived Plaintiff of his guaranteed liberty interests in privacy and travel and his right to equal protection of the laws, secured by the Fourteenth Amendment to the Constitution of the United States ...; deprived Plaintiff of due process of the law under the Fifth Amendment to the Constitution of the United States; violated Plaintiff's right to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States ...; and caused Plaintiff to suffer the badges and incidents of slavery in violation of the Thirteenth Amendment to the Constitution of the United States as enforced by 42 U.S.C. Section 1983 et seq. (Civil Rights Act).

*See* Plaintiff's Complaint at ¶ 42 (emphasis added).

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

There is no dispute that the State Defendants were acting under color of state law and that the United States Defendants were acting under color of federal law. What is in dispute, however, is whether defendants deprived plaintiff of any of his federal constitutional rights and, if such deprivation did occur, whether defendants, nonetheless, are shielded from suit by the doctrine of qualified immunity. Since plaintiff alleges that defendants violated several of his federal constitutional rights, the court will discuss each of his claims *seriatim.*

*A. Thirteenth Amendment—Badges and Incidents of Slavery*

The Thirteenth Amendment to the United States Constitution provides that

> Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

> Section 2. Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII.

Although none of defendants' actions can be construed as subjecting plaintiff to involuntary servitude, this fact alone does not, necessarily, shield them from liability under the Thirteenth Amendment. As one court has explained, "The Thirteenth Amendment not only prohibits slavery and involuntary servitude, but also gives Congress the power to prohibit actions that impose a 'badge of slavery' on citizens."[7] *Hawk v. Perillo,* 642 F.Supp. 380, 384 (N.D.Ill.1985) (citing *James v. Alfred H. Mayer Co.,* 392 U.S. 409, 439–43, 88 S.Ct. 2186, 2203–05, 20 L.Ed.2d 1189 (1968). *But see City of Memphis v. Greene,* 451 U.S. 100, 126 n. 40, 101 S.Ct. 1584, 1599 n. 40, 67 L.Ed.2d 769 (1981)). The court went on to explain, "[h]owever, [that] in the realm of equal protection, the Thirteenth Amendment offers no protection not already provided under the Fourteenth Amendment." *Id.* (citation omitted).[8]

**\*7** In the present case, it is impossible to determine from the face of plaintiff's complaint what the basis for his Thirteenth Amendment claim is. Nor do plaintiff's papers submitted in opposition to the present motions shed any light on the nature of this claim. Drawing all reasonable inferences from the allegations contained in the complaint, however, the court

concludes that the only plausible basis for this claim is plaintiff's contention that defendants treated him differently because of his race/color. Viewed in these terms, plaintiff's claim is a classic example of an equal protection challenge. Since plaintiff asserts such a claim as part of his first cause of action, the court finds his Thirteenth Amendment claim to be redundant. Accordingly, the court grants defendants' motions for summary judgment with respect to plaintiff's first cause of action to the extent that it alleges a violation of the Thirteenth Amendment.

*B. Fourth Amendment—Unreasonable Search and Seizure*

Plaintiff alleges that defendants' decisions to stop him, to search his vehicle, to detain him pending the arrival of a New York State Trooper, and to subject him to a pat-down/weapons frisk and strip search violated his Fourth and Fourteenth Amendment right to be free from unreasonable searches and seizures. The court will discuss each of these claims *seriatim.*

1. Initial Stop, Vehicle Search,
and Pat-down/Weapons Frisk[9]

With respect to border stops such as the one at issue here, the Supreme Court has stated that

> [r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant, ... Automotive travelers may be stopped at fixed checkpoints near the border without individualized suspicion even if the stop is based largely on ethnicity, *United States v. Martinez–Fuerte,* 428 U.S. 543, 562–63, 96 S.Ct. 3074, 3085, 49 L.Ed.2d 1116 (1976), ...

*United States v. Montoya de Hernandez,* 473 U.S. 531, 538, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381, —— (1985).

In line with this reasoning, the Second Circuit has held that

> [i]t is well established that routine border inspections do not violate the fourth amendment prohibition against

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

unreasonable searches even when conducted without probable cause or a warrant.... Such searches are reasonable "simply by virtue of the fact that they occur at the border", ..., and are authorized "in order to regulate the collection of duties and to prevent the introduction of contraband into this country." ...

*United States v. Ogberaha,* 771 F.2d 655, 657 (2d Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *see also United States v. Luc–Thirion,* 501 F.Supp. 875, 877 n. 6 (E.D.N.Y.1980).

For purposes of Fourth Amendment analysis, "[a] routine border search contemplates the search of a person's luggage and other personal effects...." *United States v. Moody,* 649 F.2d 124 (2d Cir.1981). Moreover, "[t]he request to empty [one's] pockets, to remove [one's] jacket and to undergo a routine pat down would not warrant the imposition of reasonable suspicion." *United States v. Luc–Thirion,* 501 F.Supp. 875, 879 (E.D.N.Y.1980). [10]

**\*8** In the instant case, plaintiff complains that the United States Defendants had no reason to stop him at the border, to search his car, or to subject him to a pat-down/weapons frisk. Even if plaintiff is correct, however, these actions are an integral part of a routine border search and, thus, do not constitute an unreasonable search and seizure within the meaning of the Fourth Amendment. As the above-cited caselaw makes clear, the United States Defendants' actions were reasonable simply by virtue of the fact that plaintiff was re-entering this country from Canada. Accordingly, the court grants the United States Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon his contention that the United States Defendants' decision to stop him, to search his vehicle, and to subject him to a pat-down/weapons frisk constituted a violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

### 2. Detention Pending the Arrival of Defendant Triller and Subsequent Arrest

Plaintiff complains that the United States Defendants' decision to detain him pending the arrival of Defendant Triller and Defendant Triller's decision to arrest him violated his Fourth and Fourteenth Amendment right to be free from unreasonable seizures. At issue here is whether defendants had probable cause to detain and arrest plaintiff. In this

regard, "[a] claim for false arrest or false imprisonment as an unconstitutional deprivation of civil rights ... may be established only if there is no probable cause to support the plaintiff's arrest and detention." *Simpson v. Saroff,* 741 F.Supp. 1073, 1077 (S.D.N.Y.1990) (citations omitted) (emphasis added). Moreover, "[p]robable cause exists if " 'at the moment the arrest was made ... the facts and circumstances within [defendants'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that [plaintiff] had violated [the law].' " *Nelson v. Mattern,* 844 F.Supp. 216, 220 (E.D.Pa.1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting in turn *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964))); *see also United States v. Towne,* 870 F.2d 880 (2d Cir.), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).

When the United States Defendants stopped plaintiff and escorted him into the lobby of the customs building, they requested his license and ran a DMV computer check on the same. *See* Plaintiff's Complaint at ¶ 17. As a result of this search, they learned that plaintiff's license had been suspended. They notified plaintiff of this fact and told him that he would have to await the arrival of a state trooper. Although plaintiff repeatedly told the Customs Inspectors that his license was not suspended, he had no documentary proof to support his contention. When Defendant Triller arrived, the Customs Inspectors informed him that plaintiff's license had been suspended. On the basis of this information, Defendant Triller arrested plaintiff despite plaintiff's continued protestations of innocence.

**\*9** At the time of plaintiff's detention and arrest, it was reasonable for defendants to credit the DMV computer information as reasonably trustworthy, especially in light of the fact that they had no documentary proof to the contrary. Thus, the court concludes that the Customs Inspectors had probable cause to detain plaintiff and Defendant Triller had probable cause to arrest him for driving with a suspended license. [11] Accordingly, the court grants defendants' motions for summary judgment with respect to plaintiff's first cause of action to the extent that this claim is based upon plaintiff's contention that his detention and arrest were without probable cause in violation of his Fourth and Fourteenth Amendment right to be free from unreasonable seizures.

Johnson v. Harron, Not Reported in F.Supp. (1995)
1995 WL 319943

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 59 of 197

### 3. Strip Search

"A strip search, regardless of how professionally and courteously conducted, is an embarrassing and humiliating experience." *Daugherty v. Campbell,* 33 F.3d 554, 556 (6th Cir.1994) (citations omitted). Having long recognized this fact, the Second Circuit, as well as others, routinely has held that

> [a]lthough anyone entering or leaving the country may expect to have his luggage and personal effects examined, he does not expect that his entry or departure, standing alone, will cause him to be subjected to a strip search. Before a border official may insist upon such an extensive invasion of privacy, he should have a suspicion of illegal concealment that is based upon something more than the border crossing, and the suspicion should be substantial enough to make the search a reasonable exercise of authority.

*United States v. Asbury,* 586 F.2d 973, 975–76 (2d Cir.1978) (emphasis added). More specifically, when the person to be searched, like plaintiff in this case, is accused of a misdemeanor or other minor offense, "[a] reasonable suspicion that [such an individual] is concealing weapons or other contraband—suspicion based on the particular traits of the offender, the arrest and/or the crime charged—is necessary before subjecting the arrestee to the indignities of a strip/body cavity search." *Weber v. Dell,* 804 F.2d 796, 804 (2d Cir.1986), *cert. denied sub nom., County of Monroe v. Weber,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

As an aid to courts faced with the issue of whether "reasonable suspicion" exists to justify a strip search, the Second Circuit, in *Asbury,* set forth twelve factors

> [w]hich may be taken into account ... Among these factors are the following: (1) Excessive nervousness.... (2) Unusual conduct.... (3) An informant's tip.... (4) Computerized information showing pertinent criminal propensities.... (5) Loose-fitting or bulky clothing.... (6) An itinerary suggestive of wrongdoing.... (7) Discovery of incriminating matter during routine searches.... (8) Lack of employment or a claim of self-employment.... (9) Needle marks or other indications of drug addiction.... (10) Information derived from the search or conduct of a traveling companion.... (11) Inadequate luggage.... [and] (12) Evasive or contradictory answers.

**\*10** *Asbury,* 586 F.2d at 976–77 (citations omitted).

Moreover, the court in *Asbury* noted that "[i]n most cases upholding the legality of a strip search, the courts have relied upon a combination of the foregoing factors rather than upon any of them standing alone." *Id.* at 977 (citation omitted).

In the present case, the United States Defendants acknowledge that it was clearly established law at the time that they subjected plaintiff to a strip search that merely crossing the border, without more, was not enough to justify such a search and that, at a minimum, a reasonable suspicion of illicit activity was required. *See* United States Defendants' Memorandum of Law at 12. Nonetheless, they argue that they are entitled to qualified immunity because they had an objectively reasonable basis to believe that their actions did not violate this clearly established law. *See id.*

By skipping directly to their qualified immunity argument, the United States Defendants apparently concede, at least for purposes of this motion, that they violated plaintiff's Fourth Amendment right to be free from unreasonable searches when they subjected him to a strip search. The court agrees with this assessment. There is absolutely nothing in the record to indicate that the United States Defendants had any suspicion that plaintiff was engaged in any illicit activity at the time that they stopped him at the border and subjected him to a routine border search. Moreover, as part of their routine inspection, they searched plaintiff's vehicle, his personal belongings, and his pockets, and subjected him to a pat-down/weapons frisk. These searches revealed no evidence that plaintiff was concealing any weapons or contraband. Nor was there anything about the crime for

which he was detained—driving with a suspended license— which would lead to a reasonable suspicion that plaintiff was secreting contraband or weapons. Given these facts, the court concludes that the United States Defendants did not possess the reasonable suspicion necessary to justify their decision to strip search plaintiff. Accordingly, the court holds that the United States Defendants who participated in plaintiff's strip search violated plaintiff's Fourth Amendment right to be free from unreasonable searches.

This conclusion, however, does not end the court's inquiry. The United States Defendants may still escape liability for violating plaintiff's clearly established constitutional right to be free from unreasonable searches if they can demonstrate that they are entitled to qualified immunity. In this regard, the Second Circuit has noted that "[e]ven where the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993) (emphasis added) (citing *Malley v. Briggs,* 475 U.S. 335, 345–46, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1986); *Robison v. Via,* 821 F.2d at 921). Under such circumstances, however,

   **\*11** [t]he defense will turn on the particular facts, and summary judgment will be appropriate only if the defendant "adduces sufficient facts [such] that no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ] could conclude that it was objectively unreasonable for the defendant[s]" to believe that [they were] acting in a fashion that did not clearly violate an established federally protected right.

*Id.* (citing *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986) (Scalia, J., sitting by designation); *Robison v. Via,* 821 F.2d at 921); *see also Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (2d Cir.1990); *Magnotti v. Kuntz,* 918 F.2d 364 (2d Cir.1990). [12]

In support of their argument that they had an objectively reasonable basis to believe that their decision to strip search plaintiff did not violate clearly established law, the United States Defendants direct the court's attention to the *Asbury* factors. Specifically, they rely upon the fact that (1) plaintiff became upset and agitated when he was informed that his license had been revoked; (2) a computer search showed that plaintiff had an arrest record, including an arrest for burglary and two felony assault arrests; (3) plaintiff told Defendant Lavigne that he owned a night club; i.e., he was self-employed; and (4) while plaintiff was waiting in the lobby during the secondary inspection, he insisted that he be allowed to go to the bathroom and to go outside to his car while it was being searched. *See* United States Defendants' Memorandum of Law at 15–16. With respect to plaintiff's requests, the United States Defendants assert that either of them reasonably could be interpreted as consistent with the conduct of a person carrying weapons or contraband on his person or in his vehicle. *See id.* at 16. [13]

In analyzing the United States Defendants' defense of qualified immunity, the court cannot view their decision to strip search plaintiff in a vacuum. Rather, as part of the "totality of the circumstances," the court must keep in mind that prior to this highly intrusive search, the United States Defendants searched plaintiff's vehicle, conducted DMV and NCIC computer checks of plaintiff's records, and subjected him to a pat-down/weapons frisk. All of these actions, of course, were part of a legitimate routine border search. The fact that these initial searches revealed nothing, however, should have had some effect on defendants' decision to proceed further. As the court noted in *Asbury,*

> In order to avoid unnecessarily intrusive searches ..., customs agents ordinarily proceed from the less intrusive to the more intrusive" form of search. *See United States v. Afanador, supra,* 567 F.2d at 1329 n. 4. That procedure was followed by the agents in this case. They began by conducting a "primary" search of the appellants' luggage, after which the appellants were referred to a "secondary" search station. The secondary search consisted of a pat-down, which revealed suspicious bulges in the appellants' clothing caused by the concealed counterfeit bills. Only after the agents discovered these bulges, which gave them further reason to suspect the appellants of

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 61 of 197

1995 WL 319943

carrying contraband, did they conduct
a strip search of appellants.

**\*12** *Asbury,* 586 F.2d at 976 n. 4 (emphasis added).

Unlike the searches in *Asbury,* however, the minimally intrusive searches of plaintiff and his effects in this case uncovered no weapons, contraband, or other suspicious bulges. Thus, rather than providing the United States Defendants with a further reason to suspect plaintiff of concealing illicit materials, these preliminary searches should have dispelled most, if not all, of defendants' suspicions. At the very least, these searches did not provide the United States Defendants with the "reasonable suspicion" necessary to justify their decision to conduct a far more intrusive strip search.

It is in light of the information the United States Defendants obtained as a result of their computer inquiries and their preliminary searches of plaintiff and his effects that the court must analyze the factors upon which these defendants rely to support their claim of entitlement to qualified immunity. As the United States Defendants themselves concede, none of these factors standing alone would support their decision to strip search plaintiff. Thus, there must be something about the combination of these factors that made it objectively reasonable for them to believe that they had a reasonable suspicion that plaintiff was concealing a weapon.

First, the United States Defendants rely upon the fact that plaintiff became upset and agitated when he was informed that his license had been revoked. Rather than identify the specific *Asbury* factor which encompasses such a reaction, the United States Defendants cite *United States v. Esieke,* 940 F.2d 29 (2d Cir.), *cert. denied,* 502 U.S. 992, 112 S.Ct. 610, 116 L.Ed.2d 632 (1991), apparently for the proposition that a suspect's belligerency can be a factor leading to "reasonable suspicion." [14] *Esieke,* however, is factually distinguishable from the present case. [15]

In *Esieke,* the defendant appealed his conviction for importing and possessing with intent to distribute more than 100 grams of heroin. On appeal, Esieke argued that his detention by customs inspectors to monitor his bowel movements was not supported by reasonable suspicion. [16] Upholding the validity of the search, the Second Circuit concluded that "[w]e are convinced that a variety of factors provided Inspector Powers with ample justification for initially detaining

Esieke." *Esieke,* 940 F.2d at 34. Among the factors that supported its conclusion, the court noted the following: (1) Esieke's excessive nervousness; (2) contradictory responses to questions about his employment and the amount of money he had taken to Nigeria; (3) the fact that Nigeria is a source country for narcotics; (4) despite a six-week stay, Esieke was traveling with few items of clothing; (5) while in Nigeria, Esieke had reported that his passport was lost and thereby obtained a replacement passport that concealed the frequency and destination of his prior travel; (7) a computer search revealed that an individual with Esieke's name and date of birth was suspected of narcotics smuggling; and finally (8) "the customs inspectors' suspicions were enhanced when Esieke belligerently refused to undergo an x-ray that might have conclusively established whether or not he was internally smuggling contraband." *See id.* at 34.

**\*13** In the present case, the only "belligerency" which can be attributed to plaintiff is his agitation upon being informed that his license had been revoked. There is no indication, however, that this agitation interfered with defendants' search of plaintiff's vehicle or his person. Nor do defendants allege that plaintiff refused, belligerently or otherwise, to submit to the pat-down/weapons frisk. Moreover, Defendant Lavigne's decision to request the presence of Defendant Harron and his Contraband Enforcement Team appears to have been a precautionary measure. *See* Lavigne Deposition, Exhibit F (Docket # 47), at 61 (request made because he did not have enough people to control any situation that might develop). In addition, according to Defendant Harron, Defendant Lavigne was concerned that when plaintiff learned that the New York State Police would have to be notified because of the suspended license there might be a problem with plaintiff. *See* Harron Deposition, Exhibit E (Docket # 46), at 20. Despite Defendant Lavigne's request for additional help, however, there is nothing in the record to indicate that plaintiff said or did anything which put defendants in fear for their safety or which led them to reasonably suspect that plaintiff was concealing a weapon. In fact, when asked if prior to Defendant Triller's arrival defendants had any reason to conduct a strip search of plaintiff, Defendant Harron responded, "No, not that I was aware of." *See id.* at 52–53.

The second factor upon which the United States Defendants rely is that their NCIC computer search revealed that plaintiff had an arrest record, including an arrest for burglary and two felony assaults. [17] Although defendants attempt to portray these incidents as though they resulted in three separate arrests, they, in fact, were the result of a single event.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 62 of 197
Johnson v. Harron, Not Reported in F.Supp. (1995)
1995 WL 319943

Plaintiff's arrest record reveals that he was arrested for Burglary/Illegal Night Entry, Assault on a Non–Participant, and Assault with intent to cause serious harm in May 1981. *See* United States Defendants' Statement of Material Facts Not Genuinely Disputed dated September 15, 1993, Exhibit E attached thereto. His criminal history record also reveals that these arrests were disposed of upon a plea of guilty to criminal trespass 2nd and disorderly conduct. *See id.* There is nothing either in plaintiff's arrest record or in any other document presently before the court, however, which sets forth the details of the events leading to this arrest. Most important, for purposes of this motion, there is no indication that plaintiff used any weapon to perpetrate the crimes charged. Nor is there any information in plaintiff's arrest record to indicate that any of his other past offenses involved weapons of any type.

In *Asbury,* this factor refers to "pertinent criminal propensities." Whether or not plaintiff's previous arrest for criminal assault and burglary demonstrates a criminal propensity to conceal a weapon is, at the very least, tenuous. In *United States v. Kallevig,* 534 F.2d 411, 412, 414 (1st Cir.1976), cited by the *Asbury* court as a case relying upon this factor, the defendant was suspected of concealing drugs. The "pertinent" information provided by the computer search in *Kallevig* was that three years prior to the incident in question, the defendant had been a suspect in a case involving the receipt of a small amount of marijuana by mail. [18] It cannot be disputed that the computer information obtained in *Kallevig* was much more closely related to the crime of which the defendant was suspected—smuggling drugs—than the computer information obtained in the present case is to the crime with which plaintiff was charged—driving with a suspended license. Moreover, it must be remembered that on the night in question plaintiff was charged with a misdemeanor—driving with a suspended license and not with a serious crime such as drug smuggling. Finally, plaintiff's arrest for burglary and assault occurred more than ten years prior to the incident in question and there is no indication that plaintiff had been involved in any similar activity since that time. [19]

**\*14** The third factor upon which the United States Defendants rely is that plaintiff told Defendant Lavigne that he owned his own night club, essentially a claim of self-employment. *See* United States Defendants' Memorandum of Law at 16. As defendants correctly point out, such a claim is one of the *Asbury* factors. However, as they also admit, such a claim standing alone is innocuous. *See id.*

In *United States v. Smith,* 557 F.2d 1206 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978), cited by the *Asbury* court as an example of a case in which this factor was considered, the defendant told the Customs Inspectors that he had been in Columbia on a four day vacation and that he was an unemployed truck driver with a wife and child. *See id.* at 1208. According to the officials, Smith appeared very, very nervous and so very pale that he appeared to be sick. *See id.* Although the court did not explain why it relied upon Smith's unemployed status, or the weight given to this factor, the court in comparing Smith's situation to that of the female suspect in *United States v. Forbicetta,* 484 F.2d 645 (5th Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2404, 40 L.Ed.2d 772 (1994), noted that "[a] lone woman (Ms. Forbicetta) is certainly no more suspicious that a father (Smith) who takes a 'vacation' without his wife and child." *Id.* at 1209 n. 5.

As *Smith* demonstrates, a suspect's unemployed status is only relevant if, combined with other facts known to the customs inspectors, it leads to a reasonable suspicion that the suspect is involved in some illicit activity. In the present case, unlike the situation in *Smith,* plaintiff did not appear extremely nervous nor was he returning from a country known to be a source point for illegal weapons. Moreover, plaintiff was not travelling alone. Rather, he was returning from a vacation with his wife. Under these circumstances, the court concludes that the fact that plaintiff was self-employed, even when combined with the other facts known to the Customs Inspectors, remained innocuous.

The fourth factor upon which the United States Defendants rely is plaintiff's requests to use the restroom and to go outside to his car while it was being searched. Without citing any support for this contention, defendants argue that "[e]ither of these requests could reasonably be interpreted as consistent with the conduct of a person carrying weapons or contraband in his vehicle or on his person." *See* United States Defendants' Memorandum of Law at 16. [20] Even if plaintiff's requests had aroused defendants' suspicions initially, their search of his vehicle and their pat-down/weapons frisk of his person, which uncovered nothing, should have dispelled these suspicions significantly, if not completely. Instead, despite the negative results of these preliminary searches, defendants decided to subject plaintiff to a strip search.

**\*15** In addition to their reliance upon the *Asbury* factors, the United States Defendants assert that their decision to strip

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 63 of 197

search plaintiff was based upon "[t]he overriding concern of the Defendant Customs Inspectors [as to] the potential danger of a person, otherwise unknown to them, about to be turned over to a lone State Trooper." *See* United States Defendants' Memorandum of Law at 14–15 (citing Harron's Deposition at 56). [21] Although the physical safety of an officer is always a legitimate concern, there is no support for defendants' contention that such a concern, standing alone, would justify a decision to strip search a suspect. Thus, in order to justify their decision on this basis, the United States Defendants must demonstrate that the grounds for their belief that plaintiff posed a threat to the officer's safety was based upon their objectively reasonable suspicion that plaintiff was concealing a weapon. Moreover, they must establish that this suspicion was based upon some particular trait of plaintiff, the arrest, or the crime charged.

There is nothing in the record to indicate, nor do defendants allege, that there was anything unusual about plaintiff which caused them to detain him originally. In fact, when viewed in the light most favorable to defendants, the evidence suggests that plaintiff was the subject of a random stop. The DMV computer search uncovered only that plaintiff was driving with a suspended license. Again there is nothing about this information which would lead defendants to suspect that plaintiff was concealing a weapon. The NCIC computer search revealed that plaintiff was involved in a single incident, occurring more than ten years earlier, which resulted in a felony arrest. Given the remoteness in time between that offense and the incident in question, its questionable "pertinency" to the crime for which plaintiff was being charged, and the negative results of their search of plaintiff's vehicle, and their pat-down/weapons frisk of his person, this information provides no support for defendants' decision to strip search plaintiff.

Perhaps most troubling to defendants' defense of qualified immunity is Defendant Harron's testimony concerning his reasons for instructing his Contraband Enforcement Team to strip search plaintiff. In this regard, when asked if defendants would have performed a strip search if Trooper Triller had said one was not necessary, he responded, "Perhaps not." *See* Harron's Deposition at 52. Moreover, when asked if prior to Defendant Triller's arrival defendants had any reason to conduct a strip search of plaintiff, he answered, "No, not that I was aware of." *See id.* at 52–53. If defendants had no reason to strip search plaintiff before Defendant Triller arrived, then it is incumbent upon defendants to demonstrate what it was about plaintiff's behavior which changed after Defendant

Triller arrived. Defendants, however, have directed the court's attention to nothing which would suggest that any such change occurred. Thus, the court is left with the inescapable conclusion that the only thing that changed was Defendant Triller's arrival and his request that a search be done.

**\*16** The court concludes that, as a matter of law, Defendant Triller's arrival and request are patently insufficient to justify defendants' decision to strip search plaintiff. Thus, viewing all the information available to defendants in light of the totality of the circumstances, the court holds that it was not objectively reasonable for the United States Defendants to believe that their decision to strip search plaintiff did not violate clearly established legal principles. In other words, the factors upon which they allegedly relied to make their decision are insufficient to establish the "reasonable suspicion" necessary to justify strip searching plaintiff. Accordingly, the court holds that the defendants who participated in the strip search of plaintiff are not entitled to qualified immunity with respect to this claim.

This conclusion, however, does not end the court's inquiry. As the court noted above, in order to be held liable for a deprivation of an individual's constitutional rights, a defendant must be personally involved in the infraction which caused the complained-of deprivation. In the present case, plaintiff argues that "[t]he uncontroverted sworn testimony(ies) of the respective Federal Defendants demonstrates that Plaintiff is entitled to partial summary judgment, as a matter of law, as to the liability of Defendants John Harron, George Lavigne, Mark Phifer, Robert Richards and Thomas Jarvis, ..., with respect to the challenged strip/ body cavity search of said African–American Plaintiff." *See* Plaintiff's Memorandum of Law at 1–2. [22] Furthermore, with respect to the participation of Defendants Ewing, Middleton, and Triller, he asserts that a triable issue of fact exists. *See id.* at 2 n. 1. To the contrary, the United States Defendants contend that, setting aside the issue of qualified immunity, only Defendant Harron, who directed the strip search, and Defendants Phifer and Richards, who actually conducted the strip search, can be held liable for any injury which plaintiff suffered as a result of this search. [23] *See* United States Defendants' Memorandum of Law at 22–23 and n. 14. Having determined that defendants are not entitled to qualified immunity, the court, likewise, concludes that, as a matter of law, Defendants Harron, Phifer, and Richards participated in plaintiff's strip search and are, therefore, liable for any injuries plaintiff suffered as a result of this search. Accordingly, the court grants plaintiff's motion for partial

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 64 of 197
Johnson v. Harron, Not Reported in F.Supp. (1995)
1995 WL 319943

summary judgment regarding the liability of these defendants for this claim.

Before discussing the allegations with respect to the remaining defendants, the court notes, as a preliminary matter, that it disagrees with the United States Defendants' conclusory assertion that only Defendants Harron, Phifer, and Richards can be held liable to plaintiff for any injury he suffered as a result of the strip search. The fact that the other Customs Inspectors did not physically undress plaintiff or were not physically present in the strip search room during the search does not, necessarily, mean that they cannot be held liable to plaintiff for the injuries resulting from this unconstitutional search.[24] *See, e.g. Melear v. Spears,* 862 F.2d 1177 (5th Cir.1989); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989). As the United States Defendants concede, if plaintiff's version of the facts is accepted, the strip search was not conducted under ideal circumstances. In this regard, plaintiff contends that the door of the strip search room was left partly open and certain Customs Inspectors peeked into the room, made demeaning noises, and directed racial and derogatory statements at him throughout the strip search. *See* Plaintiff's Complaint at ¶¶ 20–27. Thus, in analyzing the conduct of the individual defendants, the court must look beyond the physical strip search itself and examine the totality of the circumstances surrounding this search. Having done so, the court is left with the inescapable conclusion that all of these complained of actions were an integral part of the strip search and contributed, at least in part, to plaintiff's injuries. Therefore, the court concludes that those defendants who actively participated in subjecting plaintiff to this search; i.e., those who were an integral part of the "strip search team," are liable to plaintiff for the injuries he suffered as a result of this unconstitutional search.[25] It is against this background that the court will review the conduct of Defendants Lavigne, Jarvis, Middleton, Ewing, and Triller.

**\*17** The United States Defendants do not address Defendant Lavigne's role in the decision to strip search plaintiff. The court's review of the record, however, reveals that he was the individual who actually arranged for Defendant Harron and the Contraband Enforcement Team to conduct the strip search. First of all, Defendant Lavigne was the supervising Customs Inspector on the night in question. *See* Lavigne's Deposition, Exhibit F (Docket # 47), at 98. Moreover, according to Defendant Harron, Defendant Triller asked Defendant Lavigne if plaintiff had been searched. *See* Harron's Deposition at 45. To which, Defendant Lavigne responded, "No. Do you want him to be searched?" *See*

*id.* When Defendant Triller responded, "Yes," Defendant Lavigne asked Defendant Harron if he would mind having his men perform the search. *See id.* To which Defendant Harron responded that he did not mind. *See id.* Thus, even though Defendant Lavigne did not personally strip search plaintiff, he acted in his supervisory capacity to arrange for this search to be conducted. Based upon this uncontroverted testimony, the court concludes that Defendant Lavigne's conduct, as a matter of law, caused plaintiff to be subjected to an unconstitutional strip search. Therefore, he is liable to plaintiff for any injuries resulting therefrom.[26] Accordingly, the court grants plaintiff's motion for partial summary judgment with respect to Defendant Lavigne's liability regarding this claim.

The record concerning the participation of Defendants Jarvis, Ewing, and Middleton presents a closer question. At the time of the incident, Defendant Jarvis was a member of the Contraband Enforcement Team and, therefore, under Defendant Harron's direct supervision. *See* Jarvis' Deposition at 54. Defendant Jarvis testified that he accompanied the rest of the Contraband Enforcement Team and plaintiff to the strip search room. *See id.* at 58. He also testified that he stood in the hallway outside the strip search room as standby in case his assistance was needed to conduct the search. *See id.* at 74; Harron's Deposition at 59 (Defendant Jarvis was in the hallway because he was a member of the Contraband Enforcement Team and where the team went). Likewise, plaintiff testified that Defendant Jarvis was present during the strip search. *See* K. Johnson's Deposition at 17. Based upon this evidence, the court concludes that although Defendant Jarvis did not personally conduct the strip search of plaintiff, he was an integral member of the group which subjected plaintiff to the same. As such, he participated in this constitutional violation for purposes of § 1983. Accordingly, the court grants plaintiff's motion for partial summary judgment with respect to Defendant Jarvis' liability regarding this claim.

Defendant Ewing testified that his only involvement in the secondary inspection of plaintiff was when he approached plaintiff in the lobby and asked him to sit down. *See* Ewing's Deposition, Exhibit K (Docket # 50), at 85. To the contrary, plaintiff testified that Defendant Ewing "[w]as part of the group that was standing at the door observing the strip search. He was also a part of the group that pushed and shoved me towards the strip search area in the back." *See* K. Johnson's Deposition at 6. In addition, plaintiff testified that during the strip search itself, Defendant Ewing was in and out of the strip search room. *See id.* at 7. As was the case with

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

Defendant Jarvis, Defendant Ewing did not physically strip search plaintiff. Nonetheless, accepting plaintiff's version of the facts as true, Defendant Ewing was an integral member of the team which subjected plaintiff to the unconstitutional strip search. Therefore, the court concludes that plaintiff has presented sufficient evidence to create an issue of fact concerning whether or not Defendant Ewing was personally involved in the strip search of plaintiff. Accordingly, the court denies the United States Defendants' motion for summary judgment with respect to this claim as it pertains to Defendant Ewing.

**\*18** Defendant Middleton testified that although she saw plaintiff's car arrive in the secondary garage, she left for the evening before the secondary inspection was completed. *See* Middleton's Deposition, Exhibit J (Docket # 50), at 10, 15. To the contrary, plaintiff testified that Defendant Middleton "[w]as part of the group of Customs officials who both ushered me to and from the strip search area. She was one of the Customs officers present in the hall outside the strip search room. And I remember seeing Ms. Middleton while the strip search was in progress." *See* K. Johnson's Deposition at 21. As was the case with Defendants Jarvis and Ewing, accepting plaintiff's version of the facts as true, Defendant Middleton was an integral part of the team which subjected plaintiff to the unconstitutional search. Therefore, the court concludes that plaintiff has presented sufficient evidence to create an issue of fact with respect to whether Defendant Middleton was involved personally in the unconstitutional strip search. Accordingly, the court denies the United States Defendants' motion for summary judgment with respect to this claim as it pertains to Defendant Middleton.

Finally, there is the question of Defendant Triller's participation in the unconstitutional strip search of plaintiff. The State Defendants argue that there is no evidence or allegation to suggest that Defendant Triller was in any way responsible for the strip search of plaintiff. *See* State Defendants' Memorandum of Law at 2. In addition, they assert that plaintiff's allegations are not susceptible to a joint action interpretation that would implicate Defendant Triller. *See id.* Defendant Triller's deposition testimony amply supports this contention. When asked if he had the ability to direct the Customs Inspectors to perform a search of an individual, Defendant Triller responded that he had no control over them in a directing sense. *See* Triller's Deposition, Exhibit M (Docket # 51), at 73. Moreover, with respect to plaintiff specifically, Defendant Triller testified that he did not

direct the Customs Inspectors to perform a strip search. *See id.* at 79.

None of the allegations in plaintiff's complaint which refer to the strip search include any mention of Defendant Triller. Rather plaintiff relies entirely upon Defendant Harron's deposition testimony to support his contention that an issue of fact exists with respect to Defendant Triller's participation in his strip search. In this regard, Defendant Harron testified that Defendant Triller asked Defendant Lavigne if plaintiff had been searched and when Defendant Lavigne told him no and asked him if he wanted plaintiff searched, Defendant Triller responded, " 'Yes.' " *See* Harron's Deposition at 45. When asked specifically if Defendant Triller had requested that plaintiff be strip searched, Defendant Harron equivocated, "He asked if a search had been done. We told him it had not. He indicated that he would like one done." *See id.* In addition, Defendant Harron stated that he believed that at some point during the strip search Defendant Triller came back into the hallway outside the strip search room, but he did not know exactly when. *See id.* at 59.

**\*19** It is undisputed that Defendant Triller had no supervisory role with respect to the Customs Inspectors. Thus, his alleged "request" that plaintiff be strip searched was no more than that—a request—which, under the circumstances of this case, is insufficient to impose supervisory liability upon Defendant Triller for the strip search of plaintiff. Therefore, the only way that Defendant Triller can be held personally liable under [§ 1983](#) for the unconstitutional strip search is if he was an integral member of the group which subjected plaintiff to said search. There is nothing in the record, however, to support such a conclusion. Plaintiff does not allege that Defendant Triller was present, either in the hallway or strip search room itself, during the strip search. Moreover, Defendant Harron testified only that he "believed" that at some point Defendant Triller came back to the strip search room, although he could not recall when. Even drawing all reasonable inferences in favor of plaintiff, the court concludes that this evidence is insufficient, as a matter of law, to establish that Defendant Triller participated, even in a minimal way, in the strip search of plaintiff. Accordingly, the court grants the State Defendants' motion for summary judgment with respect to plaintiff's first cause of action insofar as it relates to Defendant Triller's role in plaintiff's strip search.

In summary, with respect to plaintiff's Fourth Amendment unreasonable search and seizure claim, the court finds that the

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

United States Defendants' decision to stop plaintiff initially, to search his vehicle, to detain him pending the arrival of the New York State Police, and to subject him to a pat-down/weapons frisk did not violate plaintiff's constitutional right to be free from unreasonable searches and seizures. Furthermore, the court concludes that Defendant Triller's decision to arrest plaintiff was based upon probable cause and, therefore, did not violated plaintiff's constitutional right to be free from unreasonable seizures. Finally, the court holds that the United States Defendants' decision to strip search plaintiff violated his Fourth Amendment right to be free from unreasonable searches. Moreover, the court concludes that the defendants who participated in this strip search are not entitled to qualified immunity. In this regard, the court holds (1) that Defendants Lavigne, Harron, Richards, Phifer and Jarvis participated in the unconstitutional search; (2) that Defendant Triller did not participate in said search; and (3) that there is an issue of fact concerning whether Defendants Ewing and Middleton participated in the same. Accordingly, the court grants the United States Defendants' motion for summary judgment with respect to plaintiff's Fourth Amendment claim to the extent that it is based upon defendants' initial stop of plaintiff, the search of his vehicle, his detention pending the arrival of Defendant Triller, and the pat-down/weapons frisk of his person; grants the State Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon plaintiff's claim that his Fourth Amendment rights were violated; denies the United States Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon the strip search of plaintiff; and grants plaintiff's cross-motion for partial summary judgment with respect to the liability of Defendants Lavigne, Harron, Richards, Phifer, and Jarvis for their participation in the unconstitutional strip search.

*C. Fifth Amendment—Equal Protection* [27]

**\*20** The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. 5. In numerous decisions, the Supreme Court " '[h]as held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.' " *Davis,* 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846, —— (1979) (quoting *Vance v. Bradley,* 440 U.S. 93, 95 n. 1, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979) (internal citations omitted)). "Where the claim is that ... the regulation [or statute] is 'applied and administered by public authority with an evil eye and an

unequal hand,' *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed.2d 220 (1886), an ... essentially evidentiary analysis is typically applied. This analysis is governed by principles developed in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 471 (1977), *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), *Feeney, supra,* and *Washington v. Davis, supra.*" *Cook v. Babbitt,* 819 F.Supp. 1, 14 (D.D.C.1993).

> The constitutional rule that emerges from *Arlington Heights, Mount Healthy, Feeney,* and *Washington v. Davis* is that a government official does not violate equal protection if: (1) No matter how severe the disparate impact, the official in fact was not motivated by presumptively impermissible sentiments; or (2) the official was partly motivated by presumptively impermissible sentiments, but the same decision would have been reached for neutral reasons by a decisionmaker who harbored no such sentiments.

*Cook,* 819 F.Supp. at 16.

When confronted with a claim of purposeful discrimination, the official action enjoys a presumption of validity and the plaintiff bears the burden of production as well as persuasion. *Cook,* 819 F.Supp. at 16. To satisfy this initial burden of proof, the plaintiff need only show that the decision was " 'motivated *in part* by [an invidiously] discriminatory purpose.' " *Id.* at 16–17 (quoting *Arlington Heights,* 429 U.S. at 270 n. 21, 97 S.Ct. at 271 n. 21 (emphasis in *Cook* ) (other citation omitted). A plaintiff may satisfy this evidentiary burden "[e]ither by introducing facts establishing [that] discriminatory racial intent was the most likely motivation for the action in question, or that the defendant's alternative explanation for its action is implausible." *Prompt Courier Serv., Inc. v. Koch,* No. 89 Civ. 3053, 1990 WL 100904, 1990 U.S.Dist. LEXIS 8628, \*25 (S.D.N.Y. July 12, 1990) (citing *Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989) (discussing Title VII and § 1981 claims in the context of a summary judgment motion)); *see also Jennings v. Lewis,* No. 93–15674, 1993 WL 524130, 1993 U.S.App.

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

LEXIS 34219 (9th Cir. Dec. 15, 1993) (discriminatory intent may be proven by direct or circumstantial evidence).

**\*21** Moreover, to satisfy this initial burden, a plaintiff must be able to point to something that is inconsistent with a completely neutral explanation for the official's decision or that otherwise evinces presumptively impermissible sentiments...." *Cook,* 819 F.Supp. at 17. "This is because in proving subjective motivation, objective conduct that is 'as consistent with [a] permissible' motivation 'does not, standing alone, support an inference' of unconstitutional discrimination.' *Id.* (quoting *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356 (conspiratorial motivation)). Moreover,

> [t]here must be something more than equipoise to meet the burden of production, overcome the presumption of good faith, and shift the burden of proof to the government. To survive defendant's motion for summary judgment, plaintiff "must show that the inference" of [race]-based discrimination 'is reasonable in light of the competing inferences' of discrimination for neutral reasons ...

*Cook,* 819 F.Supp. at 17 (quoting *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356) (footnote omitted).

If plaintiff meets this burden, the presumption of validity is vitiated, a presumption of invalidity arises, and the burden shifts to the government to demonstrate that

> "the same decision would have resulted even had the impermissible purpose not been considered." ... If the government does nothing or cannot rebut the presumption by a preponderance of the evidence, plaintiff wins without having to confront the more difficult task of showing that presumptively impermissible considerations were a "but for" cause of the decision.

*Cook,* 819 F.Supp. at 17 (citation omitted).

Furthermore, "[i]n evaluating a claim of purposeful discrimination, the Court must engage in a 'sensitive inquiry' into whatever 'circumstantial and direct evidence of intent as may be available.' " *Cook,* 819 F.Supp. at 17 (quoting *Arlington Heights,* 429 U.S. at 266, 97 S.Ct. at 564). In this regard, "[t]he use of racial slurs supports an inference of racial animus." *Hardeway v. City of Chicago,* No. 91 C 0041, 1991 WL 203857, \*2, 1991 U.S.Dist. LEXIS 14324, \*4 (N.D.Ill. Oct. 1, 1991). Moreover, with respect to those officials who did not utter racial slurs themselves but were present when such statements were uttered, "[t]his set of circumstances

gives rise to an inference that they shared [the speaker's] alleged racial animus." *Hardeway,* 1991 WL 203857, at \*2, 1991 U.S.Dist. LEXIS 14324, at \*6 (citing *East v. City of Chicago,* 719 F.Supp. 683, 687 (N.D.Ill.1989)) (use of racial slurs by one officer could imply racial animus on part of others who are present)).

In the present case, plaintiff contends that the United States Defendants violated his constitutionally guaranteed right to equal protection of the law "by and through their unlawful, discriminatory and selective enforcement of 19 U.S.C. § 1582." *See* Plaintiff's Memorandum of Law at 19–20. This statute provides that

> **\*22** The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations.

19 U.S.C. § 1582. [28]

In support of this claim, plaintiff asserts that, despite the fact that he and his wife arrived in the same vehicle, only he, and not his caucasian wife, was subjected to a DMV and NCIC computer search, a pat-down/weapons frisk, and a strip search. *See* K. Johnson's Deposition at 48–49, 51, 123–24; L. Johnson's Deposition, Exhibit B (Docket # 45), at 16. Moreover, plaintiff states that although he was denied permission to use the restroom, his wife was allowed to do so. *See* K. Johnson's Deposition at 126; L. Johnson's Deposition at 29–30, 53–54. [29]

In addition, plaintiff contends that throughout the course of the secondary inspection, defendants directed a number of racial and derogatory comments toward him. Specifically, he stated that after Defendant Lavigne ran the DMV check and discovered that plaintiff's license was suspended, Defendant Lavigne stated " ' 'We got your ass now, boy.' " *See* K. Johnson's Deposition at 73. In addition, he testified that

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 68 of 197

1995 WL 319943

during the strip-search Defendant Lavigne said, " 'Look at that—'N word 'now.' And he said 'nigger.' "He's not such a big man now. If he objects we're going to kick his ass.' " *See id.* at 76. Likewise, during the strip search, plaintiff stated that Defendant Phifer said to him, " 'You're not such a big man now, are you nigger?' ... 'Do something so we can kick your ass.' ... 'We got you now. You're not such a big man. Take your fucking clothes off, nigger.' " *See id.* at 27–28. Although plaintiff does not recall Defendant Richards making any racial slurs or comments to him during the secondary inspection, plaintiff testified that during the strip search Defendant Richards screamed at him, " '[t]ake your fucking clothes off. Shake this out. You want to get this done—' generally laughing and joking." *See id.* at 23. In addition, plaintiff testified that Defendant Richards told him that if he did not cooperate '[h]e would kick my ass." *See id.* at 24. [30]

The United States Defendants do not deny plaintiff's allegations with respect to the difference in treatment afforded plaintiff and his wife. [31] However, they vehemently deny either uttering themselves, or hearing others utter, any racial or derogatory statements to plaintiff at any time during the course of these events. *See* Phifer's Deposition at 34; Richards' Deposition at 23; Jarvis' Deposition at 58–59; Middleton's Deposition at 117. [32]

Several of the Customs Inspectors testified about the standard operating procedures for conducting secondary inspections with respect to the treatment of the driver and the other occupants of a detained vehicle. Regarding DMV and NCIC computer checks, Defendant Phifer testified that a DMV check is not run on the driver of every vehicle pulled over for a secondary inspection. *See* Phifer's Deposition at 45–46. However, he testified that a NCIC check is performed on the driver of the vehicle most of the time. *See id.* at 46. He also stated that neither a DMV check nor an NCIC check is performed with respect to the occupants of the vehicle all the time. *See id.* When asked specifically if there would be instances in which an NCIC check would be performed on the driver but not on the occupants of the vehicle, he responded, "I imagine so." *See id.*

**\*23** Defendant Richards' testimony regarding these same issues was consistent with that of Defendant Phifer. He testified that when an NCIC check is run on a driver, it is not always run on the passengers in the same vehicle. *See* Richards' Deposition at 41. He also stated that a DMV check is not run on everyone and normally is not run on the passengers

in the same vehicle. *See id.* at 41–42. When asked more specifically about a situation in which it is discovered that a driver has a suspended license, he stated that a DMV check may be run on the passengers in that vehicle. *See id.* at 42.

Defendant Jarvis' testimony varied somewhat, although not significantly, from that of Defendants Richards and Phifer. He testified that a DMV check is done on the driver most, but not all, of the time. *See* Jarvis' Deposition at 31. When asked whether a DMV check is done on every occupant of the vehicle when one is done on the driver, he responded, "Yes, usually. I would say most of the time." *See id.* However, he also stated that it is possible that a DMV check would be run on random individuals. *See id.* at 33. Likewise, Defendant Ewing testified that it was standard procedure to run a DMV check on the driver and the passengers of a detained vehicle. *See* Ewing's Deposition at 29.

When asked if a DMV check would be run on all occupants of a vehicle if one were run on the driver, Defendant Middleton responded, "[t]hat's possible. It depends on the circumstances." *See* Middleton's Deposition at 67. She explained that

> [i]f the person owns the vehicle. Obviously, no one else would be run. My own experience, the way I do it, if there were two or three people in the car, if the driver is suspended or revoked, I know that he would not be allowed to leave driving the vehicle, so I would run the others to make sure they have valid licenses or else we would be allowing the same instance to occur.

*See id.*

With respect to procedures other than DMV and NCIC computer checks, Defendant Jarvis testified that if a pocket or pat-down search is conducted on the driver, they usually are performed on the other occupants of the vehicle. *See* Jarvis' Deposition at 38–39. He also stated that he did not recall personally being involved in a weapons frisk where he searched only the driver and not the occupants of the vehicle. *See id.* at 43. In addition, Defendant Middleton explained that the reason people are not allowed to use the restroom

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

until the secondary inspection is completed is "[t]o prevent any destruction or throwing away of contraband, documents, anything of that nature." *See* Middleton's Deposition at 73. She explained further that it is the policy of the customs office not to allow people to go to the restroom or walk freely around the lobby until the secondary inspection is completed so that they cannot drop or hide contraband. *See id.* at 74. Although she stated that she did not know whether plaintiff or his wife actually used the restroom, she stated that this policy applied to all occupants of the vehicle. *See id.* at 78. Likewise, Defendant Ewing testified that although he did not know if plaintiff's wife had used the restroom, it would have been the policy not to allow her to do so until the completion of the secondary inspection. *See* Ewing's Deposition at 96. He explained, however, that "[i]f there's a large number of people at the counter, if there's three or four people at the counter, two inspectors and an inspection, when you ask them to sit down you can't keep your eye on all the people and sometimes they scoot down and make it to the bathroom." *See id.* at 97.

**\*24** This case presents a somewhat unique equal protection claim because it is based upon a single application of a facially neutral statute and involves the allegedly discriminatory application of this statute with respect to only two individuals —plaintiff and his wife. Nonetheless, given the present posture of this case and keeping in mind that all reasonable inferences must be drawn in plaintiff's favor, the court concludes that plaintiff has come forward with sufficient evidence to create an issue of fact with respect to whether defendants' actions were motivated, at least in part, by an invidiously discriminatory purpose. Plaintiff's assertion that defendants accosted him with racially derogatory statements during the course of their secondary inspection, especially during the strip search, satisfy his burden that he point to evidence that is inconsistent with a completely neutral explanation for defendants' decision to subject him to a DMV/ NCIC computer check, a pat-down/weapons frisk, and a strip search. Accordingly, the court denies the United States Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent it rests upon a Fifth Amendment equal protection claim.[33]

### D. Fourth Amendment—Excessive Force[34]

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "[all] claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under

the Fourth Amendment and its 'reasonableness' standard, ..." *Id* at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at —— (emphasis in original); *see also Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990). Moreover, when analyzing such a claim, the proper application of the Fourth Amendment's test of reasonableness "[r]equires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at —— (citing *Tennessee v. Garner,* 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure")); *see also Finnegan,* 915 F.2d at 823. Likewise, the court must keep in mind that

> [t]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

**\*25** *Id.* at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at ——.

The court must also keep in mind that within the context of the Fourth Amendment, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick,* 481 F.2d, at 1033, violates the Fourth Amendment." *Id.* at 396–97, 109 S.Ct. at 1872, 104 L.Ed.2d at ——. Moreover, "[w]hile the plaintiff in a § 1983 excessive force case need not demonstrate the existence of severe, disabling injuries, the case law nonetheless indicates that the complete absence of injury is fatal to such claims." *Raisdana v. City of Wichita,* No. 92–1195–PFK, 1993 WL 302233, \*10, 1993 U.S.Dist. LEXIS 10922, \*27–\*28 (D.Kan. July 23, 1993) (citing *Rand v. City of Sedgwick,* No. 90–1015–

Johnson v. Harron, Not Reported in F.Supp. (1995)
1995 WL 319943

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 70 of 197

K, 1991 WL 47249, 1991 U.S. Dist. LEXIS 4225 (D.Kan. Mar. 21, 1991)). [35]

In support of his excessive force claim, plaintiff points to three discrete incidents. First, he contends that the United States Defendants who escorted him to the strip search room pushed and shoved him down the hallway. *See* K. Johnson's Deposition at 6, 17, 21. Second, he asserts that Defendant Ewing pushed him into a chair in the lobby area of the customs facility. [36] *See id.* at 55. Finally, plaintiff contends that Trooper Shawn Murphy placed a finger on plaintiff's chest, spun him around and pushed him in his back. *See id.* at 245. [37]

In response to these claims, the United States Defendants offer the following explanations. First, they deny that there was any physical contact with plaintiff as they escorted him to the strip search room. *See* Richards' Deposition at 23; Jarvis' Deposition at 59. Second, Defendant Lavigne admits that he placed his hand on plaintiff's shoulder and said, "Why don't you sit down and take it easy, we'll take care of you." *See* Lavigne's Deposition at 52. Defendant Ewing states only that he "[w]alked over and asked [plaintiff] to please sit down. I intervened between [plaintiff] and Supervisor Lavigne." *See* Ewing's Deposition at 85. Third, the State Defendants contend that the allegations in plaintiff's complaint do not establish any touching and even if they did, the contact was *de minimis* and, thus, insufficient to establish a constitutional violation. *See* State Defendants' Memorandum of Law at 4.

Even accepting plaintiff's allegations as true, based upon this record, the court is left with the inescapable conclusion that any force that defendants used with respect to plaintiff was *de minimis*. Moreover, plaintiff has presented absolutely no evidence of any injury resulting from his alleged physical encounters with defendants. Accordingly, the court grants defendants' motions for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon a claim that defendants violated plaintiff's Fourth Amendment right to be free from the use of excessive force.

### E. Violation of Right to Travel

**\*26** This claim need not detain the court long. Plaintiff contends that defendants' actions interfered with his constitutionally protected right to travel. Based upon the circumstances of this case, there is no support for such a claim. As the United States Defendants correctly note, this case involves international travel not interstate travel. *See*

United States Defendants' Memorandum of Law at 25. In addition, the Supreme Court made clear in *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), that it is "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *Id.,* at 616, 97 S.Ct. at 1978, 52 L.Ed.2d at ——. [38] Accordingly, the court grants defendants' motions for summary judgment with respect to plaintiff's first cause of action to the extent that it rests upon plaintiff's claim that defendants' violated his constitutionally protected right to travel.

### III. Plaintiff's Second Cause of Action—42 U.S.C. §§ 1985(3) *and* 1986 [39]

Section 1985(3) "provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates ...' " *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990) (quoting *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979)); *see also Robinson v. Town of Colonie,* 878 F.Supp. 387 (N.D.N.Y.1995) (McCurn, S.J.). Thus, to establish a violation of § 1985(3), plaintiff must allege

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (citing *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983)).

"Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' " *Id.* at 1088 (quoting *Scott,* 463 U.S. at 829, 103 S.Ct. at 3356).

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 71 of 197

1995 WL 319943

With respect to pleading a § 1985(3) conspiracy claim, the Second Circuit "[h]as recognized that certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of *Conley v. Gibson,* 355 U.S. 41 (1957), detailed fact pleading is required to withstand a motion to dismiss." *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981). Therefore, the court has held repeatedly that "complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (citations omitted). Nonetheless, despite this specificity requirement, courts have held that although

> **\*27** [a]n essential element of a conspiracy claim is the existence of an agreement between two or more persons to commit an illegal act, ..., a plaintiff need not show that such an agreement was express; a conspiracy may be implied from the circumstances.... Moreover, the plaintiff is not required to prove exact details of the agreement. A showing of conspiracy "must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence."

*Hunt v. Weatherbee,* 626 F.Supp. 1097 (D.Mass.1986) (quoting *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979)).

Moreover, with respect to the discriminatory animus element of such a claim, the Supreme Court has held that

> "[d]iscriminatory purpose," however, implies more than intent as volition or intent as awareness of consequences. *See United Jewish Organizations v. Carey,* 430 U.S. 144, 179, 97 S.Ct. 996, 1016, 51 L.Ed.2d 229 (concurring opinion) (footnote omitted) ... It implies that the decisionmaker, ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group. (footnote omitted)

*Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (emphasis added).

There is no question that plaintiff, an African–American, is a member of a protected class. Nor can there be any question that, at the very least, plaintiff suffered humiliation and embarrassment at the hands of the United States Defendants. In addition, in its discussion of plaintiff's equal protection claim, *see* Section I.C., *supra,* the court determined that plaintiff has presented sufficient evidence to create an issue of fact with respect to whether the United States Defendants acted with discriminatory animus. The same analysis, and the same result, applies with equal force to this claim. Thus, the only element left for the court's consideration is whether the United States Defendants entered into an agreement to deprive plaintiff of his constitutional rights.[40]

In his complaint, plaintiff alleges that

> [d]efendants singled Plaintiff out for arbitrary and discriminatory treatment, due solely to the color of such Plaintiff's skin, and collectively set out to intimidate, embarrass, harass, humiliate, annoy and antagonize the African–American Plaintiff to the point of confrontation, by and through said Defendants' unreasonable, unjustified, oppressive, egregious and collusive treatment of such Plaintiff. Several Caucasian Defendants jointly participated in each and every abusive act and omission set forth hereinabove, and such deliberate and collusive efforts, committed with the shared intent to interfere with Plaintiff's constitutionally guaranteed rights, constitutes a gross violation of 42 U.S.C. Section 1985(3).

*See* Plaintiff's Complaint at ¶ 49.

To the contrary, the United States Defendants assert, *inter alia,* that "[t]here is no evidence, ..., to support [plaintiff's] theory that the defendants had formed a scheme or plan to deprive [plaintiff] of his rights when he first appeared at the border, or even anytime thereafter." *See* United States Defendants' Memorandum of Law at 24.

1995 WL 319943

**\*28**  The court disagrees with defendants' assessment of the evidence presented. In addition to a general statement alleging the existence of a conspiracy, plaintiff's complaint is replete with specific allegations regarding defendants' concerted activities which he contends constitute the overt acts carried out in furtherance of the alleged conspiracy; i.e., those allegations pertaining to the illegal strip search and defendants' discriminatory application of 29 U.S.C. § 1582. Moreover, these allegations are buttressed not only by plaintiff's deposition testimony but also, to some extent, by the individual defendants' deposition testimony regarding these events. In light of this evidence and drawing all reasonable inferences in plaintiff's favor, the court concludes that plaintiff has presented sufficient proof to create an issue of fact with respect to the question of whether defendants conspired to violate his constitutional rights. Accordingly, the court denies the United States Defendants' motion for summary judgment with respect to plaintiff's second cause of action based upon violations of §§ 1985(3) and 1986.[41]

*IV. Plaintiff's Motion for Partial Summary Judgment With Respect to the State Defendants' Statute of Limitations Defense*[42]

This motion need not detain the court long. Plaintiff moves for partial summary judgment with respect to the State Defendants' Second Defense alleged in paragraph 7 of their verified answer dated December 12, 1991. This defense provides that "[t]he causes of action set forth in the amended complaint are time barred by the statute of limitations." *See* State Defendants' Verified Answer dated December 12, 1991, at ¶ 7.

Plaintiff contends that he delivered ten copies of the summons and verified complaint to the Clinton County Sheriff on September 26, 1991, thereby tolling the applicable statute of limitations for intentional torts for 60 days pursuant to section 203(b)(5)(i) of New York Civil Practice Law and Rules. *See* Rohan's Affidavit dated September 15, 1993, at ¶¶ 7–8. The State Defendants counter that plaintiff's papers do not demonstrate "delivery" to the Sheriff within the one year statute of limitations period as required by this section. *See* Acton's Affidavit dated September 24, 1993, at ¶ 5. In substance, their argument rests upon the contention that mailing of the summons and complaint to the sheriff does not constitute delivery for purposes of § 203(b)(5)(i). *See id.* at ¶ 7.

Section 203(b)(5)(i) provides that

[a] claim asserted in the complaint is interposed against the defendant ... when: ... 5. The summons is delivered to the sheriff of that county outside the city of New York ... in which the defendant resides, is employed or is doing business, or if none of the foregoing is known to the plaintiff after reasonable inquiry, then of the county in which the defendant is known to have last resided, been employed or been engaged in business, or in which the cause of action arose; ... provided that: (i) the summons is served upon the defendant within sixty days after the period of limitation would have expired but for this provision; ...

**\*29**  N.Y.Civ.Prac.L. & R. § 203(b)(5)(i) (McKinney 1990) (emphasis added).

Thus, in order to satisfy this section, a plaintiff must (1) deliver the summons to the appropriate sheriff within the statute of limitations period and (2) serve the summons upon the defendant within sixty days of the date on which the limitations period would have expired.

In the present case, the incidents which form the basis of plaintiff's complaint occurred on September 27 and 28, 1990. Thus, for purposes of his intentional torts claims, the statute of limitations period expired no later than September 28, 1991. In order to demonstrate compliance with the first part of § 203(b)(5)(i), plaintiff was required to deliver the summons to the appropriate sheriff by that date. He then had to serve the summons upon Defendants Triller and Shawn Murphy no later than November 27, 1991. The State Defendants do not dispute the fact that plaintiff satisfied the second requirement of § 203(b)(5)(i) or that the Clinton County Sheriff was the sheriff to whom plaintiff needed to deliver the summons. They do, however, argue that plaintiff failed to "deliver" the summons to the sheriff within the applicable limitations period; i.e., that the sheriff received the summons within that time.

For purposes of this motion, the court need not determine whether mailing of the summons to the sheriff constitutes

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

"delivery" for purposes of § 203(b)(5)(i). [43] Among the documents plaintiff has submitted to the court is a letter from Clinton County Sheriff Trombley stating that he received the summons and complaint on September 27, 1991, within the limitations period. *See* Rohan Affidavit dated October 25, 1993, at ¶ 15 and Exhibit O (Docket # 51). Plaintiff has also submitted proof that Defendant Triller and Defendant Murphy were personally served with a copy of plaintiff's amended summons and verified complaint on November 25, 1991, and November 26, 1991, respectively. *See* Rohan Affidavit dated September 15, 1993, Exhibits N and O attached thereto. Since plaintiff has demonstrated compliance with both prongs of § 203(b)(5)(i), the court finds that plaintiff interposed his intentional tort claims within the relevant statute of limitations period. Accordingly, the court grants plaintiff's motion for partial summary judgment with respect to the State Defendants' second defense and, therefore, strikes paragraph 7 of their verified answer dated December 12, 1991.

## V. State Defendants' Motion for Summary Judgment with Respect to Plaintiff's State Law Claim Based Upon Intentional Infliction of Emotion Distress/Prima Facie Tort [44]

### A. Intentional Infliction of Emotional Distress

To constitute intentional infliction of emotional distress under New York law, the conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (citing *Fischer v. Maloney,* 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1217 (1978)); *see also Curti v. Girocredit Bank,* No. 93 Civ. 1782, 1994 WL 48835, 1994 U.S.Dist. LEXIS 1473 (S.D.N.Y. Feb. 10, 1994); *Doolittle v. Ruffo,* No. 88–CV–1175, slip op. at 22 (N.D.N.Y. Mar. 14, 1994) (McCurn, S.J.). To make out a prima facie case of intentional infliction of emotion distress, plaintiff must demonstrate the existence of "(1) an extreme and outrageous act by the defendant, (2) an intent to cause severe emotional distress, (3) resulting severe emotional distress, (4) caused by the defendant's conduct." *Burba v. Rochester Gas and Elec. Corp.,* 90 A.D.2d 984, ——, 456 N.Y.S.2d 578, 579 (4th Dep't 1982); *see also Richard L. v. Armon,* 144 A.D.2d 1, ——, 536 N.Y.S.2d 1014, 1015–16 (2d Dep't 1989).

**\*30** In the present case, the State Defendants argue that the conduct of Defendants Triller and Shawn Murphy was not

"[s]o outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See* State Defendants' Memorandum of Law at 8 (quoting 61 NY Jur 2d 505 (citing in turn *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135 (1985))). To the contrary, plaintiff asserts that "Defendant's [sic] actions are reprehensible and in a civilized society should not in any way be tolerated." *See* Plaintiff's Memorandum of Law at 37.

The court agrees with the State Defendants that a careful review of the record demonstrates that there is nothing about Defendant Triller's behavior toward plaintiff that can be characterized as offensive. As already discussed, Defendant Triller had probable cause to arrest plaintiff for driving with a suspended license. Moreover, plaintiff does not assert that Defendant Triller harassed him or directed any derogatory or racial slurs toward him.

With respect to Defendant Shawn Murphy, plaintiff alleges that he caught up with plaintiff outside the customs office and said, " 'Get in your fucking car or else I'm going to arrest your ass.' " *See* K. Johnson's Deposition at 242. He also testified that Defendant Shawn Murphy pushed him several times toward his car with the back of his hand and was screaming at him. *See id.* at 244–47. Accepting plaintiff's allegations as true, the court certainly does not condone Defendant Shawn Murphy's treatment of plaintiff. At the very least, such behavior is highly unprofessional. The court, however, cannot conclude that Defendant Shawn Murphy's actions were so outrageous that they would be considered utterly intolerable in a civilized society. [45] Accordingly, the court grants the State Defendants' motion for summary judgment with regard to plaintiff's third cause of action to the extent that it rests upon a claim of intentional infliction of emotional distress.

### B. Prima Facie Tort

Prima facie tort provides a remedy for " ' "the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful[.]" ' " *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142, 490 N.Y.S.2d 735, 740, 480 N.E.2d 349, —— (1985) (citing *ATI, Inc. v. Ruder & Finn,* 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230) (other cites omitted). Under New York law, "[t]he elements of prima facie tort are: (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful."

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

*Curti v. Girocredit Bank,* 93 Civ. 1782, 1994 WL 48835, *4, 1994 U.S.Dist. LEXIS 1473, *13 (S.D.N.Y. Feb. 10, 1994) (citing *Twin Lab., Inc. v. Wider Health & Fitness,* 900 F.2d 566, 571 (2d Cir.1990)); *see also Freihofer,* 65 N.Y.2d at 142–43, 490 N.Y.S.2d at 741, 480 N.E.2d at ——.

**\*31** " '[T]he touchstone [of prima facie tort] is "disinterested malevolence", meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.' " *Curti,* 1994 WL 48835, at *4, 1994 U.S.Dist. LEXIS 1473, at *13 (quoting *Twin Lab., Inc.,* 900 F.2d at 571 (citing in turn *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 467 (1993))). In addition, "[a] critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages[.]" *Freihofer,* 65 N.Y.2d at 143, 490 N.Y.S.2d at 741, 480 N.E.2d at ——; *see also Gay v. Carlson,* 89 Civ. 4757, 1992 WL 309819, *10, 1992 U.S.Dist. LEXIS 15799, *31 (S.D.N.Y. Oct. 15, 1992) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1088 (S.D.N.Y.1988)). These " '[s]pecial damages must be alleged with sufficient particularity to identify actual losses.' " *Gay,* 1992 WL 309819, at *10, 1992 U.S.Dist. LEXIS 15799, at *31 (quoting *El Greco Leather Prods. Co. v. Shoe World, Inc.,* 623 F.Supp. 1038, 1045 (E.D.N.Y.1985), *aff'd in part and rev'd on other grounds,* 806 F.2d 392 (2d Cir.1986), *cert. denied,* 484 U.S. 817, 98 L.Ed.2d 34, 108 S.Ct. 71 (1987)).

Finally, as the *Freihofer* court noted " '[p]rima facie tort should not become a "catch-all" alternative for every cause of action which cannot stand on its own legs.' " *Freihofer,* 65 N.Y.2d at 143, 490 N.Y.S.2d at 741, 480 N.E.2d at —— (quoting *Belsky v. Lowenthal,* 62 A.D.2d 319, 323, 405 N.Y.S.2d 62, *aff'd,* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560) (other citation omitted). Rather, "[w]here relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort." *Id.* (citations omitted). Nonetheless, "[w]here a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative relief, a cause of action for prima facie tort[.]" *Id.* (citing *Board of Educ. v. Farmingdale Classroom Teachers Assn.,* 38 N.Y.2d, at pp. 405–406, 380 N.Y.S.2d 635, 343 N.E.2d 278).

In support of their motion for summary judgment with respect to this claim, the State Defendants rely upon the same argument they used with respect to plaintiff's intentional infliction of emotional distress claim. *See* State Defendants' Memorandum of Law at 8. Plaintiff's only assertion in opposition to this motion is that "[p]rima facie tort is plead [sic] in the alternative and intended to allege an actionable wrong which does not fall within the ambit of more traditional torts." *See* Plaintiff's Memorandum of Law at 36.

Although the court recognizes that "there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim," it does not deem the present action to be an appropriate case for such relief. *Freihofer,* 65 N.Y.2d at 143, 490 N.Y.S.2d at 741, 480 N.E.2d at ——. The actions and the harms of which plaintiff complains are fully addressed by a claim of intentional infliction of emotional distress. Thus, the court sees no reason to allow him to assert an additional claim for prima facie tort based upon this same conduct. *See Cuillo v. Shupnick,* 815 F.Supp. 133, 135 (S.D.N.Y.1993).

**\*32** Moreover, with respect to the special damages element of this claim, plaintiff's complaint provides, in pertinent part, that "[p]laintiff has additionally suffered special damages in a sum not yet ascertained due to the nature of the injuries suffered and hereby agrees and consents to supplement this pleading when the same is accurately known." *See* Plaintiff's Complaint at ¶ 58. Since filing his "second amended verified complaint" on September 9, 1992, however, plaintiff has made no effort to supplement his pleading to allege the special damages necessary to maintain this cause of action. This is so, in spite of the fact, that discovery has been completed, and once the court has issued its determination with respect to the instant motions, this case will be deemed trial ready. Accordingly, the court grants the State Defendants' motion for summary judgment with respect to plaintiff's third cause of action insofar as it is based upon a claim of prima facie tort.

## VI. State Defendants' Motion for Rule 11 Sanctions

This motion need not detain the court for long. Whether conduct should be sanctioned under Rule 11 should be determined by the standard in effect at the time the complained of conduct was committed. *See Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994).[46] In the present case, the conduct in question occurred prior to the 1993 Amendment to Rule 11. Therefore, the court will apply the former version of the rule. In this regard, the pre–1993 version of Rule 11 required imposition of sanctions "[w]here it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.), *cert denied sub nom. Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989) (citation omitted).

In support of their motion, the State Defendants assert that

> [i]n the light of the many thousands of dollars of public funds that have been expended to date in approximately two weeks of examinations before trial, responding to page upon page of duplicative and purposeless interrogatories and an inflated complaint filled with bald and conclusory allegations as well as wild unsubstantiated charges, it is the State Defendants' request that the Court impose monetary sanctions upon the plaintiff or plaintiff's attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure should any or all of the causes of action alleged in he complaint be dismissed.

*See* State Defendants' Memorandum of Law at 11.

After carefully reviewing all of the papers submitted in this matter, the court finds no basis to sanction either plaintiff or his attorney. Although the court has determined that the majority of defendants' alleged treatment of plaintiff does not rise to the level of a constitutional violation, it is, nonetheless, not to be condoned. Moreover, the court's dismissal of the complaint against the State Defendants in no way indicates that plaintiff's claims were withwithwithout merit or that he abused the discovery process to uncover the facts which, at least to some extent, validate his allegations. Certainly, with respect to his treatment by Defendant Shawn Murphy, plaintiff had a good faith argument for the extension of the existing law to encompass such conduct. Accordingly, the court denies the State Defendants' motion for Rule 11 sanctions.

*VII. One Final Issue*

**\*33**  One final issue which the parties did not address is plaintiff's supplemental state law claim of intentional infliction of emotional distress/prima facie tort against the United States. Although the United States did not move for summary judgment with respect to this claim, the court may, under certain circumstances, grant such relief *sua sponte*. *See Dempsey v. Town of Brighton,* 749 F.Supp. 1215, 1220 (W.D.N.Y.1990), *aff'd sub nom. without opin. Curenton v. Town of Brighton,* 940 F.2d 648 (2d Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991) (court has power to grant summary judgment *sua sponte* even where neither party has moved for such relief). Granting summary judgment on this basis "is in keeping with the objective of Rule 56 to expedite the disposition of cases as well as with the mandate of Rule 54(c) requiring the court to grant the relief to which a party is entitled even if the party has not demanded such relief in [its] pleadings." *Jackson v. Nassau County Bd. of Supervisors,* 818 F.Supp. 509, 536 (E.D.N.Y.1993) (internal quotations and citations omitted).

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b),

> [t]he district courts, ..., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred.

In support of this claim, plaintiff alleges that the Customs Inspectors, acting in the scope of their employment, subjected him to intentional infliction of emotional distress or, alternatively, are liable to him under a theory of prima facie tort. Thus, in accordance with the Federal Tort Claims Act, plaintiff may maintain an action against the United States for any injuries he suffered as a result of these alleged wrongful acts in accordance with the law of the State of New York.

First of all, with respect to his intentional infliction of emotional distress claim, plaintiff has failed to present any

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

proof that he suffered from severe emotional distress as a result of the unconstitutional strip search. [47] Having failed to present any evidence with respect to this element of his claim on which he would bear the burden of proof at trial, there can be no genuine issue of material fact. *See Celotex, at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at ——*. Thus, the court concludes that plaintiff cannot maintain an action for intentional infliction of emotional distress against the United States. Finally, with respect to his prima facie tort claim, plaintiff has failed to present any proof of special damages, a necessary element of such a claim. Therefore, the court concludes that plaintiff cannot maintain an action for prima facie tort against the United States. Accordingly, although the United States has not moved for summary judgment with respect to plaintiff's state law tort claim, the court, *sua sponte,* grants summary judgment in favor of the United States on this claim.

*CONCLUSION*

**\*34** For the reasons stated above, the court DISMISSES the complaint against Defendant Michael Murphey in its entirety based upon plaintiff's admissions regarding this defendant; GRANTS plaintiff's motion for partial summary judgment with respect to the State Defendants' statute of limitations defense; GRANTS the State Defendants' motion for summary judgment in its entirety; DENIES the State Defendants' motion for Rule 11 sanctions; DENIES the United States Defendants' motion for summary judgment with respect to plaintiff's second cause of action; GRANTS the United States Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon plaintiff's: (a) Fifth Amendment substantive due process claim; (b) Thirteenth Amendment claim; (c) Fourth Amendment unreasonable search and seizure claim insofar as it is based upon the United States Defendants' decision to stop him, search his vehicle, subject him to a pat-down/weapons frisk, and detain him until the arrival of New York State Trooper Triller; (d) Fourth Amendment excessive force claim; and (e) plaintiff's constitutional right to travel; DENIES the United States Defendants' motion for summary judgment with respect to plaintiff's first cause of action to the extent that it is based upon plaintiff's: (a) Fifth Amendment equal protection claim and (b) Fourth Amendment unreasonable search claim insofar as this claim is based upon the United States Defendants' decision to strip search plaintiff and DENIES as a matter of law their defense of qualified immunity with respect to these claims; GRANTS

plaintiff's cross-motion for partial summary judgment with respect to the liability of Defendants Harron, Lavigne, Phifer, Richards, and Jarvis for their participation in the strip search of plaintiff; and GRANTS, *sua sponte,* summary judgment in favor of the United States with respect to plaintiff's state law claim for intentional infliction of emotional distress/prima facie tort.

IT IS SO ORDERED.

[1] When informed of the results of this search, plaintiff denied that he was driving with a suspended license. The next day, plaintiff presented documentary evidence which established that, in fact, his driver's license was not suspended.

[2] The court notes that as of December 1, 1990, the effective date of 28 U.S.C. § 1367, the appropriate term for the court's jurisdiction over such claims is "supplemental" as opposed to "pendent" jurisdiction. "However because, as the Second Circuit has observed, § 1367 simply 'codified existing caselaw' regarding pendent jurisdiction, reference to pendent or supplemental jurisdiction, at least in the context of this case, is actually just a matter of semantics.... Nonetheless, to be completely accurate the court notes this distinction." *Upper Hudson Planned Parenthood v. Doe,* 836 F.Supp. 939, 944 n. 10 (N.D.N.Y.1993) (McCurn, C.J.), *aff'd without opin.,* 29 F.3d 620 (2d Cir.1994) (citation omitted).

[3] The court notes, as it did recently, that "[e]xcept for the requirement that plaintiff['s] § 1983 claim based upon an allegation of unreasonable seizure be under color of state law, this claim is substantially the same [as a state law claim of unlawful detention/ false imprisonment]." *Robinson v. Town of Colonie,* 878 F.Supp. 387, 408 (N.D.N.Y.1995) (McCurn, S.J.) (citing *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991) (quoting in turn *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d at 39)).

In addition, with respect to plaintiff's supplemental assault and battery claim, the court notes that the test for whether a plaintiff can maintain such a cause of action against law enforcement officials is whether the force used was "reasonable," the exact same test as the one used to analyze a Fourth Amendment

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

excessive force claim. Thus, if the court were to find that the State Defendants employed excessive force in their dealings with plaintiff, such a finding would support both a Fourth Amendment claim and a state law assault and battery claim. Likewise, if the court were to find that the State Defendants used reasonable force, such a finding necessarily would result in the dismissal of both plaintiff's Fourth Amendment and state law assault and battery claim. *Cf. Lippert v. State,* 207 Misc. 632, 139 N.Y.S.2d 751 (N.Y.Ct.Cl.1955).

4    As a preliminary matter, the court notes that at his deposition plaintiff admitted that he had not seen Defendant Michael Murphey on either September 27th or 28th. *See* K. Johnson's Deposition, Exhibit A (Docket # 44), at 22. Accordingly, the court dismisses the complaint against Defendant Michael Murphey in its entirety.

5    Section 1983 provides, in pertinent part, that
    Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State ..., subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

    42 U.S.C. § 1983.
    As the United States Defendants correctly note, plaintiff cannot maintain a § 1983 action against them. *See, e.g. John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 161 (S.D.N.Y.1991). Nonetheless, a plaintiff who alleges that federal officials violated his federal constitutional or statutory rights may maintain a suit for damages against such officials in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Accordingly, the court will construe plaintiff's first cause of action as seeking relief under § 1983 with respect to the State Defendants and under *Bivens* with respect to the United States Defendants. Finally, the court notes that the principles that govern the analysis of these claims, as well as any defenses

thereto, are identical whether brought pursuant to § 1983 or *Bivens.*

6    Similarly, in order to state a claim under *Bivens,* a plaintiff must allege (1) that the challenged conduct was attributable to a person acting under color of federal law and (2) that such conduct deprived plaintiff of a right secured by the constitution or laws of the United States. *See Shannon v. General Elec. Co.,* 812 F.Supp. 308, 322 (N.D.N.Y.1993) (Scullin, J.) (citation omitted).

7    For example, in an exercise of the power conferred upon it by § 2 of the Thirteenth Amendment, Congress enacted 42 U.S.C. § 1981.

8    Similarly, with respect to the United States Defendants, the Thirteenth Amendment offers no protection not already provided under the due process clause of the Fifth Amendment.

9    Only the United States Defendants are implicated in this claim.

10    In *United States v. Charleus,* 871 F.2d 265 (2d Cir.1989), the Second Circuit cited the following cases as examples of instances in which the search in question was characterized correctly as a routine border search not requiring reasonable suspicion. *See id.* at 268 (citing *Grotke,* 702 F.2d at 51–52 (patdown followed by removal of shoes held " 'minimally intrusive' " routine border search, quoting *Nieves,* 609 F.2d at 646); *United States v. Moody,* 649 F.2d 124, 126–27 (2d Cir.1981) (border "patdown" followed by request that defendant pull down girdle in private room did not necessarily require a reasonable suspicion); *Luc–Thirion,* 501 F.Supp. at 878–79 (removal of jacket and patdown of border entrant did not reach reasonable suspicion); *United States v. Braks,* 842 F.2d 509, 512–15 (1st Cir.1988) (lifting up of skirt by defendant in a private room revealing bulge of drugs in girdle, held part of routine border search and did not necessarily require any degree of suspicion); *United States v. Oyekan,* 786 F.2d 832, 835 (8th Cir.1986) (initial patdown followed by search of defendants' luggage and purses held routine border search); *cf. United States v. Fitzgibbon,* 576 F.2d 279, 281, 284 (10th Cir.) (patdown followed by request that defendant remove boot not equivalent to "strip search"), *cert.*

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 78 of 197

*denied,* 439 U.S. 910 [99 S.Ct. 279, 58 L.Ed.2d 256] (1978)).

[11]    The fact that the information upon which defendants relied later proved to be erroneous does not negate the earlier finding of probable cause. *See United States v. Towne,* 870 F.2d 880 (2d Cir.), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).

[12]    Normally, the court addresses two issues when faced with a constitutional claim—(1) whether the plaintiff's constitutional rights were, in fact, violated; and (2) if such a violation did occur, whether the defendants are, nonetheless, entitled to qualified immunity. Such analysis makes sense because if there is no constitutional violation, there is no reason for the court to reach the issue of qualified immunity. Nonetheless, courts have addressed only the second issue when, in cases such as the present one, the defendants base their motion for summary judgment entirely upon their defense of qualified immunity. *See Wachtler v. County of Herkimer,* 35 F.3d 77, 82 n. 2 (2d Cir.1994) ("We do not reach the issue of whether the strip-search of Wachtler was in fact unconstitutional. We believe that this cannot be determined without a record detailing all the circumstances surrounding the strip-search."); *see also* George C. Pratt, *What's Happening With Respect to the Second Circuit,* 11 Tauro L.Rev. 287, 291–92 and n. 12 (1995) (Second Circuit "[h]as ignored *Siegert v. Gilley,* [500 U.S. 226 (1991)] (which held that "[t]he proper way for a circuit court to approach a qualified immunity appeal is to first determine whether there had been a violation of a constitutional right. Only then may the court move on and address the issue of immunity") ] and addressed qualified immunity without ever having addressed the alleged constitutional violation.... In those cases, the allegation of a constitutional violation was apparent. Thus, it did not warrant discussion.").

In *Wachtler,* the court noted that "[w]e have held that the Fourth Amendment proscription of strip-searches of misdemeanor arrestees without reasonable suspicion is clearly enough established to preclude the defense of qualified immunity." *Id.* at 81 (citing *Weber,* 804 F.2d at 803–04; *Walsh,* 849 F.2d at 69). Nonetheless,

the court held that "[o]n the somewhat unique facts before us [we cannot say] that it is clearly established that no 'reasonable suspicion' justified a strip-search in this case." *Id.* None of the "unique facts" present in *Wachtler* exist in the instant case; i.e., Wachtler's refusal to provide the defendants with pedigree information; Wachtler's refusal to identify himself at the scene of the arrest; and Wachtler's possession of a large sum of cash.

[13]    The United States Defendants argue, in the alternative, that it was not objectively unreasonable for subordinate officers to rely upon their supervisor's determination as to whether the search was appropriate. *See* United States Defendants' Memorandum of Law at 22–23. This same argument was rejected by the court in *Wahad v. Federal Bureau of Investigation,* 813 F.Supp. 224, 230 (S.D.N.Y.1993) ("To allow one who obeys orders to escape liability for the direct violations of the constitutional rights of others would greatly narrow the effect of *Bivens.* The fact that one violates the constitutional rights of another because of the orders of superiors will not allow that person to avoid liability for those violations.") Although not binding on this court, the court finds the reasoning of *Wahad* persuasive and adopts the same for purposes of this case.

[14]    The court's review of the *Asbury* factors reveals none which specifically address the "belligerency" of the suspect. Nor in this particular case is there any indication that plaintiff's alleged "belligerency" caused him to appear unduly nervous, to refuse to answer questions or to provide contradictory or evasive answers to any questions put to him.

[15]    The United States Defendants' citation to *Esieke* is prefaced by the signal "Cf." which signifies that the "[c]ited authority supports a proposition different from the main proposition but sufficiently analogous to lend support." *The Blue Book: A Uniform System of Citation* (15th ed. 1991). Defendants parenthetically provide the following explanation for this citation: "(officers' suspicions leading to lawful search were partially confirmed by suspect's belligerency.") *See* United States Defendants' Memorandum of Law at 15.

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

[16]  In *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), the Supreme Court concluded that an extended border detention of a suspected alimentary canal smuggler would not violate the Fourth Amendment as long as reasonable suspicion supported the decision to detain the suspect.

[17]  Plaintiff's other arrests were for criminal trespass (April 1976, October 1978, and May 1980); issuing a bad check (November 1979); and possession of stolen property (September 1982). *See* United States Defendants' Statement of Material Facts Not Genuinely Disputed dated September 15, 1993, Exhibit E attached thereto.

[18]  In addition to this information, the officials in *Kallevig* relied upon defendant's nervousness, her unusual dress, the pattern and brevity of her recent visits to countries considered to be important sources of drugs, and her separation from her travelling companion to justify their decision to strip search her. *See Kallevig,* 534 F.2d at 413–14.

[19]  The present case is also distinguishable from *United States v. Sanders,* 663 F.2d 1 (2d Cir.1981), in which the officers removed the defendant's artificial leg to search for drugs. In that case, the inspectors' computer search revealed that the "[s]ubject is suspected of trafficking narcotics from South America—may conceal cocaine in artificial leg." *Id.* at 2 n. 1. Under these circumstances, the Second Circuit found that the search of the artificial leg was reasonable. To the contrary, in the present case, defendants' computer search did not reveal that plaintiff was suspected of trafficking in weapons or that he had ever been charged with, or suspected of, crossing the border with a concealed weapon.

[20]  The court notes that this is the one and only instance in which the United States Defendants make any mention that plaintiff might have been carrying "contraband" either in his vehicle or on his person. There is absolutely nothing in the record to support any such suspicion.

[21]  The court notes that it finds it difficult to believe that the fact that plaintiff was "unknown" to them would have had any bearing on the United States Defendants' decision to strip search plaintiff. The court would assume that most people who travel across the border are unknown to the Customs Inspectors.

[22]  Plaintiff paginates his memorandum of law beginning with the "Discussion" section. Such numbering ignores the first four pages which set forth plaintiff's version of the facts. For purposes of clarity, the court will refer to the pages as numbered by plaintiff.

[23]  In note 14 of their memorandum of law, the United States Defendants concede that "the strip search was not, on Johnson's version of the facts, conducted in an ideal manner, ... *See* United States Defendants' Memorandum of Law at 23 n. 14. Nonetheless, they argue that "[i]n view of the uncontested facts supporting the search, the presence of several Inspectors in addition to Supervisor Harron and the two Inspectors carrying out the search, even if unnecessary, is conduct too *de minimis* in nature to rise to the level of a constitutional violation." *See id.*

[24]  The same holds true for Defendant Triller.

[25]  Defendants also argue that verbal harassment does not rise to the level of a constitutional violation. Although this statement is true in the abstract, the instant case does not present a situation in which plaintiff suffered only verbal harassment. *See Barron v. Sullivan,* No. 93 C 6644, 1994 WL 44802, *1–2, 1994 U.S.Dist. LEXIS 11408, *4 (N.D.Ill. Aug. 12, 1994) (mere words, in the absence of physical injury, even if they cause emotional trauma to plaintiff, are not enough to state a § 1983 cause of action); *Slagel v. Shell Oil Refinery,* 811 F.Supp. 378, 382 (C.D.Ill.1993), *aff'd,* 1994 WL 168503, 1994 U.S.App. LEXIS 10071 (7th Cir. May 4, 1994) (verbal harassment and abusive language, while 'unprofessional and inexcusable,' are not sufficient to state a claim under § 1983); *Wade v. Fisk,* 176 A.D.2d 1087, ——, 575 N.Y.S.2d 394, 396 (3d Dep't 1991) (racial epithet, 'no matter how abhorrent or reprehensible,' cannot by itself form the basis for a § 1983 claim). Rather, accepting plaintiff's allegations as true, this verbal harassment was an integral part of the strip

Johnson v. Harron, Not Reported in F.Supp. (1995)

1995 WL 319943

search and made an already highly intrusive and demeaning experience even more so.

26  Although it need not reach this issue, the court notes that there is an issue of fact as to whether Defendant Lavigne played a more direct role in the unconstitutional strip search. Defendant Lavigne testified that he did not accompany plaintiff to the strip search room. *See* Lavigne's Deposition at 73. Rather, he asserts that he went back to his desk while Defendant Harron and his men escorted plaintiff to the strip search room. *See id.* To the contrary, plaintiff testified that during the strip search Defendant Lavigne "[w]as present at the door. In the doorway, in the hallway, moving about in and out of the area. He was in the room, out of the room, in the hallway during the strip search, period." *See* K. Johnson's Deposition, Exhibit A (Docket # 44), at 74. Moreover, plaintiff testified that during the strip search Defendant Lavigne said, " 'Look at that—'N word 'now.' And he said 'nigger.' 'He's not such a big man now. If he objects we're going to kick his ass.' " *See id.* at 76.

27  In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court held that an individual could maintain a *Bivens* cause of action for violation of her right to equal protection of the laws under the due process clause of the Fifth Amendment. *See id.* at 234, 99 S.Ct. at 2271, 60 L.Ed.2d at ——.

28  The regulations that govern such searches are codified at 19 C.F.R. § 162.6 and § 162.7 which provide, in pertinent part, that

> All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer.

19 C.F.R. § 162.6

> A Customs officer may stop, search, and examine any vehicle, person or beast, or search any trunk or envelope wherever found, ...

19 C.F.R. § 162.7

29  To the extent that plaintiff's equal protection claim can be read to encompass the United States Defendants' initial decision to stop plaintiff's vehicle and subject its occupants to a secondary inspection, it must be dismissed. Plaintiff has presented absolutely no evidence that he was treated any differently than anyone else who crossed the border that day or at any other time.

30  Although plaintiff asserts that Defendants Harron, Lavigne, Jarvis, Phifer, Richards, Ewing, and Middleton participated in his strip search, he does not recall that Defendants Harron, Richards, or Jarvis made any racial comments to him. *See* K. Johnson's Deposition at 17 (Jarvis), 23 (Richards), 34 (Harron). With respect to Defendant Ewing, plaintiff testified that he heard Defendant Ewing call him a "nigger" in a conversation with the bus driver prior to plaintiff's boarding a bus to Albany on the night in question. *See id.* at 9.

31  The court notes that some of the Customs Inspectors testified that they were not even aware, at least initially, that plaintiff's wife was present on the evening in question. *See* Harron's Deposition at 32–33; Lavigne's Deposition at 69; Richards' Deposition at 16; Jarvis' Deposition at 56.

32  Alternatively, the United States Defendants argue that even if plaintiff's assertion of verbal harassment is true, such action does not rise to the level of a constitutional violation. *See* n. 25, *supra.* In the context of plaintiff's equal protection claim, however, plaintiff's allegations of verbal harassment are not the basis for his claim. Rather, they constitute part of his proof to demonstrate the existence of racial discriminatory animus.

33  The court notes that it has serious reservations, given defendants' explanation for their actions, that plaintiff will be able to withstand a motion for directed verdict with respect to this claim should he decide to proceed on this theory at trial.

34  In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court stated that "[t]he same analysis [as is applied to an excessive force claim brought under § 1983] applies to excessive force claims brought against federal law enforcement ... officials under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)." *Id.* at 394 n. 9, 109 S.Ct. at 1870 n. 9, 104 L.Ed.2d at —— n. 9. Furthermore, the Supreme Court stated that courts must analyze such claims "[u]nder

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 81 of 197

1995 WL 319943

the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at ——. Thus, to the extent that plaintiff's first cause of action includes a Fifth Amendment substantive due process claim, the same must be dismissed. Accordingly, the court grants defendants' motions for summary judgment with respect to plaintiff's first cause of action to the extent that it rests upon this ground.

35    In *Simpson v. Saroff,* 741 F.Supp. 1073 (S.D.N.Y.1990), the court found that plaintiff's alleged injuries—a punched stomach, swollen and bleeding wrists from tight handcuffs and a faintly detectable scar on her left wrist—were sufficient to maintain an excessive force claim. The court also cited other cases as examples of sufficiently serious injuries for purposes of such a claim. *See id.* at 1078 (bruises lasting a couple of weeks; arm twisting & punching). *But see Mark v. Caldwell,* 754 F.2d 1260 (5th Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985) (no constitutional violation where officer slapped plaintiff several times with open hand; force caused no injury, caused no bleeding, required no medical attention and too weak to knock plaintiff down; more of an affront than an injury).

36    There appears to be some confusion about whether it was Defendant Lavigne or Defendant Ewing who pushed plaintiff into the chair.

37    The first two incidents occurred on the evening of September 27th. The incident involving Defendant Shawn Murphy occurred the following day.

38    The cases that plaintiff cites in support of this claim are inapposite. Each of them concerns the issue of whether it is constitutionally permissible for a government entity to establish residency requirements as a prerequisite for the receipt of certain benefits. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), *overruled on other grounds, Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("the Due Process Clause of the Fifth Amendment prohibits Congress from denying public assistance to poor persons otherwise eligible solely on the ground that they have not been residents of the

District of Columbia for one year at the time their applications are filed"); *King v. New Rochelle Mun. Hous. Auth.,* 442 F.2d 646 (2d Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971) (five-year durational residency requirement imposed by the New Rochelle Municipal Housing Authority for admission to public housing violates the Equal Protection Clause of the Fourteenth Amendment); *Cole v. Housing Auth. of City of Newport,* 435 F.2d 807 (1st Cir.1970) (two-year residency requirement imposed on applicants for admission to federally-aided, low-rent public housing projects violates equal protection clause).

39    Section 1985(3) provides, in pertinent part, that
> [i]f two or more persons in any State ... conspire ..., for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).
> Section 1986 provides, in pertinent part, that [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; ...

42 U.S.C. § 1986 (emphasis added).
As the court explained in *Levy v. City of New York,* 726 F.Supp. 1446 (S.D.N.Y.1989), § 1986 " 'merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985.' " *Id.* at 1455

Johnson v. Harron, Not Reported in F.Supp. (1995)

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 82 of 197

1995 WL 319943

(quoting *Williams v. St. Joseph's Hosp.,* 629 F.2d 448, 452 (7th Cir.1980)).

40    The court notes, as a preliminary matter, that given its conclusions with respect to plaintiff's first cause of action, the only "constitutional violations" which can form the basis of this § 1985(3) claim are plaintiff's Fourth Amendment unreasonable search claim based upon his strip search and his Fifth Amendment equal protection claim. Since the court has determined that only the United States Defendants are implicated in these constitutional violations, plaintiff's § 1985(3) claim must be dismissed with respect to the State Defendants.

41    Although the court has limited its discussion to plaintiff's § 1985(3) claim, this same evidence is sufficient to withstand the United States Defendants' motion for summary judgment with respect to plaintiff's § 1986 claim. In this regard, the court notes that, drawing all reasonable inferences in plaintiff's favor, a jury could conclude that even if Defendants Ewing and Middleton did not conspire with the other Customs Inspectors to violate plaintiff's constitutional rights, they had the power to prevent or to aid in preventing these wrongful acts.

42    The court's determination of this motion affects only plaintiff's state law claim for intentional infliction of emotional distress/prima facie tort.

43    The New York Court of Appeals has not addressed the issue of whether mailing the summons and complaint to the appropriate sheriff within the applicable time frame constitutes delivery for purposes of § 203(b)(5)(i). The State Defendants cite two cases, both New York State Supreme Court cases, that held that mailing does not constitute delivery for the purposes of this statute. *See Schneider v. Hahn,* 79 Misc.2d 411, 359 N.Y.S.2d 988 (Sup.Ct. Monroe County 1974); *Interstate System, Inc. v. Bev Pac, Inc.,* 77 Misc.2d 129, 353 N.Y.S.2d 346 (Sup.Ct. Herkimer County 1974). *But see Palm v. Jones,* 74 Misc.2d 580, 345 N.Y.S.2d 428 (Sup.Ct. Montgomery County 1973). To the contrary, the only appellate court decisions which this court's independent research uncovered have reached the opposite result. *Dowling v. Hillcrest Gen. Hosp.,* 89 A.D.2d 435, 455 N.Y.S.2d 628 (1st Dep't 1982); *Sanford v. Garvey,* 81 A.D.2d 748, 438 N.Y.S.2d 410 (4th Dep't 1981); *Kearns v. Moyer,* 78 A.D.2d 979, 435 N.Y.S.2d 553 (4th Dep't 1980); *Williams v. Interboro Gen. Hosp.,* 59 A.D.2d 738, 398 N.Y.S.2d 568 (2d Dep't 1977). Based upon the weight of this authority, if the court had needed to address this issue, it would have concluded that plaintiff's mailing of the summons and complaint to the Clinton County Sheriff on September 26, 1991, constituted "delivery" to the Sheriff for purposes of § 203(b)(5)(i).

44    The court notes that, with no reference to any caselaw to support his arguments, plaintiff disposes of the State Defendants' opposition to his state law cause of action in one paragraph of his memorandum of law. The court also notes that the State Defendants' treatment of this state law cause of action in their memorandum of law is, likewise, primarily composed of broad conclusory statements unsupported by any caselaw. The cursory treatment given this claim leaves the court to wonder how seriously the parties consider it to be.

45    Alternatively, the court notes that even if it had found Defendant Shawn Murphy's conduct to be utterly intolerable, the State Defendants would still be entitled to summary judgment on this claim because plaintiff has failed to produce any evidence that he suffered from severe emotional distress as a result of Defendant Shawn Murphy's actions.

46    Although the complained of conduct occurred prior to the 1993 Amendment to Rule 11, the *Knipe* court remanded the case to the district court so that it could be "[a]fforded an opportunity to exercise its discretion whether to impose sanctions under the amended version [of Rule 11]." *Knipe,* 19 F.3d at 78. The court noted, however, that "[o]n remand the district court should otherwise adhere to the version of Rule 11 in effect at the time of its prior decisions. Any further retroactive application of the amended Rule 11 would charge Smith with knowledge of a rule not in effect at the time of filing and therefore would not advance Rule 11's central goal of deterring baseless filings." *Id.* (citing *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454).

**Johnson v. Harron, Not Reported in F.Supp. (1995)**

1995 WL 319943

47    The court's discussion is limited to plaintiff's allegations concerning his strip search because this is the only behavior which arguably would satisfy the element of plaintiff's claim that requires that the

complained of conduct be utterly intolerable in a civilized society.

**All Citations**

Not Reported in F.Supp., 1995 WL 319943

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 37073
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Yaya JALLOW, Plaintiff,

v.

Edward I. GEFFNER, Project
Renewal, et al., Defendants.

23-CV-3969 (LTS)

|

Signed January 2, 2024

**Attorneys and Law Firms**

Yaya Jallow, Bronx, NY, Pro Se

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
invoking the Court's federal question jurisdiction and alleging
that Defendants violated his rights. By order dated May 15,
2023, the Court granted Plaintiff's request to proceed *in forma
pauperis* ("IFP"), that is, without prepayment of fees.

For the reasons set forth below, the Court (1) severs the claims
that arose in Brooklyn, New York, and transfers those claims
to the United States District Court for the Eastern District of
New York; (2) dismisses all of Plaintiff's remaining claims
except for the excessive force claim arising from events
that occurred at Manhattan Central Booking; and (3) grants
Plaintiff leave to file an amended complaint with respect to
the excessive force claim within 60 days of the date of this
order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss

a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

BACKGROUND

Plaintiff brings this action alleging that he is the "victim
of an enterprise that would engage in several racketeering
activities at [his] expense," with the goal "to deliberately
and intentionally harm, endanger, destitute, disenfranchise,
and ultimately murder him while also attempting to portray
him as a mentally unstable, retarded, sexists, bigoted,
unenfranchised immigrant." [1] (ECF 1, at 5.) This wide-
ranging conspiracy encompasses his interactions with the
New York City shelter system, the New York City Police
Department ("NYPD"), the New York State Unified Court
System, and the New York City Department of Correction
("DOC"). Named as Defendants are: (1) State of New York;
(2) Letitia James, Attorney General of the State of New
York; (3) Edward I. Geffner, an agent of Project Renewal;
(4) Project Renewal; (5) Leticia Randle, Program Director
of Project Renewal Kenton Hall shelter; (6) Robert Lashley,
Program Director of Project Renewal Third Street shelter; (7)
Samaritan Daytop Village, Inc. ("Samaritan"); (8) Yvelyse
Marrero, Program Director of Samaritan shelter; (9) John
McDonald, agent of The Doe Fund; (10) The Doe Fund;
(11) Rogers Avenue Housing Development Fund Corporation
("Rogers Avenue HDFC"); (12) DOC; (13) Louis A. Molina,
Commissioner of DOC; (14) David Terrel, DOC Correction
Officer; (15) Joshua Maye, officer at the NYPD 9th Precinct;
(16) Raheen Rivers, officer at the NYPD 9th Precinct;
(17) Lawrence McKenzie, staff member at Samaritan; (18)
David Bell, staff member at Samaritan; and (19) Milton
E. Calderon, officer at NYPD 75th Precinct. Plaintiff seeks
money damages.

2024 WL 37073

1    The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise noted.

**\*2**  The following information is taken from the complaint.[2] On May 9, 2019, Plaintiff was arrested after an "MTA fare evasion entrapment scheme, something that was planned since [he] was an infant,"[3] (*Id.* at 6 ¶ 2.) In 2021 and 2022, Plaintiff, who had lived for 23 years without a criminal record or any interactions with the police, "magically amass[ed] countless cases, charges, and warrants levied against him." (*Id.* ¶ 4.) He attributes the charges to intentional efforts "to hinder, slander, smear, and railroad [him] all under the ruse of the '[judicial [p]rocess.' " (*Id.* at 7 ¶ 4.)

2    Plaintiff refers to exhibits and provides an "exhibit list," but no exhibits are attached to the complaint. (ECF 1, at 21 7-8.)

3    Plaintiff previously filed an action in this court in which he asserted false arrest claims arising from the May 9, 2019 arrest. On December 21, 2021, Judge Lorna G. Schofield granted the City of New York's motion to dismiss that action but directed Plaintiff to seek leave to replead. *See Jallow v. City of New York*, ECF 1:20-CV-6260, 64, 2021 WL 6052125 (S.D.N.Y. Dec. 21, 2021). Because Plaintiff did not seek permission to replead, the action was dismissed on February 4, 2022. *See id.*, ECF 1:20-CV-6260, 65.

### A. Incidents at Kenton Hall Shelter and April 28, 2022 Arrest

In the spring of 2022,[4] Plaintiff was transferred from a shelter in Brooklyn, to Project Renewal's Kenton Hall shelter in Manhattan, which is supervised by Defendant Leticia Randall. At Kenton Hall, the staff display[ed] a lack of care and respect" towards Plaintiff, which included refusing to change his designated bed after he informed them of an "attempted knife robbery," and denying him an overnight pass for late night work in an "attempt to cost [him] his job." (*Id.* ¶¶ 6-7.) On April 24, 2022, a staff member "accosted and egged [him] ... into a possible altercation," but Plaintiff attempted to defuse the situation by "punching a door's glass window instead of the "[s]taff's face." (*Id.* ¶ 8.) The shelter staff called the police, who transported Plaintiff to the hospital for treatment of cuts to his hand. When Plaintiff returned to the shelter, he learned that he had been transferred to another shelter around the corner, Project Renewal's Third

Street Shelter. Plaintiff retrieved his belongings, only to find that his bag of electronics, which had been in his locked backpack, was missing. When he inquired about the missing electronics, he was told that there was an in-house policy regarding electronics, and that he could retrieve them the following Tuesday, six days later. Plaintiff asserts that "due to the actions of said [c]riminal [e]nterprise that wouldn't happen." (*Id.* at 8 ¶ 10.)

4    There appears to be some discrepancies with respect to the dates Plaintiff provides in the complaint. Although he asserts that he arrived at Kenton Hall in November 2022, he refers to alleged violations at that shelter, which occurred in April 2022. The Court therefore assumes that Plaintiff was transferred to Kenton Hall in the spring of 2022.

Four days later, on April 28, 2022, Officers Joshua Maye and Raheen Rivers arrested Plaintiff for breaking the window at Kenton Hall. Plaintiff asserts his belief that the arrest "was the start of said [e]nterprise choosing to depict [him] explicitly as a criminal nigger, with the arrest allowing said [e]nterprise the ability to 'legitimize' their discrimination and disenfranchisement of [him]." (*Id.* at 9 ¶ 13.) He also claims that he was not read his *Miranda* rights and that the arrest was a "form of kidnapping." (*Id.*)

### B. Incidents at Manhattan Central Booking

**\*3**  After several hours at the NYPD 9th Precinct, Plaintiff was transferred to Manhattan Central Booking, where he was "accosted by an inmate who would provoke a fight." (*Id.* ¶ 14.) In response, Corrections Officer David Terrel and four other correction officers "force[ed] [ ] Plaintiff into fighting them after repeatedly initiating and ignoring several refusals by [ ] Plaintiff not to fight them." (*Id.*) Plaintiff fought the five correction officers, and after "getting his ass beat Officer Terrel would respond by slamming [him] and breaking 3 of his ribs and applying his whole-body weight on [ ] Plaintiff, in a clear-cut murder attempt just like George Floyd." (*Id.*) Afterwards, Plaintiff was charged with "trumped up charges of assaulting a [p]eace [o]fficer" despite the officers initiating the fight with everyone consenting. (*Id.*) Plaintiff asserts that this incident was an "apparent [ ] scheme to felonize [him] so to allow said [e]nterprise to continue their destitution and disenfranchisement campaign all under the 'legal' gauze of him being a felon." (*Id.*)

Plaintiff's appearance before a judge was pushed back for a day because of the new charges. When he finally saw the judge, the judge used the new charges and an April 13, 2022 missed court date as grounds to send him to Rikers Island.

### C. Incidents at Rikers Island

Plaintiff was detained at Rikers Island for 36 days, where he became "a victim of the continuation of the [c]orrections [ ] [o]fficers['] deliberate and intentional endangerment and murder schemes and tactic all while portraying him as the aggressor and perpetrator[ ]." (*Id.* at 10 ¶ 16.). On an unspecified date, he went to court and accepted a plea deal, which would "adjudicate and close all open and active cases against him." (*Id.* ¶ 17.) When Plaintiff returned to his housing area at Rikers Island, he found his mattress had been stolen and no food had been saved for him, despite DOC's policy to hold all meals for a prisoner at court. Plaintiff believes this was a "clear attempt to starve and murder [him] just like Jordan Neeley." (*Id.*) Plaintiff knew the identity of the person who had taken his mattress and confronted him, which led to a fight. After the fight, Plaintiff was transferred to a "perpetually freezing" dorm "without adequate clothing and/ or blankets," which he asserts was an "attempt to freeze him to death, all while not being provided any food." (*Id.*)

The next day at breakfast, Plaintiff got into another fight with several other prisoners when his milk was stolen, and his face was cut by a shank. Plaintiff was then transferred to another dorm, where his property was stolen while he watched a basketball game. After that incident, he was again transferred to a different housing area where he got "jumped by the whole dorm for inquiring about his stolen food." (*Id.*) Plaintiff believes that correction officers placed him in danger while protecting the other prisoners involved in these incidents. He filed multiple grievances about these incidents, but none were adequately addressed.

### D. June 3, 2022 Arrest

On June 3, 2022, Plaintiff was released from custody, and made his way back to the NYPD 9th Precinct for his "vouched property." (*Id.* ¶ 18.) At the precinct, he learned that a warrant had been issued against him on April 14, 2022, the day after the missed court date; the warrant turned out to be an "I-Card hold" issued out of the NYPD 78th Precinct in Brooklyn. (*Id.* at 11 ¶ 18.) Plaintiff expresses skepticism that the warrant "magically manifest[ed]" in the two hours it took for him to travel from Rikers Island to the 9th Precinct on the Lower East Side of Manhattan, and that the NYPD could not locate him

or inform him of the warrant beforehand, pointing out: (1) the April 28, 2022 arrest by the NYPD, which occurred after the warrant was issued; and (2) he was in DOC custody for 36 days, during which time he had multiple background checks. (*Id.*) Plaintiff was arrested pursuant to the warrant.

After the arrest, Plaintiff was brought to the holding cell area of the police station, where Supervising Officer Berrios, who is not named as a defendant, directed Plaintiff to sit and proceeded to question him. When Plaintiff did not answer Berrios's questions, the officer placed his hands on Plaintiff's chest and "use[d] excessive force to force him into sitting down." (*Id.* ¶ 21.) Berrios then directed Plaintiff to remove his shoes, and he attempted to put Plaintiff in a holding cell with handcuffs on. Plaintiff asserts that this was a "possible attempt to have [Berrios's] informant attack and possibly kill [him]." (*Id.*) Plaintiff was transported to 78th Precinct, where he was held for an additional eight hours before he saw a judge and another court date was scheduled.

**\*4** Because Plaintiff was released from custody at night, he was unable to get a shelter bed. He returned to the NYPD 9th Precinct to retrieve his property, but was told that it was now at 1 Police Plaza, which was closed. Plaintiff was left stranded without a cellphone, wallet, or clothes. He was forced to walk around the city in "prison scrubs in a scheme to invalidate a jury and emotional[ly] harass [him]." (*Id.* at 12 ¶23.)

### E. Incidents at Third Street Shelter

Plaintiff returned to the Third Street shelter, only to be told that he was no longer in their system. He had to go to the HRA Intake Center, where he was again assigned to Third Street shelter. Plaintiff went back to the shelter and got a bed, but he was not given the property he had left there. Plaintiff filed complaints with Project Renewal and various city agencies about the alleged theft of his property and other issues with shelter staff.

On June 14, 2022, Plaintiff returned to the shelter at 4am, the same time he had returned on the previous eight days. Although he had an overnight pass, he was told that his bed had been taken for missing curfew and to wait downstairs. He ignored the staff and went upstairs, only to find his belongings packed. Plaintiff spent the next three days "forced to sit and sleep downstairs, causing back and body pain and harm." (*Id.* at 14 ¶ 37.) Shelter staff informed him they were looking for a bed, but Plaintiff believes it was an "obvious scheme to enrage [him] into attacking them so they could get him arrested and validate their secondary theft." (*Id.*)

On June 15, 2022, Plaintiff went to the New York City Department of Homeless Services ("DHS") to report the shelter staff's actions. DHS staff appeared to condone the shelter staff's conduct, stating that they "didn't care what [ ] Plaintiff was forced to endure" and lying to him about the transfer protocols for shelters. (*Id.* ¶ 39.) After Plaintiff called them out on the lie, DHS staff called security and threatened to call the NYPD. Plaintiff asserts that this was an "obvious racial dog whistle" even though the staff shared his race. (*Id.*) DHS refused his transfer request from the Third Street shelter, although the shelter staff "was attempting to starve and murder him." (*Id.*)

On June 18, 2022, Plaintiff went to the HRA Intake Center and learned that he had been removed from the DHS shelter system under the "ruse" that he hadn't been there for eight days. (*Id.* ¶ 41.) Plaintiff believes that is was another attempt by the Third Street shelter staff to steal his remaining property. He eventually got a message from a DHS representative that he had been transferred to Samaritan Daytop shelter in Brooklyn. During the course of these events, Plaintiff submitted complaints to multiple state and city agencies, but most of them "ignored or brushed off" his complaints, further "emboldening and enabling" the criminal enterprise against him. (*Id.* at 15 ¶ 42.)

**F. Incidents Occurring while Plaintiff Resided in Brooklyn, New York**

Over the course of the next couple of months, Plaintiff alleges that he faced discriminatory treatment by multiple entities and individuals while residing in Brooklyn, including: (1) problems accessing his bank account with Axos Bank; (2) not receiving his 2019 state tax refund from the New York State Department of Finance; (4) mail tampering by unspecified persons; (5) employment discrimination at his new job with the Ribbon Restaurant, including his firing; (6) delay in approval of unemployment insurance benefits; (6) "being blackballed and discriminated in the New York Restaurant Industry" (*id.* ¶at 16 52) (7) refusal of HRA Brooklyn office to provide him services; (8) fraudulent charges against his Robinhood brokerage account; (9) denial of SNAP application for the third time; (10) "racial service refusal" by the Smoke Shop (*id.* at 17 ¶ 66); and (11) denied kitchen access and subjected to racketeering activities after renting a room from the Rogers Avenue HDFC, which is operated in conjunction with the Doe Fund.

*\*5* In April 2023, Plaintiff returned to Samaritan Daytop shelter, where he continued to experience the "same racketeering tactics." (*Id.* at 18 ¶ 70.) On April 9, 2023, after doing his laundry, he took a nap, but when he woke up, the laundry room was locked and he could not get his clothes. Plaintiff confronted the shelter staff and at some point he punched a frame, causing it to fall down. The shelter staff forced Plaintiff outside and called the police, and told him he would have to wait for the police to come to retrieve his possessions. Plaintiff, however, went back into the shelter, pushed away the security guard who blocked the doorway, and went upstairs for his belongings. While he was packing his possessions, he was surrounded by at least 20 people who "repeatedly threatened, accosted, and harassed [him]." (*Id.* at 19 ¶ 75.) Feeling provoked, Plaintiff got into a fight with some of the residents and staff members. During the fight, his glasses, cellphone, and suitcase were stolen, which he believes was an attempt to stop him from using his phone to file unemployment insurance claims. Plaintiff returned downstairs with only a backpack and waited outside for the police. When the police came, without hearing his side of the story, Officer Milton E. Calderon arrested Plaintiff. Plaintiff was transported to the NYPD 75th Precinct and was charged with "fraudulent trumped up charges." (*Id.* ¶ 78.) Plaintiff saw a judge and was sent to Rikers Island, "as a continuation of the Judiciary's attempt to treat him like a criminal and destitute and disenfranchised him." (*Id.*) He spent five days at Rikers Island before he was released on probation. Plaintiff was unable to return to Samaritan Daytop because of an order of protection against him, and DHS refused to assign him to a different shelter.

**G. Plaintiff's Asserted Claims**

Plaintiff brings this action citing to the Fourteenth Amendment to the Constitution and multiple federal statutory provisions: "18 Chapter 95"; 42 U.S.C. § 1981; the Civil Rights Act of 1968; the Fair Housing Act, 42 U.S.C. § 3631; and 18 U.S.C. §§ 241, 245, and 249. (*Id.* at 1-4.) He asserts the following claims:

1. The Plaintiff was intentionally & willfully discriminated against due to willfully chosen preconceived notions & beliefs.

2. The New York Unified Court System was willfully &deliberately in on any conspiracy against [t]he Plaintiff.

3. Personnel at the City & State of New York were aware & apparently involved in said schemes and conspiracies to disenfranchise [t]he Plaintiff under wrong loser justification.

4. The Shelter Staff at Kenton Hall and the Third Street, and the New York Shelter System personnel in general, are willfully and intentionally operating a Criminal Enterprise.

5. The Plaintiff was forced to fight New York Department of Corrections Officers to facilitate his robbery by said Officer's associates.

6. The warrant hold was used to stop [t]he Plaintiff from obtaining his property and to destitute him for the weekend.

7. The Plaintiff was robbed of his property by an Enterprise consisting of several Project Renewal personnel that used criminal methods to rob, intimidate, & retaliate against him.

8. Personnel with the City of New York Police Department were actively assisting members of said Criminal Enterprise who they have known since [t]he Plaintiff was a child.

(*Id.* at 20 ¶ 52.) Plaintiff seeks declaratory relief and money damages

## DISCUSSION

### A. Claims Arising in Brooklyn, New York

Rules 18 and 20 of the Federal Rules of Civil Procedure govern joinder of claims and parties, respectively. Rule 18(a) permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a)(2); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (holding that "the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)") (internal quotation marks and citation omitted, alteration in original). Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

Plaintiff asserts claims arising out of his interactions with shelter staff, NYPD officers, state courts, city agencies, and DOC correction officers in Manhattan, Brooklyn, and Rikers Island. Plaintiff's assertions that multiple defendants harmed him in separate incidents in a conspiracy to violate his rights are insufficient to join all of his claims in a single action. *Deskovic*, 673 F. Supp. 2d at 167. The claims neither arise out of the same transaction nor raise any common questions of law or fact and therefore do not comport with Rule 20(a).

**\*6** Furthermore, Plaintiff has alleged no facts showing why this court is a proper venue for the claims arising from events that allegedly occurred in Brooklyn, New York. Under 28 U.S.C. § 1391(b), a federal civil action may generally be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under Section 1391(c), a "natural person" resides in the district where the person is domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c)(1), (2).

Plaintiff, who is currently a resident of Bronx, New York, sues the following defendants for the Brooklyn claims: Samaritan Daytop; Yvelyse Marrero; John McDonald; The Doe Fund; Rogers Avenue HDFC; Lawrence McKenzie; David Bell; and Milton E. Calderon. Because he does not plead the residence of any of the individual defendants, the Court cannot assume

that all of the defendants reside in New York State. Thus, it is unclear whether venue is proper in this District under Section 1391(b)(1). The Court can assume, however, that venue is proper in the Eastern District of New York under Section 1391(b)(2) because Plaintiff asserts that the alleged events giving rise to his claims against these defendants occurred in Brooklyn, Kings County, New York, which falls within the Eastern District of New York. *See* 28 U.S.C. § 112.

Even if this District is a proper venue, the Court may transfer the case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459-60 (S.D.N.Y. 2011); *see also N.Y. Marine and Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors). A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Under Rule 21, the Court severs Plaintiff's claims arising from events that allegedly occurred in Brooklyn, including Plaintiff's claims against Defendants Samaritan Daytop, Marrero, McDonald, The Doe Fund, Rogers Avenue HDFC, McKenzie, Bell, and Calderon. Having considered all of the factors relevant under Section 1404(a), the Court transfers those claims to the Eastern District of New York because the underlying events occurred in Brooklyn, where it is reasonable to expect that all relevant documents and witnesses would be located. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.").

**B. RICO Claim**

**\*7** Plaintiff's remaining claims are asserted against the State of New York, Attorney General James, Project Renewal,

Geffner, Randal, Lashley, DOC, DOC Commissioner Molina, Correction Officer Terrel, Police Officer Maye, and Police Officer Rivers. The Court first considers whether the complaint's allegations that these defendants, as Plaintiff repeatedly asserts, engaged in a criminal enterprise and committed racketeering activities in violation of 18 U.S.C. Chapter 95, the chapter of the federal criminal code that contains the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC § 1961 *et seq.*, are sufficient to state a civil claim under the RICO statute.

Plaintiff is apparently attempting to assert claims under the civil provision of RICO, 18 U.S.C. § 1964, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] ... may sue ... in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting § 1962(a)-(c)). Such a person must also "allege that he was 'injured in his business or property *by reason of* a violation of *section 1962*.' " *Id.* (quoting § 1964(c)) (italics in original).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45.

Plaintiff does not provide any facts that would support any claim under civil RICO – either a claim for civil enforcement or one of conspiracy. He essentially alleges that, following incidents in which he was provoked into altercations with shelter staff, NYPD officers would arrest him, which would

result in the lodging of criminal charges against him and his detention in the custody of DOC. Because Plaintiff does not allege facts suggesting that Defendants engaged in multiple acts constituting racketeering activities or made an agreement to form a criminal enterprise, his assertions regarding his interactions with shelter staff, the NYPD, the state-court system, and DOC do not demonstrate a violation of the RICO statute. The Court therefore dismisses Plaintiff's claims under the civil RICO statute for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C. Conspiracy Claim

The Court also considers whether Plaintiff's assertions are sufficient to state a conspiracy claim under 42 U.S.C. § 1985. To state a Section 1985 claim, a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004) (quotation omitted).

**\*8**  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Claims under Section 1985 must be alleged "with at least some degree of particularity" and must include facts showing that the "overt acts which defendants engaged in ... were reasonably related to the promotion of the claimed conspiracy." *Hernandez v. Goord*, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004).

Here, Plaintiff fails to allege an agreement or factual details concerning the inception or operation of any conspiracy. He merely offers conclusory allegations that Defendants conspired to violate his rights, which generally includes shelter staff stealing his property and acting in a manner to provoke him into behavior that results in his arrest. The Court therefore finds that Plaintiff's fails to state a conspiracy claim under Section 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## D. Claims under 42 U.S.C. § 1983

Plaintiff asserts that Defendants deprived him of his constitutional rights, including those under the Fourteenth Amendment. His constitutional claims can be construed as ones asserted under 42 U.S.C. § 1983. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. Claims against Named Defendants

#### a. Project Renewal, Geffner, Randle, and Lashley

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello*, 292 F.3d at 323 ("[T]he United States Constitution regulates only the Government, not private parties.").

The activity of a private entity can be attributed to the state in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *See Fabricant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In analyzing whether a private entity acts under color of state law for purposes of Section 1983, the district court begins "by identifying the specific conduct of which the plaintiff complains," rather than the general characteristics of the entity. *Id.* Providing housing is not a public function

because it is not the exclusive province of the state. *See, e.g., George v. Pathways to Hous., Inc.,* No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.' "). The fact that an entity receives public funds does not turn private action into state action. *See Rendell-Baker,* 457 U.S. at 840; *see also Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter,* No. 18-CV-5995 (KAM), 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) ("[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." (citation and internal quotation marks omitted)).

**\*9** Here, Plaintiff brings claims against Project Renewal, the operator of the Kenton Hall and Third Street shelters, and three of its employees – Geffner, Randle, and Lashley. These defendants, however, are private parties who are not alleged to work for any state or other governmental body. Project Renewal's operation of homeless shelters or receipt of funds from the City of New York is not sufficient to turn it and its employees into state actors. Plaintiff therefore fails to state a Section 1983 claim against Project Renewal, Geffner, Randle, and Lashley. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### b. Police Officers Maye and Rivers

Plaintiff sues Police Officer Maye and Rivers, the two officers who arrested him on April 28, 2022, for breaking the window at the Kenton Hall shelter on April 24, 2022. Plaintiff does not explain how these officers violated his rights, only asserting his belief that the arrest "was the start of said [e]nterprise choosing to depict [him] explicitly as a criminal nigger, with the arrest allowing said [e]nterprise the ability to 'legitimize' their discrimination and disenfranchisement of [him]." (ECF 1, at 9 ¶ 13.) He also alleges that he was not provided a *Miranda* warning. The Court considers whether Plaintiff has asserted sufficient facts to state a claim for false arrest against these NYPD officers.[5]

[5]  The Court notes that Plaintiff alleges that, after he was arrested on June 3, 2022, and brought to the 9th Precinct, while questioning him, Supervising Officer Berrios placed his hands on Plaintiff's chest and "use[d] excessive force to force him into sitting down." (ECF 1, at 11 ¶ 21.) Because Plaintiff

does not sue Berrios, the Court does not consider whether this assertion is sufficient to state a Section 1983 claim against Berrios.

The Court first looks to state law to establish the elements of a false arrest claim under Section 1983. *See Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.' "); *see also Lanning v. City of Glens Falls,* 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States,* 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York,* 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady,* 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest").

**\*10** Plaintiff does not allege facts showing that Maye and Rivers lacked probable cause to arrest him on April 28, 2022. He admits freely that he broke the window at Kenton Hall, which led to his arrest, but he nonetheless asserts that the arrest was part of the criminal enterprise and conspiracy against him. As the Court explains above, however, Plaintiff's belief that the arrest was part of a criminal enterprise against him is not sufficient to state either a RICO or conspiracy claim. Because Plaintiff alleges facts suggesting that there was probable cause for his arrest, any false arrest claims he is asserting must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's claim that he was not read his *Miranda* rights during the arrest must also be dismissed. The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), establishes that suspects must be advised of their constitutional rights before interrogation. While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law. *See Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)). A violation of the *Miranda* rules does not provide a basis for a claim under Section 1983. *See Vega*, 597 U.S. at 152 (Miranda does not "confer a right to sue under § 1983"); *Stevens v. Vill. of Red Hook*, No. 20-CV-08152 (NSR), 2022 WL 11970629, at *8 (S.D.N.Y. Oct. 20, 2022) (dismissing alleged *Miranda* violation under *Vega*). Plaintiff's assertion concerning a *Miranda* violation is dismissed for failure to state a Section 1983 claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### c. Correction Officer Terrel

Plaintiff asserts that, after the April 28, 2022 arrest, he was transferred to Manhattan Central Booking, where Correction Officer Terrel and four other correction officers "forced" him into a fight. (ECF 1, at 9 ¶ 14.) He only sues Terrel with respect to this incident, asserting that after "getting his ass beat[,] Officer Terrel would respond by slamming [him] and breaking 3 of his ribs and applying his whole-body weight on [ ] Plaintiff, in a clear-cut murder attempt just like George Floyd." (*Id.*)

The Court construes Plaintiff's allegation of being assaulted by DOC employees as asserting an excessive force claim under the Fourteenth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). To state such a claim, a plaintiff must allege facts showing that a correction officer engaged in an "exercise of power without any reasonable justification in the service of a legitimate government objective." *Id.* (citation omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (noting that a pretrial detainee asserting an excessive force claim must show only that the force used against him was objectively unreasonable and is not required

to prove the defendant's subjective intent, as has been required in cases involving convicted prisoners).

Plaintiff's assertions that he was forced into a fight with Terrel and four other corrections officers resulting in his injury may arguably state an excessive force claim under the Fourteenth Amendment but are currently insufficient to support such a claim. (ECF 1, at 9 ¶ 14.) The Court grants Plaintiff leave to file an amended complaint to provide more facts about the events leading to the fight and how the correction officers forced him into fighting them. He must also name as defendants the four other DOC officers whom he alleges were involved in this incident. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe."

### d. DOC and Commissioner Molina

**\*11** Plaintiff's claims against the DOC must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses the claims brought against the DOC for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, the Court construes the complaint as asserting claims against the City of New York.

Furthermore, although Plaintiff names Commissioner Molina as a defendant, he does not allege facts showing Molina's direct and personal involvement in violating his constitutional rights sufficient to sue Molina in his personal capacity. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). Moreover, Molina may not be held liable under Section 1983 solely because he employs or supervises a person who violated Plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *see also Morgan v. Dzurenda*, 956 F.3d 84, 89

(2d Cir. 2020). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official ...." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). The Court therefore construes the complaint as asserting only official capacity claims against Molina.

Plaintiff's claims against Molina in his official capacity can be construed as claims against the City of New York as he may be attempting to assert municipal liability claims concerning DOC's policy and practice. *See, e.g., Nassau County Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 298 (E.D.N.Y. 2004) (noting that "[a] claim against a municipal employee in his or her official capacity may be treated as an action against the municipality itself" (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991))).

### e. City of New York

Plaintiff fails to allege facts suggesting that the City of New York itself has a policy, practice, or custom that resulted in a violation of his constitutional right when he was in DOC custody sufficient to state a municipal liability claim. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government body may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))). He does not allege (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of his constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, Plaintiff asserts that while he was in DOC custody individual defendants violated his rights, but these allegations do "not suffice to plausibly allege the existence of a sanctioned City policy or custom that caused his alleged injuries."). *Jallow v. City of New York*, No. 21-1267, 2021 WL 5121130, at *2 (2d Cir. Nov. 4, 2021).

**\*12** The Court also construes Plaintiff's assertions about the shelter system in New York City, his interactions with various city agencies, including DHS and the NYPD, and his claims of discrimination as attempts to assert municipal liability claims against the City of New York. Plaintiff does not, however, allege any facts suggesting that the City of New York itself has a policy, practice, or custom concerning

shelters, the police, or any other city agencies he came into contact with that resulted in a violation of his constitutional rights. Instead, the complaint outlines Plaintiff's personal experience navigating the shelter system and his broad and conclusory assertions that shelter staff, police officers, and others are continuously conspiring and discriminating against him. Plaintiff's assertions do not show the existence of a City policy or custom that caused him harm.

Because Plaintiff does not allege facts suggesting that any of the incidents he describes give rise to a plausible inference that the City had a policy or custom that caused a violation of his constitutional rights, he fails to state a Section 1983 claim against the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B) (ii).

### f. State of New York and Attorney General James

Finally, Plaintiff names as defendants the State of New York and Attorney General Leticia James. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity ...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims against the State of New York are therefore barred by the Eleventh Amendment and are dismissed.

The Eleventh Amendment also precludes Plaintiff's claims under Section 1983 for damages against New York State Attorney General Letitia James, who is a New York State official, in her official capacity. [6] *See, e.g., Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities.").

[6]    A plaintiff can sue a state official in his or her official capacity, notwithstanding the Eleventh Amendment, if the plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly

characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) ("[A]cts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court.") (*citing Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). Here, Plaintiff does not allege facts suggesting that James is committing an ongoing violation of federal law or indicate that he is seeking prospective injunctive relief against her.

### 2. Remaining Section 1983 Claims

In addition to the claims asserted against the named defendants, Plaintiff also brings claims under Section 1983 for which he does not name specific defendants. He asserts claims arising out of his residency at various shelters and his failure, at times, to obtain adequate housing. Plaintiff also asserts a number of claims arising out his detention at Rikers Island. The Court addresses those claims below.

#### a. Shelter conditions

Any claims that Plaintiff is asserting pursuant to Section 1983 that are based on shelter conditions and his failure to obtain adequate housing must be dismissed because there is no federal constitutional right to housing, including a shelter system. In *Lindsey v. Normet*, the Supreme Court held that there is no "constitutional guarantee of access to dwellings of a particular quality." 405 U.S. 56, 74 (1972). Furthermore, the government has no "obligation to provide adequate housing." *Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y Apr. 17, 2012) (internal quotation marks and citation omitted). Plaintiff's allegations about being sent to undesirable shelters where his property was stolen do not state a federal claim because there is no due process right to placement in a particular type of shelter under federal law or New York law. *See Lindsey*, 405 U.S. at 74 ("We are unable to perceive in [the Constitution] any constitutional guarantee of access to dwellings of a particular quality ... [a]bsent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial, functions"); *Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y 2009) ("The Plaintiff has no claim for deprivation of property without due process because he does not have a property right to placement in a particular type of shelter under New York law.")

#### b. Conditions of Confinement at Rikers Island

**\*13** Plaintiff describes a number of conditions that he was allegedly subjected to during his detention at Rikers Island after the April 28, 2023, arrest, including denial of food, freezing temperatures in his dorm, denial of adequate bedding, and placement in a dormitory where he was "jumped by the whole dorm for inquiring about his stolen food." (ECF 1, at 10 ¶ 17.)

The Court considers whether Plaintiff's assertions amount to claims that correction officials were deliberately indifferent to conditions during his confinement that posed a serious threat to his health or safety. As it appears that Plaintiff was a pretrial detainee during the events giving rise to his claims, the claims arise under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "[A] detainee's rights [under the Fourteenth Amendment] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

To state such a conditions-of-confinement claim, a plaintiff must satisfy two elements: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious to pose an unreasonable risk to his health or safety, and (2) a "mental" element, which requires a showing that a correction official acted with at least deliberate indifference to the challenged conditions. *Id.*

For the objective element, a pretrial detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.' " *Id.* at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks omitted).

For the subjective element, a pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The mere negligence of a correction official is not a proper basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1) Denial of food

To amount to a constitutional violation, a deprivation of food or nutrients must create a serious danger to the health of the inmate. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 683, 687 (1978) (holding in the context of the Eighth Amendment, a diet of fewer than 1,000 calories per day would be "intolerably cruel for weeks or months"); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (holding that placing plaintiff on a nutritionally inadequate restricted diet for fourteen days was likely to cause serious harm); *Dixon v. Fishkill Corr. Fac.*, No. 17-CV-1123 (NSR), 2019 WL 2866489, at *3 (S.D.N.Y. July 2, 2019) (plaintiff's allegations that he did not receive a meal for over 30 hours on three occasions during a single week and that the food he was served was nutritionally inadequate amounted to a substantial deprivation of food under the Eighth Amendment). [7]

[7] The objective prong of the deliberate indifference standard is the same under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Darnell*, 849 F.3d at 30.

**\*14** Courts in this Circuit have routinely held that an isolated denial of a meal "does not give rise to a constitutional deprivation." *Rush v. Fischer*, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013); *see also Pagan v. Quiros*, No. 11-CV-1134 (DJS), 2014 WL 1057016, at *6 (D. Conn. Mar. 18, 2014) (holding that denial of one meal "does not constitute a substantial or sufficiently serious deprivation of a basic human need.") (citations omitted); *Hankerson v. Nassau Cnty. Corr. Fac.*, No. 12-CV-5282 (SJF), 2012 WL 6055019, at *3 (E.D.N.Y. Dec. 4, 2012) (holding that the denial of one meal "does not give rise to a constitutional deprivation"); *Scarbrough v. Evans*, No. 11-CV-0131 (NAM) (DRH), 2012 WL 4364511, at *5 (N.D.N.Y. May 17, 2012) (holding that

the "denial of a single meal is insufficient to state a claim for relief") (citations omitted).

Plaintiff alleges that he did not receive a meal after his court appearance, but he does not allege any facts suggesting that the denial of this one meal posed a substantial risk of harm to him, or that correction staff acted intentionally or recklessly. *See Darnell*, 849 F.3d at 35. Because Plaintiff fails to plausibly allege an objectively serious deprivation that rises to the level of a constitutional violation, his claim of denial of a meal is dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2) Freezing dormitory

A prisoner's exposure to excessively hot or cold temperature may give rise to a constitutional violation. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (holding that a prisoner's exposure to "temperatures near or well below freezing for a five-month period" stated an Eighth Amendment claim); *Lopez v. Phipps*, No. 18-CV-3605, 2019 WL 2504097, at *7 (E.D.N.Y. June 17, 2019) ("[C]ourts in this Circuit have held that excessively hot or cold temperature may give rise to a constitutional violation."); *Wingate v. Robert N. Davoren Center*, No. 12-CV-5521 (ALC), 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013) ("Many courts, including the Second Circuit, have held excessively hot or cold conditions may be a constitutional violation.") (citation omitted). While there is no " 'bright-line durational or severity threshold' that a deprivation must meet," *Collins v. Fischer*, No. 15-CV-103 (KMK), 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018) (quoting *Darnell*, 849 F.3d at 32), courts have generally found that allegations of exposure to mildly cold temperatures, or where the exposure to cold was short term, did not support claims of a constitutional deprivation, *see Miller v. Netto*, No. 17-CV-0362, 2019 WL 4646973, at *9 (D. Conn. Sept. 24, 2019) (no constitutional violation based on pre-trial detainee's "expos[ure] to cold temperatures for at most, nineteen hours"); *Brims v. Ramapo Police Dep't*, No. 11-CV-712 (VB), 2011 WL 7101233, at *5 (S.D.N.Y. Dec. 23, 2011) ("Cases where plaintiffs have succeeded on those claims ... involve allegations of exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours."); *Stevens v. City of New York*, No. 10-CV-5455 (PGG), 2011 WL 3251501, at *4 & n.2 (S.D.N.Y. July 22, 2011) (no constitutional violation when plaintiff alleged that he "was housed in a cell with a broken

window – which was 'somewhat' covered by a garbage bag" for up to four days in mid-May).

Here, Plaintiff alleges that he was placed in a "perpetually freezing" dorm at Rikers Island "without adequate clothing and/or blankets," for one night and then he was transferred the next day. (ECF 1, at 10 ¶ 17.) The Court finds that he fails to plausibly allege an objectively serious deprivation that rises to the level of a constitutional violation. Plaintiff's alleged exposure to freezing temperature for such a short time without any facts suggesting that the conditions posed a risk to his health or that correction staff acted intentionally or recklessly, is not sufficient to allege a constitutional violation. Plaintiff's claim of exposure to the freezing temperatures at Rikers Island is dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3) Failure to protect

**\*15** Prison officials are required to take reasonable measures to guarantee the safety of prisoners, including protecting them from harm caused by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A pretrial detainee asserting a failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment must allege facts suggesting that the actual failure to protect was sufficiently serious, and that correction staff acted with at least deliberate indifference. *Darnell*, 849 F.3d at 29.

Here, Plaintiff does not allege facts sufficient to state a failure-to-protect claim. He alleges that during his detention at Rikers Island, he got into several fights with other detainees, and after being transferred to a new dormitory, he was "jumped" because he inquired about his stolen food. (ECF 1, at 10 ¶ 17.) Plaintiff also asserts his belief that correction staff intentionally placed him in danger while protecting the detainees who took his property and assaulted him. However, he does not name as a defendant any individual correction staff member who was personally involved in the alleged violations, nor allege any specific facts to support his conclusory contention that correction officers were intentionally protecting detainees who stole his property and fought him. Plaintiff also fails to allege facts suggesting that any correction staff member knew or should have known

that he would be attacked and failed to prevent it. Plaintiff therefore fails to state a failure-to-protect claim under Section 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Claims under 42 U.S.C. § 1981

42 U.S.C. § 1981 prohibits racial discrimination in, among other things, all contractual relationships. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 304 (1994). To state a claim of discrimination under Section 1981, a plaintiff must allege facts showing: "(1) [the] plaintiff[ ] [is a] member[ ] of a racial minority; (2) [the] defendant['s] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000). Accordingly, for a claim of discrimination under Section 1981, "it is insufficient to merely plead that race was a motivating factor in the discriminatory action." *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474, 2021 WL 1163797, at \*5 (S.D.N.Y. Mar. 25, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017-1018 (2020)). Instead, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019.

Plaintiff brings claims under Section 1981, repeatedly asserting that he was discriminated against on the basis of his race. He does not, however, provide any facts suggesting that his race was a motivating factor in any of the incidents he describes, much less that, "but for" his race, the events giving rise to this complaint would not have occurred. Because Plaintiff does not set forth facts in support of his claim of race discrimination, the Court finds he fails to state a claim of race discrimination under Section 1981. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### F. Claims under the FHA

The FHA, 42 U.S.C. § 3601, *et seq.*, "broadly prohibits discrimination in housing."[8] *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). To state a claim under the FHA, a plaintiff must plausibly allege that: (1) he was a member of a class protected by the FHA, and (2) he suffered an adverse housing action because of his membership in that protected class. *See Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (LBS), 2012 WL 3288240, at \*7 (S.D.N.Y. Aug. 6, 2012).

8    Plaintiff also brings claims under the Civil Rights Act of 1968, which is commonly known as the FHA. *See* 42 U.S.C. § 3601 *et seq.*

 **\*16**  Plaintiff cites to the provisions of the FHA and alleges that he was subjected to discrimination in housing because of his race. He describes several incidents where he was not provided a shelter bed, but none of his allegations suggests that he was subjected to discrimination in violation of the FHA. Because Plaintiff does not allege any facts plausibly suggesting that any of the defendants subjected him to discrimination or retaliation in housing on the basis of any impermissible factor, he fails to state a claim under the FHA. The Court therefore dismisses Plaintiff's claims under the FHA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### G. Claims under Criminal Statutes

Plaintiff attempts to assert numerous claims under the federal criminal code, including claims of conspiracy to violate his rights, interference with federally protected activities, and a hate crime under 18 U.S.C. §§ 241, 245, and 249 and the criminal RICO statute. Plaintiff, however, lacks standing to bring criminal charges or to initiate a criminal proceeding in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) 86-87 (1981). Nor can Plaintiff or the Court direct prosecuting attorneys to initiate a criminal proceeding, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims under the federal criminal code for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

### H. State Law Claims

Plaintiff asserts state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Because it is not clear whether Plaintiff can state a federal claim, the Court will determine at a later stage whether to

exercise supplemental jurisdiction over any state law claims Plaintiff asserts. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a claim for relief with respect to the alleged incident of excessive force at Manhattan Central Booking, the Court grants him 60 days' leave to amend his complaint to detail this claim. Plaintiff is only granted leave to amend this one claim, and any effort on his part to reassert the claims that have been dismissed may result in the dismissal of this entire action.

 **\*17**  Plaintiff is granted leave to submit an amended complaint providing more facts about his claim concerning the use of excessive force against him. First, Plaintiff must name as the defendant(s) in the caption [9] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. [10] The naming of John Doe defendants does *not*, however, toll the three-year statute of limitations period governing this action and Plaintiff is responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

9    The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

10   For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2023, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

   a) the names and titles of all relevant people;

   b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

   c) a description of the injuries Plaintiff suffered; and

   d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the complaint concerning the excessive force claim must be repeated in the amended complaint.

## CONCLUSION

The Court severs, under Rule 21 of the Federal Rules of Civil Procedure, Plaintiff's claims arising from events that occurred in Brooklyn, including Plaintiff's claims against Samaritan Daytop, Yvelyse Marrero, John McDonald, The Doe Fund, Rogers Avenue HDFC, Lawrence McKenzie, David Bell, and Milton E. Calderon, and transfers those claims to the United States District Court for the Eastern District of New York. 28 U.S.C. § 1404(a).

The Court dismisses Plaintiff's claims against the State of New York, Attorney General James, Project Renewal, Edward I. Geffner, Leticia Randal, Robert Lashley, New York City Department of Correction, DOC Commissioner Louis A. Molina, Police Officer Joshua Maye, and Police Officer Raheen Rivers, for failure to state a claim and seeking monetary relief from defendants that are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

Plaintiff is granted leave to file an amended complaint with respect to his excessive force claim at Manhattan Central Booking that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Second Amended Complaint," and label the document with docket number 23-CV-3969 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, this action will be dismissed for failure to state a claim upon which relief may be granted. All other pending matters in this case are terminated.

 **\*18**  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____CV_____
(Include case number if one has been assigned)

Write the full name of each plaintiff.

-against-

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**I.   LEGAL BASIS FOR CLAIM**

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other:

**II.   PLAINTIFF INFORMATION**

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name          Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                          State                Zip Code

**III.   PRISONER STATUS**

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

Page 2

**IV.   DEFENDANT INFORMATION**

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Page 3

V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____
_____
_____
_____
_____

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment,
if any, you required and received.

_____
_____
_____
_____
_____
_____

VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____
_____
_____

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| First Name | Middle Initial | Last Name |
| Prison Address | | |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

**All Citations**

Slip Copy, 2024 WL 37073

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]  The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id*. at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id*. at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id*.) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]  "A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all
purposes." Fed. R. Civ. P. 10(c); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
1991) ("the complaint is deemed to include any
written instrument attached to it as an exhibit or
any statements or documents incorporated in it by
reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id*.)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 103 of 197

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id*.)

3        Plaintiff's references to "his attorney" in the
         Complaint appear to relate to his representation in
         certain criminal matters. Plaintiff has indicated to
         the Court that he is proceeding *pro se* in this matter.
         (Dkt. No. 1 at 1.)

 **\*2**  Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id*.) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id*.)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id*. at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id*.)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id*.) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id*.) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id*. at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id*. at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

4        Section § 1915(g) prohibits a prisoner from
         proceeding *in forma pauperis* where, absent a
         showing of "imminent danger of serious physical
         injury," a prisoner has filed three or more actions
         that were subsequently dismissed as frivolous,
         malicious, or failing to state a claim upon which
         relief may be granted. *See* 28 U.S.C. § 1915(g).
         The Court has reviewed Plaintiff's litigation history
         on the Federal Judiciary's Public Access to Court
         Electronic Records ("PACER") Service. *See* http://
         pacer.uspci.uscourts.gov. It does not appear from
         that review that Plaintiff had accumulated three

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 104 of 197

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

[5]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy— all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

[6]     The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5**  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

[7]     Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

## C. Claims Against Defendants Sharp and Soares

### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolutely immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 107 of 197

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.3d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

[8]    The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

\*7  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.3d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y.

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9] Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10] Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 109 of 197

**Gentry v. New York, Not Reported in Fed. Supp. (2021)**

2021 WL 3037709

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

 *9  It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]   Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]   See also *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]    As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11  ACCORDINGLY**, it is

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3037709

---

**Gentry v. New York, Not Reported in Fed. Supp. (2021)**

2021 WL 3032691

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 112 of 197

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear-error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a clear-error
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order to
        accept the recommendation." *Id.*; *see also Batista
        v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
        (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
        permitted to adopt those sections of [a magistrate
        judge's] report to which no specific objection is
        made, so long as those sections are not facially
        erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

**\*2** **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 113 of 197

**Gentry v. New York, Not Reported in Fed. Supp. (2021)**
2021 WL 3032691

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3032691

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 114 of 197

Hernandez v. Llukaci, Not Reported in Fed. Supp. (2019)

2019 WL 1427429

2019 WL 1427429
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jose L. HERNANDEZ, Plaintiff,

v.

L. LLUKACI, Sergeant, Special Investigator, ID #
0582, Syracuse Police Department; E. Braun, Special
Investigator, ID #001, Syracuse Police Department; J.
Cinque, Special Investigator, ID # 047, Syracuse Police
Department; and Scott Henderson, Special Investigator,
ID # 0244, Syracuse Police Department, Defendants.

5:16-CV-1030
|
Signed 03/29/2019

**Attorneys and Law Firms**

JOSE L. HERNANDEZ, Plaintiff pro se, 17-B-2751, Attica
Correctional Facility, Box 149, 639 Exchange Street, Attica,
NY 14011.

OF COUNSEL: TODD M. LONG, ESQ., ERICA T.
CLARKE, ESQ., Ass'ts Corporation Counsel, CITY
OF SYRACUSE CORPORATION COUNSEL, 233 East
Washington Street, Room 300 City Hall, Syracuse, NY
13202, Attorneys for Defendants.

## MEMORANDUM–DECISION and ORDER

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiff Jose L. Hernandez ("Hernandez" or "plaintiff"),
who is currently incarcerated at Attica Correctional Facility,
has filed this pro se civil rights action against four City
of Syracuse Police Department ("SPD") officers including
L. Llukaci, Sergeant, Special Investigator, ID # 0582,
SPD ("Sgt. Llukaci"); E. Braun, Special Investigator, ID
#001, SPD ("Det. Braun"); J. Cinque, Special Investigator,
ID # 047, SPD ("Off. Cinque"); and Scott Henderson,
Special Investigator, ID # 0244, SPD ("Det. Henderson")
(collectively "defendants" or "defendant officers"). The
operative complaint alleges that the defendant officers'
conduct in connection with Hernandez's April 27, 2016 arrest
and subsequent prosecution, violated his rights under the
United States Constitution and New York law. Plaintiff seeks

relief pursuant to 42 U.S.C. § 1983 and seeks compensatory
damages along with dismissal of all criminal proceedings
against him.

The parties have engaged in discovery and defendants now
collectively move for summary judgment pursuant to Federal
Rule of Civil Procedure ("Rule") 56 and for judgment on
the pleadings pursuant to Rule 12(c) dismissing plaintiff's
Complaint in its entirety. Plaintiff opposed and defendants
replied. Plaintiff later filed an untimely additional "response,"
which in light of his pro se status will be considered. The
motion was considered on the basis of the submissions and
without oral argument.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from
the Statement of Material Facts Not In Dispute ("SMF")
defendants have submitted in connection with their summary
judgment motion. Because Hernandez has controverted none
of the facts contained in defendants' statement, they are
"deemed admitted" to the extent the evidentiary record
supports them. Giannullo v. City of N.Y., 322 F.3d 139, 140
(2d Cir. 2003). [1]

[1]    While plaintiff, without permission, submitted a
late "Statement of Material Fact," this submission
does not alter the uncontroverted material facts in
defendants' SMF. Hernandez's submission does not
respond to defendants' SMF as required and merely
states the following two facts: (1) that he was taken
to the police station by defendants, and (2) that he
was subdued by Officer Cinque and Det. Braun
who performed a forcible cavity search to get drugs
from him. This second "fact" is not supported by
reference to anything in the record.

### A. Initial Apprehension of Hernandez

On April 27, 2016, officers with the SPD in conjunction with
the Special Investigations Division ("SID") Narcotics section
of SPD, were involved in a drug investigation at a parking
lot at 220 South Geddes Street, Syracuse, New York. SMF
¶ 1. The Geddes Street parking lot had been identified by
SPD as a common meeting location for the sale, purchase,
and possession of illegal narcotics. ¶ 2. This operational
detail was to interdict street level narcotics transactions and/or
possession at the Geddes Street parking lot (the "Operation").
¶ 3. During all relevant times, Det. Henderson was a plain

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 115 of 197

Hernandez v. Llukaci, Not Reported in Fed. Supp. (2019)
2019 WL 1427429

clothes SPD detective assigned to monitor for illegal narcotics activity at the Geddes Street parking lot. ¶ 4.

**\*2**  At 1:00 p.m. on the date of the incident, Det. Henderson observed a black Dodge Caliber driven by a white female, later identified as Jacqueline Hess ("Hess"). The Caliber parked in an outer area of the Geddes Street parking lot, roughly 200 yards away. ¶ 5. Ten minutes later, an unidentified Hispanic male, later identified as plaintiff, approached Hess's vehicle on foot. ¶ 6. Plaintiff made what Det. Henderson believed to be a hand-to-hand drug transaction with the female through the driver's side window where she was seated. ¶ 7. Det. Henderson had a clear view of plaintiff, who was wearing a gray hooded sweatshirt, as he approached Hess's vehicle. ¶ 8. Hernandez then entered a red Chevrolet Traverse which was later identified to have been operated by Lydell Killings ("Killings' vehicle"). ¶ 9.

Det. Henderson then advised nearby officers via radio transmission about the drug transaction he witnessed. ¶ 10. He transmitted the physical description of the then-unidentified Hispanic male and advised units to pursue Killings' vehicle. ¶ 11. Off. Cinque, who was assigned to SID that day, assisted after receiving Det. Henderson's radio transmission. ¶ 12. Off. Cinque was in an unmarked SPD vehicle with Det. Braun. ¶ 13. Det. Henderson directed Off. Cinque and Det. Braun to stop Killings' vehicle. ¶ 14.

Killings' vehicle proceeded to drive to Burger King at 955 West Genesee Street, Syracuse. Off. Cinque and Det. Braun followed the vehicle. After Killings' vehicle arrived at Burger King, Off. Cinque and Det. Braun, along with several other SPD units, conducted a traffic stop of Killings' vehicle in the Burger King parking lot. ¶ 16.

Off. Cinque and Det. Braun approached Killings' vehicle, with badges displayed and wearing ballistic vests marked "POLICE." ¶ 17. Off. Cinque approached plaintiff because he matched the physical description provided by Det. Henderson of the Hispanic male that engaged in the drug transaction in the Geddes Street parking lot. ¶ 18. Off. Cinque asked plaintiff to exit Killings' vehicle so he could be interviewed. ¶ 19. Plaintiff complied and while outside of the vehicle he was patted down and placed in handcuffs for officer safety. ¶ 20. Nothing was discovered as a result of the pat down.

Hernandez was at all times cooperative. ¶ 20. He was escorted away from the vehicle so officers could speak to him separately from the two other people the vehicle. ¶ 22. After

being asked if he possessed any drugs, plaintiff ultimately admitted that he had secreted crack cocaine ("crack") between his butt cheeks, or as plaintiff described it: "cheeked it." ¶ 23. By using the phrase "cheeked it," Off. Cinque believed Hernandez to mean he had placed the crack in the area of his buttocks beneath his clothes. Plaintiff volunteered to retrieve the drugs manually for police, which were easily accessible to him toward the back of his pants. ¶ 25.

Meanwhile, Det. Henderson had followed Hess's vehicle after it left the Geddes Street parking lot, and soon thereafter performed a traffic stop of the vehicle. ¶ 27. Hess identified herself and admitted to having purchased $50 worth of crack from the individual who would later be identified as Hernandez. ¶ 28. She surrendered her purse and the drugs inside to Det. Henderson. ¶ 29. The crack Hess purchased from plaintiff was identified and tested positive as crack cocaine. ¶ 30.

### B. Hess's Show-up Identification of Hernandez

Hess was then transported to Hernandez's location in the Burger King parking lot at approximately 1:39 p.m. ¶ 31. She positively identified Hernandez as the individual who sold her the crack she had surrendered to Det. Henderson. ¶ 32. In her signed statement, she indicated that she purchased the crack from a person she knew to have the nickname "City." ¶ 33. Hess also indicated in her signed statement that when she positively identified plaintiff during the show-up identification in the Burger King parking lot, she recognized him as the same individual she knew as "City." ¶ 34. Hernandez acknowledges that "City" is his nickname. ¶ 35.

### C. Hernandez Volunteers Crack to Defendant Officers

**\*3**  Sgt. Llukaci, who monitored and oversaw the activities of Det. Braun and Off. Cinque during this Operation, overheard Hernandez admit to investigating officers in the Burger King parking lot that he had secreted the crack cocaine between his buttocks, he was capable of obtaining it, and was willing to retrieve it on his own. ¶ 37.

Sgt. Llukaci instructed Det. Braun and Off. Cinque to transport Hernandez to the SPD's Public Safety Building ("PSB") to allow him to remove the drugs and turn them over to police. ¶ 38. Hernandez indicated he could remove the crack without assistance because it was not within his rectum, but was actually easily accessible for retrieval toward the back of his pants. The crack was not retrieved at the Burger King

parking lot as Sgt. Llukaci preferred Hernandez retrieve the crack in a private and secure environment at the PSB. ¶ 39.

Hernandez was then transported by Off. Cinque and Det. Braun to the PSB. ¶ 36. The officers brought plaintiff to a secure interview room at the PSB. The room was private and a controlled setting, it had no windows, only one door into the room, and was well lit. ¶ 40. Hernandez, Off. Cinque, and Det. Braun were the only individuals in the room at the time of the retrieval. ¶ 41.

In the interview room, maintaining he could retrieve the crack himself, Hernandez—with no assistance or interference—voluntarily retrieved the drugs from the back of his pants and/or buttocks area with his hands and placed the drugs in an evidence bag. ¶ 42. He was at no point disrobed. ¶ 43. At no point did either Off. Cinque or Det. Braun themselves retrieve the crack cocaine. ¶ 44. Nor did Off. Cinque or Det. Braun perform any form of a strip search or any anal cavity search of plaintiff. ¶ 45. Off. Cinque and Det. Braun never touched Hernandez's naked buttocks or anus in the interview room. ¶ 46. Plaintiff removed the crack cocaine from his own person, by himself, without police assistance or directives. ¶ 47. The drugs handed over by Hernandez tested positive for crack cocaine, with an aggregate weight equaling no less than 35 doses. ¶ 48.

### D. Hernandez's Meeting with Det. Henderson

After plaintiff retrieved the drugs and they were placed into evidence, he requested to speak with the lead detective responsible for the investigation, who was Det. Henderson. ¶ 49. Hernandez, in an attempt to have the potential drug charges dropped against him, wanted to negotiate the drop of an illegal handgun to SPD. ¶ 50. However, Det. Henderson had no interest in plaintiff's proposed arrangement. ¶ 51. Hernandez was eventually escorted from the PSB and lodged at the Onondaga County Justice Center.

### E. Indictment and Pre-trial Proceedings

Hernandez was charged with Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16), Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), and Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). ¶ 64. He was subsequently indicted by an Onondaga County grand jury on all of the above-mentioned charges along with

an additional count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16). ¶ 65.

**\*4** A suppression hearing in the criminal case was later held in Onondaga County Court before Judge Robert L. Bauer ("Judge Bauer") prior to trial. ¶ 66. At the suppression hearing, Det. Henderson, Det. Braun, and another detective who also part of the Operation, testified on behalf of the State of New York (the "People"). Det. Henderson's police report was entered into evidence. ¶ 68.

Hernandez's attorney was provided an opportunity to cross-examine each witness. ¶ 69. Hernandez admits he had the opportunity to testify on his own behalf in support of suppression at the hearing, but waived it upon the advice of counsel. ¶ 70. Judge Bauer ruled that the People had met their burden in establishing that the pursuit and stop of Killings' vehicle, Hernandez's arrest, and the search incident to his lawful arrest were legal and admissible at trial. ¶ 71.

Judge Bauer specifically ruled, with respect to the recovery of the drugs from Hernandez in this case, that:

> The Court is of the opinion that based upon the officers' observations, coupled with reliable information from the customer in conjunction with the defendant's statements that he has cocaine on his person and that he "cracked it" [sic] provided probable cause to arrest and conduct a search incident to such lawful arrest. Where a defendant's arrest is supported by probable cause, evidence discovered during the search of his person incident to that arrest is clearly admissible (see, People v. Rendon, 273 A.D.2d 616). The fact that police asked and the defendant agreed to retrieve the drugs from his buttocks is of no moment and does not invalidate the basis upon which the defendant was searched.

Id. ¶ 72.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 117 of 197

Hernandez v. Llukaci, Not Reported in Fed. Supp. (2019)

2019 WL 1427429

Moreover, Judge Bauer deemed the show-up identification procedure and Hess's identification of Hernandez to be valid and admissible at trial. ¶ 73. Judge Bauer further concluded that Det. Braun's questioning at the scene was not in need of a Miranda warning because, given the facts, the questions posed by Det. Braun were investigatory and not accusatory in nature. This was in contrast to the questions by Det. Henderson at the PSB, when Hernandez was in custody and Miranda warnings were required. ¶ 74. Accordingly, Judge Bauer denied in large part Hernandez's motion to suppress. ¶ 75.

### F. Hernandez's Trial and Conviction

Hernandez waived his right to a jury trial. He had a three day bench trial from August 21 through August 23, 2017 before Judge John J. Brunetti, A.S.C.J. ("Judge Brunetti"). ¶ 76. All of the officer defendants in this case, except for Sgt. Llukaci, testified at that trial, along with Hess, Hernandez, and others. ¶ 77.

Following the bench trial, plaintiff was convicted of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16). ¶¶ 78, 80. The charges of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16) were dismissed as lesser included and redundant offenses. ¶ 79. Defendants however have failed to mention that Hernandez was acquitted of Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09).

Hernandez was sentenced on September 15, 2017 to eight years with three years post-release supervision on each count to run concurrent with each other and consecutive to parole. ¶ 81. He filed a Notice of Appeal relative to his conviction on September 15, 2017. ¶ 82. According to defendants, Hernandez's appeal was not and has not been perfected by the filing of any brief. ¶ 83.

### III. LEGAL STANDARDS

#### A. Rule 12(c)

 **\*5** Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Granting such a motion "is appropriate where material facts are undisputed and where a judgment on the merits is possible

merely by considering the contents of the pleadings." Sellers v. M.C. Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). "The standard for addressing a Rule 12(c) motion ... is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Thus, a complaint should be dismissed if it fails to "contain sufficient factual matter ... to 'state a claim that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ).

On the other hand, if the factual allegations "raise a right to relief above the speculative level," the complaint should not be dismissed. Twombly, 550 U.S. at 544. In a 12(c) motion, however, the court may consider "the complaint, the answer, [and] any written documents attached to them." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011). "The granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." Prowley v. Hemar Ins. Corp. of Am., No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010).

#### B. Rule 56

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c) ); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 118 of 197

Hernandez v. Ilukaci, Not Reported in Fed. Supp. (2019)
2019 WL 1427429

must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. DISCUSSION

Plaintiff contends the defendant officers violated his civil rights by unlawfully arresting and searching him, including conducting a body cavity search, questioning him without informing him of his constitutional rights, and offering false statements and fabricated evidence in connection with the criminal prosecution against him.

**\*6** He seeks relief under section 1983, which provides a cause of action against a state actor who has effected "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Hernandez asserts claims under § 1983 for: (1) illegal search and seizure, (2) violation of his Miranda rights and right to counsel, (3) false arrest, (4) malicious prosecution, and (5) deprivation of his right to a fair trial.

### A. Illegal Search and Seizure

Hernandez alleges defendants unlawfully searched and seized him in the Burger King parking lot and at the PSB in violation of his Fourth Amendment rights. This includes an alleged "body cavity search" at the PSB. Defendants argue this claim must be dismissed because plaintiff is collaterally estopped from relitigating the search and seizure based on the state court suppression hearing. Moreover, defendants deny that any officer performed a body cavity search of plaintiff; instead, he volunteered to remove the crack cocaine himself.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place

to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In so much as this claim arises from an illegal seizure of plaintiff, that claim is properly asserted within plaintiff's false arrest claim and is discussed below. See, e.g., Ivery v. Baldauf, 284 F. Supp. 3d 426, 434 (W.D.N.Y. 2018) ("Based on the facts alleged, the false-arrest and illegal-seizure claims are properly asserted in a single count, inasmuch as they both arise from the same rights guaranteed by the Fourth Amendment.").

With regard to any illegal search of plaintiff, including an alleged body cavity search at the PSB, he is precluded from arguing that issue now because the exact issues were decided in state court. "The doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Sahni v. Legal Servs. of the Hudson Valley, No. 14-CV-1616, 2015 WL 4879160, at *3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of N.Y., 377 F.3d 200, 205 (2d Cir. 2004).

Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Austin v. Downs, Rachlin & Martin, 270 F. App'x 52, 53–54 (2d Cir. 2008) (summary order). Similarly, under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002).

**\*7** Hernandez had a full and fair opportunity to litigate whether his Fourth Amendment rights were violated at the state court suppression hearing. Judge Bauer concluded that Hernandez had volunteered the crack cocaine to the defendant officers, and that the search incident to his lawful arrest was legal and admissible. Plaintiff was subsequently convicted and does not now argue that his convictions have been overturned.

Hernandez v. Ilukaci, Not Reported in Fed. Supp. (2019)

2019 WL 1427429

Accordingly, plaintiff's illegal search and seizure claim will be dismissed.

### B. Fifth and Sixth Amendment Rights

Hernandez claims defendants questioned him without informing him of his constitutional rights. Defendants argue this claim must be dismissed because plaintiff has no remedy for any alleged Miranda violation and he did in fact have counsel.

First, no cause of action exists under 42 U.S.C. § 1983 for Miranda violations. See, e.g., Chavez v. Martinez, 538 U.S. 760, 767 (2003). Instead, the remedy for a failure to provide appropriate Miranda warnings is a suppression of the evidence that resulted from the violation. Deshawn E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998). Accordingly, plaintiff cannot state a claim pursuant to § 1983 for any alleged failure to receive Miranda warnings.

Second, any claim that Hernandez was deprived of his Sixth Amendment right to counsel is also without merit. "The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.'" McZorn v. Endicott Police Dep't, No. 3:06-CV-33, 2008 WL 163581, at *8 (N.D.N.Y. 2008) (McAvoy, S.J.) (quoting Texas v. Cobb, 532 U.S. 162, 167 (2001) ). "A defendant's Sixth Amendment right to counsel attaches 'only at or after the time that adversary judicial proceedings have been initiated against him.'" McZorn, 2008 (quoting Kirby v. Illinois, 406 U.S. 682, 688 (1972) ). Under New York law, "a criminal proceeding, and the right to counsel, is initiated or commenced by the filing of an accusatory instrument." Brown v. Martin, No. 98-CV-64, 2004 WL 1774328, at *5 (W.D.N.Y. Aug. 6, 2004) (citing People v. Blake, 35 N.Y.2d 331, 339 (1974) ); see also Deshawn E., 156 F.3d at 349.

Hernandez fails to plead that he was without counsel at the time criminal proceedings had been initiated. Instead, the undisputed facts establish that at the time Off. Cinque and Det. Braun questioned plaintiff both in the Burger King parking lot and at the PSB, plaintiff had not yet been charged and thus did not have a Sixth Amendment right to counsel at that time. He was charged after his transport from the PSB. Moreover, it is undisputed that Hernandez was represented by court appointed counsel throughout the duration of his state court criminal proceedings.

Therefore, any claim that plaintiff was denied his Fifth or Sixth Amendment rights will be dismissed.

### C. False Arrest

Hernandez contends his warrantless April 27, 2016 roadside arrest was unlawful. Defendants argue plaintiff's false arrest claim should be dismissed as a matter of law because he was arrested with probable cause and convicted.

Claims for "false arrest" and "false imprisonment" are "synonymous" under New York law, and both are "substantially the same" as a § 1983 claim for false arrest. Jackson v. City of N.Y., 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013). "Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). Probable cause is a complete defense to claims for false arrest, and "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).

**\*8** Hernandez was initially charged under New York Penal Law with five drug sale and possession charges and a sixth charge was later added. He was ultimately convicted, following a bench trial, of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1) ) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1) ). He was acquitted on one of the charges and the remaining charges were dismissed as lesser included offenses. Because plaintiff was convicted of the offenses for which he was arrested, his convictions are "conclusive evidence of the good faith and reasonableness of the officers' belief in the lawfulness of the arrest." Cameron, 806 F.2d at 388.

With respect to the count for which Hernandez was acquitted, Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), there was without a question probable cause to arrest him for this crime. Under section 220.09-01, "[a] person is guilty of criminal possession of a controlled substance in the fourth degree when he knowingly and unlawfully possesses: 1. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more."

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 120 of 197

Hernandez v. Ilukaci, Not Reported in Fed. Supp. (2019)

2019 WL 1427429

Defendants had probable cause to arrest Hernandez for this crime based on Hess's admission and the show-up identification of Hernandez. An "eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances." Candelario v. City of N.Y., No. 12 Civ. 1206, 2013 WL 1339102, at *5 (S.D.N.Y. Apr. 3, 2013), aff'd, 539 F. App'x 17 (2d Cir. 2013) (summary order). This includes show-up procedures for identifying the plaintiff by the putative victim or eyewitness. See Hargroves v. City of N.Y., 411 F. App'x 378, 383 (2d Cir. 2011) (summary order). The state court found Hess's identification valid and admissible. Plaintiff's false arrest claim fails on the basis of his convictions and the existence of probable cause for the charge he was acquitted of.

Accordingly, Hernandez's claim for false arrest will be dismissed.

### D. Malicious Prosecution

Hernandez contends he was maliciously prosecuted by defendants, who offered false statements and fabricated evidence in connection with the criminal prosecution against him in state court. Defendants argue plaintiff's malicious prosecution claim should be dismissed because he was indicted and convicted without any evidence of malice.

"Claims of malicious prosecution arising under Section 1983 are governed by the same standard applied under state law." Frederique v. Cty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (citing Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) ). To prevail on a claim of malicious prosecution, a plaintiff must establish: (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice. Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003).

It is undisputed Hernandez was convicted of two drug charges at the conclusion of a three day bench trial in state court. The remaining, lesser included and redundant offenses were dismissed. Therefore he cannot establish that the prosecution terminated in his favor on those charges.

Even if plaintiff attempted to base his malicious prosecution claim solely on the one charge he was acquitted of, he has failed to establish malice. To survive summary judgment, a plaintiff must elicit evidence "showing ... some deliberate

act punctuated with awareness of conscious falsity to establish malice." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (internal quotations omitted). Hernandez's conclusory allegations of malice are not supported by facts in the record; he fails to put forth any evidence that any of the officer defendants acted with malice in conveying the information known to them to the prosecutor or in signing any of the charging documents.

**\*9** For these reasons, Hernandez's claim for malicious prosecution will be dismissed.

### E. Right to a Fair Trial

Hernandez offers the same bare allegations with respect to his right to a fair trial claim as he does on his malicious prosecution claim: that defendants offered false statements and fabricated evidence in connection with the criminal prosecution against him.

"The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, [and] Fourteenth Amendments of the U.S. Constitution." Ying Li v. City of N.Y., 246 F. Supp. 3d 578, 627 (E.D.N.Y. 2017) (citing Holbrook v. Flynn, 475 U.S. 560 (1986) ); see also Jeanty v. City of Utica, No.16-CV-0966, 2017 WL 6408878, at *3 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.) (finding that denial of the right to a fair trial through the creation of fabricated evidence forwarded to the prosecutor is properly a claim for denial of procedural due process). "Fabrication of evidence constitutes a violation of the right to a fair trial." Thomas v. City of Troy, 293 F. Supp. 3d 282, 295 (N.D.N.Y. 2018) (Suddaby, C.J.). "[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." Zahrey v. Coffey, 221 F.3d 342, 344 (2d Cir. 2000).

"To state a claim of fabrication of evidence, a plaintiff must allege that 'an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' " Ying Li, 246 F. Supp. 3d at 628 (quoting Garnett v. Undercover Officer C0039, 838 F.3d 265, 280 (2d Cir. 2016) ).

As with his malicious prosecution claim, Hernandez has provided unspecified and unsubstantiated allegations of fabricated evidence and false statements along with conclusory allegations. He has failed to rebut defendants' showing, through affidavits or otherwise, that there is a material issue of fact for trial.

Accordingly, plaintiff's right to a fair trial claim will be dismissed.

### F. Remaining Federal Issues

To the extent Hernandez attempts to plead a retaliation claim, he has failed to plead or allege facts that he was retaliated against. With respect to any possible conspiracy claim, he has failed to allege a class-based motive for any alleged conspiracy. Nor can plaintiff maintain a claim for municipal liability against the City of Syracuse pursuant to Monell v. Department of Social Services, 436 U.S. 658, 694–95 (1978), as all claims against the individual officers will be dismissed. Finally, there is no need to consider whether the defendant officers are entitled to qualified immunity because they are entitled to judgment as a matter of law on the merits of Hernandez's § 1983 claims.

### G. State Law Claims

In his Complaint, Hernandez alleges state law claims including intentional infliction of emotional distress, false imprisonment, negligent hiring and supervision, violations of the New York State Constitution, and violations of "New York State Tort Law." Defendants argue plaintiff's state law claims should be dismissed for non-compliance with New York General Municipal Law section 50 and the Charter of the City of Syracuse.

**\*10** Under New York law, a notice of claim is a condition precedent to file a tort claim against a public corporation, N.Y. Gen Mun. § 50–e, and against police officers acting within the scope of their employment. Faccio v. Eggleston, No. 1:10-CV-783, 2011 WL 3666588, at \*15 (N.D.N.Y. 2011) (citing

N.Y. Gen. Mun. § 50–j; LaGrange v. Ryan, 142 F. Supp. 2d 287, 295 (N.D.N.Y. 2001) ). Plaintiff concedes he did not file a notice of claim as required by law nor comply with the applicable provisions of Charter of the City of Syracuse.

Accordingly, any and all state law claims will be dismissed.

## V. CONCLUSION

The officer defendants have sustained their initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of plaintiff's claims. In return, plaintiff has failed to show, through affidavits or otherwise, that there is a material issue of fact for trial. Even resolving any ambiguities and drawing all inferences from the facts in a light most favorable to Hernandez, a full review of the record reveals insufficient evidence for a rational trier of fact to find in his favor. Accordingly, defendants' motion for summary judgment will be granted and plaintiff's Complaint will be dismissed in its entirety.

Therefore, it is

ORDERED that

1. Defendants L. Llukaci, E. Braun, J. Cinque, and Scott Henderson's motion for summary judgment and/or judgment on the pleadings pursuant to Federal Rules of Civil Procedure 56 and 12(c) is GRANTED; and

2. Plaintiff's Complaint is DISMISSED in its entirety.

The Clerk is directed to file a judgment accordingly and close the file.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2019 WL 1427429

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 122 of 197

2022 WL 16646531

2022 WL 16646531
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,

v.

Dinah M. CROSSWAY, Esq., et al., Defendants.

No. 1:22-CV-500 (BKS/CFH)
|
Signed November 3, 2022

**Attorneys and Law Firms**

James P. Scott, 8815 Frostwood Court, Tampa, Florida 33634, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se James P. Scott ("plaintiff") purported to commence this action on May 13, 2022, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing.[1]

[1]     Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

**II. Initial Review**

**A. Legal Standard**

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to

determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

[2]     The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of

2022 WL 16646531

the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

**\*2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or
> defenses in numbered paragraphs,
> each limited as far as practicable to
> a single set of circumstances. A later
> pleading may refer by number to
> a paragraph in an earlier pleading.
> If doing so would promote clarity,
> each claim founded on a separate
> transaction or occurrence – and each
> defense other than a denial – must be
> stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Complaint**

Plaintiff purports to bring this action against Dinah M. Crossway, Esq., ("Attorney Crossway") Counsel for the New York State Department of Motor Vehicles ("DMV");

"Unknown State Actors" in the DMV; and Judge Frank P. Milano of the New York State Court of Claims. Compl. at 2. In 2017, while residing in Florida, plaintiff was informed by the Florida DMV that his driver's license was being temporarily suspended because of "an ineligible status reported to the National Driver Registry" by the New York State DMV's Driver Improvement Unit. Id. at 3. Plaintiff was told that his Florida license would be suspended until New York State removed the ineligible status. See id. Plaintiff "had not driven in [New York] since the year 2005 and had no knowledge of any issues regarding his [New York] driving privileges." Id. Plaintiff "file[d] an Order to Show Cause and Verified Petition in Albany County Supreme Court seeking primary relief of the removal of the hold in the National Driver Registry [and] ... requested secondary relief of monetary damages in the proceeding." Id. Plaintiff submitted a "certified letter" to the DMV "demanding it remove the hold under his name in the National Driver Registry. Plaintiff enclosed a copy of his Florida Driving Abstract certified by the Director of Motor Vehicles in the State of Florida." Id. at 4. Plaintiff states that, "[t]his abstract, which is the only valid driving record in this case, did not show any driving infractions in [New York] after the year 2005." Id.

**\*3** On an unspecified date, prior to or during an Article 78 proceeding, plaintiff contends that "Unknown State Actors" in the DMV falsified documents related to his driving record "for the purpose of inducing the court to dismiss the petition for relief." Compl. at 3-4. "The [ ] Article 78 proceeding Decision and Order denied the state agency's motion to dismiss and [p]laintiff's secondary relief for monetary damages with the Supreme Court citing its lack of jurisdiction to award in the special proceeding." Id. at 3. Plaintiff asserts that during the Article 78 proceeding, Attorney Crossway "committed the act of civil fraud by providing false statements and falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving records ... for the purpose of inducing the court to dismiss [p]laintiff's petition for relief." Id. at 4. Attorney Crossway "provided affirmations in the Article 78 stating that she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them." Id. Plaintiff contends that Attorney Crossway was "aware that [p]laintiff did not have any court cases, open revocations or relicensing applications in [New York] when she made these false statements." Id.

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

"The case ended in a final Judgment entered on April 15, 2019, with [p]laintiff prevailing. The Supreme Court ordered the Driver Improvement Unit to restore [p]laintiff's [New York] driving privileges forthwith. On May 15, 2019, the state agency's appeals period expired and it restored [New York] driving privileges." Compl. at 3. "Plaintiff served Notice of Intention to File Claim on the [New York State] Attorney General's Office on April 26, 2019, 11 days after the final Judgment was entered. The Claim itself was not filed until the state agency complied with the court order to remove the hold from the National Driver Registry." Id.

In adjudicating plaintiff's Court of Claims case, he asserts that Judge Milano "violated [p]laintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions against him." Compl. at 4. Judge Milano's "Decision and Order did not decide on the arguments brought forth by the defense in its motion to dismiss but instead was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over." Id. at 5. Plaintiff states that Judge Milano's decision contradicted the Supreme Court's "Judgment determining the state agency's actions to be arbitrary and capricious and an error of law. Judge Milano did not address any of the issues settled by the Supreme Court." Id. He also asserts that "[t]he Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. Plaintiff contends that prior to filing the present complaint, he "exhausted all remedies in [New York State] courts by appealing Judge Milano's Decision and Order to the Third Department and motioning for leave to appeal in the Court of Appeals." Id.

Plaintiff seeks four million dollars "for the wrongful deprivation of his property and for civil fraud committed by the unknown state actors and their counsel Dinah M. Crossway, Esq." Compl. at 6. Plaintiff "does not request relief in the form of monetary damages from Honorable Frank P. Milano in this complaint, but instead asks the Court for relief of all orders made in violation of law, that due process be allowed, and the Court issue further relief as it deems appropriate." Id.

### C. Analysis

Plaintiff's complaint can be construed as raising Fourteenth Amendment substantive and procedural due process claims brought pursuant to 42 U.S.C. § 1983.

### 1. The Rooker-Feldman Doctrine

As an initial matter, the Court lacks subject matter jurisdiction over the claims against Judge Milano under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998). For the Rooker-Feldman doctrine to apply: (1) "the federal-court plaintiff must have lost in state court[ ]"; (2) "the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[ ]"; (3) "the plaintiff must invit[e] district court review and rejection of [that] judgment[ ]"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced[.]" Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (citations and quotation marks omitted).

*4 All four elements are met here: (1) plaintiff's claim seeking monetary damages for the DMV's actions in the Court of Claims was dismissed by Judge Milano—i.e., he "lost" in state court; (2) plaintiff states that he was "wrongfully denied" the opportunity to seek compensation for the DMV's actions because of the dismissal; (3) he asks this Court for relief from "all orders made in violation of law [and] that due process be allowed"; and (4) Judge Milano's decision was rendered prior to plaintiff filing the present action. Compl. at 6; see also Scott v. State of New York, No. 2019-041-061, slip op. at 1-4 (Ct. Cl. Sept. 30, 2019). [3] Accordingly, the Court is barred from reviewing plaintiff's complaint against Judge Milano and it is recommended that the claim against Judge Milano be dismissed without prejudice. See Fraccola v. Grow, 670 F. App'x 34, 35 (2d Cir. 2016) (summary order) (internal citation omitted) ("The Rooker-Feldman doctrine precludes district court review as a matter of subject matter jurisdiction. When a court lacks subject matter jurisdiction, it lacks the power to dismiss with prejudice[.]").

[3]     All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. New York Court of Claims decisions can be searched online through the following

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 125 of 197

Scott v. Crossway, Not Reported in Fed. Supp. (2022)
2022 WL 16646531

domain:    https://ww2.nycourts.gov/COURTS/
nyscourtofclaims/overview-decisions.shtml.

The undersigned comes to a different conclusion as to
Attorney Crossway and the "Unknown State Actors." The
Second Circuit has distinguished between complaints that
"alleged injuries were caused by state-court [a] judgment[ ]"
and those that complain of "third party's actions [that were]
simply ratified, acquiesced in, or left unpunished by it." Sung
Cho v. City of New York, 910 F.3d 639, 645-46 (2d Cir.
2018) (quoting Hoblock v. Albany Cty. Bd. of Elections,
422 F.3d 77, 88 (2d Cir. 2005)). The former is barred by
the Rooker-Feldman doctrine and the latter is not. See id.
at 645-46. Plaintiff's complaint against Attorney Crossway
and the "Unknown State Actors" does not allege that their
conduct was the result of a state-court judgment, but instead
contends that their conduct was left unchecked by the Article
78 proceeding and Judge Milano's decision. See Compl.
at 3-5. As plaintiff's claims against them do not "derive"
from a state-court judgment, the claims are not barred by
the Rooker-Feldman doctrine. Sung Cho, 910 F.3d at 646
(quoting Hoblock, 422 F.3d at 87). Nevertheless, the claims
against Attorney Crossway and the "Unknown State Actors"
are barred by the statute of limitations.

**2. Statute of Limitations**

"The statute of limitations for claims brought pursuant to
§ 1983 is determined by state law, and in New York State,
the statute of limitations for actions brought pursuant to
§ 1983 is three years." Johnson v. Fargione, No. 1:20-
CV-764 (LEK/CFH), 2021 WL 1406683, at *3 (N.D.N.Y.
Feb. 17, 2021). "Under federal law, which governs the
accrual of claims brought under § 1983, ... a claim accrues
once the plaintiff knows or has reason to know of the
injury which is the basis of the action[.]" Veal v. Geraci,
23 F.3d 722, 724 (2d Cir. 1994) (citations and quotation
marks omitted). Plaintiff challenges statements made, and
documents submitted, during his Article 78 proceeding. See
Compl. at 4. Plaintiff does not provide the date of the
proceeding. See generally Compl. Instead, plaintiff provides
the date of the "final Judgment" on April 15, 2019. [4] Id. at 3.
It is likely that plaintiff's claims accrued at the time he heard
and observed the alleged falsified statements and documents.
See id. The Appellate Division of the Third Department
stated that plaintiff commenced his Article 78 proceeding
in August 2018. See Scott v. State, 1217, 149 N.Y.S.3d
297 (2021), appeal dismissed, leave to appeal denied, 184

N.E.3d 889 (2022). However, neither plaintiff, the Court
of Claims, or the Third Department have stated the date
of the proceeding. Thus, the undersigned cannot perform a
more specific analysis. Assuming for the purposes of initial
review that the final judgment from the Article 78 proceeding
was the time that plaintiff knew of his injuries from the
"Unknown State Actors" and Attorney Crossway's conduct,
he would have had to file his complaint three years later, by
April 15, 2022. Plaintiff filed his claim on May 13, 2022.
See generally Compl. Thus, the claims are time-barred. See
LaPietra v. City of Albany Police Dep't, No. 9:19-CV-1527
(TJM/TWD), 2020 WL 5891888, at *10 (N.D.N.Y. Oct. 5,
2020) ("[A]lthough the statute of limitations is an affirmative
defense, where it is clear from the face of the complaint that
a claim is barred by the applicable statute of limitations, the
claim is subject to dismissal for failure to state a claim on
initial review.") (citing Pino v. Ryan, 49 F.3d 51, 53 (2d Cir.
1995) (holding that dismissal of "a complaint is based on an
indisputably meritless legal theory, for purposes of dismissal
under section 1915(d), may be based on a defense that appears
on the face of the complaint.")), report and recommendation
adopted, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).

[4]      The undersigned notes that in Judge Milano's
Court of Claims Decision, he stated that plaintiff's
"driving privileges were restored pursuant to a
CPLR Article 78 Judgment of the Albany County
Supreme Court issued on April 4, 2019." Scott, No.
2019-041-061, slip op. at 1.

**\*5** To the extent it appears from the only date that plaintiff
provided, April 15, 2019, that he filed his complaint less than
one month late on May 13, 2022, "[e]quitable tolling permits a
plaintiff to avoid the bar of the statute of limitations if despite
all due diligence he is unable to obtain vital information
bearing on the existence of his claim." Valdez ex rel. Donely
v. United States, 518 F.3d 173, 182 (2d Cir. 2008) (citation
omitted); see also Johnson v. Nyack Hosp., 86 F.3d 8, 12
(2d Cir. 1996) ("Equitable tolling allows courts to extend
the statute of limitations beyond the time of expiration as
necessary to avoid inequitable circumstances."). "A litigant
seeking equitable tolling bears the burden of establishing two
elements: (1) that he has been pursuing his rights diligently,
and (2) that some extraordinary circumstance stood in his
way." Victorial v. Burge, 477 F. Supp. 2d 652, 654 (S.D.N.Y.
2007) (quotation and citation omitted); see also Boos v.
Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of
demonstrating the appropriateness of equitable tolling ... lies
with the plaintiff."). "Equitable tolling is a rare remedy to be
applied in unusual circumstances, not a cure-all for an entirely

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007).

There is nothing in plaintiff's complaint to suggest that equitable tolling could save his time-barred claims concerning the actions taken before and during the Article 78 proceeding, or the subsequent final judgment. See generally Compl. First, the undersigned is not aware of anything that prevented plaintiff from simultaneously filing suit in federal court and in the New York Court of Claims. See also Frankel v. J.P. Morgan Chase & Co., 907 N.Y.S.2d 281, 284 (2010) ("[T]here is no strict legal bar to the existence of simultaneous actions concerning the same subject matter in state and federal court[.]"). Rather, the Court of Claims denied jurisdiction over plaintiff's federal and state constitutional challenges which he now brings to this Court. See Scott, No. 2019-041-061, slip op. at 3 (citation omitted) ("To the extent claimant alleges federal or state constitutional causes of action against defendant, the law is settled that 'claims for damages against the State based on alleged deprivations of rights under the US Constitution are beyond the jurisdiction of the Court of Claims[.]' "); cf. Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 613-14 (E.D.N.Y. 2011) (citation omitted) ("[T]he Second Circuit has explicitly held that a plaintiff is not barred from bringing a Section 1983 claim '[even where ... it is based upon the same cause of action as the Article 78 proceeding', if the plaintiff is seeking damages that were unavailable in the Article 78 court.").

To the extent plaintiff was in the process of filing his claim in the Court of Claims and appealing the Court of Claims decision in state court, "[t]he reference to 'knowledge of injury' [in the equitable tolling standard] does not suggest that the statute [of limitations] does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1995); cf. Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) ("We have held ... that a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983."). This suggests that plaintiff's claims are time-barred not by the date of the final judgment, but by the earlier date of the Article 78 proceeding. Moreover, "[c]ongress has neither explicitly nor implicitly required exhaustion of state remedies to bring section 1983 claims under the [ ] Fourteenth Amendment[ ] outside of the context of prisoner suits." Bal v. Manhattan Democratic Party, No. 16-CV-2416 (PKC), 2018 WL 6528766, at *4 (S.D.N.Y. Dec. 12, 2018); see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 153

(2d Cir. 2010) (citation omitted) ("This is not by any means to say that valid Section 1983 claims based on due process violations require exhaustion of state remedies. But '[w]hen § 1983 claims allege procedural due process violations, we nonetheless evaluate whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all.' ").

**\*6** Based on the foregoing, it appears that equitable tolling is inapplicable and cannot be applied to save plaintiff's time-barred claims. However, in light of plaintiff's pro se status, the lack of specific information concerning the date of the Article 78 proceeding, and the closeness in time between the expiration of the statute of limitations and the filing of plaintiff's complaint, it is recommended that the claims against Attorney Crossway and the "Unknown State Actors" not be dismissed on statute of limitations grounds but based on immunity and failure to state a claim, respectively. See Abbas, 480 F.3d at 640 (citations omitted) ("[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition. Indeed, failure to afford an opportunity to oppose a contemplated *sua sponte* dismissal may be, by itself, grounds for reversal.").

### 3. Attorney Crossway

Plaintiff does not specify whether he seeks to sue Attorney Crossway in her official or personal capacity. See generally Compl.; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted) ("[I]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only [t]he course of proceedings ... will indicate the nature of the liability to be imposed[.]"); Green v. Schmelzle, 210 F. Supp. 3d 454, 466 (W.D.N.Y. 2016) (quoting Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir. 1993)) ("[W]hen the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to the course of the proceedings to determine the nature of the liability to be imposed. Thus, a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."). Plaintiff's allegations concern Attorney Crossway's actions taken in her capacity as counsel for the DMV before

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 127 of 197

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

and during the Article 78 proceeding. See Compl. at 4-5. At this early stage, the undersigned will consider whether either a personal or official capacity claim can survive initial review.

As to an official-capacity suit, "the DMV is an agency acting on behalf of the State of New York and is entitled to sovereign immunity under the Eleventh Amendment in [a] § 1983 claim." Sandoval v. Dep't of Motor Vehicles State of New York, 333 F. Supp. 2d 40, 43 (E.D.N.Y. 2004) (citing Feingold v. State of New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e find that [the plaintiff's] § 1983 claim is clearly barred by the Eleventh Amendment because the DMV is a state agency")). Courts have extended Eleventh Amendment immunity to government attorneys representing state agencies who are sued in their official capacities. See Wolters v. Att'y Gen., N.Y. State, No. 12-CV-1544 (KAM/SMG), 2012 WL 1416706, at *3 (E.D.N.Y. Apr. 24, 2012) ("As officials who represent agencies of the State of New York, the Queens County District Attorney, the Richmond County District Attorney, the New York State DMV Commissioner, and the New York State Attorney General are all entitled to immunity under the Eleventh Amendment."); Clark v. Schroeder, 847 F. App'x 92, 94 (2d Cir.) (summary order) (affirming dismissal of a complaint against the Commissioner of the DMV because of Eleventh Amendment immunity), cert. denied, 142 S. Ct. 341 (2021). To the extent plaintiff seeks to sue Attorney Crossway in her official capacity, she is entitled to Eleventh Amendment immunity as an attorney for the New York State DMV.

Next, to the extent plaintiff seeks to sue Attorney Crossway in her personal capacity, she is entitled to absolute immunity. It is well settled that prosecutors are absolutely immune from suit. See Anilao v. Spota, 27 F.4th 855, 863 (2d Cir. 2022) ("The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy."). "[T]he Supreme Court extended prosecutorial immunity to government attorneys involved in administrative proceedings." Roache v. Att'y Gen.'s Off., No. 9:12-CV-1034 (LEK/DEP), 2013 WL 5503151, at *14 (N.D.N.Y. Sept. 30, 2013) (citing Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suit for damages.")) "The Second Circuit, in turn, has extended the same immunity to government attorneys prosecuting and defending civil

actions." Id. (emphasis added) (citing Barrett v. U.S., 798 F.2d 565, 572 (2d Cir. 1986) ("The controversial nature of the proceeding[s], the risk that a losing defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct, and the existence of alternative safeguards against the attorney's misconduct ... militate in favor of absolute immunity."); see also Mangiafico v. Blumenthal, 471 F.3d 391, 396 (2d Cir. 2006) (citation and quotation marks omitted) ("As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process.... We have expanded this principle to apply to the functions of a government attorney that can fairly be characterized as closely associated with the conduct of litigation or potential litigation in civil suits—including the defense of such actions.").

*7 Plaintiff seeks to sue Attorney Crossway for representations to the court in plaintiff's Article 78 proceeding concerning his New York driver's license. See Compl. at 4. Specifically, plaintiff asserts that Attorney Crossway "knowingly misrepresented material facts of this case to the court ... [and] maintained that these arbitrary actions were taken with discretion and authority to effectively revoke another state's driver's license." Id. at 5.

As plaintiff's claims concern only Attorney Crossway's actions taken in representing the New York State DMV, she is entitled to absolute immunity. See Hirsch v. Quinones, No. 21-CV-6311 (LTS), 2021 WL 3773640, at *3 (S.D.N.Y. Aug. 23, 2021) ("[The p]laintiff's claims against [the defendant] are based on actions within the scope of her official duties as a government attorney representing the State of New York in the New York State Court of Claims in cases brought by [the p]laintiff against the State of New York. Therefore, these claims are dismissed because they seek monetary relief against a defendant who is immune from suit."). As such, Attorney Crossway is entitled to Eleventh Amendment and absolute immunity whether plaintiff seeks to sue her in her official or personal capacity, respectively. Thus, the undersigned recommends dismissing the claims against her with prejudice and without leave to amend. See Bouchard v. Thomson, No. 1:17-CV-1156 (LEK/CFH), 2018 WL 1665213, at *5 (N.D.N.Y. Apr. 4, 2018) (dismissing amended complaint without leave to amend where "the claims [the p]laintiff asserts against [the d]efendants are irreparable because they are barred either by sovereign or prosecutorial immunity."), aff'd sub nom. Bouchard v. Olmsted, 775 F. App'x 701 (2d Cir. 2019) (summary order).

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 128 of 197

Scott v. Crossway, Not Reported in Fed. Supp. (2022)
2022 WL 16646531

#### 4. Judge Milano

As an alternative to the applicability of the Rooker-Feldman doctrine, were the Court to have subject matter jurisdiction over plaintiff's claims against Judge Milano, Judge Milano would be immune from suit. Cf. Fraccola, 670 F. App'x at 35 n.1 (internal citation omitted) ("We interpret the District Court's memorandum decision and order dismissing [the plaintiff's] claims as resting on the Rooker-Feldman doctrine and in the alternative on judicial immunity grounds. Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application in this case should have been analyzed first and is dispositive."). Plaintiff asserts that Judge Milano "violated plaintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions taken against him." See Compl. at 4.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citation omitted). Eleventh Amendment immunity has been extended to judges of the New York State Unified Court System. See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (citation omitted) ("[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." (citing N.Y. Const. Art. VI, § 29(a) (emphasis added) ("The legislature shall provide for the allocation of the cost of operating and maintaining the court of appeals, the appellate division of the supreme court in each judicial department, the supreme court, [and] the court of claims ....")); see also Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing claim against Ulster Family Court judge on sovereign and judicial immunity grounds; Aron v. Becker, 48 F. Supp. 3d 347, 367 (N.D.N.Y. 2014) ("[A]ll claims for monetary damages against ... [County] Judge Becker in [his] official capacities are dismissed with prejudice[ ]" because of Eleventh Amendment immunity); Zeigler v. New York, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013) ("All claims against [Administrative] Judge Tormey in his official capacity for

money damages will also be dismissed as they are barred by the Eleventh Amendment."). As the Court of Claims is a part of the New York State Unified Court System and to the extent plaintiff seeks to sue Judge Milano in his official capacity, Judge Milano is entitled to Eleventh Amendment immunity.

**\*8** Plaintiff states that he does not seek monetary damages from Judge Milano "but instead asks the Court for relief from all orders made in violation of law, that due process be allowed, and that the Court issue further relief as it deems appropriate." Compl. at 6. "In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." Brown v. New York, 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013). "Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). "[D]eclaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." Id. at 225.

Plaintiff appears to be asking only for retrospective relief—that this Court determine that Judge Milano's Decision and Order was incorrect, contrary to law, and/or unconstitutional. See id. As plaintiff seeks only declaratory relief concerning Judge Milano's past conduct, the claim "must be dismissed because the Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.' " Brown, 975 F. Supp. 2d at 226 (quoting Finch v. New York State Office of Children & Family Serv., 499 F. Supp. 2d 521, 538, n.138 (S.D.N.Y. 2007)).

It is also "well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam). "[J]udicial immunity does not bar a claim for prospective injunctive and declaratory relief." Shtrauch v. Dowd, 651 F. App'x 72, 73 (2d Cir. 2016) (summary order). However, because plaintiff only challenges past conduct and "does not allege that [Judge Milano's] conduct constitutes a continuing constitutional violation, nor does he allege that it may recur[,]" plaintiff's claim is not

one for prospective relief and Judge Milano is entitled to absolute immunity. Jackson v. Stanford, No. 16-CV-9702 (AJN), 2019 WL 13166075, at *2 (S.D.N.Y. Jan. 7, 2019) (citation omitted).

To defeat judicial immunity, plaintiff contends that Judge Milano "act[ed] without jurisdiction, power or authority to dismiss [plaintiff's] claim for damages with no basis in law." Compl. at 6. Plaintiff contends that Judge Milano's decision "was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over.... Judge Milano did not address any of the issues settled by the Supreme Court. The Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. at 5.

"[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam). "[T]he Court of Claims has no subject matter jurisdiction to entertain" "review of an administrative agency's determination" "as review of such determinations are properly brought only in Supreme Court in a[n] article 78 proceeding[.]" City of New York v. State, 847 N.Y.S.2d 768, 771 (App. Div. 2007) (citations omitted); see also Madura v. State, 784 N.Y.S.2d 214, 216 (App. Div. 2004) (citation omitted) ("As a court of limited jurisdiction, the Court of Claims has no jurisdiction to grant strictly equitable relief[.]"). Additionally, "the filing requirements of Court of Claims Act § 10 are jurisdictional in nature, and the failure to comply with such requirements deprives the Court of Claims of subject matter jurisdiction[.]" Hughes v. State, 963 N.Y.S.2d 350, 351 (App. Div. 2013); see also Frederick v. State, 874 N.Y.S.2d 762, 765 (Ct. Cl. 2009) (citations omitted) ("Court of Claims Act § 10 is more than a statute of limitations; it is a jurisdictional prerequisite to bringing and maintaining an action in this Court[.] Failure to timely comply with the statutory filing requirements of the Court of Claims Act constitutes a fatal jurisdictional defect requiring dismissal[.]").

**\*9** Judge Milano did not exercise jurisdiction over the merits of plaintiff's claim and instead dismissed plaintiff's claim because it was untimely filed under Court of Claims Act § 10(3) and because plaintiff failed to state a cause of action. See Scott, No. 2019-041-061, slip op. at 1-4. Judge Milano did not review the DMV's actions or make any determination as to their lawfulness. See id. at 1-4. Plaintiff states that Judge Milano "did not decide on the arguments brought forth by the

defense in its motion to dismiss[.]" Compl. at 5. However, Judge Milano's decision states that "Defendant moves, in lieu of answering, to dismiss the claim ... as untimely ... and because the claim fails to state a cause of action[.]" Scott, No. 2019-041-061, slip op. at 1. It was on those two grounds that Judge Milano dismissed plaintiff's claim. See id. at 2-4. Plaintiff's disagreement with Judge Milano's decision is insufficient to establish that he was acted absent jurisdiction. See McKnight v. Middleton, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) ("[J]udicial immunity is not stripped based on the propriety of her particular rulings, where there is no question as to her subject matter jurisdiction over the case."), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order). As Judge Milano was not acting absent all jurisdiction, were this Court to have subject matter jurisdiction over plaintiff's claim against him, Judge Milano would be immune from suit. As the undersigned has determined that this Court lacks subject matter jurisdiction over plaintiff's claim against Judge Milano, the complaint must be dismissed without prejudice. See supra at 8. However, because Judge Milano is immune from suit, amendment would be futile, and the undersigned recommends dismissing the complaint against him without prejudice but without leave to amend. See, e.g., Brady v. Ostrager, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given Justice Ostrager's judicial immunity, the district court correctly held that amendment would be futile.").

### 5. "Unknown State Actors"

In addition to plaintiff's claims against the "Unknown State Actors" being barred by the statute of limitations, plaintiff has failed to sufficiently state a claim for relief. See supra at 9-14. Plaintiff states that the "Unknown State Actors" "violated [his] civil rights under the Fourteenth Amendment" and "committed the act of civil fraud[.]" Compl. at 3. Plaintiff states that they "falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving record for the purpose of inducing the court to dismiss the petition for relief." Id. at 3-4. Plaintiff also asserts that they "deprived him of his vested property" "and acted with intent to harm" him. Id. at 5.

To the extent plaintiff asserts that the "Unknown State Actors" deprived him of his property, "any constitutional procedural due process claim arising from an alleged deprivation of personal property is not cognizable under § 1983 because New York law provides an adequate post-deprivation remedy." Pittman v. Billings, 20-CV-0422 (GLS/

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 130 of 197

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

ATB), 2020 WL 2079440, at *3 (N.D.N.Y. Apr. 30, 2020) (collecting cases); see Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty."). The Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause[.]" Hellenic, 101 F.3d at 881. "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." Chaney v. City of Albany, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at *13 (N.D.N.Y. Aug. 16, 2019) (citing Hourihan v. Lafferty, 58 F. Supp. 2d 10, 14-15 (N.D.N.Y. 1999)).

Plaintiff pursued an Article 78 proceeding about the deprivation of his driver's license and does not claim that the remedy was inadequate. See Compl. at 3-4. Rather, plaintiff received some of the relief sought—removal of the hold on his license—through the Article 78 proceeding. See id. at 3; see W.D. v. Rockland Cnty., 521 F. Supp. 3d 358, 390 (S.D.N.Y. 2021) (dismissing a procedural due process claim where "an Article 78 proceeding was available, as [the p]laintiffs pursued this very remedy and obtained the relief they sought...."). Additionally, to the extent plaintiff asserts that the "Unknown State Actors" and Attorney Crossway violated plaintiff's rights during the Article 78 proceeding, he could have instituted a second Article 78 proceeding. See Stubbs v. de Simone, No. 04-CV-5755 (RJH/GWG), 2005 WL 2429913, at *10, *15 (S.D.N.Y. Sept. 30, 2005) (stating that "[a]n adequate postdeprivation remedy existed because [the plaintiff] was free to institute a new Article 78 proceeding to challenge the alleged[ly]" conduct that occurred through the dismissal and appeal of his first Article 78 proceeding). As there is an adequate postdeprivation state remedy to address plaintiff's claims, plaintiff has failed to state a cognizable claim for a procedural due process violation.

 *10  Next, "[t]he Due Process Clause of the Fourteenth Amendment has a substantive component that bars certain government actions regardless of the fairness of the procedures used to implement them." Johnson v. Rodeway Inn Syracuse, No. 5:22-CV-0396 (GLS/ML), 2022 WL 2308102, at *7 (N.D.N.Y. June 1, 2022) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)) (quotation marks omitted), report and recommendation adopted, 2022 WL 2292045 (N.D.N.Y. June 24, 2022), appeal dismissed

(Sept. 22, 2022). "It is well-settled that when an alleged right is not fundamental, the protections of substantive due process do not apply." Marino v. City Univ. of New York, 18 F. Supp. 4d 320, 339 (E.D.N.Y. 2014) (citing Tessler v. Paterson, 451 F. App'x 30, 32-33 (2d Cir. 2011) (summary order)). Further, to plead a substantive due process claim, "the defendant's conduct must also be found to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " Johnson, 2022 WL 2308102, at *7 (quoting Lewis, 523 U.S. at 848 n.8). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

"The Constitution protects a fundamental right to travel within the United States," Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted). "To the contrary, the Supreme Court has repeatedly affirmed that the states have a paramount interest in highway safety and may summarily suspend or revoke a driver's license with due process." Annan v. State of New York Dep't of Motor Vehicles, No. 15-CV-1058 (CBA/CLP), 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016) (citing Mackey v. Montrym, 443 U.S. 1, 19 (1979) (holding that Massachusetts statute allowing for summary suspension of a driver's license with availability of prompt postsuspension hearing was constitutional); Dixon v. Love, 431 U.S. 105, 115 (1977) (holding that Illinois statute providing for summary suspension of a driver's license with availability of a postdeprivation hearing was constitutional)), aff'd, 662 F. App'x 85 (2d Cir. 2016) (summary order). "[T]he right to maintain a driver's license is substantial and entitled to due process protection, but has not been recognized as the type 'implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition.' " Yandow v. Kronau, No. 1:09-CV-903 (GLS/DRH), 2011 WL 282449, at *5 (N.D.N.Y. Jan. 24, 2011) (quoting Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 460-61 (2d Cir. 1996)).

Plaintiff's contention that he was deprived of his driver's license through its suspension, therefore, does not establish a fundamental right. Further, the allegations do not constitute conduct that "shocks the conscience." See generally Compl.; see also Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted) ("It is not enough

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 131 of 197

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

that the government act be 'incorrect or ill-advised'; it must be conscience-shocking."). As such, plaintiff has failed to state a plausible substantive due process claim and it is recommended that plaintiff's claim against the "Unknown State Actors" be dismissed. See Bey v. D.C., No. 17-CV-6203 (MKB), 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim[ ]" because "[t]he seizure of [the p]laintiff's vehicle alone is insufficient to state a claim for violation of his constitutional right to travel. [The p]laintiff retained his ability and constitutional right to travel even if inconvenienced by the seizure of his motor vehicle."). Mindful of plaintiff's pro se status, the undersigned nevertheless recommends dismissing plaintiff's complaint against the "Unknown State Actors" with prejudice and without leave to amend as plaintiff cannot state a procedural due process claim where there is an adequate state remedy to address his claims and he cannot state a substantive due process claim where there is no fundamental right to a driver's license. [5] See MacInerney v. Allen, No. 52:1-CV-0818 (LEK/ML), 2022 WL 561649, at *5 (N.D.N.Y. Feb. 24, 2022) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)), report and recommendation adopted, 2022 WL 1025841 (N.D.N.Y. Apr. 6, 2022) ("An opportunity to amend is not required, however, where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.' "); see also Annan, 662 F. App'x at 86 (affirming the district court's dismissal of the complaint—which included the plaintiff's right to travel claim—"without leave to amend, because, ... [the] allegations failed to state a claim, and an amendment would have been futile.").

[5]  It is also likely that the claims against the "Unknown State Actors" are subject to dismissal on immunity grounds. Plaintiff has not identified the "Unknown State Actors"; therefore, the undersigned cannot perform a more specific analysis. Compl. at 3-4. However, Eleventh Amendment immunity extends to state actors. See Gollomp, 568 F.3d at 366 ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents ... that are, effectively, arms of a state."); Mullin v. P & R Educ. Servs., Inc., 942 F. Supp. 110, 114 (E.D.N.Y. 1996) ("Because the doctrine of sovereign immunity extends to state officials sued in their official capacity, the complaint is dismissed to the extent that it alleges a § 1983 violation by [the] Commissioner" of the DMV).

### 6. Supplemental Jurisdiction

**\*11**  As to plaintiff's claims against Attorney Crossway and the "Unknown State Actors" for "civil fraud", the Court may exercise supplemental jurisdiction over state law claims when "a plaintiff's federal and state claims present 'but one constitutional case' and 'derive from a common nucleus of operative fact.' " Shepherd v. Nandalawaya, No. 6:19-CV-06406 (EAW), 2020 WL 1963126, at *4 (W.D.N.Y. Apr. 21, 2020) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). "When a federal court dismisses federal claims, the court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)[.]" Id. (citing Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.")). "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination." Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 1118 (2d Cir. 2013). Plaintiff's purported state law claims arise from the same set of facts as his § 1983 claims concerning the documents and statements related to his Article 78 proceeding. See generally Compl. As the undersigned is recommending dismissal of plaintiff's purported federal claims, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's "civil fraud" state law claims. [6] Compl. at 5.

[6]  In the alternative, the fraud claims could be dismissed because there is a heightened pleading standard for fraud claims that plaintiff's complaint fails to meet. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[T]he complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.' " MacInerney, 2022 WL 561649, at *5 (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). Additionally, "although mental states may

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

be pleaded 'generally,' a plaintiff must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.' " Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)). Plaintiff asserts that Attorney Crossway and the "Unknown State Actors" provided fraudulent documents and statements during the Article 78 proceeding. Compl. at 3-4. Plaintiff does not explain what was stated in the documents or what statements were made during the proceeding that were allegedly false. See id. at 3-4. The only specific statements plaintiff provides are Attorney Crossway's affirmations that "she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them." Id. at 4. Plaintiff does not explain which statement was allegedly false. See id. Plaintiff has also failed to allege facts "that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290-91. As such, were the Court to exercise subject matter jurisdiction over the fraud claims, they would likely need to be dismissed for failure to state a claim. See MacInerney, 2022 WL 561649, at *4-5.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Dinah M. Crossway and the "Unknown State Actors" be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Frank P. Milano be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is

**\*12 ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

[7]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16646531

---

Scott v. Crossway, Not Reported in Fed. Supp. (2023)

2023 WL 34543

2023 WL 34543
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,

v.

Dinah M. CROSSWAY, Esq., et al., Defendants.

1:22-cv-500 (BKS/CFH)
|
Signed January 4, 2023

**Attorneys and Law Firms**

Plaintiff pro se: James P. Scott, Tampa, FL 33635.

### MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff pro se James P. Scott filed this action asserting causes of action under 42 U.S.C. § 1983 and state law and seeking leave to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). This matter was referred to United States Magistrate Judge Christian F. Hummel who, on November 3, 2022, issued a Report-Recommendation and Order granting Plaintiff's application to proceed IFP and recommending that: Plaintiff's claims against Defendant, the Honorable Frank P. Milano, be dismissed under the *Rooker-Feldman* doctrine [1] and as barred by sovereign and judicial immunity; Plaintiff's claims against Defendants Dinah M. Crossway, Esq. and the "Unknown State Actors" be dismissed as barred by the statute of limitations; Plaintiff's official and individual capacity claims against Attorney Crossway be dismissed as barred by sovereign immunity and absolute immunity, respectively; Plaintiff's Fourteenth Amendment claims against the "Unknown State Actors" be dismissed for failure to state a claim; and the Court decline to exercise supplemental jurisdiction and dismiss any remaining state law claims. (Dkt. No. 6). Magistrate Judge Hummel advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 28). Following the issuance of the Report-Recommendation, Plaintiff notified

the Court of a change of address and requested an extension of time to file objections, which was granted. (Dkt. Nos. 7, 8, 9). Plaintiff did not file any objections to the Report-Recommendation.

1   *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 6) is **ADOPTED**; and it is further

**ORDERED** Plaintiff's federal claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's claims against Frank P. Milano are **DISMISSED without prejudice and without leave to amend**; and it is further

**ORDERED** that Plaintiff's state law "civil fraud" claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk enter judgment and close this case; it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2023 WL 34543

---

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 134 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

2019 WL 3315181
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kennard D. WELLINGTON, Plaintiff,

v.

Patrolman FOLAND; Aaron Smith; Brian Bailey;
Michael Helper; Brian J. Shaver; Nicholas Crandell;
Brent Dodge; Patrolman Peets; Patrolman Gavin; PTL
Joshua Bilek; David Williams; Gregory P. Thomas;
Eddy Douglas; and Dominic H. Peers, Defendants.

3:19-CV-0615 (GTS/ML)
|
Signed 07/24/2019

**Attorneys and Law Firms**

KENNARD D. WELLINGTON, Pro Se, 3104 Buckingham
Road, Endwell, New York 13760.

OF COUNSEL: LILY A. OCKERT, ESQ., MORRIS DUFFY
ALONSO & FALEY, 2 Rector Street, 22nd Floor, New York,
New York 10006, Counsel for the Defendants.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** The Clerk has sent this *pro se* complaint together with
an application to proceed *in forma pauperis* filed by Kennard
D. Wellington ("Plaintiff") to the Court for review. (Dkt. Nos.
1 and 2.) For the reasons discussed below, I grant Plaintiff's
*in forma pauperis* application (Dkt. No. 2), recommend that
certain of his claims be accepted for filing, that certain of
his claims be dismissed with leave to amend, that certain of
his claims be dismissed without leave to amend, and that
the action be consolidated with another suit that is currently
pending before this Court.

## I. BACKGROUND

On or about March 26, 2019, Plaintiff commenced an action
before the Supreme Court of New York, County of Broome,
in which he alleged that his civil rights were violated in
connection with two traffic stops and subsequent arrests that
occurred on October 25, 2018, and November 11, 2018. *See
generally Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML)

(N.D.N.Y. removed 04/18/2019) ("*Wellington I*"). *Wellington
I* was removed by the defendants in that case to this Court
on April 18, 2019. (*See id.*) A motion for judgment on
pleadings with regard to Defendant Gregory Thomas is
currently pending in that action. (*See id.*, Dkt. Nos. 7, 9, 11.)

On or about May 23, 2019, Plaintiff commenced the present
action ("*Wellington II*") by the filing of a Complaint, which
was accompanied by a motion to proceed without prepayment
of fees. (Dkt. Nos. 1, 2.)

## II. ALLEGATIONS OF THE COMPLAINT

Although most of his Complaint is rambling, far from clear,
and contains virtually no factual detail, construed liberally,
the gravamen of Plaintiff's Complaint is that he is a "freeborn
sovereign individual" and his constitutional rights were
violated by Johnson City police officers Patrolman Foland,
Aaron Smith, Brian Bailey, Michael Helper, Brian Shaver,
Nicholas Crandell, Brent Dodge, Patrolman Peets, Patrolman
Gavin, Joshua Bilek, David Williams, Eddy Douglas, and
Dominic H. Peers; and Johnson City Village Judge Gregory
Thomas (collectively "Defendants"). (*See generally* Dkt.
No. 1.) However, Plaintiff's Complaint fails to disclose
the role played by each of the named defendants and the
circumstances giving rise to his claims. Plaintiff's Complaint
is six pages long and includes an additional 106 pages of
exhibits, none of which have been identified or referenced in
his Complaint. (*Id.*)

Although it is far from evident, based on a review of Plaintiff's
Complaint and attached documents, it appears that his claims
center around two traffic stops that resulted in his arrests on
October 25, 2018, and November 11, 2018. (*Id.*) Plaintiff
alleges that he was arrested on October 25, 2018, and as a
result of this arrest his vehicle was towed, he posted bail in the
amount of $41.00, and was "forced to pay U-Save [towing]
$399.60 ... to get my property" back. (*Id.* at 3.) In addition,
Plaintiff alleges that he was arrested on November 11, 2018,
when he was "traveling in [his] personal vehicle on state of
New York public highway." (*Id.*) Plaintiff alleges that during
the course of this arrest officers deployed a taser four times
and pepper sprayed him. (*Id.*) Plaintiff alleges that as a result
of this arrest he was released on his own recognizance. (*Id.*)

 **\*2** Plaintiff appears to assert the following six claims: (1)
that he was deprived of his "right-to-travel" in violation of the
Fifth Amendment and 42 U.S.C. § 1983 ("First Claim"); (2)
that Defendants used excessive force in affecting his arrests
in violation of the Fourth Amendment and 42 U.S.C. § 1983

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 135 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

("Second Claim"); (3) that Defendants failed to intervene during the use of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Third Claim"); (4) that Defendants discriminated against him ("Fourth Claim"); (5) that Defendants conducted an illegal search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Fifth Claim"); and (6) that Defendants set excessive bail in violation of the Eighth Amendment and 42 U.S.C. § 1983 ("Sixth Claim"). (Id. at 2.) As relief, Defendant seeks twenty million dollars ($20,000,000.00). (Id. at 4-5.)

In an "exhibit" to his Complaint, Plaintiff attached another complaint with a caption in the Supreme Court of the State of New York, County of Queens ("Exhibit Complaint") with allegations relating to the same events giving rise to this action. (Dkt. No. 1, Attach. 1, at 3-25.)[1] The Exhibit Complaint is also rambling and far from clear, but construed liberally, it alleges that on November 14, 2018, while released on bail at a court appearance, Plaintiff was "remanded" in lieu of $5,000.00 cash or $10,000.00 bond because he "straddled the bar and the judge and the court took [his] stance as aggressive" and he was "ordered to take a 730 [competency] exam." (Id. at 9-10.) In addition, the Exhibit Complaint alleges that "[o]n the 14[th] of November Plaintiff asked for counsel of his own choice, as is his right as set forth in the 6[th] Amendment of our U.S. Constitution[;] not only did Gregory P. Thomas order me incompetent counsel[,] he hadn't yet received his bar card." (Id. at 13.) The Exhibit Complaint appears to assert the following six additional causes of action: (1) Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment and 42 U.S.C. § 1983 ("Seventh Claim") by requiring him to take a competency exam; (2) he was deprived of his right to counsel of his choosing in violation of the Sixth Amendment and 42 U.S.C. § 1983 ("Eighth Claim"); (3) his due process rights were violated because he was not read Miranda warnings after any of his arrests in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 ("Ninth Claim"); (4) his right to freedom of association was violated because he was appointed counsel not of his choosing in violation of the First Amendment and 42 U.S.C. § 1983 ("Tenth Claim"); (5) his right to counsel of his choice was "encroach[ed] in violation of the Ninth and Tenth Amendments and 42 U.S.C. § 1983 ("Eleventh Claim"); and (6) conspiracy to violate his rights pursuant to 42 U.S.C. § 1985 ("Twelfth Claim"). (Id. at 3-25.)[2] The Exhibit Complaint also contains a "Fee Schedule Contract" that purports to be a "legally binding contract" and

alleges that "failure to sign this contract does not void this contract." (Id. at 22-24.)

1    The Court notes that the Exhibit Complaint is the same or substantially the same as an exhibit complaint that was attached to the complaint in Wellington I. (Compare Dkt. No. 1, Attach. 1, at 3-25, with Wellington I, Dkt. No. 1, Attach. 1, at 5-27.)

The Court also notes that the Exhibit Complaint lists Judge Thomas Dellapenna and Johnson City police officer Christopher Ketchum as defendants. (Dkt. No. 1, Attach. 1, at 3, 6.) However, neither Thomas Dellapenna nor Christopher Ketchum are listed as Defendants in the caption or mentioned in Plaintiff's Complaint. (Compare Dkt. No. 1, with Dkt. No. 1, Attach. 1, at 3, 6.)

2    The Court notes that the Exhibit Complaint only seeks $50,000.00 for "general damages" and $100,000.00 for punitive damages (as opposed to the $20,000,000.00 sought in the Complaint). (Compare Dkt. No. 1, at 4-5, with Dkt. No. 1, Attach. 1, at 20.)

*3    For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed in forma pauperis status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[3] After reviewing Plaintiff's in forma pauperis application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed in forma pauperis is granted.[4]

3    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a) (1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 136 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

status available to any litigant who can meet the
governing financial criteria. *Hayes v. United States*,
71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v.
City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y.
2002).

4        Plaintiff is reminded that, although the application
         to proceed *in forma pauperis* has been granted, he
         will still be required to pay fees that he may incur in
         this action, including copying and/or witness fees.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that
may have been paid, the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted,
a complaint must contain, *inter alia*, "a short and plain
statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). The requirement that
a plaintiff "show" that he or she is entitled to relief means that
a complaint "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is *plausible* on its
face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis
added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
[2007]). "Determining whether a complaint states a plausible
claim for relief ... requires the ... court to draw on its judicial
experience and common sense.... [W]here the well-pleaded
facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged–but it has
not shown–that the pleader is entitled to relief." *Iqbal*, 556
U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the
material facts alleged in the complaint as true and construe all
reasonable inferences in the plaintiff's favor." *Hernandez v.
Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).
However, "the tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions. Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." *Iqbal*, 556 U.S. at 678.

 **\*4** Courts are "obligated to construe a pro se complaint
liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see*

*also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per
curiam) (reading the plaintiff's *pro se* complaint "broadly, as
we must" and holding that the complaint sufficiently raised a
cognizable claim). "[E]xtreme caution should be exercised in
ordering sua sponte dismissal of a pro se complaint before the
adverse party has been served and [the] parties ... have had an
opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37,
41 (2d Cir. 1983).

The Court, however, also has an overarching obligation
to determine that a claim is not legally frivolous before
permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.,
Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d
362, 363 (2d Cir. 2000) (holding that a district court may
*sua sponte* dismiss a frivolous complaint, notwithstanding
the fact that the plaintiff paid the statutory filing fee).
"Legal frivolity ... occurs where 'the claim is based on an
indisputably meritless legal theory [such as] when either the
claim lacks an arguable basis in law, or a dispositive defense
clearly exists on the face of the complaint.' " *Aguilar v. United
States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2
(D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack
Beverage Co.*, 141 F.3d 434, 437 [2d Cir. 1998]); *see also
Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is
proper only if the legal theory ... or factual contentions lack an
arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995)
("[T]he decision that a complaint is based on an indisputably
meritless legal theory for purposes of dismissal under section
1915(d), may be based upon a defense that appears on the face
of the complaint.").

## V. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the
court must construe his pleadings liberally. *Sealed Plaintiff v.
Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having
reviewed Plaintiff's Complaint with this principle in mind,
I recommend that all causes of action should be dismissed against
Defendants Brian Bailey, Brent Dodge, Dominic Peers, and
Gregory Thomas. [5] In addition, I recommend that Plaintiff's
First, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh,
and Twelfth Claims be dismissed against all Defendants.
Moreover, I conclude that the allegations in the Second, Third,
and Fifth Claims originate from the same events described in
*Wellington I*, and thus recommend that they be consolidated
with *Wellington I*.

5        To the extent Plaintiff's Complaint is read as
         asserting allegations against Thomas Dellapenna

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 137 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

and Christopher Ketchum, I recommend that those causes of action should also be dismissed. *See, supra*, note 1.

## A. Claims Against Defendant Gregory P. Thomas

In this case, Plaintiff's Complaint asserts causes of action against Gregory P. Thomas for actions he allegedly took in his position as judge of the Johnson City Village Municipal Court.

It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' "); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."). This immunity applies to state court judges who are sued in federal court pursuant to 42 U.S.C. § 1983. *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

**\*5** "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Plaintiff's allegations regarding Defendant Gregory Thomas relate to actions Defendant Thomas took as Judge of the Johnson City Village Court presiding over Plaintiff's criminal proceedings that occurred in Johnson City. (*See generally* Dkt. No. 1.) As a result, I recommend that the claims against Defendant Gregory Thomas be dismissed in their entirety. [6]

[6]     For the same reasons, to the extent Plaintiff's Complaint is read as asserting any causes of action against Thomas Dellapenna for actions he took in

his capacity as a judge, I recommend that those causes of action be dismissed. *See, supra*, notes 1 and 5.

## B. Claims Against Defendants Brian Bailey, Brent Dodge, and Dominic Peers

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]; *McKinnon v. Patterson*, 568 F.2d 930, 934 [2d Cir. 1977]). As the Supreme Court has noted, a defendant may only be held accountable for his actions pursuant to 42 U.S.C. § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 622, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

The Complaint and Exhibit Complaint do not refer to any actions taken by Defendants Bailey, Dodge, or Peers. (*See generally* Dkt. No. 1; Dkt. No. 1, Attach. 1.) The only reference to Defendant Bailey that I could locate in the Complaint and its attachments was that he reviewed the report prepared by Sergeant David Crandell regarding the incident on November 11, 2018. (Dkt. No. 1, Attach. 1, at 59-61.) In addition, the only reference to Defendant Brent Dodge that I could locate in the Complaint and its attachments was that he is the chief of police for the Johnson City Police Department. (Dkt. No. 1, Attach. 1, at 6.) [7] I could not locate any reference to Defendant Dominic Peers–other than the caption–in the Complaint and its attachments. (*See generally* Dkt. No. 1.) [8]

[7]     "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.... [A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[8]     The only reference to Christopher Ketchum (to the extent Plaintiff's Complaint is read as including him

Case 6:23-cv-01485-DNH-TWD  Document 4  Filed 03/08/24  Page 138 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

as a defendant) that I could locate in the Complaint and its attachments was that he reviewed the report prepared by Brian Shaver regarding the incident on October 25, 2018. (Dkt. No. 1, Attach. 1, at 44, 56-58, 65.) *See, supra*, note 1.

**\*6** As a result, I recommend that the claims against Defendants Bailey, Dodge, and Peers be dismissed in their entirety. [9]

[9]   For the same reasons, to the extent Plaintiff's Complaint is read as asserting any causes of action against Christopher Ketchum, I recommend that those causes of action be dismissed. *See, supra*, notes 1 and 8.

### C. Plaintiff's First Claim (Right to Travel)

"The Constitution protects a fundamental right to travel within the United States, which we have also called 'the right to free movement.' " *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 [2d Cir. 2008]; *cf. Saenz v. Roe*, 526 U.S. 489, 500 [1999] [noting that "[t]he 'right to travel' ... embraces ... three different components," including "the right of a citizen of one State to enter and leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for travelers who elect to become permanent residents, the right to be treated like other citizens of that State."]).

The allegations in the Complaint and its attachments do not allege any component of interstate travel. Instead, Plaintiff's allegations regarding his right to travel relate to the traffic stops and subsequent arrests, which is akin to his illegal search and seizure claim. As a result, I recommend that Plaintiff's First Claim be dismissed for failure to state a claim. *See also Buchholz-Kaestner v. Fitzgerald*, 16-CV-0604, 2017 WL 2345589, at *6-7 (N.D.N.Y. May 30, 2017) (Suddaby, C.J.) (dismissing in its entirety the plaintiff's complaint including his "right to travel" claim where the complaint alleged that the police department "harasses me when I drive in my private vessel non-commercial. Private use only. Rightful use of American easement.").

### D. Plaintiff's Fourth Claim (Discrimination)

Plaintiff alleges that he was discriminated against but the Complaint lacks any allegations of class-based discrimination underlying Defendants' actions. (*See generally* Dkt. No.

1.) However, " 'individuals who allege no specific class membership but are nonetheless subject to invidious discrimination at the hands of government officials' may bring a 'class of one' equal protection claim." *Gauthier v. Kirkpatrick*, 13-CV-0187, 2013 WL 6407716, at *9 (D. Vt. Dec. 9, 2013) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 [2d Cir. 2001]).

Here, Plaintiff alleges that Defendants failed to apply the law correctly and violated his fundamental rights, but that is different from a claim that they failed to apply the law equally on the basis of some classification. *Gauthier*, 2013 WL 6407716, at *9. [10] Even construed liberally, the Complaint does not allege or suggest that any "discriminatory intent" was a motivating factor in Defendants' actions. *Id.* (citing *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 [2d Cir. 2009]).

[10]   Plaintiff alleges that "Defendants named above relying on their own discretion and erroneous interpretation of the Supreme Law of the Land, which is the constitution and not any statute in conflict there with [sic] issued or composed to be issued order (sic) for Plaintiff conspire (sic) with Defendants to subvert the constitution by excepting title of nobility and to make something other than gold and silver coin tender for payment of debt." (Dkt. No. 1, Attach. 1, at 17.)

**\*7** As a result, I recommend that Plaintiff's Fourth Claim be dismissed for failure to state a claim.

### E. Plaintiff's Sixth Claim (Excessive Bail)

"It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (extending absolute immunity to parole board officials performing a quasi-judicial function in making parole decisions); *see also Butz v. Economou*, 438 U.S. 478, 511 (1978) (granting absolute immunity to administrative hearing examiners performing adjudicatory functions within federal agencies). As the Supreme Court has explained, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." *Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that judges do not enjoy absolute immunity when performing administrative, legislative, or executive functions). Following this "functional approach to immunity

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

questions," the Second Circuit observed that "[o]rdinarily, it is judges who set bail, and judges enjoy absolute immunity when they do so." *Root v. Liston,* 444 F.3d 127, 132 (2d Cir. 2006) (internal citations omitted). "In short, because the setting of bail is a judicial function, *see Cleavinger v. Saxner,* 474 U.S. 193, 205, 106 (1985), absolute immunity extends to police officers when they perform that function pursuant to statute." *Walczyk v. Rio,* 496 F.3d 139, 165 (2d Cir. 2007).

As a result, regardless of which Defendant or Defendants Plaintiff alleges set excessive bail, I recommend that this claim be dismissed because the setting of bail is a judicial function that is entitled to absolute immunity. (*See generally* Dkt. No. 1.)

### F. Plaintiff's Seventh Claim (Cruel and Unusual Punishment)

"Under New York law, when a court believes that a [criminal] defendant may be incapacitated, it 'must issue an order of examination' to determine whether the [criminal] defendant is competent to stand trial." *Murray v. Guzman,* 19-CV-1959, 2019 WL 1745744, at *4, n.4 (S.D.N.Y. Apr. 17, 2019) (citing N.Y. Crim. Proc. L. § 730.30[1]).

The ordering of a competency examination pursuant to N.Y. Crim. Proc. L. § 730.30 is a judicial function. *Murray,* 2019 WL 1745744, at *4. (holding that "quasi-judicial immunity" applies to any individual who conducts activities that are inexorably connected with the execution of court procedures that are analogous to judicial action). As a result, I recommend that this claim be dismissed because any Defendant involved in the ordering of Plaintiff's competency exam is entitled to absolute immunity.

### G. Plaintiff's Eighth, Tenth, and Eleventh Claims (Right to Counsel of His Choosing)

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. amend VI. The Supreme Court has observed that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159 (1988). "While a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute

right." *United States v. Paone,* 782 F.2d 386, 392 (2d Cir. 1986). In particular, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 151 (2006). "[I]ndigent defendants do not have a veto over who is appointed to defend them, provided that appointed counsel's representation is adequate." *Felder v. Goord,* 564 F.Supp.2d 201, 220 (S.D.N.Y. 2008) (*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 [1989]; *see also United States v. Schmidt,* 105 F.3d 82, 89 [2d Cir. 1997] ["Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel."]). [11]

[11]  While the right to counsel "includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him, it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment of a particular attorney should not have been made, the defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel." *Davis v. Stevens,* 326 F. Supp. 1182, 1183 (S.D.N.Y. 1971) (internal citations omitted) (collecting cases); *see also Luis v. United States,* 136 S. Ct. 1083, 1089 (2016) (plurality) (citing *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 2646, 2652 [1989]) ("[A]n indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice.").

**\*8** Plaintiff's Eighth, Tenth, and Eleventh Claims all appear to be iterations of the same grievance, that he was appointed counsel and that counsel was not of his choosing. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's Eighth, Tenth, and Eleventh Claims be dismissed for failure to state a claim. [12]

[12]  Plaintiff also alleges that "not only did Gregory P. Thomas give me incompetent counsel he hadn't yet received his bar card." (Dkt. No. 1, Attach. 1, at 13.) It is unclear whether Plaintiff is alleging that Defendant Thomas was not admitted to the bar

or whether his appointed counsel was not admitted to the bar at the time of appointment. In any event, I recommend that Plaintiff's claims against Defendant Thomas be dismissed for the reasons set forth in Part V.A. of this Decision. Plaintiff has not alleged any ineffective assistance of counsel claim nor has he alleged facts plausibly suggesting that his counsel was ineffective other than this single, conclusory statement. (*See generally* Dkt. No. 1.)

### H. Plaintiff's Ninth Claim (Due Process)

Plaintiff alleges that his due process rights were violated because he was "never Mirandized on any of the arrest[s]." (Dkt. No. 1, Attach. 1, at 12.)

"A *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion." *Deshawn E. v. Safir*, 156 F.3d 340, 348 (2d Cir. 1998) (internal citations omitted).

Plaintiff's Complaint does not allege any facts that would suggest police coercion led to inculpatory statements. (*See generally* Dkt. No. 1.) *See Gardner v. McArdle*, 461 F. App'x 64, 66 (2d Cir. 2012) (permitting the plaintiff leave to amend his complaint where the complaint alleged "that while he was in custody for approximately fourteen hours, he was (1) placed in a line-up; (2) forced to make written and videotaped statements; and (3) told that he could not place a phone call until he made a written statement–all without receiving *Miranda* warnings."). As a result, I recommend that Plaintiff's Ninth Claim be dismissed.

### I. Plaintiff's Twelfth Claim (Conspiracy)

Plaintiff alleges, in a conclusory fashion, that Defendants conspired "to so deprive and/or failure, neglect malfeasance, misfeasance, nonfeasance [or] refusal to protect [him] from said conspiracy although it was [with]in their power to do so." (Dkt. No. 1, at 2; Dkt. No. 1, Attach. 1, at 3-4.)

The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999);

*Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

"[T]o make out a violation of § 1985(3), ... the plaintiff must allege ... four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). In addition, "[t]he conspiracy must be motivated by racial animus." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

**\*9** "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at \*9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). Moreover, conspiracy claims under §§ 1983 and 1985 "fail[ ] as a matter of law where there is no underlying constitutional violation." *Tirse v. Gilbo*, 15-CV-0987, 2016 WL 4046780, at \*18 (N.D.N.Y. July 27, 2016) (Suddaby, C.J.).

Here, inasmuch as the Court is recommending dismissal of the predicate claims, the Court also recommends dismissing Plaintiff's conspiracy claims under §§ 1983 and 1985. *See, e.g., McGee v. Doe*, 568 F. App'x 32, 36, 39 (2d Cir. 2014) (affirming dismissal of malicious prosecution claim and conspiracy claim predicated upon malicious prosecution where the plaintiff did not receive a favorable termination); *LaRocco v. Jackson*, 10-CV-01651, 2012 WL 947554, at \*3 (E.D.N.Y. Mar. 19, 2012) ("Because [the plaintiff's] claim for

2019 WL 3315181

false arrest and malicious prosecution are dismissed, his claim for conspiracy to commit those violations must be dismissed as well.") (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 [2d Cir. 2001]; *Pugh v. New York City*, 01-CV-0129, 2002 WL 398804, at *2 n.4 [E.D.N.Y. Jan. 15, 2002]).

Additionally, the Court finds that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

Further, Plaintiff has not alleged any race or class-based animus as required to support a § 1985 conspiracy claim. "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't. of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (Smith, M.J.) (citing *Segreto v. Kirschner*, 977 F. Supp. 553, 565 [D. Conn. 1997]; *Gay Veterans Ass'n, Inc. v. American Legion*, 621 F. Supp. 1510, 1515 [S.D.N.Y. 1985]; *Orshan v. Anker*, 489 F. Supp. 820, 823 [E.D.N.Y. 1980]).

Moreover, in the alternative, even if Plaintiff's conspiracy claims were found to be more than conclusory as pleaded, Plaintiff's claims would likely be barred by the "intra-agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co.*, 04-CV-1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.) (dismissing the plaintiff's conspiracy claims where the defendants were officers of the City of Syracuse and the plaintiff did not allege that the individual defendants had a personal interest in their alleged conspiracy); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (dismissing the plaintiff's conspiracy claims where the officers were part of a single corporate entity, the City of New York, and plaintiff did "not provide any evidence to suggest that either of the officers were motivated by an independent personal stake in his arrest and prosecution."). Generally, that doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002).

 **\*10** As set forth above in Part V.A. of this Order and Report-Recommendation, I recommend that all claims against Defendant Gregory Thomas be dismissed based on judicial immunity. As a result, the only remaining Defendants would be officers of the Johnson City Police Department, who, pursuant to the intra-agency doctrine, are incapable

of conspiring with themselves. Moreover, I find that the Complaint does not allege that any of Defendants had a personal interest in the alleged conspiracy. (*See generally* Dkt. No. 1.)

For all of these alternative reasons, I recommend that Plaintiff's Twelfth Claim be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### J. Claims Based Upon "Sovereign Citizenship"
The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."[13] *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). The "sovereign citizen" belief system has been described by other courts as "completely without merit," "patently frivolous," *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), and having "no conceivable validity in American law," *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990); *see also Buchholz*, 2017 WL 2345589, at *6 (collecting cases) (holding that "Plaintiff's Complaint–predicated as it is on a 'sovereign citizen theory' that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief."); *Robinson v. Fischer*, 13-CV-1545, 2014 WL 1289611, at *5 (N.D.N.Y. Mar. 31, 2014) (Suddaby, C.J.) (dismissing the sovereign citizen claims as frivolous and for failure to state a claim when reviewing a *pro se* complaint pursuant to 28 U.S.C. § 1915[e][2][B] and 28 U.S.C. § 1915A[b]).

13      Although Plaintiff refers to himself as a "sovereign individual," the beliefs he subscribes mirrors those of sovereign citizens. "Sovereign citizens apparently also believe that, by entering into contracts with the federal government or by receiving benefits from it, they lose their birthright of sovereign citizenship." *Gauthier v. Kirkpatrick*, 13-CV-0187, 2013 WL 6407716, at *17, n.18 (D. Vt. Dec. 8, 2013).

As a result, to the extent Plaintiff asserts any claims premised on his rights as a "sovereign citizen," I recommend that those claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, and because such claims are frivolous.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 142 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

### K. Whether to Permit Amendment

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*11** In this instance, I conclude that the defects in Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims and his claims against Defendant Thomas are substantive, rather than formal, such that any amendments would be futile. More specifically, as discussed above (and, again, as his Complaint reveals), Plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. *See Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity); *Brooks v. Ukieley*, 14-CV-6662, 2015 WL 235406, at *4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Spence v. Thompson*, 2013 WL 1180765, at *20-21 (W.D. Pa. Jan. 4. 2013) (recommending dismissal with prejudice as to the plaintiff's claim that his Sixth Amendment right to appointment of counsel of his choosing was violated in his criminal proceeding). As a result, I conclude that granting leave to amend would not be likely to be productive and recommend that Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims be dismissed without leave to amend.

However, Plaintiff could potentially amend his Complaint to assert cognizable causes of action that his right to travel

was violated, that he was discriminated against, that his due process rights were violated, and that Defendants conspired to violate his civil rights. Accordingly, I recommend that Plaintiff be granted leave to amend his Complaint regarding the First, Fourth, Ninth, and Twelfth Claims. In addition, I find that Plaintiff could potentially amend his Complaint to assert cognizable causes of action against Defendants Bailey, Dodge, and Peers to the extent they were personally involved in the alleged constitutional deprivations. As a result, I recommend that Plaintiff be granted leave to amend his Complaint regarding Defendants Bailey, Dodge, and Peers.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 [2d Cir. 1987]); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

### L. Consolidation

As a matter of judicial discretion, a court may dismiss an action which is duplicative of another, previously filed suit. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). The basis for taking such a measure stems from the desire to avoid duplicative litigation, and therefore to promote judicial economy and protect parties from " 'the vexation of concurrent litigation over the same subject matter[.]' " *Curtis*, 226 F.3d at 138 (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 [2d

Case 6:23-cv-01485-DNH-TWD  Document 4  Filed 03/08/24  Page 143 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 3315181

Cir. 1999]). Simply stated, a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139. Because of the difficulties involved in anticipating the preclusive effects of a case that is still pending, courts faced with a duplicative lawsuit commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *Id.* at 138 (collecting cases). The action to be taken when such circumstances are presented, if any, "is one of the district court's discretion in the comprehensive management of litigation in its court." *Id.* at 139.

**\*12** Having reviewed Plaintiff's Complaint, I conclude that his allegations originate from the same events described in *Wellington I*: the traffic stops and arrests of October 25, 2018, and November 11, 2018, and arrest on November 14, 2018. The interest of judicial economy militates in favor of consolidation of *Wellington I* and *Wellington II*. Accordingly, and without expressing an opinion as to whether Plaintiff's Second (excessive force), Third (failure to intervene), and Fifth (illegal search and seizure) Claims can withstand a properly filed motion to dismiss or summary judgment, I recommend that his Second, Third, and Fifth Claims should be accepted for filing as to Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas and this matter consolidated with *Wellington I*.

## VI. SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that he meets the requirements for IFP status, and therefore grant his motion for leave to proceed without prepayment of fees. Turning to the merits of Plaintiff's Complaint, I recommend that Plaintiff's claims against Brian Bailey, Brent Dodge, and Dominic H. Peers and Plaintiff's First, Fourth, Ninth, and Twelfth Claims be dismissed with leave to file a proposed amended complaint. Moreover, I recommend that Plaintiff's claims against Gregory P. Thomas and Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims be dismissed without leave to amend. Further, I recommend that this action be consolidated with *Wellington I* because Plaintiff's factual allegations are based upon the same events and involve predominantly the same defendants.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to Plaintiff's Second, Third, and Fifth Claims against Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD within thirty days of the issuance of an order adopting this recommendation** Plaintiff's First, Fourth, Ninth, and Twelfth Claims, and his claims against Defendants Bailey, Dodge, and Peers, as stated herein pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims and his claims against Defendant Thomas, as stated herein pursuant to 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that, in the event Plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to Plaintiff's Second, Third, and Fifth claims against Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas; and it is further

**RECOMMENDED** that this action be consolidated with *Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML) (N.D.N.Y. removed 04/18/2019), with that case being designated as the lead case, and all future filings to be made in the lead case only.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]).

[14]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from

**Wellington v. Foland, Not Reported in Fed. Supp. (2019)**

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 144 of 197

2019 WL 3315181

the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*13** It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and *Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML) (N.D.N.Y. removed

04/18/2019), and serve a copy upon the parties in accordance with the local rules. [15]

[15]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3315181

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 6485157

2019 WL 6485157

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Kennard D. WELLINGTON, Plaintiff,

v.

Patrolman FOLAND, et al., [1] Defendants.

[1]
Fourteen individuals are currently named as Defendants in the caption of this action's docket sheet: (1) Patrolman Foland; (2) Aaron Smith; (3) Bailey R. Brian; (4) Michael Helper; (5) Brian J. Shaver; (6) Nicholas Crandell; (7) Brent Dodge; (8) Patrolman Peets; (9) Patrolman Gavin; (10) Patrolman Joshua Bilek; (11) David Williams; (12) Gregory P. Thomas; (13) Eddy Douglas; and (14) Dominic H. Peers. (*See generally* Docket Sheet.) However, when liberally construed, Plaintiff's Complaint names as Defendants another two individuals: (15) Christopher D. Ketchum; and (16) Thomas Dellapenna. (*Compare* Docket Sheet *with* Dkt. No. 1, Attach. 1, at 3, 6, 43, 65, 88, 91, 92, 94-97, 99.) Moreover, the names of three of these 16 individuals need to be corrected: "Michael Helper" to "Michael Hepler"; "Nicholas Crandell" to "Nicholas Crandall"; and "Bailey R. Brian" to "Brian R. Bailey." (*Compare* Docket Sheet *with* Dkt. No. 1, at 1-4 *and* Dkt. No. 1, Attach. 1, at 5, 40-42, 44, 50, 52, 58, 61, 62.) Finally, it appears that "Brent Dodge" may actually be named "Grant Dodge," and that "Dominic H. Peers" and "Patrolman Peets" may be the same person. (*Compare* Dkt. No. 1, at 1, 4, *with* Dkt. No. 1, Attach. 1, at 43 *and* Dkt. No. 12, at 1, 4.) However, because these last two facts are unclear from the record, these changes will not be ordered at this time.

3:19-CV-0615 (GTS/ML)

|

Signed 12/03/2019

**Attorneys and Law Firms**

KENNARD D. WELLINGTON, Plaintiff, Pro Se, 3104 Buckingham Road, Endwell, New York 13760.

OF COUNSEL: LILY A. OCKERT, ESQ., MORRIS DUFFY ALONSO & FALEY, Counsel for Defendants, 2 Rector Street, 22 nd Floor, New York, New York 10006.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Kennard D. Wellington ("Plaintiff") against 16 individuals ("Defendants"), are the following: (1) United States Magistrate Judge Miroslav Lovric's Report-Recommendation recommending that certain of the claims in Plaintiff's Complaint be dismissed with leave to replead within thirty days, certain of the Complaint's claims be dismissed without leave to replead, and the Complaint's remaining claims be consolidated with another action that Plaintiff currently has pending before this Court; (2) Plaintiff's "demand for abatement." (Dkt. Nos. 10, 11.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety, and Plaintiff's "demand for abatement" is denied.

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Lovric's Report-Recommendation**

Generally, in his Report-Recommendation, Magistrate Judge Lovric rendered the following three findings of fact and/or conclusions of law: (1) that Plaintiff's First, Fourth, Ninth and Twelfth Claims, and his claims against Defendants Bailey, Dodge and Peers, should be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with leave to replead within 30 days of the date of the Decision and Order adopting the Report-Recommendation; (2) that Plaintiff's Sixth, Seventh, Eighth, Tenth and Eleventh Claims, and his claims against Defendant Thomas, should be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) without leave to replead; and (3) that Plaintiff's remaining claims (i.e., his Second, Third and Fifth Claims against Defendants Foland, Smith, Hepler, Shaver, Crandall, Peets, Gavin, Bilek, Williams and Douglas) should be consolidated with his other action pending in this Court (i.e., *Wellington v. Foland, et al.*, 19-CV-0457). (Dkt. No. 11, at Parts V and VI.)

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 6485157

Neither party has submitted an Objections to the Report-Recommendation and the time in which to do so has expired. (*See generally* Docket Sheet.)

**B. Plaintiff's Demand for Abatement**

On the date on which Magistrate Judge Lovric issued his Report-Recommendation, Plaintiff filed a "demand for abatement," seeking to end several ongoing criminal proceedings pending against him in Johnson City Village Court arising from his arrest for driving with a suspended license and other violations of the New York Vehicle and Traffic Law. (Dkt. No. 10.)

Generally, in memorandum of law in opposition to Plaintiff's "demand for abatement," Defendants argue that the Court should deny Plaintiff's request for the following two reasons: (1) Plaintiff's request is barred by the Anti-Injunction Act, and Plaintiff has failed to identify any exceptions to the Anti-Injunction Act that apply; and (2) Plaintiff's request is barred by the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), and Plaintiff has presented no "extraordinary circumstances" that warrant immediate federal relief. (*Compare* Dkt. No. 12 *with* Dkt. No. 1 *and* Dkt. No. 1, Attach. 1.)

**II. STANDARD OF REVIEW**

**\*2** When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(c)). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [2] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [3] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[2]     *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[3]     *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 147 of 197

Wellington v. Foland, Not Reported in Fed. Supp. (2019)

2019 WL 6485157

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [5]

[4]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a) (3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[5]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*3** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Lovric's thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation: Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein.

Finally, Plaintiff's "demand for abatement" is denied for each of the two reasons provided by Defendants (*see, supra,* Part I.B. of this Decision and Order), as well as the additional reasons that the request is unsupported by a memorandum of law, a citation to the rule or statute on which the request is based, and an affidavit, as required by Local Rules of Practice for this Court. N.D.N.Y. L.R. 7.1(a)(1),(2).

**ACCORDINGLY**, it is

**ORDERED** that, in accordance with note 1 of this Decision and Order, the Clerk of the Court is directed to **CORRECT** the caption of the docket sheet in this action so as to (1) add Christopher D. Ketchum and Thomas Dellapenna as Defendants, (2) change the name of Defendant "Michael Helper" to Defendant "Michael Hepler," (3) change the name of Defendant "Nicholas Crandell" to Defendant "Nicholas Crandall," and (4) change the name of Defendant "Bailey R. Brian" to Defendant "Brian R. Bailey"; and it is further

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 11) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's First, Fourth, Ninth, and Twelfth Claims, and his claims asserted against Defendants Bailey, Dodge, Peers and Ketchum, are *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) **with leave to replead within THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff choose to file an Amended Complaint within 30 days of the date of this Decision and Order, the Amended Complaint must be a complete pleading

**Wellington v. Foland, Not Reported in Fed. Supp. (2019)**

2019 WL 6485157

that does not incorporate by reference any portion of the original Complaint; and it is further

**ORDERED** that Plaintiff's Sixth, Seventh, Eighth, Tenth and Eleventh Claims, and his claims against Defendants Thomas and Dellapenna are *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) **without leave to replead**; and it is further

**ORDERED** that Plaintiff's Second, Third and Fifth Claims against Defendants Foland, Smith, Hepler, Shaver, Crandoll, Peets, Gavin, Bilek, Williams and Douglas, shall be

**CONSOLIDATED** with *Wellington v. Foland, et al.*, 19-CV-0457 (N.D.N.Y.), with this action being designated as the Member Case, the latter action being designated as the Lead Case, and all future filings being made in the Lead Case only; and it is further

**ORDERED** that Plaintiff's "demand for abatement" (Dkt. No. 10) is **DENIED**.

## All Citations

Not Reported in Fed. Supp., 2019 WL 6485157

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 149 of 197

Bey v. District of Columbia, Not Reported in Fed. Supp. (2018)

2018 WL 5777021

2018 WL 5777021
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Stanley Aristilde EL BEY, Plaintiff,
v.
DISTRICT OF COLUMBIA, Doing Business as
United States Corporation, State of New York,
County of Queens, New York City Police Department,
John and/or Jane Does Ceos, John and/or Jane Does
Profitors, John and/or Jane Does Admnistrators,
and John and/or Jane Does Trustees, in Their
Individual and Official Capacities, Defendants.

17-CV-6203 (MKB)
|
Signed 11/01/2018

**Attorneys and Law Firms**

Stanley Aristilde El-Bey, Brooklyn, NY, pro se.

### MEMORANDUM & ORDER

MARGO K. BRODIE, United States District Judge

  **\*1**  Plaintiff Stanley Aristilde El Bey, proceeding *pro se*,
filed the above-captioned action on October 10, 2017, against
various state, municipal, and individual Defendants. (Compl.,
Docket Entry No. 1.) The Court grants Plaintiff's request to
proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915
solely for the purpose of this Memorandum and Order. [1]
For the reasons discussed below, the Court dismisses the
Complaint. [2]

---

[1]    Plaintiff did not sign his motion to proceed *in forma
       pauperis*. (*See* Mot. for Leave to Proceed *in forma
       pauperis*, Docket Entry No. 4.) Should Plaintiff
       file an amended complaint, he must also submit a
       signed and completed motion to proceed *in forma
       pauperis*.

[2]    On October 3, 2018 and again on October 30, 2018,
       Plaintiff filed letters requesting an emergency
       hearing. (Aff. of Fact Demand for Emergency
       Hearing dated October 2, 2018, Docket Entry No.

19; Aff. of Fact Demand for Emergency Hearing
dated October 29, 2018, Docket Entry No. 20.)
A temporary restraining order, like a preliminary
injunction, is an extraordinary remedy that will not
be granted lightly. *See Borey v. National Union
Fire Ins. Co.*, 934 F.2d 30, 33 (2d Cir. 1991).
To obtain a temporary restraining order, Plaintiff
must show "a likelihood of success on the merits,
a likelihood of irreparable harm in the absence
of preliminary relief, that the balance of equities
tips in [plaintiff's] favor, and that an injunction
is in the public interest." *See Am. Civil Liberties
Union v. Clapper*, 804 F.3d 617, 622 (2d Cir.
2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20
(2008) ). A plaintiff may also obtain a temporary
restraining order by showing, in the alternative,
"irreparable harm and either a likelihood of success
on the merits or 'sufficiently serious questions
going to the merits to make them a fair ground
for litigation and a balance of hardships tipping
decidedly toward [Plaintiffs].' " *Clapper*, 785 F.3d
at 825 (quoting *Christian Louboutin S.A. v. Yves
Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206,
215 (2d Cir. 2012) ). Plaintiff has not provided
the Court with sufficient information to support
his applications for a temporary restraining order.
The Court therefore denies Plaintiff's applications
without prejudice to renew.

### I. Background

The Court assumes the truth of the factual allegations in the
Complaint for the purpose of this Memorandum and Order. [3]

[3]
        In addition to the Complaint, Plaintiff has also
        filed several additional documents. (*See, e.g.*,
        Aff. of Fact, Docket Entry No. 5; Writ of
        Execution, Docket Entry No. 6; Aff. of Fact,
        Docket Entry No. 7; Copies of Correspondence
        from other Agencies with Handwritten Messages
        Superscribed by Plaintiff, Docket Entry No. 8;
        Report and Notice of Infraction, Docket Entry No.
        9; Notice, Docket Entry No. 10; Notice of Executor
        Degree – "Res Judicata," Docket Entry No. 11;
        Notice, Docket Entry No. 12; Mot. for Decl. J.,
        Docket Entry No. 13.) These documents contain
        various information regarding, among other things,
        the facts underlying Plaintiff's March of 2017
        arrest, correspondence with the Social Security
        Administration, and complaints about a settlement

reached "without [Plaintiff's] consent" in a section 1983 class action brought by a pretrial detainee in *Parker v. City of New York*, No. 15-CV-6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017). The Court draws additional relevant facts from these filings to ascertain the nature of Plaintiff's claims and assumes their truth for purposes of this Memorandum and Order.

**\*2** While the Complaint and accompanying submissions are far from a model of clarity, the Court understands Plaintiff to be seeking relief related to the seizure of his vehicle in connection with his arrest on July 23, 2017, and being held by the New York City Police Department ("NYPD") during the pendency of his state court criminal case, *People v. Aristilde*, Docket No. CR-030455-17, in Queens County Criminal Court. (Compl. 15; *see also id.* at 1 ("[Plaintiff] is requesting this unlawful action be expedited to Federal Court to redeem ... stolen property classified as 'ARREST EVIDENCE.' ").) [4]

[4]    According to a "Complaint Room Screening Sheet" included in Plaintiff's submissions, Plaintiff was pulled over in a separate incident on March 25, 2017 for driving a vehicle with license plates "reading in sum and substance: private/not for hire/dept of transportation," and which had "excessively tinted driver-side windows." (Copies of Correspondence from other Agencies with Handwritten Messages Superscribed by Plaintiff 11, Docket Entry No. 8.) It appears that the NYPD seized this vehicle in connection with Plaintiff's July of 2017 arrest. (*Id.*) The Complaint Room Screening Sheet further states that "upon further investigation, a/o [arresting officer] discovered that deft was driving with a suspended license ... and observed that the registration for the above vehicle had lapsed." (*Id.*) After the arresting officer informed Plaintiff that he was under arrest, Plaintiff refused to exit the vehicle, and the arresting officer "removed [Plaintiff] from [the] car." (*Id.*)

By letter dated August 7, 2017, the NYPD informed Plaintiff that they were holding his vehicle at the Springfield Gardens Auto Pound in Queens, New York, as evidence seized pursuant to arrest number Q17633443. (*Id.* at 42.) The letter explained that in order to obtain release of the car from the auto pound, Plaintiff must "obtain a District Attorney's Release from the District Attorney Property Release Unit in the borough in which the case is held." (*Id.*) Plaintiff

also needed to determine if an additional release was needed from the "Civil Enforcement Unit" by making a "[f]ormal [d]emand within one hundred twenty [ (120) ] days from case termination" at the "Springfield Gardens Auto Pound ... or the 'Civil Enforcement Unit.' " (*Id.*)

Plaintiff appears to have obtained a letter from the Queens County District Attorney's office permitting the release of his property. The District Attorney Release dated August 24, 2017, states that Plaintiff's vehicle "will not be required by the District Attorney of Queens County in the prosecution of the above entitled case. The property in this case is in the possession of the Property Clerk of the Police Department." (*Id.* at 15.) The current status of Plaintiff's criminal case and vehicle is unclear.

Plaintiff seeks millions of dollars in damages as set forth in a "Schedule of Rent ... and associated fees" included in the Complaint. (*See id.* at 5.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Bey v. District of Columbia, Not Reported in Fed. Supp. (2018)

2018 WL 5777021

### b. Section 1983 claims

**\*3** The Court liberally construes Plaintiff's submissions as asserting claims pursuant to 42 U.S.C. § 1983 against the City of New York, the County of Queens, and the officer involved in arresting him and seizing his vehicle.[5] The Court further construes Plaintiff's submissions as asserting section 1983 claims for false arrest, for impounding his vehicle, as well as violations of his constitutional right to travel, and his procedural due process rights. (*See* Compl. 2 ("Criminalization of my right to travel or execute acts that leads to enjoying the use to the public Highways and by-way's is Conspiracy to deprive the Moor/National of 'due process' "); *see also id.* (arguing that driving with tinted windows "is not probable cause").)

[5]     Plaintiff names the State of New York and the District of Columbia as Defendants in this action. However, these are not proper parties, as they are immune from suit pursuant to the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). In addition, while Plaintiff also names the NYPD and Queens County as Defendants, the NYPD is a non-suable agency of the City of New York, *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007), and Queens County is a subdivision of the City of New York, *see Jones v. Queens Cty.*, No. CV-90-3329, 1991 WL 37083, at \*1 (E.D.N.Y. Mar. 19, 1991) ("City agencies such as the police department and subdivisions such as Queens County are not subject to lawsuits in their own names but only in the name of the City of New York.").

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

### i. Plaintiff's section 1983 claim
### against the City of New York

In order to assert a section 1983 claim against the City of New York, a Plaintiff must demonstrate that "(1) an official [municipal] policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ); *see also Douglas v. City of New York*, 730 F. App'x 12, 17 (2d Cir. 2018) (same). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick*, 757 F.3d at 62 (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions). In addition, a plaintiff bringing a section 1983 claim against individuals must show that each of the named individuals is personally liable for the alleged harm. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). "Because vicarious liability is inapplicable to ... [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

**\*4** Plaintiff fails to allege any facts as to any unconstitutional policy or custom attributable to the City of New York. While Plaintiff alleges that his arrest "was motivated by a[n] ulterior [m]otive (meeting quota)," (Compl. 3), he provides no allegations to suggest that the arrest was made pursuant to an unlawful municipal policy. *See Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at \*4 (E.D.N.Y. Sept. 22, 2017) (dismissing *Monell* claim based on allegation of "unwritten quota policy"); *Weaver v. City of New York*, No. 09-CV-10262, 2011 WL 4974570, at \*8 (S.D.N.Y. Oct.

Case 6:23-cv-01485-DNH-TWD Document 4 Filed 03/08/24 Page 152 of 197

**Bey v. District of Columbia, Not Reported in Fed. Supp. (2018)**

2018 WL 5777021

18, 2011) ("To the extent that the [c]omplaint attempts to allege an official policy or custom, [the plaintiff] sets forth a conclusory allegation that [the police officer defendant] was seeking to satisfy a monthly arrest quota. This is insufficient to state a *Monell* claim." (internal citations omitted) ). The Court therefore dismisses Plaintiff's claim against the City of New York.

### ii. Plaintiff's section 1983 claims against NYPD officers

#### 1. False arrest claim

In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred" to determine if the officers had probable cause to arrest the plaintiff for a violation of state law. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law). "Under New York law, 'to prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) ). "A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A law enforcement official violates the Fourth Amendment's protections if he or she arrests someone without probable cause. *Id.* Conversely, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco*, 615 F.3d at 139). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime....' " *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez*, 728 F.3d at 155. The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before

it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ). Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Jaegly*, 439 F.3d at 153 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ). A "plaintiff is not entitled to damages under [section] 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. The question is whether the facts known to the arresting officer, at the time of the arrest, objectively support a finding of probable cause to support the arrest. *Gonzalez*, 728 F.3d at 155.

**\*5** The Court cannot evaluate whether Plaintiff can assert a false arrest claim because he fails to include the details regarding his July of 2017 arrest in the Complaint. The Court therefore dismisses this claim to the extent it rests on Plaintiff's July of 2017 arrest.

Plaintiff also fails to assert a plausible false arrest claim based on the March of 2017 arrest. According to the information contained in the Complaint Room Screening Sheet, the officers arrested Plaintiff for driving with a suspended driver's license. *See People v. Chatelain*, 886 N.Y.S.2d 679, 680 (App. Div. 2009) ("Having observed defendant drive a vehicle with a suspended license, the officer had probable cause to arrest him, and we conclude that issuance of a summons would not have been a practicable alternative to arrest." (internal citation omitted) (first citing *People v. Troiano*, 35 N.Y.2d 476, 478 (App. Div. 1974); and then citing *People v. Peterson*, 666 N.Y.S.2d 785 (1997) ) ). Plaintiff does not allege any facts that suggest the officers did not have probable cause to arrest him on March 25, 2018. The Court therefore dismisses Plaintiff's false arrest claim.

#### 2. Vehicle impound claim

The impoundment of a vehicle may implicate rights guaranteed by the Fourth Amendment's protection against unreasonable searches and seizures. *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) ("The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."); *see also United States v. Coccia*, 446 F.3d 233, 237–38 (1st Cir. 2006) (considering a challenge to the towing of a vehicle as an

2018 WL 5777021

unreasonable seizure in violation of the Fourth Amendment). However, "[i]n the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *S. Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) ). "When a person is taken into custody after being stopped in his vehicle, it is reasonable for police officers to impound the vehicle under the community care functions where, among other things, the vehicle would otherwise potentially impede traffic, threaten public safety, or be subject to vandalism." *United States v. Colon*, No. 10-CR-498, 2011 WL 569874, at *14 (S.D.N.Y. Feb. 8, 2011) (first citing *United States v. Bailey*, 468 F. Supp. 2d 373, 392 (E.D.N.Y. 2006); and then citing *Opperman*, 428 U.S. at 373).

To the extent Plaintiff seeks to plead a claim based on the impoundment of his vehicle, he has not provided sufficient allegations to support this claim. Based on the Complaint Room Screening Sheet, it appears that NYPD officers arrested Plaintiff after they stopped him while he was driving. Plaintiff does not allege that the impoundment was improper because, for example, the vehicle was not impeding traffic, threatening public safety, or not potentially subject to vandalism. *See Colon*, 2011 WL 569874, at *14 (finding the decision to impound a vehicle reasonable because, among other things, "it could have been susceptible to vandalism or theft"); *Bailey*, 468 F. Supp. 2d at 392 ("It is well-established that, when a person is taken into custody after being stopped in his vehicle, it is reasonable for police officers to impound the vehicle under the community car[e] functions where, among other things, the vehicle would otherwise potentially impede traffic, threaten public safety, or be subject to vandalism."). In addition, Plaintiff does not allege that the impoundment was improper because a passenger was present to take control of the vehicle. *See Barnes v. City of New York*, No. 13-CV-7283, 2015 WL 4076007, at *8 (S.D.N.Y. July 2, 2015) ("Courts have found warrantless impoundment of vehicles to be reasonable, for example, when the driver has been arrested and no one else is able to take control of the vehicle." (citing cases) ), *report and recommendation adopted*, No. 13-CV-7283, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015).

**\*6** The Court dismisses this claim because Plaintiff fails to allege any facts that suggest that the impoundment of his vehicle was improper and violated his Fourth Amendment rights.

### 3. Right to travel claim

"The Constitution protects a fundamental right to travel within the United States," which, as interpreted by the Second Circuit, includes the "right to intrastate as well as interstate travel." [6] *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99–100 (2d Cir. 2009) (first citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); and then citing *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971); and then citing *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) ); *see also New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45, 66–67 (2d Cir. 2018) ("This Court has 'acknowledged a correlative constitutional right to travel within a state.' " (alterations omitted) (citing *New Rochelle Mun. Hous. Auth.*, 442 F.2d at 648) ). "However, that local regulations 'merely have an effect on travel is not sufficient to raise an issue of constitutional dimension,' " because the right to travel "is implicated only when the statute 'actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to *penalize* the exercise of that right.' " *Id.* at 66–67 (alterations omitted) (quoting *Soto-Lopez v. N.Y.C. Civil Serv. Comm'n*, 755 F.2d 266, 278–79 (2d Cir. 1985) ). Moreover, "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." *Weisshaus v. Port Auth. of New York & New Jersey*, 497 F. App'x 102, 104 (2d Cir. 2012) (first quoting *Torraco*, 615 F.3d at 140–41; and then citing *Soto-Lopez*, 755 F.2d at 278).

6    "Although the Supreme Court has suggested that '[t]he textual source of the constitutional right to travel, or, more precisely, the right of free interstate migration, ... has proved elusive,' it has protected that right by invoking both the Privileges and Immunities Clause of the Fourteenth Amendment and the Equal Protection Clause." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009) (quoting *Att'y Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 902 (1986) ).

Plaintiff has not alleged any facts to suggest a violation of his right to travel. The seizure of Plaintiff's vehicle alone is insufficient to state a claim for violation of his constitutional right to travel. Plaintiff retained his ability and constitutional right to travel even if inconvenienced by the seizure of his motor vehicle. *See Weisshaus*, 497 F. App'x at 104; *see also*

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 154 of 197

Bey v. District of Columbia, Not Reported in Fed. Supp. (2018)

2018 WL 5777021

*Annan v. State of New York Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016) ("What is at issue here is simply [the plaintiff's] ability to travel by motor vehicle on New York's roads — a privilege not protected by the Constitution." (collecting cases) ), *aff'd sub nom. Annan v. New York State Dep't of Motor Vehicles*, 662 F. App'x 85 (2d Cir. 2016). The Court therefore dismisses Plaintiff's right to travel claim.

#### 4. Due process claim

 **\*7** The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 332). Because the requirements of procedural due process "apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property" and because "the range of interests protected by procedural due process is not infinite," *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972), the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,' '" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the court finds that the plaintiff has been deprived of such an interest, it evaluates whether the government's procedures comport with due process. *See id.*

In order to state a procedural due process claim for the seizure of his vehicle, Plaintiff must allege that:

> (1) the City arrested him and seized his property; (2) it did not give him a property voucher with the constitutionally-required notice printed on it; (3) it did not otherwise notify him of the procedures he could follow to reclaim his property; and (4) he was deprived of the property as a result.

*Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) (quoting *Frith v. City of*

*New York*, No. 07-CV-5899, 2011 WL 3477083, at * 3 (S.D.N.Y. July 7, 2011) ); *see also Chunn v. Amtrak*, No. 14-CV-6140, 2015 WL 10520663, at *7 (S.D.N.Y. Aug. 6, 2015) (citing *Contant v. City of New York*, No. 09-CV-2851, 2012 WL 1158756 at *6–*7 (E.D.N.Y. Mar. 16, 2012) ), *report and recommendation adopted*, No. 14-CV-6140, 2016 WL 1071029 (S.D.N.Y. Mar. 17, 2016).

Plaintiff fails to allege inadequate notice regarding the procedures to reclaim his vehicle. The Court therefore dismisses Plaintiff's procedural due process claim.

#### c. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order to the extent that Plaintiff may seek to pursue a section 1983 claim for violation of his constitutional rights. Plaintiff must provide the date and location for all relevant events and a brief description of what each defendant did or failed to do in violation of Plaintiff's civil rights. Plaintiff is advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Memorandum and Order.

#### III. Conclusion

Accordingly, the Court dismisses the Complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint. To aid Plaintiff with this task, the Court respectfully requests the Clerk of Court to provide Plaintiff with a "Complaint for Violation of Civil Rights" form and an *in forma pauperis* form. If Plaintiff fails to timely file an amended complaint, the Court will enter judgment dismissing this action for the reasons set forth above.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Bey v. District of Columbia, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 155 of 197

2018 WL 5777021

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5777021

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Johnson El v. Bird, Not Reported in Fed. Supp. (2020)

2020 WL 5124920

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Richards v. City of New York,   S.D.N.Y.,   May 30, 2023

2020 WL 5124920
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeremiah Siddique JOHNSON EL,
a/k/a Jerry L. Johnson, Plaintiff,

v.

Robert J. BIRD d/b/a Robert J. Bird/Town of Chester
Police, Bruce R. Chambers, Anthony Miranda, Daniel
Doellinger, and Town of Chester Police, Defendants.

No. 19-CV-5102 (CS)
|
Signed 08/31/2020

**Attorneys and Law Firms**

Jeremiah S. Johnson El, Warwick, New York, Pro se Plaintiff.

Michael A. Czolacz, Morris Duffy Alonso & Faley, New
York, New York, Counsel for Defendants.

**OPINION & ORDER**

Seibel, U.S.D.J.

 *1  Before the Court is the motion to dismiss of Defendants
Robert J. Bird, Bruce R. Chambers, Daniel J. Doellinger,
and the Town of Chester Police Department (collectively,
"Defendants"). (Doc. 38.) For the following reasons,
Defendants' motion is GRANTED.

**I. BACKGROUND**

**A. Facts**

I accept as true the facts, but not the conclusions, set forth in
Plaintiff's Second Amended Complaint, (Doc. 27 ("SAC")),
and Plaintiff's Opposition to Defendants' Motion to Dismiss
(Doc. 42 ("P's Opp.")). [1]  As I explained in the memo
endorsement issued December 3, 2019, (Doc. 32), I treat the
documents at ECF Nos. 28-30 [2] as if they are part of the
Second Amended Complaint. [3]

[1] "[A]llegations made in a *pro se* plaintiff's
memorandum of law, where they are also consistent
with those in the complaint, may also be considered
on a motion to dismiss." Braxton v. Nichols, No.
08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y.
Mar. 18, 2010). The Court will send Plaintiff copies
of all unreported cases cited in this Opinion and
Order. Plaintiff submitted several unauthorized sur-
replies, (Docs. 45-47), which I nevertheless have
considered and which do not change the outcome.

[2] In my December 3, 2019 Order, I erroneously
referred to Docs. 28-31, but Doc. 31 is a letter from
defense counsel; I meant to refer to Docs. 28-30.

[3] Plaintiff's papers include entirely frivolous
material, such as irrelevant legal citations and
incoherent arguments regarding ancient treaties
and the like. I informed Plaintiff several times,
through memo endorsement and at conferences,
that "[t]his case is about an allegedly unlawful stop
and allegedly unlawful tickets" and that he "would
do well to set aside the gobbledygook and focus
on those claims." (*See* Doc. 12.) He did not heed
my suggestion. Nevertheless, because Plaintiff *pro
se* he is entitled to "special solicitude," Shibeshi
v. City of N.Y., 475 F. App'x 807, 808 (2d Cir.
2012) (summary order) (internal quotation marks
omitted), and I construe his papers liberally to
raise the strongest arguments that they suggest, *see*
Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,
474 (2d Cir. 2006) (*per curiam*).

On or about March 22, 2019, around 4:00 a.m., Town
of Chester Police Officer Bruce R. Chambers followed
Plaintiff's car for about one mile and then pulled him over for a
traffic stop. (SAC at 1-2.) Plaintiff did not initially understand
why Chambers pulled him over. (*Id.* at 4-5.) Chambers asked,
"[W]ho is this car registered to[?]," and Plaintiff stated
that the car was registered to "a religious organization and
trust" called "MOSI-EL." (P's Opp. at 4.) [4]  When Chambers
requested Plaintiff's driver's license, Plaintiff stated that he is
an "indigenous man of Moorish American de[s]cent" and did
not need to have a driver's license while traveling, and instead
he provided a "nationality card" and a "picture identification
card." (*Id.*)

4    Citations to the Second Amended Complaint and Plaintiff's Opposition use the page numbers generated by the Court's Electronic Filing System.

**\*2** Chambers threatened to arrest Plaintiff or impound his vehicle, and grabbed the handle of his gun. (*Id.*) After forty-five minutes, Plaintiff requested a sergeant. (*Id.*) Thereafter, Officer Robert J. Bird arrived and made unspecified threats, and Plaintiff again requested a sergeant. (*Id.*) Bird said he was a "supervising officer sergeant" but "had no sergeant shield displayed." (*Id.* at 2.) Bird ordered Plaintiff out of the car and opened his passenger door. (*Id.* at 4.) Chambers stood at the driver's side door. Bird said that if Plaintiff did not get out of the car, he would " 'physically snatch' " Plaintiff out of the car, and said, "[G]et your black ass out of the car before I physically remove your ass out of the car.' " (*Id.* at 2, 4.) Plaintiff exited the car, and the officers "surrounded" him while "grabbing their guns," refused to return his identification, and said they would tow his car if he did not produce a driver's license. (*Id.* at 4.)

Plaintiff gave Chambers his "bank card," and Chambers conducted "an unlawful search of [his] information." (*Id.*) Plaintiff was told to sit back in his car. (*Id.*) One of the officers told him he was pulled over for "a wrong left turn" and "having no inspection sticker." (SAC at 4-5.) Chambers gave him a ticket for "no inspection" and then partially tore the inspection sticker on Plaintiff's window. (P's Opp. at 4; *see* Doc. 30 at 3.) Bird said, " '[W]here did you get this inspection, New Burgh New York I bet, yea, Yall, All dirty and illegal in New Burgh,' " and " 'I don't trust [none] of you people, you all are illegal.' " (P's Opp. at 4.) Plaintiff was also ticketed for failing signal when making a turn under New York Vehicle and Traffic Law ("VTL") § 1163(b). (SAC at 21; *see* Doc. 40-2.) [5] The officers told Plaintiff that they did not recognize Plaintiff's "status as an indigenous man" and that he did not have any rights under the Treaty of Peace and Friendship of 1786/87, which Plaintiff claims governs his rights as a "flesh and blood man Moor/Muur American National." (P's Opp. at 4.) On July 17, 2019, Plaintiff disposed of his case with a $150 fine for failing to yield to a pedestrian in a crosswalk under VTL § 1152(a), and that disposition covered the no-inspection ticket. (Doc. 40-2.)

5    I can take judicial notice of the Chester Town Court Certificate of Disposition dated August 20, 2019, attached to Defendants' counsel's declaration in support of the motion to dismiss. (Doc. 40-2.) *See Jones v. Rivera*, No. 13-CV-1042, 2015 WL 8362766, at \*3 (S.D.N.Y. Dec. 7, 2015) (taking judicial notice of certificate of disposition submitted by defendant on motion to dismiss).

At some point after the traffic stop, Plaintiff made a complaint to the Town of Chester Police Department about Bird and Chambers. (P's Opp. at 4.) "[S]hortly afterwards," a poster with Plaintiff's photograph under the word "CAUTION" was displayed at gas stations in Chester. (*Id.*; *see* SAC at 20.) The text of the poster reads as follows:

> The above listed male is Jeremiah Siddique Johnson El (AKA Jerry Lateek Johnson, Jerry Poindexter, Jerome Johnson). During a recent interaction with TCPD Officers, Jeremiah stated that he is a Moorish National and that the laws of the United States, as well as the State of New York do not apply to him. Jeremiah claims to be a former law enforcement officer and has a current unrestricted (full carry) pistol permit. Jeremiah has also mailed several suspicious packages to Town Offices. At this time Jeremiah is considered a safety risk. Persons coming into contact with Jeremiah are to contact Town Police at (845) 469-9311 for non-emergencies and 911 for emergencies.

(SAC at 20.) The poster "[s]lander[ed]" Plaintiff and "cause[d] injury," (P's Opp. at 4), by affecting "the family and [neighbors]" and making his neighbors uncomfortable, afraid, and antisocial, (SAC at 5).

Some weeks after the traffic stop, Bird wrote a letter to Orange County Court Judge William J. DeProspo describing what he called "concern[ing]" behavior by Plaintiff, stating that Plaintiff had a county-issued Unrestricted Carry Pistol Permit, and requesting that Judge DeProspo "immediately revoke" the pistol permit "in the interest of public safety." (SAC at 13.) Bird wrote that he learned that Plaintiff claimed to be a former police officer with the Administration for Children's Services ("ACS") in New York City, checked with Chief Miranda of the ACS Police, and was told that Plaintiff was never employed as a police officer by that organization and

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 158 of 197

that Plaintiff "resigned while facing charges for a false arrest as well as an Article 78 for being mentally unfit for the job." (*Id.*) Bird also wrote that in 1991 Plaintiff was convicted for criminal possession of a loaded firearm in the third degree, a felony. (*Id.*) Plaintiff alleges that the letter is a "false report." (*Id.*)

**\*3**  On May 16, 2019, Plaintiff's pistol permit was revoked. (*Id.* at 15.) Plaintiff requested reconsideration and Judge DeProspo scheduled a hearing, for which Plaintiff failed to appear. (*Id.*; *see id.* at 10-11.) Plaintiff was not aware of the hearing. (*Id.* at 4.) On October 9, 2019, after receiving and reviewing several written submissions from Plaintiff, (*id.* at 11), Judge DeProspo issued a second order revoking Plaintiff's pistol permit, (*id.* at 15). As a result of losing his permit, Plaintiff lost contracts to work as an armed security guard. (*Id.* at 5.) Officers from the Orange County Sheriff's Department, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Federal Bureau of Investigation came to Plaintiff's home and removed his weapons. (P's Opp. at 5.)

**B. Procedural History**

On May 30, 2019, Plaintiff filed a complaint against Bird, Chambers, and Western Surety Company alleging various constitutional violations resulting from the traffic stop. (Doc. 2 at 5-6.) Plaintiff also alleged a violation of the Treaty of Peace and Friendship between the United States and Morocco ("Treaty"). (*Id.* at 5.) By Order dated July 3, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees – that is, *in forma pauperis.* (Doc. 5.) By Order dated July 12, 2019, the Court dismissed the claims against Western Surety and ordered service on Defendants Bird and Chambers. (Doc. 7.) Defendants answered, (Doc. 15), and at a case management conference on September 5, I granted Plaintiff leave to amend. (Minute Entry dated Sept. 5, 2019.) On October 1, Plaintiff filed an amended complaint, adding Miranda and Town of Chester Police Chief Doellinger as defendants. (Doc. 19 at 1.) [6] The Town of Chester Defendants – Bird, Chambers, and Doellinger – filed a pre-motion letter on October 3, (Doc. 20), and the Court held a pre-motion conference on October 28 at which I granted Plaintiff leave to amend a second time, (Minute Entry dated Oct. 28, 2019).

[6]   It does not appear that Miranda was served, but for the reasons discussed herein, Plaintiff's claims against him are dismissed *sua sponte* for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B).

On November 26, Plaintiff filed the Second Amended Complaint naming Bird and "Et al" as Defendants and listing four causes of action: fraud, violation of due process, perjury, and emotional distress. (SAC at 4-6.) On January 13, 2020, Defendants filed a motion to dismiss, (Doc. 38), a memorandum of law in support of that motion, (Doc. 39), and an affidavit of counsel, (Doc. 40). On February 19, 2020, Plaintiff filed an opposition to the motion, (P's Opp.), and Defendants replied on March 2, 2020, (Doc. 43), after which Plaintiff submitted unauthorized sur-replies, (Docs. 45-47).

## II. LEGAL STANDARDS

**A. Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While *Federal Rule of Civil Procedure 8* "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678-79.

**\*4**  In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.' " *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As described above, complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi*, 475 F. App'x at 808 (internal quotation marks and emphasis omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### B. Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint ..., and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). Plaintiff has attached the following relevant documents to the Second Amended Complaint and his opposition: the letter from Bird to DeProspo, (SAC at 13), the poster, (*id.* at 20), the revised order of revocation and accompanying letter from DeProspo to Plaintiff, (*id.* at 10-12, 14-15), and a receipt dated July 17, 2019, showing the disposition of two traffic violations, (*id.* at 21). I consider the facts alleged in these documents for purposes of this motion. Plaintiff also attached a document entitled "Treaty with Morocco. 1787." (SAC 22-29.) As I informed Plaintiff on the record at conferences on September 5, 2019, and October 28,

2019, and in writing, (*see* Doc. 12), this document cannot affect the outcome of this motion as any claims asserted under it are frivolous. *See Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 272 (D.N.J. 2011) (emphasis in original) (internal quotations omitted) ("[C]laims challenging any events associated with arrests, searches, detention, incarceration, prosecution, conviction, etc. that occur within the United States' actual geographical territory (and, especially, if these events involved individuals who reside within that territory) cannot possibly implicate *any* provision of the Treaty with Morocco. Therefore, all such ... claims invoking the Barbary Treaties ... are necessarily frivolous...."). Accordingly, I do not consider it. And as previously mentioned, I take judicial notice of the Chester Town Court Certificate of Disposition dated August 20, 2019. (Doc. 40-2.) *See Jones*, 2015 WL 8362766, at *3.

### III. DISCUSSION

### A. Claims Arising Out of the Traffic Stop

**\*5**  Plaintiff styles his first cause of action as "fraud" related to the March 22, 2019 traffic stop, (*see* SAC at 4-5; P's Opp. at 5), but he does not allege any facts that would support such a claim. Interpreting Plaintiff's papers to raise the strongest arguments they suggest, I construe Plaintiff's allegations to be seeking to assert claims based on a traffic stop without reasonable suspicion and/or malicious prosecution under 42 U.S.C. § 1983.

### 1. Illegal Stop

"[T]raffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (internal quotation marks omitted).

> An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion. The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop and then the

Johnson Ef V. Bird, Not Reported in Fed. Supp. (2020)

2020 WL 5124920

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 160 of 197

decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. Reasonable suspicion exists where the officer has a particularized and objective basis for suspecting the person stopped of criminal activity.

*Chepilko v. Bushuyev*, No. 14-CV-6732, 2016 WL 6407479, at *4 (S.D.N.Y. Oct. 28, 2016) (internal quotation marks, citations, and alterations omitted), *report & recommendation adopted*, 2016 WL 7106235 (S.D.N.Y. Dec. 5, 2016). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Plaintiff alleges in conclusory fashion that Chambers had no probable cause to stop him, but his papers contain no facts that plausibly allege an illegal traffic stop. Plaintiff alleges that Chambers told him that the stop was for a "wrong left turn." (SAC at 5.) VTL § 1163(b) requires turn signals to be used "during not less than the last one hundred feet" before turning. Plaintiff does not allege that he was using his turn signal, that he did not make a "wrong" turn, or that Chambers did not see him or could not have seen him making such a turn. Plaintiff alleges that Chambers did not pull over a speeding driver who dangerously passed Plaintiff, but that fact has no bearing on Chambers's reasonable suspicion as to whether Plaintiff was not using proper turning movements and required signals. Plaintiff alleges no facts from which I can infer that Chambers lacked reasonable suspicion to stop him. Accordingly, his claim based on an illegal stop is dismissed. *See Marshall v. City of N.Y.*, No. 19-CV-7128, 2014 WL 1468890, at *4 (S.D.N.Y. Apr. 15, 2014).[7] Indeed, Plaintiff later admitted that he had failed to yield, (*see* Doc. 40-2), which shows that he committed a traffic violation supporting the stop. *Sandstrom v. New York*, No. 18-CV-1514, 2020 WL 3949344, at *15 (W.D.N.Y. Feb. 20, 2020), *report & recommendation adopted sub nom. Sandstrom v. Chautauqua County*, 2020 WL 1861710 (W.D.N.Y. Apr. 13, 2020). In other words, Plaintiff's admission to the violation "conclusively establishes probable cause for [the] traffic stop." *Evans v. Solomon*, 681 F. Supp. 2d 233, 245 (E.D.N.Y. 2010).[8] Plaintiff has thus not stated a plausible Fourth Amendment violation arising from the stop.

[7] Plaintiff alleges that Chambers detained him "for over 45 minutes." (P's Opp. at 4.) To the extent Plaintiff is seeking to allege an unreasonable seizure based on the length of his detention, he fails to do so. Even though "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," *Rodriguez v. United States*, 575 U.S. 348, 350 (2015), Plaintiff alleges no facts suggesting that the stop was overly long. To the contrary, Plaintiff admits that he prolonged the stop by refusing to produce a driver's license, providing only unofficial identification that required the officers to track down whether Plaintiff was in fact licensed, and insisting that the laws of New York State and the United States do not apply to him as a Moorish national. (P's Opp. at 4.)

[8] To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous. *See Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order).

### 2. Malicious Prosecution

**\*6** Plaintiff alleges that Chambers "gave [him] a ticket for no inspection and then ripped [his] inspection sticker out of [his] window." (P's Opp. at 4.) To assert a malicious prosecution claim, Plaintiff must plausibly allege that "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice." *Creese v. City of N.Y.*, No. 19-2502, 2020 WL 2755698, at *3 (2d Cir. May 27, 2020) (summary order) (internal quotation marks omitted). "[T]o make out a claim for malicious prosecution, a plaintiff must 'show some deprivation of liberty consistent with the concept of seizure.' " *Corcoran v. Higgins*, No. 08-CV-10734, 2010 WL 1957221, at *4 (S.D.N.Y. May 13, 2010) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)). "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). "[A] plaintiff asserting a malicious prosecution claim under § 1983 must [also] show that the underlying criminal proceeding ended in

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 161 of 197

Johnson Ef V. Bird, Not Reported in Fed. Supp. (2020)

2020 WL 5124920

a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).

Here, Plaintiff suffered no deprivation of liberty because he received two pre-arraignment, non-felony summonses for violation of VTL §§ 1163 (failure to use a turn signal before changing lanes) and 306 (uninspected motor vehicle) with no further restrictions. (*See* P's Opp. at 4-5; Doc. 40-2.) Plaintiff does not allege any further encumbrances on his liberty. Accordingly, he has not plausibly alleged a malicious prosecution claim. *See Corcoran*, 2010 WL 1957231, at *4 (granting summary judgment on malicious prosecution claim because two traffic tickets did not constitute a Fourth Amendment seizure); *Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 227-29 (E.D.N.Y. 2010) (collecting cases), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

Even if Plaintiff had plausibly alleged deprivation of liberty, he has not alleged that the proceeding terminated in his favor. "[I]f the outcome [of a proceeding] was the result of a compromise to which the accused agreed, ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). "When a charge is dismissed as part of a plea bargain, the dropped charge is not a favorable termination sufficient to support a malicious prosecution claim." *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011). Here, Plaintiff received tickets for violation of VTL §§ 1163 and 306. (*See* Doc. 40-2.) The Chester Town Court disposed of the § 1163(b) ticket upon Plaintiff's payment of a fine for violation of VTL § 1152(a) (failure to yield to a pedestrian in a crosswalk), and it disposed of the § 306(b) ticket because it was covered by that payment. (*See id.*) Accordingly, Plaintiff did not allege a favorable termination, and his malicious prosecution claim would also be dismissed on that basis. [9] *See Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (summary order) ("The dismissal of charges as part of a plea bargain ... does not constitute a favorable termination.").

[9]     If Plaintiff intended to assert a false arrest claim, it would likewise fail, both because Plaintiff was not subjected to deprivation of liberty tantamount to an arrest, *see LoSardo v. Ribaudo*, No. 14-CV-6710, 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015) (collecting cases), and because his conviction shows that by definition there was probable cause,

*see, e.g., Horvath v. City of N.Y.*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015).

**B. Claims Arising Out of the Revocation of Plaintiff's Firearm Permit**

Plaintiff styles his second cause of action as a "violation of due process" involving "[f]raud regarding Violation of 2nd Amendment Rights." (*See* SAC at 5; P's Opp. at 5-6.) Plaintiff may be asserting claims that Bird, Chambers, Doellinger, and Miranda violated his right to procedural due process by causing his pistol permit to be revoked. But in a previous ruling in a different case brought by Plaintiff, Chief Judge McMahon dismissed for failure to state a claim on which relief may be granted Plaintiff's procedural due process claim based on the same facts, because "Plaintiff allege[d] no facts suggesting that the state-court remedy to challenge Judge DeProspo's decision – an Article 78 proceeding in the Appellate Division – is inadequate." *Johnson El ex rel. Johnson v. DeProspo*, No. 19-CV-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) (citation omitted). This claim is barred here under the doctrine of claim preclusion, which provides that "a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 179 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd sub nom. Gutman v. Yeshiva Univ.*, 637 F. App'x 48 (2d Cir. 2016) (summary order). [10] A court is entitled to raise the defense of claim preclusion *sua sponte*. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398 n.4 (2d Cir. 2003).

[10]     Because the previous suit arose out of federal court, federal common law governs. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012).

**\*7** The previous granting of a motion to dismiss for failure to state a claim is a final adjudication on the merits, it involved Plaintiff, and the claim that Defendants violated Plaintiff's procedural due process right by causing his pistol permit to be revoked was raised in the prior action as to Bird and Chambers and could have been raised as to Doellinger and Miranda because the claims arise out of the same incident.

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 162 of 197

**Johnson El v. Bird, Not Reported in Fed. Supp. (2020)**

2020 WL 5124920

Moreover, I agree with Chief Judge McMahon on the merits. And, in any event, even if Plaintiff was not notified of the in-person hearing, Judge DeProspo provided Plaintiff with an ample opportunity to be heard by considering multiple written submissions from Plaintiff before entering his final order. Plaintiff's due process claims arising out of the pistol permit revocation are therefore dismissed. [11]

[11]    Chief Judge McMahon's order of dismissal is dated November 22, 2019. Plaintiff's Second Amended Complaint is dated November 26, 2019. It therefore seems like Plaintiff was trying to get a second bite at the apple as to his pistol permit revocation claim. He is advised that further attempts to bring this same claim may be dismissed as frivolous because he has now been told twice that it is not meritorious, and any further attempts will waste the Court's and opposing counsel's time.

The next claim Plaintiff advances under the heading of due process seems to be distinct from what Plaintiff alleged in his case before Chief Judge McMahon. Plaintiff alleges here that Bird, Chambers, and Doellinger conducted an investigation into Plaintiff's background and sent to Judge DeProspo false information provided by Miranda, which caused DeProspo to revoke Plaintiff's gun permit, which caused the authorities to go to Plaintiff's home and confiscate his arms. Plaintiff claims that this violated his Second Amendment right to bear arms. (P's Opp. at 5-6.)

Judge DeProspo revoked Plaintiff's pistol permit under N.Y. Penal Law § 400, (*see* SAC at 14-15), which provides that no firearm license shall be issued to a person who has been convicted of a felony. Judge DeProspo's order indicates that Plaintiff had been convicted of a felony, and Plaintiff does not deny it. [12] Therefore, the permit revocation appears to be squarely within § 400. And it is well established that denying felons firearm permits does not violate the Second Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (reaffirming that prohibitions on firearm possession by felons are permissible); *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons...."); *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (upholding as constitutional restriction on Second Amendment rights of convicted felons) (*per curiam*).

[12]    Evidently, Plaintiff lied to the licensing judge in 2015 and said he was not guilty of the felony of which he had previously been convicted. (SAC at 12.) But he has not denied in his many submissions to this Court that he was convicted of Criminal Possession of a Loaded Firearm in the Third Degree in 1991. (*See id.* at 14.)

Plaintiff claims as his third cause of action that Miranda, the Chief of ACS, committed perjury. (SAC at 5.) This allegation seems to arise out of Bird's investigation, during which Miranda told him that Plaintiff was never employed as a police officer by ACS and that Plaintiff "resigned while facing charges for a false arrest as well as an Article 78 for being mentally unfit for the job." (*Id.* at 13.) There is no indication that Bird was aware that any information he received from Miranda was false, but in any event, perjury is a crime and does not give rise to a civil cause of action. *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). [13] Plaintiff therefore has not stated a cognizable claim in connection with this activity. [14]

[13]    Further, the crime of perjury involves knowingly false statements under oath, and there is no indication that any of the challenged statements were made under oath.

[14]    The Court dismisses this claim *sua sponte* as to Miranda under 28 U.S.C. § 1915(e)(2)(B) (authorizing dismissal of claims filed *in forma pauperis* if they are frivolous or fail to state a claim upon which relief can be granted).

## C. Claims Arising Out of the Town of Chester Police Department's Poster

**\*8**  Plaintiff claims that the Town of Chester created a "[s]landerous, defamatory notice" that caused him emotional distress. (SAC at 5-6.) I construe this to be an attempt to state a claim that Defendant Town of Chester violated Plaintiff's right to due process by defaming him, which is known as a "stigma plus" claim. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

Even palpably false statements by a governmental actor will not support a federal claim if the only injury is to the plaintiff's reputation. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ("[A]ny harm or injury to [a reputational] interest, even where ... inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property'

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 163 of 197

Johnson El v. Bird, Not Reported in Fed. Supp. (2020)

2020 WL 5124920

recognized by state or federal law...."). To prevail on a "stigma plus" claim, a plaintiff must show "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she states is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights" in addition to the stigmatizing statement. *Sadallah*, 383 F.3d at 38 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003); *see Paul*, 424 U.S. at 701-02, 710-11). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Sadallah*, 383 F.3d at 38 (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).

Assuming that Plaintiff had plausibly alleges that the poster is sufficiently false and derogatory, he has failed to plausibly allege any state-imposed burden. Plaintiff does not describe any injury resulting from the poster beyond damage to his reputation, (*see* SAC at 5 (Defendants' actions made Plaintiff's neighbors uncomfortable, afraid, and antisocial)), and " 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine," *Sadallah*, 383 F.3d at 38 (alteration in original) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)). Absent any allegation of an additional "deprivation of a legal right or status," *Abramson v. Pataki*, 278 F.3d 93, 101, 103 (2d Cir. 2002), Plaintiff has not alleged a "plus" sufficient to sustain a "stigma plus" claim. Accordingly, his due process claim arising out of the Town of Chester Police Department's poster is dismissed.

Plaintiff also alleges that he made a complaint to the Town of Chester Police Department against Bird and Chambers and "shortly afterwards" the poster "was circulated throughout the town." (P's Opp. at 4.) Plaintiff may be trying to state a claim for First Amendment retaliation. (*See* SAC at 5 ("Respondent(s) acted in careless manner with regards to the personal attacks/retaliation....").) To state such a claim, a plaintiff "must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (internal quotation marks and alterations omitted). "[P]rivate citizens claiming retaliation for their criticism of public officials have been required to

show that they suffered an actual chill in their speech" or other forms of "tangible harm" as a result. *Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) (internal quotation marks omitted) (collecting cases).

**\*9** Here, Plaintiff has not alleged that the poster chilled his speech or caused other tangible harm sufficient to state a retaliation claim under § 1983. He alleges in conclusory fashion that his family and neighbors were affected and his neighbors made to feel uncomfortable, afraid, and antisocial. (SAC at 5.) But he does not allege any concrete harm such as the revocation of a building permit, the failure to enforce zoning laws, or an arrest without probable cause. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994); *Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *14 (E.D.N.Y. Sept. 26, 2017). Because "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort," the poster "fail[s] to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court." *Zherka*, 634 F.3d at 645-46. Plaintiff's First Amendment claim is therefore dismissed.

### D. Remaining Claims

To the extent Plaintiff attempted to allege that Doellinger should be liable for the actions of his employees under a theory of supervisory liability because he is the Chief of the Town of Chester Police Department, those claims must be dismissed because all of the underlying claims are dismissed, *see Jones v. Harris*, 665 F. Supp. 2d 384, 403 (S.D.N.Y. 2009), and because even if Plaintiff had pleaded a constitutional tort, a supervisor cannot be held liable for constitutional torts of subordinates on a theory of *respondeat superior, see Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 638 (E.D.N.Y. 2017).

To the extent that Plaintiff alleges discrimination based on his status as "a [descendant] of the aboriginal indigenous, Native American, Moorish American National," (*see* P's Opp. at 4), those claims are dismissed for failure to state a claim upon which relief can be granted. *See El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 546 (D.N.J. 2011) ("Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are by definition frivolous.") (internal quotation marks and alterations omitted).

To the extent Plaintiff attempts to state any claims against Judge DeProspo, those claims are dismissed because he

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 164 of 197

Johnson El v. Bird, Not Reported in Fed. Supp. (2020)
2020 WL 5124920

is protected by the doctrine of judicial immunity, *see Libertarian Party of Erie Cnty. v. Cuomo*, No. 18-386, 2020 WL 4590250, at \*12 (2d Cir. Aug. 11, 2020), and because Chief Judge McMahon already dismissed Plaintiff's claims against him, *Johnson El ex rel. Johnson*, 2019 WL 6311882, at \*3.

Plaintiff's request for a "nun[c]-pro-tunc order Ex parte in this matter of that has caused injury" is denied. (*See* P's Opp. at 3.) That application is nonsensical.

To the extent any of Plaintiff's allegations can be construed as attempting to state claims under state law, those claims are dismissed. The "traditional 'values of judicial economy, convenience, fairness, and comity' " weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over any of Plaintiff's potential remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## IV. **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

   **\*10** Leave to amend, though liberally granted, may properly be denied for: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, after having the opportunity to review two pre-motion letters from Defendants stating the grounds on which they would move to dismiss, (Docs. 20, 35), as well as having the benefit of the Court's observations during the pre-motion conference, (Minute

Entry dated Oct. 28, 2019). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

After the motion to dismiss was fully briefed, Plaintiff attempted, without leave of court, to file a Third Amended Complaint, which I struck as unauthorized and untimely. (*See* Doc. 49.) Having reviewed the proposed Third Amended Complaint, I find that allowing Plaintiff to amend a third time would be futile. The proposed Third Amended Complaint is largely identical to pages one through six of the Second Amended Complaint and pages four through five of Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss. The only new fact that would have any effect on the plausibility of Plaintiff's claims is that while Plaintiff was being followed by Chambers, Plaintiff turned on his left turn signal before making a left turn. But as described above, Plaintiff's admission of his failure to yield supports the traffic stop and extinguishes Plaintiff's claims arising from an allegedly illegal stop. *See Sandstrom*, 2020 WL 3949344, at \*15; *Evans*, 681 F. Supp. 2d at 245. Accordingly, accepting the proposed Third Amended Complaint – even if there were some excuse for attempting to file it after the motion to dismiss was fully briefed – would not change the outcome here.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 165 of 197

Johnson El v. Bird, Not Reported in Fed. Supp. (2020)

2020 WL 5124920

**\*11**   "The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result), *reh'g denied,* 645 F.3d 519 (2d Cir. 2011) (*per curiam*). Accordingly, there being no indication that Plaintiff is in possession of facts that could cure the problems identified in this Opinion, I decline to grant Plaintiff leave to amend.

## V. CONCLUSION

For the above reasons, the Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully requested to terminate the pending motion, (Doc. 38), and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5124920

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 166 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

2016 WL 8189269
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Ibrahim ANNAN, Sui Juris In-Propia Persona, Plaintiff,
v.
STATE OF NEW YORK DEPARTMENT OF
MOTOR VEHICLES; Department of Motor
Vehicles Traffic Violations Division; Judge
Hamsho; Judge Levine; Deborah V. Dugan;
NYPD #944071, 120th Precinct, Defendants.

15-CV-1058 (CBA) (CLP)
|
Filed 03/02/2016

**Attorneys and Law Firms**

Ibrahim Annan, Staten Island, NY, pro se.

Rebecca Durie Katherine Culley, NYS Attorney General,
Brachah Goykadosh, Kathryn M. Sprovieri, New York City
Law Department, New York, NY, for Defendants.


**MEMORANDUM & ORDER**

AMON, Chief United States District Judge:

 **\*1**    Plaintiff Ibrahim Annan brings this pro se action
against the New York State Department of Motor Vehicles
("DMV"), the Department of Motor Vehicles Traffic
Violations Division ("Traffic Violations Division"), Deborah
V. Dugan, Chairwoman of the DMV Appeals Board, and
DMV Administrative Law Judges ("ALJs") Hamsho and
Levine (collectively, the "State Defendants"), as well as the
120th Precinct of the New York City Police Department
("NYPD") and an unnamed NYPD officer identified as
"#944071." (D.E. # 1, Compl.) Corporation Counsel for the
City of New York ("Corporation Counsel") has represented
that this number matches NYPD Officer Blase Gorcsos, who
has been served with process. (D.E. # 11 at 1 n.l.) Annan
appears to allege that defendants violated his right to travel
in connection with the issuance and adjudication of several
traffic tickets and the suspension of his driver's license. Annan
seeks $753,750,000 in damages.

The State Defendants now move to dismiss the complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1), (2),
(5), and (6). (D.E. # 20.) Specifically, the State Defendants
argue that: (1) the Eleventh Amendment of the United States
Constitution bars all claims for money damages against a
state agency and its employees when acting in their official
capacities; (2) the Court lacks personal jurisdiction over the
State Defendants because Annan has not served them with the
summons and complaint; (3) the complaint fails to provide
a short plain statement explaining why Annan is entitled to
relief; and (4) the complaint fails to state a viable claim
for relief based on the constitutional right to travel. (D.E.
# 20-1, Defs.' Mem. in Support of Mot. to Dismiss ("State
Defs.' Mem."), at 1.) Officer Gorcsos moves for a more
definite statement pursuant to Federal Rule of Civil Procedure
12(e) and requests that the majority of Annan's complaint be
stricken pursuant to Federal Rule of Civil Procedure 12(f) as
vague, ambiguous, repetitive, and immaterial. (D.E. #11.)

For the reasons stated below, the Court grants the State
Defendants' motion to dismiss, dismisses Annan's remaining
claims sua sponte. and denies Officer Gorcsos's motions as
moot.


**BACKGROUND**

**I. Factual Background**
Although Annan's 95-page complaint is difficult to decipher,
his claims appear to stem from the issuance and adjudication
of several traffic tickets, as well as the suspension of his
driver's license. (See, e.g., Compl. at 62-65, 69, 74, 83. [1])
Annan's submissions indicate that he was charged with the
following traffic violations: failing to observe a red light on
November 5, 2014, (id. at 64, 74); failing to yield to an
emergency vehicle on December 1, 2012, (id. at 62-63); and
disobeying a traffic device, (id. at 84-85). The DMV Appeals
Board appears to have affirmed his conviction as to at least
one of these violations, (Id.) The DMV apparently imposed a
$300 fine and suspended Annan's license effective August 26,
2014, for failure to pay a driver responsibility assessment. (Id.
at 69.) Annan's license appears to have been suspended again
effective February 11, 2015, for failure to appear to answer a
traffic ticket received for running a red light. (Id. at 83.)

1        Because the complaint is not consistently, the Court
         refers to the ECF page numbers.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 167 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

**\*2** Even construed liberally, the complaint makes no specific allegations against the individual State Defendants. Indeed, the only factual allegations even related to the individual defendants are that: (1) Annan appeared before ALJ Hamsho on January 18, 2013, February 14, 2013, and January 12, 2015, (id. at 3, 37-38); (2) Annan received letters dated February 3, 7, and 25, 2014, bearing Dugan's name on the letterhead, (id. at 9, 84-85); (3) ALJ Levine issued an order suspending Annan's license on June 30, 2014, (id. at 25); and (4) ALJ Hamsho "ordered" Annan "to check the not guilty box on the instrument/ticket" after he told her that he was pleading not guilty, (id. at 48-49).

The only mention of Officer Gorcsos, a.k.a. NYPD officer #944071, in the entire complaint appears on page 2, where Annan identifies the parties and their addresses. (Id. at 2.) In opposing the instant motions, Annan suggests that Officer Gorcsos was present at a ticket-related court proceeding, but does not specify when that proceeding took place or what Officer Gorcsos did at that proceeding. (See D.E. # 28 at 3.) Annan also claims that Officer Gorcsos ignored a document Annan calls a " 'Notice' of Special Appearance & Violation of Liberty Fees." (Id. at 7; see also D.E. # 18 at 11.) The Court is familiar with this document from Annan's other pending case before this Court, Annan v. City of New York, et al., No. 12-CV-2702 (CBA) (CLP). Based on Annan's submissions and representations at status conferences before this Court in that action, the Court understands that Annan attempts to charge judicial or law-enforcement officers $500,000 for each "special appearance" before them, plus "$250,000 for every fifteen minutes or any part thereof" for the duration of that appearance. (See, e.g., 12-CV-2702, D.E. # 1, Compl. at 15-16, 22, 67.)

Annan's submissions also refer to two other NYPD officers not formally named in the complaint: Officers "Anker 'AKA' Robert A. Amaty" and Detective Patrick Cherry (together with Officer Gorcsos, the "NYPD Defendants"). Annan claims Officer Amaty issued him a ticket and when presented with Annan's "Right to Travel" affidavit, discussed further below, "threw it in [Annan's] face yelling that's not what I asked you for." (D.E. # 18 at 5.) Annan appears to allege that Detective Cherry recorded this exchange on video. (Id.) Annan also contends that Officer Amaty owes him $1,500,000 for "special appearance" fees, the amount to which Annan apparently believes he is entitled for appearing in court in connection with the ticket. (See Compl. at 30-31.)

## II. Annan's Claims

The gravamen of Annan's complaint is that these traffic-enforcement actions violated his constitutional right to travel. To support this contention, Annan cites what he calls a "right to travel affidavit," which is attached to the complaint and states that because Annan is not a legal "person," "driver," or "operator" and his "self-propelled contrivance/carriage" is not a motor vehicle, his right to travel cannot be circumscribed by law or the DMV. (See id. at 22-24.) As such, Annan contends that the issuance and adjudication of various traffic tickets by the DMV has deprived him of his right to travel under the "organic constitution." (Id. at 4, 7, 22.) The Court liberally construes these assertions as seeking relief for alleged deprivations of Annan's federal constitutional rights under 42 U.S.C. § 1983 against the State and NYPD Defendants.

Annan's complaint also refers to, inter alia, more than 60 sections of Titles 18 and 28 of the United States Code, dozens of UCC provisions, provisions of the Bankruptcy Code, the Freedom of Information Act ("FOIA"), and various unspecified fraud claims. Even construing these assertions liberally, the Court is unable to identify a coherent claim under any of these provisions of law, most of which are patently irrelevant.[2]

[2]     For example, Annan does not have standing to assert claims under the host of criminal statutes he cites (some of which have been repealed, such as 18 U.S.C. § 835, or are non-existent, such as 18 U.S.C. § 8872). Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."). As another example, Annan refers to FOIA, but FOIA applies only to federal agencies and would thus provide no relief against any of the defendants in this action. See, e.g., Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 484 (2d Cir. 1999) (FOIA applies only to federal agencies).

**\*3** Annan requests $753,750,000 in "Booty & Prize" from all defendants. (Id. at 3, 9, 27-28, 30, 38, 83-84.) Annan does not explain why he is entitled to that amount. Annan's submissions also include 49 pages labeled "Notice of Motion," purporting to seek relief under Federal Rules of Civil Procedure 8, 11, 13, 26, 37, 55, 56, 57, 64, 65, and 70, as well as various provisions of the UCC and U.S. Code. (D.E. # 18 at 21-39; D.E. # 19 at 16-44; D.E. # 27 at 12.) Even construed liberally, these notices do not provide

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 168 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

any explanation as to why Annan believes he is entitled to relief under the cited rules or provisions, many of which are inapplicable at this stage of litigation. The Court is thus unable to determine the basis for any applications Annan is attempting to make.

### III. Procedural History

Annan filed this action on March 2, 2015. (D.E. # 1.) Both the State Defendants and Corporation Counsel, acting on behalf of then-unidentified NYPD #944071, sought and received extensions of time to answer. (D.E, # 5, 6, 8, 9.) The State Defendants then sought leave to file a motion to dismiss, while Officer Gorcsos sought to file a motion for a more definite statement. (D.E. # 11, 13, 14.) Those motions are now pending before the Court.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In determining whether a claim has "facial plausibility," a court accepts all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. at 678.

Moreover, federal district courts "may dismiss a frivolous complaint sua sponte even when plaintiff has paid the required filing fee." Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000); see also Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) ("Courts have both statutory and inherent authority to sua sponte dismiss frivolous suits."). A claim is frivolous "where it lacks an arguable basis in either law or in fact," or when "it is clear that the defendants are immune from suit.' " Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989).

In applying these standards, the Court is mindful that pro se pleadings are held to less stringent standards than pleadings drafted by lawyers, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

### DISCUSSION

### I. The State Defendants' Motion to Dismiss

Annan alleges that the State Defendants violated his constitutional right to travel by issuing traffic tickets to him, adjudicating those tickets, and suspending his driver's license. The Court liberally construes these assertions as seeking relief for alleged constitutional deprivations under 42 U.S.C. § 1983. The State Defendants argue that Annan's claims are barred by the Eleventh Amendment[3] and that, in any event, he has failed to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Annan does not respond to these arguments, other than by expressing his opinion that "[d]efendants' defense strategy is the employment of compounded fraud in the form of a motion, for 'immunity' under the 11th amendment," (D.E. # 17 at 7), and by reiterating allegations levied in his complaint. For the reasons stated below, the Court grants the State Defendants' motion to dismiss in its entirety.

[3]     The State Defendants style their sovereign immunity defense as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). It is an open question of law in the Second Circuit whether an assertion of Eleventh Amendment sovereign immunity should be treated as a defect in subject matter jurisdiction or as an affirmative defense. Carver v. Nassau Cnty. Interim Fin. Auth., 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing Wisc. Dep't of Corr. v. Schacht, 524 U.S. 381, 391 (1998) (stating that the Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"))). Although this distinction may be significant in certain circumstances, because it impacts what materials the Court may consider and what inferences it may draw from the record, it does not affect the outcome in this case. In considering

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 169 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

the State Defendants' sovereign immunity defense, the Court has considered "only the pleadings and the relevant state and federal law and has drawn all inferences in [the p]laintiff's favor" and therefore need not resolve whether a sovereign immunity defense is more appropriately raised under a Rule 12(b)(1) or Rule 12(b)(6) motion. Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.6 (E.D.N. Y, 2013); see also McMillan v. N.Y. Bd. of Elections, No. 10-CV-2502 (JG) (VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) aff'd. 449 Fed.Appx. 79 (2d Cir. 2011) ("This distinction does not affect the outcome here; in evaluating the State Board's assertion of sovereign immunity, I look only to the pleadings and to state and federal law.").

### A. Eleventh Amendment Immunity

**\*4** "Stated as simply as possible, the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). This immunity extends to agencies and departments of the states, including New York's DMV and its subdivisions. Feingold v. State of New York, 366 F.3d 138, 149 (2d Cir. 2004) (affirming dismissal of § 1983 claim against DMV as barred by Eleventh Amendment); Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119, 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) (dismissing claims against DMV as barred by Eleventh Amendment). Congress has not abrogated sovereign immunity from claims brought under 42 U.S.C. § 1983, Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990), nor has New York waived immunity with respect to such claims, Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 39–40 (2d Cir. 1977); Harrison v. New York, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015). Accordingly, Annan's claims against the State of New York, the DMV, and the Traffic Violations Division are barred by the Eleventh Amendment and dismissed. See Feineold, 366 F.3d at 149; Burroughs v. Dorn, No. 13-CV-3609 (ARR) (LB), 2013 WL 3820673, at *4 (E.D.N.Y. July 22, 2013) (dismissing claims against DMV and DMV Appeals Board as barred by Eleventh Amendment).

The Eleventh Amendment likewise bars suits for monetary damages against a state official acting in her official capacity,

as "the state is the real, substantial party in interest" in such cases. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-03 (1984) (internal quotation marks and citation omitted). As discussed above, the complaint alleges only that ALJs Hamsho and Levine presided over proceedings related to Annan's traffic tickets and contains no allegations whatsoever regarding Dugan's personal involvement in any purported constitutional deprivations. It is thus unclear what, if any, claims Annan is asserting against any of these individual defendants. But to the extent Annan seeks monetary damages against Dugan or ALJs Hamsho and Levine in their official capacities, those claims are also barred by the Eleventh Amendment and are dismissed. See Phillips v. N.Y. State Dep't of Labor Unemployment Ins. Appeal Bd., No. 11-CV-1633 (JS) (ARL), 2011 WL 2837499, at *2 (E.D.N.Y. July 12, 2011) (dismissing claims against administrative law judge for New York State agency as barred by the Eleventh Amendment).

Eleventh Amendment immunity does not shield state officers from suits seeking prospective injunctive or declaratory relief or damages from the officers in their individual capacities, however. Edelman v. Jordan, 415 U.S. 651,677 (1974); Ex parte Young, 209 U.S. 123, 159-60 (1908); In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007); Posr v. Court Officer Shield No. 207,180 F.3d 409, 414 (2d Cir. 1999). Accordingly, to the extent Annan's complaint could be construed as seeking nonmonetary relief[4] or asserting any individual-capacity claims against the individual State Defendants, the Court must determine whether Annan has stated a plausible claim that those defendants violated his constitutional right to travel.

4      To the extent Annan refers to a "writ of mandamus" in his submissions, the Court lacks jurisdiction to grant mandamus relief against state officials. Davis v. Lansing, 851 F.2d 72, 74 (2d Cir. 1988) ("[F]ederal courts have no general power to compel action by state officials."); see also Main v. Altieri, No. 09-CV-108, 2009 WL 1109878, at *1 (D. Vt. Apr. 22, 2009) (dismissing request for writ of mandamus to compel action by state officials sua sponte for lack of jurisdiction).

### B. Right to Travel

The thrust of Annan's complaint is that the State Defendants have infringed on his right to travel by enforcing New York

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

traffic laws against him and, specifically, by suspending his driver's license. (See Compl. at 4, 7, 22-24.) "The Constitution protects a fundamental right to travel within the United States," which the Second Circuit has also called "the right to free movement," Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 99 (2d Cir. 2009). A state law implicates this right only "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right.' " Id. (quoting Att'y Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 903 (1986) (internal quotation marks and citations omitted)). Annan has not alleged that any of New York's traffic laws deter travel, were enacted with the primary objective of impeding travel, or utilize a classification that penalizes exercise of the right to travel.

**\*5** What is at issue here is simply Annan's ability to travel by motor vehicle on New York's roads—a privilege not protected by the Constitution. See Haselton v. Amestoy, No. 03-CV-223, 2003 WL 23273581, at \*2 (D. Vt. Nov. 4, 2003) (denying injunctive relief where plaintiff claimed that suspension of his driver's license violated the right to travel and concluding that there is no "fundamental right to drive a vehicle on public roads"). It is well established that "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right," Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) (internal quotation marks and citation omitted) (citing Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999) (stating that "burdens on a single mode of transportation do not implicate the right to interstate travel"); City of Houston v. F.A.A., 679 F.2d 1184, 1198 (5th Cir. 1983) (noting that there is no "constitutional right to the most convenient form of travel")). To the contrary, the Supreme Court has repeatedly affirmed that the states have a paramount interest in highway safety and may summarily suspend or revoke a driver's license with due process. [5] See Mackey v. Montrym, 443 U.S. 1, 19 (1979) (holding that Massachusetts statute allowing for summary suspension of a driver's license with availability of prompt postsuspension hearing was constitutional); Dixon v. Love, 431 U.S. 105, 115 (1977) (holding that Illinois statute providing for summary suspension of a driver's license with availability of a postdeprivation hearing was constitutional). Annan has therefore failed to state a plausible claim that the State Defendants violated his right to travel. Accordingly, to the extent Annan asserts any claims against Dugan or ALJs Hamsho and Levine that are not barred by the Eleventh Amendment, those claims are dismissed for failure to state a claim on which relief may be granted. [6]

[5]   Nothing in the complaint suggests Annan is attempting to claim his license was suspended without due process. However, any such claim would be meritless. As discussed above, the Supreme Court has repeatedly affirmed state statutes allowing for summary suspension of a driver's license with a postdeprivation opportunity to challenge the suspension. See Mackey, 443 U.S. 1, 19 (1979); Dixon, 431 U.S. 105, 115 (1977). Under New York law, tickets for traffic infractions are adjudicated at hearings, see N.Y. Veh. & Traff. § 227, the determinations at such hearings may be appealed to an administrative appeal board, see id. § 261, and judicial review is available for any appeal determination through an Article 78 proceeding. Annan does not challenge the constitutional adequacy of those procedures or allege that he was deprived of those opportunities to challenge the suspension of his license. To the contrary, the complaint confirms that Annan availed himself of the opportunity to appeal at least one of his traffic convictions. (See Compl. at 84-85 (letter from DMV Appeals Board).) Moreover, the complaint reveals that at least one of the suspensions stemmed from his failure to appear to answer a traffic ticket receive for running a red light. (Id. at 83). He was thus afforded a predeprivation opportunity to challenge the underlying traffic conviction that he chose not to pursue. See Davis v. Nassau Cnty., No. 06-CV-4762 (ADS) (WDW), 2011 WL 5401663, at \*5–6 (E.D.N.Y. Nov. 5, 2011) ("The Plaintiff was given the opportunity of a trial on the merits [of his traffic infraction] and did not attend, even though he knew the consequences of not doing so. Therefore, the Court finds that the Plaintiff received all the process he was due under the law.").

[6]   Although not raised by the State Defendants, any claims against ALJs Hamsho and Levine are also barred by absolute judicial immunity. See Burroughs, 2013 WL 3820673, at \*4 (dismissing claims against ALJs for DMV as barred by judicial immunity); see also Bliven v. Hunt, 418 F. Supp. 2d 135, 137-38 (E.D.N.Y. 2005) (dismissing claims

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 171 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

barred by judicial immunity <u>sua sponte</u> in fee-paid <u>pro se</u> action).

\*\*\*

For the reasons above, the State Defendants' motion to dismiss is granted in its entirety. Because Annan's claims against the State Defendants are either barred by the Eleventh Amendment or fail to state a claim on which relief may be granted, the Court need not reach the alternative grounds for dismissal advanced by the State Defendants under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

### II. Claims Against the NYPD Defendants and the 120th Precinct

Having dismissed Annan's claims against the State Defendants, the Court now addresses claims against the NYPD Defendants and the 120th Precinct. At the outset, the Court notes that the 120th Precinct is not amenable to suit. The New York City Charter requires that suit "be brought in the name of the City of New York and not in that of any agency." N.Y.C. Charter § 396; <u>see also</u> Ximines v. George Wingate High Sch., 516 F.3d 156, 159-60 (2d Cir. 2008) (per curiam) (noting that § 396 "has been construed to mean that New York City departments [and agencies], as distinct from the City itself, lack the capacity to be sued"). The NYPD and specific NYPD precincts thus may not be sued directly—instead, suit must be brought against the City of New York. Richardson v. N.Y.C. Police Dep't, No. 12-CV-5753 (ARR), 2013 WL 101403, at \*2 (E.D.N.Y. Jan. 7, 2013). Accordingly, the Court interprets the complaint as stating a claim against the City of New York.

**\*6** As explained above, the Court liberally construes Annan's submissions as alleging that defendants violated his constitutional right to travel under 42 U.S.C. § 1983. To state a claim for relief under § 1983, Annan must allege that (1) "the conduct complained of ... [was] committed by a person acting under color of state law;" and (2) "the conduct complained of must have deprived ... [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). With respect to the NYPD Defendants, Annan must also allege facts showing that each was personally involved in the alleged deprivations. Farid v. Ellen, 593 F.3d 233, 240 (2d Cir. 2010). With respect to the City of New York, Annan must plead, and ultimately prove, three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected

to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted). Where no underlying constitutional violation has occurred, there is no basis for municipal liability under § 1983. <u>See</u> Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Annan has not pleaded facts showing that any of the NYPD Defendants were personally involved in a deprivation of Annan's constitutional or federal rights. Annan alleges only that the NYPD Defendants issued him traffic tickets, appeared at court proceedings where those tickets were adjudicated, and ignored Annan's "right to travel affidavit" and his notices of "Special Appearance & Violation of Liberty" fees. As discussed above, notwithstanding his "right to travel affidavit," Annan is subject to the traffic laws of the State of New York and the enforcement of those laws against him does not implicate the constitutional right to travel. Moreover, there is plainly no basis in law for Annan's claim that he is entitled to $500,000 plus $250,000 for every 15 minutes of the encounter each time he interacts with a judicial or law-enforcement officer. Accordingly, the NYPD Defendants did not violate any of Annan's rights by ignoring that document or refusing to pay those fees. Annan has thus failed to allege that any of the NYPD Defendants personally participated in a deprivation of his constitutional or federal rights. Because Annan has not pleaded facts plausibly alleging that he suffered any violation of his rights, his claim against the City of New York fails as a matter of law. <u>See</u> Segal, 459 F.3d at 219. For these reasons, Annan's claims against the NYPD Defendants and the City of New York are dismissed <u>sua sponte</u> as frivolous. <u>See</u> Neitzke, 490 U.S. at 325.

\*\*\*

The Court is mindful that "a <u>pro se</u> complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks and citation omitted). However, "leave to amend a complaint may be denied when amendment would be futile." Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006). Here, Annan's claims are barred by the Eleventh Amendment or otherwise fail to state a claim on which relief may be granted because the enforcement of New York's traffic laws against Annan does not implicate the constitutional right to travel. These deficiencies stem from "substantive"

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 172 of 197

Annan v. State of New York Department of Motor Vehicles, Not Reported in Fed. Supp....

2016 WL 8189269

problems with Annan's claims rather than inartful pleading. Cuoco v. Moritsugu, 222 F. 3d 99, 112 (2d Cir. 2000) (affirming district court's denial of leave to amend where plaintiff sought relief from defendants shielded by absolute and qualified immunity after concluding that "[t]he problem with [plaintiff's] causes of action is substantive[ and therefore, that] better pleading will not cure it"). Leave to amend would therefore be futile. See Weisshaus v. Port Auth. of N.Y. & N.J., 497 Fed.Appx. 102, 104 (2d Cir. 2012) (affirming district court's sua sponte dismissal of right to travel claims arising from toll increases, noting that "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions," such as the toll increases at issue, "do not amount to the denial of a fundamental right" (quoting Torraco, 615 F.3d at 140)); Harrison v. New York, 95 F. Supp. 3d 293, 305-06 (E.D.N.Y. 2015) (denying leave to amend claims dismissed on sovereign immunity grounds as futile). Annan's complaint is therefore dismissed without leave to amend.

## CONCLUSION

**\*7** For the reasons stated above, the State Defendants' motion to dismiss is granted and Annan's remaining claims are dismissed. This action is therefore dismissed in its entirety without leave to amend. The Clerk of Court is directed to enter judgment accordingly and close the case. If Annan requests in forma pauperis status for any appeal of this order, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-5 (1962).

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2016 WL 8189269

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3920219
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Daryle D. MCCLENIC, #14007244, Plaintiff,

v.

Detective John SHMETTAN, Detective Joseph
Albergo, Sergeant Arnold M. Rothenberg and Assistant
District Attorney Michael R. Maffei, Defendants.

15-CV-00705(SJF)(SIL)
|
Signed 07/15/2016

**Attorneys and Law Firms**

Daryle D. McClenic, East Meadow, NY, pro se.

Liora M. Ben-Sorek, Thomas Lai, Mineola, NY, for
Defendants.

ORDER

FEUERSTEIN, District Judge

**I. Introduction**

 *1  On February 9, 2015, incarcerated *pro se* plaintiff
Daryle D. McClenic ("plaintiff") filed a complaint in
this Court pursuant to 42 U.S.C. § 1983 ("Section
1983") against Detective John Shmettan ("Det. Shmettan"),
Detective Joseph Albergo ("Det. Albergo"), the Nassau
County Police Department ("the Police Department"), and the
Nassau County Correctional Center ("the Jail") (collectively,
"defendants"), accompanied by an application to proceed *in
forma pauperis.* By memorandum and order dated April 28,
2015, plaintiff's application to proceed *in forma pauperis* was
granted; the complaint was *sua sponte* dismissed pursuant
to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure
to state a claim for relief; and plaintiff was granted leave to
file an amended complaint on or before June 1, 2015. On
May 15, 2015, plaintiff filed an amended complaint against
Det. Shmettan, Det. Albergo, Sergeant Arnold M. Rothenberg
("Sgt. Rothenberg") and Assistant District Attorney Michael
R. Maffei ("ADA Maffei") (collectively, "defendants").
Pending before the Court is defendants' motion to dismiss the
amended complaint pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure for failure to state a claim for relief.

For the reasons set forth below, defendants' motion is granted
in part and denied in part.

**II. Discussion**

   **A. Standard of Review**
The standard of review on a motion made pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure is that a
plaintiff plead sufficient facts "to state a claim for relief that
is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "A claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868
(2009). The plausibility standard requires "more than a sheer
possibility that a defendant has acted unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a
formulaic recitation of the elements of a cause of action will
not do.' " *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting
*Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a
complaint suffice if it tenders 'naked assertion[s]' devoid of
'further factual enhancement.' " *Id.* (quoting *Twombly*, 550
U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be
enough to raise a right to relief above the speculative level,
on the assumption that all the allegations in the complaint are
true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127
S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the
Court must liberally construe the claims, accept all factual
allegations in the complaint as true, and draw all reasonable
inferences in favor of the plaintiff. *See Aegis Ins. Servs.,
Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir.
2013) (quotations and citation omitted); *Grullon v. City of
New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However,
this tenet "is inapplicable to legal conclusions. Threadbare
recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.
at 678, 129 S. Ct. 1937. "While legal conclusions can provide
the framework of a complaint, they must be supported by
factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping
with these principles a court considering a motion to dismiss
can choose to begin by identifying pleadings that, because
they are no more than conclusions, are not entitled to the
assumption of truth." *Id.*; *see also Ruston v. Town Bd. of Town
of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

**\*2** Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 715, 190 L.Ed. 2d 441 (2014).

Moreover, it is axiomatic that district courts are required to read *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) (citation omitted), and to construe them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (quotations and citations omitted). Contrary to defendants' contention in their reply memorandum of law, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n. 1 (2d Cir. 2013); *see also Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 734 (S.D.N.Y. 2011), *aff'd sub nom Seck v. Office of Court Admin.*, 582 Fed.Appx. 47 (2d Cir. Nov. 6, 2014) ("When a plaintiff is proceeding *pro se*, the Court ... may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims.") Accordingly, the Court deems plaintiff's amended complaint to be supplemented by the factual allegations in his opposition to defendants' motion to dismiss.

B. Factual Allegations [1]

[1]   All material factual allegations in the amended complaint and plaintiff's opposition are assumed to

be true for the purpose of this motion and do not constitute findings of fact by the Court.

In the amended complaint, plaintiff alleges:

"On August 28, 2012 Sgt. Arnold Rothenburg [sic] signed felony complaint. Action taken under color of law, which deprived my [sic] 2 [nd], 3 [rd] [,] 4 [th], & 8 [th] Amendments. By unlawful arresting Det. Joseph Albergo and partner Det. John Shmettan at 5 Harold St.[,] Hempstead, N.Y. (CPW [criminal possession of a weapon] 2 [nd], 3 [rd] degree & CM [criminal mischief] 3 [rd] degree) Incident date [sic] back to August 24 [th], 2012 at 862 Nassau Rd.[,] Uniondale, N.Y. [F]oot pursuit of possible suspect plaintiff. December 28, 2012 an indictment (# 2083N-12) was signed off for D.A. Kathleen Rice falsely incarcerating plaintiff. Pending ADA Michael Maffei's malicious prosecution CPW 3 [rd] ...[,] CPW 4 [th]. Denying my [sic] 5 [th], 6 [th], 8 [th] & 9 [th] Amendments. April 29 [th] 2013 a trial by jury acquitted plaintiff. As said in certificate of disposition (# 21047)."

**\*3**   (Amended Complaint ["Am. Compl."], ¶ IV). In his "Statement of Facts" attached to the amended complaint, plaintiff further alleges, *inter alia*, that a "[w]arrant issued for CPW 2 [nd] degree ( [N.Y. Penal Law §] 265.03), 3 [rd] degree ( [N.Y. Penal Law §] 265.02) and CM 3 [rd] degree ( [N.Y. Penal Law §] 145.05)[ ] [i]n which related incident date [sic] back to August 24 [th] 2012 at 862 Nassau Road[,] Uniondale, N.Y. 11553." (*Id.* at 6).

Plaintiff claims the following "injuries":

"Plaintiff was unlawfully arrestted [sic], falsely imprisoned and maliciously prosecuted by defendants[ ] [f]or a period of 8 months 1 week 2 days (249 days) at Nassau County Correctional Center. Being incarcerated stopped me from visiting my deceased younger brother and carring [sic] for my dependant children daughter (9 yrs) & son (7 yrs), finishing my college degree. I also got into fights, strip searched, and recieved [sic] mental health medical attention."

(*Id.*, ¶ IV.A). Plaintiff seeks damages in the amount of five million dollars ($5,000,000.00) for his "unlawful arrest, false imprisonment, malicious prosecution and pain & suffering[.]" (*Id.*, ¶ V).

In his opposition to defendants' motion to dismiss, plaintiff alleges, *inter alia*, (1) that on August 24, 2012, Det. Shmettan

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 175 of 197

McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

and Det. Albergo engaged in a "foot pursuit" or "chase" of him that did not result in an arrest or the recovery of a weapon; (2) that forty-seven (47) hours later, they received an anonymous tip reporting that a weapon had been found "laying in plain view" in a driveway and the weapon was recovered in Uniondale, New York; (3) that he was "not in [the] actual area at the time [the] weapon [was] recovered[,] nor [on] the day of its recovery[,]" (Plaintiff's Opposition to Defendants' Motion to Dismiss ["Plf. Opp."] at 2); (4) that on August 28, 2012, *i.e.*, four (4) days after the "foot pursuit," (a) Sgt. Rothenberg signed a felony complaint charging him with possession of a weapon in the second degree in violation of New York Penal Law § 265.03 based upon allegations by Det. Shmettan and Det. Albergo, and (b) he was apprehended and arrested at 5 Harold Street, Hempstead, New York "and charged with said weapon recovered from anonymous tip[,]" (*id.*); and (5) that he was not in possession of a weapon at the time that he was arrested, but was alleged to have been in possession of the weapon at the time of the "chase." According to plaintiff, Det. Shmettan and Det. Albergo (1) "never mentioned [he] fleed [sic] from apprehension [sic] and was armed and dangerous" during the "chase," (*id.*); (2) "put out a description of a suspect but still never mentioned a weapon[,]" (*id.*); and (3) "never once protected themselves ... [or] warned fellow officers called to help search for a suspect, that a weapon has [sic] been seen or involved in search for a suspect." (*Id.*)

C. False Arrest Claims

Plaintiff alleges, *inter alia*, that he was unlawfully arrested and falsely imprisoned "for possession of a weapon merely found laying on the ground[,]" (Plf. Opp. at 2) and that Det. Shmettan and Det. Albergo falsely arrested him "for possession of a weapon that was not physically recovered from [him] nor around his person to have dominion or control over[ ] ... [and] knowingly alleged [he] had possession of a weapon found some fourty-seven [sic] (47) hours after [they] allege a chase occurred ...." (*Id.* at 3).

**\*4**  "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotations and citation omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). "Under New York law, an action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Ackerson v. City of White*

*Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *accord Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003).

Since confinement is "privileged" if probable cause for the arrest existed, *Jocks*, 316 F.3d at 135, the existence of "[p]robable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson*, 702 F.3d at 19 (quotations and citation omitted); *accord Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). "Ordinarily, an arrest ... pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)); *see also Broughton*, 37 N.Y.2d at 458, 373 N.Y.S.2d 87 (holding that where an arrest has been effected by a warrant, the judicial "consideration of the arrest warrant application ... generate[s] a presumption that the arrest was issued on probable cause.") In other words, "[p]robable cause is presumed to exist if a plaintiff is arrested pursuant to an arrest warrant." *Williams v. City of New York*, 916 F. Supp. 2d 235, 241 (E.D.N.Y. 2012); *see also Anilao v. Spota*, 774 F. Supp.2d 457, 511 (E.D.N.Y. 2011) ("[W]here an arrest is effected pursuant to an arrest warrant, a presumption of probable cause is created." (quotations and citation omitted)). The fact that the charges were dismissed, or the plaintiff was acquitted, after the arrest "cannot overcome the 'complete defense' of probable cause created by a facially valid arrest warrant." *Justice v. Kuhnapfel*, 985 F. Supp. 2d 334, 340 (E.D.N.Y. 2013); *see also Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001) ("The existence of probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges.")

However, a plaintiff can establish a false arrest claim, *i.e.*, that his right not to be arrested without probable cause was violated, if he demonstrates that the arresting officer "knowingly and intentionally, or with reckless disregard for the truth, made a false statement ... or omitted material information, and where such false or omitted information was necessary to the finding of probable cause." *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir. 1999) (alteration in original; quotations and citations omitted); *accord Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993); *Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991). "When an arrest is not made pursuant to a [valid] judicial warrant, the

McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense[,]" *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010); *see also Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("The defendant has the burden of raising and proving the affirmative defense of probable cause"); the plaintiff does not have to plead a lack of probable cause in the complaint. *See, e.g. Naples v. Stefanelli*, 972 F. Supp. 2d 373, 393 (E.D.N.Y. 2013).

**\*5** Although plaintiff alleges that he was arrested pursuant to a warrant, the allegations in his opposition to defendants' motion to dismiss can liberally be read to challenge the validity of the warrant as being issued based upon the false statements made, and/or the information withheld, by Det. Shmettan and Det. Albergo and, thus, are sufficient at the pleadings stage to state a plausible claim for false arrest. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's false arrest claims against Det. Shmettan and Det. Albergo pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

### D. Malicious Prosecution Claims

Plaintiff alleges, *inter alia*, that ADA Maffei (1) "knowingly, intentionally, and with gross neglect prosecuted said case, that was merely protected by false [and] hearsay evidence[,]" (Plf. Opp. at 4); (2) "after examination of evidence turned over to [him], neglected multiple different facts that show possession was not evident[,]" (*id.*); (3) "intentionally held back evidence to secure an indictment, and neglected multiple facts, with bad faith," (*id.*); and (4) "continued prosecution of a weapons possession case, knowing possession was never clearly established, due to weapon not be[ing] recovered from, near, around, in the same town of [p]laintiff and/or at the same time of arrest." (*Id.* at 5).

In addition, plaintiff alleges that defendants are not entitled to the presumption of probable cause created by the indictment against him because, *inter alia*, (1) he was not afforded (a) his "right to a prompt hearing upon the issue of whether there is sufficient evidence to warrant the court in holding him for the action of a grand jury," N.Y. Crim. Proc. Law § 180.10(2), or (b) his rights during such a hearing, *i.e.*, to be present, to be read the felony complaint and any supporting depositions, to cross-examine witnesses, and to testify on his own behalf, N.Y. Crim Proc. Law § 180.60; (2) his "right to a grand jury vote with[in] 120 or 144 hours of arrainment [sic]," allegedly provided by Section 180.80 of the New York Criminal Procedure Law, was violated because

the "indictment was voted a total of 123 days after [his] arrest[,]" (*id.*, at 5); (3) there was no probable cause for his arrest because on the date of his arrest, he "was without possession of a weapon[,]" (*id.* at 5-6); and (4) the indictment was procured "through perjury and with holding [sic] factual evidence and bad faith." (*Id.* at 8).

#### 1. Claims against ADA Maffei

ADA Maffei is entitled to absolute immunity from all of plaintiff's claims against him. With respect to absolute immunity, the Second Circuit has held that:

"Absolute immunity affords 'complete protection from suit,' *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L.Ed. 2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' *Imbler v. Pachtman*, 424 U.S. 409, 424-25, 96 S. Ct. 984, 47 L.Ed. 2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action," ' *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Robison v. Via*, 821 F.2d 913, 918 (2d Cir. 1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S. Ct. 496, 88 L.Ed. 2d 507 (1985))."

**\*6** *California Pub. Employees' Ret. Sys. v. New York Stock Exch., Inc. ("In re NYSE Specialists Sec. Litig."*), 503 F.3d 89, 95-96 (2d Cir. 2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities. *See Imbler*, 424 U.S. at 430, 96 S. Ct. 984; *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) ("Absolute immunity bars a civil suit against a prosecutor for advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.' " (quoting *Imbler*, 424 U.S. at 430, 96 S. Ct. 984)). Absolute prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, *see, e.g. Giraldo*, 694 F.3d at 165; *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006), including when a prosecutor seeks an indictment,

Case 6:23-cv-01485-DNH-TWD Document 4 Filed 03/08/24 Page 177 of 197
McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

*see, e.g. Robison*, 821 F.2d at 918; or when a prosecutor engages in administrative duties that are directly connected with the conduct of a trial. *See, e.g. Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S. Ct. 855, 861-2, 172 L.Ed. 2d 706 (2009); *Warney v. Monroe County*, 587 F.3d 113, 124 (2009) ("a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.")

Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it.... Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) (internal quotations and citations omitted); *see also Shmueli*, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive). "[T]he nature of absolute immunity is such that it accords protection from [ ] any judicial scrutiny of the motive for and reasonableness of official action." *Shmueli*, 424 F.3d at 237 (quotations, alterations and citation omitted).

"The above principles, dealing with claims brought under § 1983, also protect a prosecutor against malicious prosecution claims brought under state law." *Shmueli*, 424 F.3d at 238.

All of plaintiff's claims against ADA Maffei seek damages based solely upon his function as an advocate for the State in commencing and continuing the criminal prosecution against plaintiff, and there are no allegations in the amended complaint, or plaintiff's opposition to defendants' motion to dismiss, from which it may reasonably be inferred that ADA Maffei acted without jurisdiction or in excess of his authority. Indeed, ADA Maffei is absolutely immune even for purportedly making or using false evidence, or withholding or ignoring evidence, since such conduct was undertaken pursuant to his advocacy functions. *See, e.g. Flagler v. Trainor*, 663 F.3d 543, 549 (2d Cir. 2011) (holding that the prosecutor was absolutely immune from the plaintiff's allegations that he made false statements within his function as an advocate and distinguishing cases denying absolute prosecutorial immunity for wrongdoing in connection with administrative or investigatory tasks); *see also Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (accord); *Peay*, 470 F.3d at 68 ("Plaintiff's claims against

[the prosecutor], which encompass activities involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."); *Shmueli*, 424 F.3d at 237 ("A prosecutor is ... entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.' ") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against ADA Maffei in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's claims against ADA Maffei are dismissed in their entirety with prejudice for seeking monetary relief against a defendant who is immune from such relief.

### 2. Claims against Det. Shmettan and Det. Albergo

**\*7** "The elements of a malicious prosecution claim under section 1983 are derived from applicable state law." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). Under New York law, the elements of a malicious prosecution claim are: "(1) commencement [or continuation] of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice." *Swartz*, 704 F.3d at 111-12; *accord Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). "Additionally, ... to be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz*, 704 F.3d at 112; *see also Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) ("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, ... and must establish the elements of a malicious prosecution claim under state law[.]" (citations omitted)). The issue of plaintiff's post-arraignment seizure is not in dispute.

The first element is satisfied with respect to plaintiff's claim against Det. Shmettan and Det. Albergo because a criminal proceeding may be initiated for the purposes of a malicious prosecution claim by showing "that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 199 (2d Cir. 2014) (quotations, brackets and citation omitted); *accord Manganiello*, 612 F.3d at 163. Thus, the allegations in plaintiff's opposition to defendants' motion to dismiss indicating that plaintiff was arrested based upon purportedly

false statements made, and/or information withheld, by Det. Shmettan and Det. Albergo, are sufficient at the pleadings stage to satisfy the first element of a malicious prosecution claim against them. *See, e.g. Manganiello*, 612 F.3d at 163 ("A jury may permissibly find that a defendant initiated a prosecution where he prepared an alleged false confession and forwarded it to prosecutors." (quotations, brackets and citation omitted)); *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) ("A police officer can ... initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.")

The second element of a malicious prosecution claim is satisfied since plaintiff's acquittal in the criminal prosecution constituted a termination in his favor. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

With respect to the third element of a malicious prosecution claim, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" *Manganiello*, 612 F.3d at 161-62; *accord Dickerson*, 604 F.3d at 751. Although "[a] grand jury indictment gives rise to a presumption that probable cause exists[,] ... [t]he presumption may be rebutted by evidence of [ ] wrongful acts on the part of police, including fraud, perjury, ... the suppression of evidence[,]" *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quotations, alterations and citations omitted), "or other police conduct undertaken in bad faith." *Bermudez*, 790 F.3d at 377 (quotations and citation omitted); *accord Manganiello*, 612 F.3d at 162. "[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior." *Cameron*, 598 F.3d at 63. Thus, plaintiff's allegations indicating, *inter alia*, that Det. Shmettan and Det. Albergo knowingly provided false evidence to, and withheld evidence from, ADA Maffei are sufficient at the pleadings stage to satisfy the third element of a malicious prosecution claim, *i.e.*, lack of probable cause.

**\*8** With respect to the fourth element of a malicious prosecution claim, "actual malice can be inferred when a plaintiff is prosecuted without probable cause." *Rentas*, 816 F.3d at 222; *see also Manganiello*, 612 F.3d at 163 ("[A] lack of probable cause generally creates an inference of malice.") Therefore, plaintiff's allegations against Det. Shmettan and Det. Albergo are also sufficient, at the pleadings stage, to satisfy the fourth element of a malicious prosecution

claim. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's malicious prosecution claims against Det. Shmettan and Det. Albergo pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

### 3. Claims against Sgt. Rothenberg

Plaintiff's only allegation against Sgt. Rothenberg is that on August 28, 2012, he "signed [a] felony complaint[,]" (Am. Compl., ¶ IV), charging plaintiff with possession of a weapon in the second degree in violation of New York Penal Law § 265.03 based upon allegations made by Det. Shmettan and Det. Albergo. (Plf. Opp. at 1-2). As set forth above, the second element of a malicious prosecution claim is satisfied since plaintiff alleges that he was acquitted of the charges against him.

Moreover, the first element of a malicious prosecution claim is satisfied with respect to plaintiff's claim against Sgt. Rothenberg since, under New York law, the filing of a felony complaint "[s]erves as a basis for the commencement of a criminal action." N.Y. Crim. Proc. Law § 100.10(5); *see also* N.Y. Crim Proc. Law §§ 1.20(17) and 100.05; *see Cameron*, 598 F.3d at 63. However, that allegation, alone, is insufficient to state a plausible malicious prosecution claim against Sgt. Rothenberg under Section 1983 and state law since it may not reasonably be inferred therefrom that Sgt. Rothenberg signed the felony complaint with actual malice, *i.e.*, that he knew or should have known that the allegations made by Det. Shmettan and Det. Albergo were false or omitted material information. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's malicious prosecution claims against Sgt. Rothenberg pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's malicious prosecution claims against Sgt. Rothenberg are dismissed in their entirety with prejudice for failure to state a claim for relief.

### E. Second Amendment Claim

Plaintiff's conclusory allegation that Det. Shmettan and Det. Albergo violated his right "to keep and bear arms" provided by the Second Amendment to the United States Constitution is insufficient to state a plausible claim for relief. *See generally District of Columbia v. Heller*, 554 U.S. 570, 592, 626-27, 128 S. Ct. 2783, 171 L.Ed. 2d 637 (2008) (holding that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation[,]"

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 179 of 197

McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

but that the right is not unlimited and its holding should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."); *e.g. Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 428-30 (S.D.N.Y. 2013) (dismissing the plaintiff's Second Amendment claim because there were no allegations that the defendants' actions affected the plaintiff's ability to retain or acquire other firearms or ammunition, and no law cited that infringed on the plaintiff's right to obtain other firearms); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005) ("[T]he 'right to bear arms' is not a right to hold some particular gun. Nothing in plaintiff's pleading or other papers suggests that any action taken by defendants would prevent him from acquiring another weapon.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Second Amendment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Second Amendment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

### F. Third Amendment Claim

**\*9** Plaintiff alleges that defendants violated his rights under the Third Amendment to the United States Constitution by "enter[ing] property of 5 Harold St.[,] Hempstead, New York 11550...." (Plf. Opp. at 3).

The Third Amendment provides that "[n]o Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." U.S. Const. amend. III. Even assuming, *arguendo*, that plaintiff was an "owner" of the property at 5 Harold Street, his allegation that defendants, none of whom are "soldiers" within the meaning of the Third Amendment, merely "entered" upon that property for an unspecified amount of time is insufficient to state a plausible claim for relief under the Third Amendment. *See, e.g. Morales v. New York*, 22 F. Supp. 3d 256, 277-78 (S.D.N.Y. 2014) (dismissing the plaintiff's Third Amendment claim because he did not allege that soldiers were quartered in his house unconstitutionally); *Mitchell v. City of Henderson*, No. 2:13-cv-01154, 2015 WL 427835, at \* 17-18 (D. Nev. Feb. 2, 2015) (dismissing the plaintiff's Third Amendment claim because "a municipal police officer is not a soldier for purposes of the Third Amendment."); *Estate of Bennett v. Wainwright*, No. 06-28-P-S, 2007 WL 1576744, at \* 7 (D. Me. May 30, 2007), *report and recommendation adopted by* 2007 WL 2028961 (D. Me. July 9, 2007), *aff'd*, 548 F.3d 155 (1st Cir. 2008) (granting the defendants judgment on the pleadings on the plaintiff's Third Amendment claim because "[t]here is no sense in which a single state trooper and several deputy sheriffs can be considered 'soldiers' within the meaning of that word as it is used in the amendment nor in which the use of a house presumably owned by one of the plaintiffs for a period of fewer than 24 hours could be construed as 'quartering' within the scope of the amendment.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Third Amendment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Third Amendment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

### G. Sixth Amendment Claim

Plaintiff alleges that ADA Maffei violated his rights under the Sixth Amendment to the United States Constitution "with timely disposition." (Plf. Opp. at 6-7).

The Sixth Amendment provides:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

U.S. Const. amend. VI.

Even interpreting plaintiff's allegation to assert a claim that his right to a speedy trial was violated, it fails to state a plausible claim for relief absent any indication as to, *inter alia*, the reason for the delay; or whether defendant ever asserted his right to a speedy trial. *See generally Doggett v. U.S.*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L.Ed. 2d 520 (1992); *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Sixth Amendment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Sixth Amendment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 180 of 197

McClenic v. Shmettan, Not Reported in Fed. Supp. (2016)

2016 WL 3920219

H. Eighth Amendment Claim

**\*10** Plaintiff alleges that defendants violated his Eighth Amendment rights by setting bail at seventy-five thousand dollars ($75,000.00) during his arraignment when he "has not held employment since 2008." (Plf. Opp. at 3-4).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Since, *inter alia*, plaintiff does not allege the personal involvement of any of the defendants in the purported deprivation of his Eighth Amendment right, nor any facts from which it may reasonably be inferred that any of the defendants were personally involved in the setting of his bail, he fails to state a plausible claim for relief under Section 1983. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[T]he personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations and citation omitted)); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) ("An individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Eighth Amendment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Eighth Amendment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

I. Remaining Constitutional Claims

Plaintiff's conclusorily allegations that defendants violated his rights under the Ninth and Fourteenth Amendments to the United States Constitution, (Plf. Opp. at 7), are clearly insufficient to state a plausible claim for relief. Accordingly, the branches of defendants' motion seeking dismissal of plaintiff's Ninth and Fourteenth Amendment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's Ninth and Fourteenth Amendment claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

III. Conclusion

For the reasons set forth above, defendants' motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (1) is granted to the extent that (a) plaintiff's claims against ADA Maffei are dismissed in their entirety with prejudice for seeking monetary relief against a defendant who is immune from such relief, (b) plaintiff's claims against Sgt. Rothenberg are dismissed in their entirety with prejudice for failure to state a claim for relief, and (c) plaintiff's Section 1983 claims against Det. Shmettan and Det. Albergo alleging violations of his rights under the Second, Third, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution are dismissed in their entirety with prejudice for failure to state a claim for relief; and (2) is otherwise denied. For the sake of clarity, only plaintiff's claims under Section 1983 and state law seeking damages for false arrest and malicious prosecution against Det. Shmettan and Det. Albergo remain in this action. There being no just reason for delay, the Clerk of the Court shall enter judgment in favor of ADA Maffei and Sgt. Rothenberg on all of plaintiff's claims against them pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

**\*11** The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed. 2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3920219

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 181 of 197

Partin v. Gevatoski, Not Reported in Fed. Supp. (2020)

2020 WL 4587386

2020 WL 4587386
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
Eugene Division.

Nicholas-Jon PARTIN dba
Alanna Nicole Partin, Plaintiff,

v.

Aaron GEVATOSKI; Scott Jackson; Jim Yon; Connor
McCahill; Andrew Johnson; Dakotah Keys; Jason Van
Eck; Eric Konzelman; Benton County Sheriff's Office;
Benton County Circuit Court; Linn County Sheriff's
Office; Linn County Circuit Court; Oregon State Police
Albany Station; Oregon State Police Osu Campus
Division; Sweet Home Police Department; Oregon
Department of Justice; State of Oregon, Defendants.

Civ No. 6:19-cv-1948-AA
|
Signed 08/10/2020

**Attorneys and Law Firms**

Alanna Nicole Partin, Sweet Home, OR, pro se.

Nicholas Jon Partin, Sweet Home, OR, pro se.

**OPINION AND ORDER**

AIKEN, District Judge:

 **\*1**  Plaintiff Nicholas Jon Partin dba Alanna Nicole Partin [1]
seeks leave to proceed *in forma pauperis* ("IFP") in this
action. In addition to the Complaint (doc. 1), plaintiff has
filed a "Motion for Injunction and Remandation [sic] to
Federal Court for Motion for Answer of Federal Question
and Rights Violations then Anything Remaining Ap[p]licable
Return to Proper Venue as Determined by Magistrate" (doc.
2), which this Court interprets as a Motion for Preliminary
Injunction. For the reasons set forth below, the Complaint
(doc. 1) is DISMISSED with leave to amend as to all claims
brought pursuant to 42 U.S.C. § 1983. As to plaintiff's
remaining claims, the Complaint (doc. 1) is DISMISSED with
prejudice. Likewise, plaintiff's Motion for Injunction (doc. 2)
is DENIED.

[1]    Plaintiff's Complaint (doc. 1) lists the plaintiff
as "ALANNA NICOLE PARTIN MN ANC
1058427200026" but is signed by Nicholas-Jon
Partin, the "AUTH REP / NAME HOLDER TO
ALANNA." However, based on documentation
(doc. 1-2) attached to the Complaint, this Court
infers that Alanna Nicole Partin is an assumed
business name and alias of Nicholas-Jon Partin.

**LEGAL STANDARD**

Generally, all parties instituting any civil action in United
States District Court must pay a statutory filing fee. 28 U.S.C.
§ 1914(a). However, the federal IFP statute, 28 U.S.C. §
1915(a)(1), provides indigent litigants an opportunity for
meaningful access to federal courts despite their inability
to pay the costs and fees associated with that access. To
authorize a litigant to proceed IFP, a court must make two
determinations. First, a court must determine whether the
litigant is unable to pay the costs of commencing the action.
28 U.S.C. § 1915(a)(1). Second, it must assess whether the
action is frivolous, malicious, fails to state a claim upon
which relief may be granted, or seeks monetary relief from a
defendant who is immune to such relief. 28 U.S.C. § 1915(e)
(2)(B).

In regard to the second of these determinations, district
courts have the power under 28 U.S.C. § 1915(e)(2)(B) to
screen complaints even before service of the complaint on the
defendants and must dismiss a complaint if it fails to state
a claim. Courts apply the same standard under 28 U.S.C. §
1915(e)(2)(B) as when addressing a motion to dismiss under
Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*,
668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to
dismiss under the federal pleading standards, the complaint
must include a short and plain statement of the claim and
"contain sufficient factual matter, accepted as true, to 'state a
claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged. The plausibility standard ... asks
for more than a sheer possibility that a defendant has acted
unlawfully." *Id.* The court is not required to accept legal
conclusions, unsupported by alleged facts, as true. *Id.*

Partin v. Gevatoski, Not Reported in Fed. Supp. (2020)

2020 WL 4587386

**\*2** *Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## DISCUSSION

The Complaint in this case offers minimal facts and is largely unintelligible. From what the Court can best gather, plaintiff is facing multiple state-level criminal charges in Benton County Circuit Court and in Linn County Circuit Court, respectively. Doc. 1-2 at 2-5; 7-15. Although plaintiff appears to have filed this complaint on behalf of a Minnesota business by the name of Alanna Nicole Partin ("ANP"), documents attached to the Complaint (doc. 1-2 at 6) reveal that ANP is an assumed business name, not a separate legal entity. This fact alone undercuts a large portion of plaintiff's claims, which appear to allege that state and local officials wrongfully pursued and filed charges against plaintiff's business, ANP, which plaintiff argues is "NOT A LIVING BEING." [2] Doc. 2 at 3:3.

[2]    Plaintiff goes on to argue that he is wrongfully being held "in peonage" for the debts of ANP. Doc. 2 at 5:14.

Drawing upon this underlying claim of mistaken identity and a related arrest stemming from a November 18, 2018 traffic stop, plaintiff alludes to various criminal and constitutional violations committed by a wide assortment of law enforcement officers and government entities. Doc. 2 at 1-3. Plaintiff seeks money damages as well as injunctive relief to enjoin the defendants from pursuing additional criminal charges against plaintiff. Doc. 1 at 5.

I. *Potential Immunity of Defendants*

As a preliminary matter, the Court notes that longstanding immunity doctrines may limit plaintiff's ability to seek damages against some, if not all, of the named defendants. Plaintiff has identified, for example, Deputy Aaron Gevatoski, Sheriff Scott Jackson, Oregon State Trooper Dakotah Keys, Linn County District Attorney Connor McCahill, the Linn and Benton Circuit Courts, the Oregon

State Police, the Oregon Department of Justice, and the State of Oregon. Setting aside the question of whether plaintiff intended to pursue liability against any of these listed defendants in their individual capacity, [3] many if not all of the government entities listed are likely immune from civil liability pursuant to the doctrine of sovereign immunity. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) (explaining that states are immune from suit "except as altered by the plan of the Convention or certain constitutional amendments") (*quoting Alden v. Maine*, 527 U.S. 706, 713 (1999)); *see generally* U.S. Const. amend. XI. Absent a waiver or specific legislation abrogating such immunity, federal courts may not entertain a private citizen's suit against a state. *Id.* at 254. Plaintiff has not presented evidence of a waiver by the state, nor does plaintiff seek relief under any statute which provides for an abrogation of state sovereignty.

[3]    If plaintiff in fact intended to pursue damages against any of the listed defendants in their individual capacities, the doctrine of qualified immunity presents additional concerns.

II. *Abstention Concerns*

**\*3** Plaintiff's complaint appears to stem from multiple ongoing criminal charges filed against plaintiff in both Benton County and Linn County, Oregon. Under the Supreme Court holding in *Younger*, however, a federal court may not intervene by injunction or declaratory judgment in a pending state court criminal proceeding except under extraordinary circumstances where the threat of irreparable injury is "both great and immediate." *Younger v. Harris*, 401 U.S. 37, 46 (1971). Similarly, the Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Pursuant to these doctrines of federal abstention, this Court is not convinced, based on the allegations in the complaint, that interference with plaintiff's ongoing state court proceedings would be warranted or appropriate. Plaintiff should be mindful of these restrictions should he seek to amend his complaint.

III. *Failure to State a Claim*

As explained above, the federal IFP statute directs a court to assess, in part, whether an action fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 183 of 197

Partin v. Gevatoski, Not Reported in Fed. Supp. (2020)

2020 WL 4587386

Plaintiff seeks relief under numerous federal statutes, and the Court will assess each of these claims in turn.

A. *Claims Brought Under 18 U.S.C. § 227, 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 1581, and 18 U.S.C. § 1661*
To start, plaintiff seeks relief under five criminal statutes, including 18 U.S.C. § 227 (Wrongfully influencing a private entity's employment decisions by a Member of Congress or an officer or employee of the legislative or executive branch), 18 U.S.C. § 241 (Conspiracy against rights), 18 U.S.C. § 242 (Deprivation of rights under color of law), 18 U.S.C. § 1581 (Peonage; obstructing enforcement), and 18 U.S.C. § 1661 (Robbery ashore). Federal criminal statutes, however, do not provide a basis for a private cause of action and must be prosecuted by the Attorney General. *Frost v. Robertson*, 2009 WL 735690, at *16 (D. Idaho Mar. 19, 2009). Plaintiff has failed to cite, and the Court is unable to locate, any authority to support a civil cause of action for violations of these provisions. Therefore, these claims are dismissed with prejudice for failure to state a claim upon which relief may be granted.

B. *Claims Brought under 42 U.S.C. § 12203*
Plaintiff also seeks relief under 42 U.S.C. § 12203 (Prohibition against retaliation and coercion), a miscellaneous provision of 42 U.S.C. §§ 12101 *et. seq.*, also known as the Americans with Disabilities Act of 1990 ("ADA"). Section 12203 is clear, however, in that it applies to retaliatory actions taken as a result of an individual's opposition to any of the acts or practices "made unlawful by this Act." 42 U.S.C. § 12203(a). Plaintiff has failed to identity, and the Court is unable to locate, any claim made under the ADA which might give rise to a retaliation claim under § 12203. Therefore, this claim is also dismissed with prejudice for failure to state a claim upon which relief may be granted.

C. *Claims Brought Under 42 U.S.C. § 1983*
Last, plaintiff seeks relief under 42 U.S.C. § 1983 (Civil action for deprivation of rights). Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn. v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, a plaintiff must allege both (1) the deprivation of a right secured by the federal Constitution or statutory law, and (2) that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Plaintiff refers

to various violations of the U.S. Constitution which, although not explicitly stated, this Court presumes to have been made under § 1983. I will assess each of the alleged Constitutional violations in turn to determine whether plaintiff has stated a plausible § 1983 claim for relief.

1. *Second Amendment Claim*
 **\*4**  The Second Amendment protects the individual right to keep and bear arms for the purpose of self-defense. *McDonald v. City of Chicago*, 561 U.S. 742, 749-50 (2010). Importantly, this right is limited: for example, states have long forbidden the possession of firearms by felons and the mentally ill. *District of Columbia v. Heller*, 554 U.S. 570, 626.

Plaintiff claims that two firearms were seized from his vehicle during a traffic stop by Deputy Aaron Gevatoski. Doc. 2 at 2:22. The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such. Plaintiff has not provided sufficient factual support to state a claim under the Second Amendment that is plausible on its face given the numerous limitations on an individual's right to bear firearms. However, cognizant of the lenity allowed to *pro se* parties, the Court dismisses plaintiff's Second Amendment claim asserted under § 1983 with leave to amend the claim.

2. *Fourth Amendment Claims*
The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). Due to the disjointed nature of plaintiff's filings, it is hard to tell exactly what actions may have constituted a Fourth Amendment violation in this case. As plaintiff is *pro se*, however, the Court has attempted to discern the various Fourth Amendment claims alleged given the minimal facts provided.

First, plaintiff appears to argue that his temporary detention by Deputy Gevatoski constituted an unreasonable seizure violative of the Fourth Amendment. The temporary detention of a motorist constitutes a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The decision to temporarily detain a motorist is "reasonable" where law enforcement has probable cause to believe that a traffic violation has occurred. *Id.* at 810. If no probable cause is found for the initial stop, the

temporary seizure of a motorist may still be found reasonable upon a balancing all relevant factors. *Id.* at 817. Plaintiff alleges that Deputy Gevatoski unlawfully seized his vehicle on November 18, 2018, "using the guise of a fallen license plate." Doc. 2 at 1:18. Even construed liberally, however, this fact alone is not enough to establish an unreasonable seizure which violates the Fourth Amendment. On the contrary, this fact, if taken as true, establishes that Deputy Gevatoski had the requisite probable cause needed to temporarily detain plaintiff. Again, there are simply not enough facts to indicate whether this temporary detainment was reasonable in light of the circumstances.

Second, plaintiff appears to allege that the supposed warrantless search of his vehicle constituted an unreasonable search in violation of the Fourth Amendment. The warrantless search of a vehicle by law enforcement is reasonable, though, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. *Terry*, 293 U.S. at 27. An officer need not be certain that the individual is armed; the question is "whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

**\*5** Plaintiff claims that Deputy Gevatoski performed a warrantless and unauthorized search of the vehicle after plaintiff refused to provide identification upon request, which plaintiff argues "isn't a crime." Doc. 2 at 2:7. Plaintiff also indicates that Deputy Gevatoski claimed to have seen a weapon, although plaintiff refutes this fact. Doc. 2 at 2:9. With the minimal facts provided, the Court finds that plaintiff has failed to present a plausible claim of an unlawful search violative of the Fourth Amendment.

Third, plaintiff appears to allege excessive force by Deputy Gevatoski. A police officer's use of force in any seizure of a person is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citations omitted). Plaintiff alleges that Deputy Gevatoski "committed armed assault upon the

traveler Alanna-nicole: Partin via Taser." Doc. 2 at 2:1. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim.

In sum the Court cannot determine whether defendant has stated a plausible claim for a violation of the Fourth Amendment, Therefore, the Court dismisses plaintiff's Fourth Amendment claims asserted under § 1983 with leave to amend.

### 3. *Sixth Amendment Claim*

The Sixth Amendment guarantees the right to a speedy trial and to an impartial jury. U.S. Const. amend. VI. Determining whether a delay violates the Sixth Amendment involves "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Here, however, plaintiff has not provided any specific facts which the Court might use to assess whether a delay has plausibly occurred which would violate the Sixth Amendment. Plaintiff merely states that the courts "have failed to follow speedy trial rules." Doc. 2 at 6:21-22. Plaintiff also references vague allegations of tardiness and unexplained absences by various attorneys, none of whom are identified. Doc. 2 at 6:23-25. These facts are insufficient to establish a Sixth Amendment claim. Again, mindful of the lenity afforded to *pro se* parties, the Court dismisses plaintiff's Sixth Amendment claim asserted under § 1983 with leave to amend.

### 4. *Eighth Amendment Claim*

The Eighth Amendment protects individuals against excessive bail, excessive fines, or the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. Plaintiff's filings, however, are devoid of facts or details to support an Eighth Amendment claim. Accordingly, the Court dismisses plaintiff's Eighth Amendment claim asserted under § 1983 with leave to amend.

### IV. *Federal Rule of Civil Procedure 8*

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The complaint as it stands now does not contain a short and plain statement of the claims asserted; in fact, the only way the Court is able to make sense of the complaint is through the details provided in the Motion for Injunctive Relief. If plaintiff chooses to resubmit an amended

**Partin v. Gevatoski, Not Reported in Fed. Supp. (2020)**

2020 WL 4587386

complaint, plaintiff is advised that the complaint itself must comply with Rule 8.

### V. *Plaintiff's Motion for Injunctive Relief*

**\*6** The legal standard for preliminary injunctive relief requires a litigant to demonstrate that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 571 F.3d 960, 978 (9th Cir. 2009) (internal citations omitted). Given the complaint's deficiencies detailed above, the Court finds that there is no showing of likelihood of success on the merits at this time. Moreover, the federal abstention doctrine detailed in *Younger* appears to bar the very relief plaintiff seeks given the ongoing nature of the underlying state court proceedings. Accordingly, plaintiff's Motion for Injunctive Relief (doc. 2) is denied.

### CONCLUSION

For the reasons set forth above, the Complaint (doc. 1) is DISMISSED. Plaintiff is granted leave to amend his claims brought under 42 U.S.C. § 1983. The remaining claims referenced in the Complaint (doc. 1) are DISMISSED with prejudice. Similarly, the Motion for Injunctive Relief (doc. 2) is DENIED. The Court reserves ruling on plaintiff's IFP application until the submission of an amended complaint.

Plaintiff shall have thirty (30) days in which to file an amended complaint. Plaintiff is advised that failure to file an amended complaint within the allotted time may result in the entry of a judgment of dismissal.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4587386

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 186 of 197

**Bannister v. Luis, Not Reported in Fed. Supp. (2022)**

2022 WL 19402512

🚩 KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by   Bannister v. Luis,
E.D.N.Y.,   March 2, 2023

2022 WL 19402512
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Henry BANNISTER, Plaintiff,

v.

Detective Marvin LUIS, Ryan Giuffre,
Police Officer Joseph Giannina, Defendant.

18-CV-7285 (EK) (ST)
|
Signed February 16, 2022

**Attorneys and Law Firms**

Henry Bannister, Spartanburg, SC, Pro Se.

Zachary Kalmbach, New York City Law Department, Special
Federal Litigation Division, New York, NY, for Defendants.

### REPORT AND RECOMMENDATION

TISCIONE, United States Magistrate Judge:

### INTRODUCTION

**\*1** This case results from Plaintiff Henry Bannister's arrest,
detention, and subsequent criminal prosecution, which took
place from May 24, 2016, until September of 2018, and
during which Plaintiff alleges his rights were violated by
Defendants. Plaintiff, proceeding *pro se*, filed a complaint
which is a collection of grievances filed to other bodies,
alleging conduct which violated his federal rights. Before this
Court is Defendants' motion for summary judgment on the
claims of false arrest and malicious prosecution, to declare
any state-law claims time-barred, and to dismiss Defendant
Giannina from the action. Defendants also ask that we deem
Plaintiff's claims abandoned. For the reasons discussed below,
I recommend the Defendants' motion be GRANTED IN
PART AND DENIED IN PART.

### BACKGROUND

### I. Facts

On May 24, 2016, Plaintiff was parking a rental car when
two officers, Defendants Luis and Giuffre, approached his
vehicle. Pl. Compl., 15, ECF No. 1. In the driver's seat of the
car was the Plaintiff, while a man named Tashaun Canty was
in the passenger's seat. *Id.* According to Plaintiff's complaint,
Officer Luis opened the passenger side door and removed
Mr. Canty from the vehicle, while Officer Giuffre approached
the driver's side window and tapped on it to get Plaintiff's
attention. *Id.* Plaintiff says Officer Giuffre asked him for his
license and registration and, in lieu of registration, he handed
the Officer his rental contract. *Id.* at 15-16. He claims that
during this exchange he saw Officer Luis escorting Mr. Canty
to an unmarked police vehicle, which pulled away with Mr.
Canty inside. *Id.* at 16. Plaintiff was then asked by Officer
Giuffre if he had anything in the car or on his person that
would cause harm to him, to which Plaintiff responded he did
not. *Id.* Officer Giuffre asked the Plaintiff to get out of the car
and proceeded to frisk him and the area in the vehicle where
Plaintiff had been sitting. *Id.*

At that point, Plaintiff claims, Officer Luis returned, entered
the car, and began to search. *Id.* at 16-17. After approximately
2-3 minutes, Plaintiff heard Officer Luis call out a number to
Officer Giuffre, which he believes to have been a signal to
arrest him. *Id.* at 17. Officer Giuffre then handcuffed Plaintiff
and escorted him to the un-marked sedan, which had returned
in that time, and he was transported to the precinct. *Id.*

The arrest report shows the reason Plaintiff was arrested was
because Officer Luis found a loaded handgun in the center
console of the car. *See* Def. R. 56.1 Br., ¶ 2, ECF No. 47-2.
Plaintiff himself confirmed this, saying in his deposition,
"The gun that was found in the car wasn't mine." Bannister
Dep., 16, ¶¶ 16-17, ECF No. 47-5. Defendants also submitted
the results of a D.N.A. test performed on the gun, which
showed that the DNA found on a swab of the "slide grip
grooves, slide lock lever and safety" was "approximately 126
billion times more probable if the sample originated from
Henry Bannister and two unknown, unrelated persons than if
it originated from three unknown, unrelated persons." D.N.A.
Rep., ECF No. 47-9.

**\*2** At some point after the arrest, there was a conversation
between Plaintiff and Defendant Luis regarding $5,000 found
in the vehicle. Plaintiff claims that while at the precinct, he
asked Officer Luis if the money inside his luggage bag was
safe and if he could have his sister come to the precinct to
pick it up. *Id.* at 17. He claims Officer Luis responded, "We

2022 WL 19402512

don't want your fucking dope money, after were finish [sic] with you, getting that money back would be the least of your problems." *Id.* The police report tells a different story. In the report, Officer Giuffre attests that Officer Luis told him that Plaintiff told Officer Luis he did not have to bring him in for the gun and that Officer Luis could keep what was in the car. Police Rep., 2, ECF No. 47-8.

Plaintiff was charged with criminal possession of a weapon in the second, third, and fourth degree, criminal possession of a firearm, possession of pistol ammunition, and bribery in the second and third degree. Def. R. 56.1 Br., ¶ 4, ECF No. 47-2. The gun was later suppressed, and all charges were dropped. Pl. Compl., 25, ECF No. 1.

The record before the Court as to what happened at Plaintiff's suppression hearing is very sparse (*See* New York State Sup. Ct. Docket, ECF No. 47-10), and Defendants do not provide any further details on why the firearm was suppressed. Plaintiff claims that the Officers had no authority to stop the car, as Plaintiff was lawfully parking, and that Officers Giuffre and Luis gave conflicting testimony on what gave them probable cause to stop and search the vehicle, resulting in the gun's suppression. Pl. Compl., 19-20, 23, ECF No. 1.

At the grand jury proceeding, Plaintiff claims that Officer Giuffre testified that the vehicle was stopped because it was parking too close to a fire hydrant. Pl. Compl., 20, ECF No. 1. But Plaintiff says it was later discovered that the fire hydrant in question was actually over 85 feet away from where his car was stopped. *Id.* at 24. He claims one of the officers also offered up during the grand jury proceeding that they smelled marijuana as they approached the car, which was why they searched it. *Id.* at 21. However, at a later court proceeding, on September 19, 2017, Plaintiff says one of the officers instead testified that they saw what looked like a marijuana cigarette, which is why they searched the car. *Id.* at 22. Plaintiff has not supported these contentions with exhibits from the suppression hearing record.

Subsequent to Plaintiff's arrest, he was brought to the station where he completed booking procedures, after which he says his hands were tightly handcuffed behind his back. *Id.* at 18. He was then taken to a steep stairway. *Id.* Because Plaintiff is a bilateral prosthesis wearer, he struggled to climb the stairs and had to be led by the handcuffs. *Id.* After climbing the stairs he was led to a room where he was read his *Miranda* warnings, and then was led back down the same staircase. *Id.* After this, he claims he was placed in a cell still in the handcuffs. He

claims those tight handcuffs were left on him for several hours and he was left in such a position that they cut off circulation to his hands and arms. *Id.* He claims that he was in tears, and it was not until the facilities' change of shift procedures that they were removed. *Id.*

## II. The Instant Motion

The motion before this Court is a motion for summary judgment by Defendants, filed on May 13, 2021. Def. Mot., ECF No. 47. In their motion, Defendants request summary judgment on any false arrest and malicious prosecution claims. *Id.* They also request the Court dismiss Officer Giannina from the complaint for lack of personal involvement. *Id.* Finally, they request this Court declare that any state law claims relating to Plaintiff's arrest are time-barred. *Id.*

**\*3** Defendants served the motion on Plaintiff in accordance with the notice requirements contained in E.D.N.Y. Local Rule 56.2. Plaintiff did not respond to the motion. Defendants write that they contacted Plaintiff on May 4, 2021, and May 10, 2021, after he failed to respond to the motion, and Plaintiff informed them that he had received Defendants' motion papers and did not intend to file an opposition to the Defendants' motion. *See* Def. May 13, 2021 Ltr., ECF No. 47-12.

## LEGAL STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law ..." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 188 of 197

Bannister v. Luis, Not Reported in Fed. Supp. (2022)

2022 WL 19402512

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

Because Plaintiff is proceeding *pro se*, the Court affords "special solicitude" to him when considering a motion for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). This "special solicitude" includes reading the filings of a *pro se* litigant "liberally" and interpreting them to "raise the strongest arguments that they suggest." *Minus v. City of New York*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a nonmoving *pro se* plaintiff cannot rely solely upon the pleadings to defeat summary judgment and must point to specific evidence in the record to carry his burden in summary judgment. *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). Where the nonmovant bears the burden at trial, the movant may make a prima facie case for summary judgment by either identifying sufficient evidence to negate the nonmovants claims or identifying evidentiary insufficiencies in Plaintiff's case that demonstrate the absence of a genuine issue of material fact. *Id.* at 272-73 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548); *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

A party's failure to respond to contentions raised in a motion to dismiss generally constitutes abandonment of those claims. *Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018). However, where the silent party is *pro se*, abandonment is only generally granted where an intention has been expressed to abandon the claim. *See Omosefunmi v. Weiss*, No. 99-0025, 1999 WL 973516 at *1, 1999 U.S. App. LEXIS 25093 at *4 (2d Cir. Sep. 30, 1999). Ultimately the question of abandonment is "one of intent." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998).

## DISCUSSION

**\*4** Interpreting the Plaintiff's complaint as liberally as possible, the I believe there to be four cognizable legal claims within it, claims for: 1) false arrest; 2) malicious prosecution; 3) illegal stop and search; and 4) excessive force. I presume, though it is not stated in the complaint, that these are brought

under 42 U.S.C. § 1983, which "provides remedies [under federal law] for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). A claim under § 1983 requires that the individuals sued acted "under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

Defendants' brief addresses the claims of false arrest and malicious prosecution. Defendants ask that, due to Plaintiff's failure to respond, the Court deem these claims abandoned. I recommend that the Court not do so, given that Plaintiff has not expressed an intent to abandon the claims, and has merely failed to respond. Instead, I will perform a standard summary judgment analysis of those claims and will address each claim I believe raised by Plaintiff's complaint in turn, as well as Defendants' motions to dismiss potential state law claims and Defendant Giannina.

## I. The Court Should Take the Following Actions on Plaintiff's Claims:

### a. Summary Judgment Should Be Granted to Defendants on Plaintiff's False Arrest Claim.

The Fourth Amendment of the United States Constitution provides a right to be free from unreasonable seizures, which includes the right to be free from arrest without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The elements of a false arrest claim under § 1983 are analogous to those under New York law: to meet his burden, Plaintiff must show the Defendants intentionally confined him without his consent and without justification. *Id.* Probable cause to arrest is justification, and "is a complete defense to an action for false arrest." *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975).

The parties do not dispute that a loaded handgun was found in the car Plaintiff was driving prior to his arrest; Plaintiff merely claims that the gun did not belong to him. Bannister Dep., 16, ¶¶ 16-17, ECF No. 47-5. In New York, a loaded gun in a car is generally probable cause to arrest the driver, regardless of the actual ownership of the gun.

Probable cause requires only "a reasonable ground for belief of guilt" that is "particularized with respect to the person to

2022 WL 19402512

be ... seized." *Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting in part *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). Reasonableness is judged from the viewpoint of an "objectively reasonable officer." *Ornelas v. United States,* 517 U.S. 690, 776, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

In New York State, a person is guilty of criminal possession of a weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See* N.Y. Penal Law § 265.03. Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent statutory exceptions, none of which apply in this case. *See* N.Y. Penal Law § 265.15(3). If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same. Therefore, upon finding the loaded handgun in the car, the officers had probable cause to arrest Plaintiff, which is a justification that defeats any false arrest claim.

**\*5** Nor can Plaintiff maintain that the gun cannot be used as a justification for the arrest because the stop or search which led to the finding of the gun was unlawful. The fruit of the poisonous tree doctrine does not apply to § 1983 claims. *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir. 1999). We deal only with the situation at the time of the arrest. At that time, an objectively reasonable officer would be well within his rights to believe the loaded handgun was possessed by Plaintiff, giving the officer probable cause that Plaintiff had committed a crime. Because there is no dispute a loaded handgun was found in the car, justification exists for the arrest, and so summary judgment should be granted to Defendants on this claim.

### b. Summary Judgment Should Be Granted to Defendants on Plaintiff's Federal Malicious Prosecution Claim

To prove malicious prosecution, Plaintiff must show "a seizure or other perversion of proper legal procedures implicating [his] personal and privacy interests under the Fourth Amendment" that was "initiated or continued against him, with malice and without probable cause, and [was] terminated in his favor." *See Lanning v. City of Glens Falls,* 908 F.3d 19, 24 (2d Cir. 2018) (quoting in part *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir. 2004)).

It is dubious whether Plaintiff pleads facts that give rise to an inference of malice against him by Officers Giuffre and Luis. Perhaps the closest he gets is in quoting Officer Luis who, he claims, in response to him asking about whether the money left inside his luggage bag was safe, responded, "We don't want your fucking dope money, after were finish [sic] with you, getting that money back would be the least of your problems." *See* Pl. Compl., 17, ECF No.1. After that comment, Plaintiff was charged with bribery and gun charges.

Even if Plaintiff does plead facts that give rise to malice, he must also support the contention there was not probable cause. Plaintiff does say in his complaint that none of the charges were warranted. However, Defendant's submission proving the presence of the loaded gun in the car with Plaintiff's DNA on it demonstrates that there was probable cause for the gun charges, making summary judgment for Defendants appropriate with respect to any malicious prosecution claim on the gun charges.

But Plaintiff also fails to assert an additional essential element of his claim: he makes no assertion that the case was terminated in his favor. Both Plaintiff and the Defendants agree that the criminal prosecution was dropped after the gun was suppressed by a New York court. While federal § 1983 malicious prosecution elements mirror New York State law in many ways, federal courts in this Circuit do not follow the New York State courts on the issue of what is defined as a favorable termination. Under federal law, a Plaintiff alleging a § 1983 malicious prosecution must show that the termination of his prosecution was "an affirmative indication that [the Plaintiff was] innocent of the offense charged." *Lanning,* 908 F.3d at 28. The termination in this case, merely dropping charges after the suppression of evidence, does not affirmatively indicate Plaintiff was innocent of the charges brought. And the D.N.A. results suggest the opposite.

Many courts in the Second Circuit have held similarly. In *Miller v. Cuccia,* the Plaintiff brought a § 1983 malicious prosecution action where his criminal trial was terminated due to suppression of evidence. The District Court granted summary judgment to the Defendant in that case, as it found the suppression of evidence did not constitute termination of the proceedings in the Plaintiff's favor. The Second Circuit reviewed that decision, and found that, "The suppression of the inculpatory evidence [in this case a shotgun, ammunition, and post-arrest statements by the Plaintiff] does not establish or imply appellant's innocence because it was not related to or

Case 6:23-cv-01485-DNH-TWD   Document 4   Filed 03/08/24   Page 190 of 197

Bannister v. Luis, Not Reported in Fed. Supp. (2022)

2022 WL 19402512

based upon the reliability or unreliability of the evidence." *See Miller v. Cuccia,* Nos. 99-7088, 99-7122, 1999 WL 1070084 at *1, 1999 U.S. App. LEXIS 30445 at *3 (2d Cir. Nov. 18, 1999).

**\*6** Similarly, here it appears the central piece of evidence to the gun charges, the gun itself, was suppressed due to either a finding of a lack of probable cause for the stop of the car or the search of the car. I do not have the opinion of the New York State suppression court in the record before me, but in Plaintiff's own complaint he says, "[The] arresting officers never [ ] had reasonable suspicion or probable cause to approach their vehicle or search them or their property therein ... [the] Judge [s]uppressed the evidence." Pl. Compl., 23-24, ECF No. 1. Suppression on these grounds does not relate to the reliability of the loaded gun as evidence of criminal possession. While Plaintiff does say the gun was not his in his deposition testimony, the crime is possession, not ownership, and Defendants provide evidence of a D.N.A. test performed on the weapon which shows with almost certainty that Plaintiff's D.N.A. was found on the "slide grip grooves, slide lock lever and safety" of the gun. *See* Bannister Dep., ECF No. 47-5; D.N.A. Rep., ECF No. 47-9.

As this Court found in *Graham v. City of New York,* "This might be a different case if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun ... police recovered from him during the unlawful search." *See Graham v. City of N.Y.,* 2018 WL 1157818 at *6, 2018 U.S. Dist. LEXIS 34554 at *18 (E.D.N.Y. 2018). But Plaintiff did not put forward any allegation that he never possessed the gun. Meanwhile, Defendants have put forward strong evidence that Plaintiff did possess the gun. Therefore, because the prosecution was not resolved in Plaintiff's favor, Defendants should be granted summary judgment on the malicious prosecution claim with relation to the gun charges.

Reading Plaintiff's complaint liberally, he has alleged malice and a lack of probable cause for the bribery charges, based upon his account of Officer Luis' statement to him. However, he provides no details on the circumstances under which the bribery charges were dismissed, let alone an allegation that the circumstances were indicative of his innocence. As Plaintiff bears the burden at trial of proving malicious prosecution and has not made any allegations regarding a necessary element of that claim, I recommend summary judgment be granted to Defendants on all of Plaintiff's federal malicious prosecution claims.

### c. Plaintiff's Complaint Should Be Construed as Asserting Illegal Stop and Search Claims.

Plaintiff's complaint is not formatted as a formal legal complaint. Instead, it is a collection of grievances filed by the Plaintiff to other bodies, including a ten-page factual summary written by Plaintiff about what happened. This makes it difficult for Defendants to respond and for the Court to ascertain which laws Plaintiff is suing under and what legal claims he is making. However, Plaintiff is proceeding *pro se,* and the Court is to read the complaint so as to raise the strongest arguments it suggests. Therefore, I recommend the court construe the Plaintiff's complaint as also alleging § 1983 actions for an illegal stop and illegal searches under the Fourth Amendment.

Section 1983 provides a remedy where the Defendants, acting under color of state law, have deprived the Plaintiff of a right secured by the Constitution and laws of the United States. *Cox v. County of Suffolk,* 827 F. Supp. 935, 937-38 (E.D.N.Y. 1993). The Fourth Amendment requires that an officer making a traffic stop "have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez,* 877 F.3d 76, 86 (2d Cir. 2017).

According to Plaintiff's complaint, Officers Luis and Giuffre claimed that they stopped the Plaintiff because he was parked adjacent to a fire hydrant, which is illegal. *See* Pl. Compl., 19, ECF No. 1. The Defendants have filed a police report from the incident, which does not mention a reason for the stop. *See* Police Rep., ECF No. 47-8. Plaintiff alleges that he was not parking near a fire hydrant and that, at the suppression hearing, the location of the fire hydrant in question was confirmed to be 85 feet from where Plaintiff was parking the car. Pl. Compl., 23, ECF No. 1. I believe these facts could be construed as a claim by Plaintiff of an illegal stop under § 1983.

**\*7** Additionally, the Fourth Amendment prohibits unreasonable searches.

First, there is the search of Plaintiff himself. Plaintiff says he was frisked after being asked to step out of the car. For such a frisk to be reasonable, the officer performing the search must have reasonably believed Plaintiff was armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889

Case 6:23-cv-01485-DNH-TWD Document 4 Filed 03/08/24 Page 191 of 197

**Bannister v. Luis, Not Reported in Fed. Supp. (2022)**

2022 WL 19402512

(1968). If Plaintiff's version of events is correct, there does not seem to have been a reason for Officer Giuffre to reasonably believe at that time that Plaintiff was armed and dangerous, giving rise to a claim for an illegal search. The officers clearly had such suspicion once a firearm was located in the car; however, at the time that Plaintiff was actually searched, the officers had not yet searched the car and found the firearm.

Second, there is the search of the car. A search of a car without a warrant is reasonable where there is probable cause to believe the vehicle contains contraband, an exception to the warrant requirement known as the "automobile exception." *United States v. Navas,* 597 F.3d 492, 497 (2d Cir. 2010). Plaintiff claims in his complaint that the Officers Giuffre and Luis have given varying and contradictory answers as to what their probable cause was to search the rental car he was driving. Plaintiff claims that at the grand jury hearing, Officer Giuffre said Officer Luis searched the car because they smelled marijuana as they approached it. Pl. Compl, 21, ECF No. 1. Plaintiff says that at the suppression hearing, the officers instead testified that they observed a marijuana cigarette or cigar on or in a cup holder near the center console in the car. *Id.* at 22. However, Plaintiff points out, this contradicts other testimony by the officers that they observed a "metal object" in the car, which gave them probable cause to search it. *Id.* In the police report submitted by Defendants, it says that Officer Luis observed a .45 caliber semi-automatic pistol in the center arm rest compartment of the vehicle, though it does not specify if that observation was made before or after the search. *See* Police Rep., ECF No. 47-8. The facts Plaintiff alleges gives rise to a claim for an illegal search of the car.

I do not recommend that the Court take a position on whether these allegations would survive a motion for summary judgment. These claims are not included the instant motion and such a motion has not been briefed by the parties. I merely recommend that the Court construe the complaint to include these claims and give leave to Defendants to file a motion for summary judgment on the surviving claims if they elect to do so.

### d. Plaintiff's Complaint Should Be Construed as Asserting an Excessive Force Claim

I further recommend the Court construe Plaintiff's complaint to include allegations of excessive force in violation of the Fourteenth Amendment.

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir. 1999). To sustain a claim of excessive force, pretrial detainees must show "only that the force purposefully or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 396-96, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).

**\*8** Plaintiff claims in his complaint that after being arrested and brought to the precinct for processing, his hands were tightly handcuffed behind his back. He claims he was then led up some steep stairs by his handcuffs and later was left in a cell handcuffed for several hours, during which time he lost circulation in his hands and arms and began to cry. Pl. Compl., 18, ECF No. 1. I believe Plaintiff has pled sufficient facts for the Court to construe his complaint as alleging unconstitutional excessive force, though I again recommend the Court take no position on whether such an allegation would survive a motion for summary judgment.

### II. All Potential State Law Claims, With the Exception of a State Law Malicious Prosecution Claim, Should Be Dismissed as Time-Barred.

Defendants also argue in their motion that any of Plaintiff's potential state law claims are time-barred under N.Y. Gen. Mun. Law §§ 50-e and 50-i (1) because Plaintiff did not serve notice of claim upon the municipality employing the Defendants within the required ninety days from when the claims arose, and because he did not commence an action within one year and ninety days of the incident. [1] Defendants say the City did not receive Plaintiff's notice of claim until October 2, 2018, over two years after the accrual of the claims. Def. Br., 12, ECF No. 47-3.

[1] Though the distinction does not affect this action, it should be noted that state-law actions to recover damages for malicious prosecution are governed by CPLR § 215(3), which sets a one-year statute of limitations on those actions. NY CLS CPLR § 215(3).

Under New York State Law, a Plaintiff suing a municipality or its employees acting in their professional capacity is required to submit a notice of claim within ninety days of the state law claim arising and bring suit within one year and ninety-days after the event upon which the claims are based. N.Y. Gen. L. §§ 50-e(1)(a), 50-i (1); *Wharton v. County of Nassau,*

Case 6:23-cv-01485-DNH-TWD    Document 4    Filed 03/08/24    Page 192 of 197

Bannister v. Luis, Not Reported in Fed. Supp. (2022)

2022 WL 19402512

No. 07-CV-2137, 2010 WL 3749077 at *9, 2010 U.S. Dist. LEXIS 99174 at *29-30 (E.D.N.Y. Sep. 20, 2010). Otherwise, the state law claims must be dismissed.

Here, the stop, search, and arrest at issue took place on May 24, 2016. Pl. Compl., 15, ECF No. 1. The New York City Comptroller received a notice of claim on October 2, 2018, well beyond the ninety-day deadline. *See* Def. R. 56.1 Br., ¶7, ECF No. 47-2. This action was filed on December 10, 2018, beyond the one-year and ninety-day deadline set by New York State law. It does appear Plaintiff filed a complaint with the State Supreme Court on September 8, 2017 (Pl. Compl., 37, ECF No. 1) related to the same incident but that complaint only alleged that the NYPD wrongfully took and held $22,091 from him. Regardless, it too was filed beyond the required one-year and ninety days.

New York law strictly construes notice of claim requirements, and, though this is a federal court, we must apply this rule for New York State claims regardless of whether Plaintiff intended the Court to exercise jurisdiction over any potential state law claims as part of its diversity or supplemental jurisdiction. *See Boda v. Phelan,* No. 11-CV-0028, 2014 WL 3756300 at *7, 2014 U.S. Dist. LEXIS 104955 at *22 (E.D.N.Y. July 30, 2014); *Hardy v. New York City Health & Hosps. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999).

However, in malicious prosecution claims, the cause of action does not arise until the underlying legal proceeding is terminated, and the clock on notice and commencement of action does not start until that point. *See Giglio v. Delesparo,* 46 A.D.2d 928, 361 N.Y.S.2d 721 (NY App. 1974). Plaintiff says the charges were dropped against him in September of 2018. Pl. Compl., 25, ECF No. 1. Defendants say the New York City Comptroller received a notice of claim on October 2, 2018, within 90 days of the termination of the action. Def. R. 56.1 Br., ¶7, ECF No. 47-2. This legal proceeding was commenced shortly after, well within the one-year required under CPLR § 215(3).

 **\*9** Therefore, to the extent Plaintiff brings any state law claims arising out of this incident, they are time-barred with the exception of any state law claims for malicious prosecution. Should Plaintiff wish to assert such a claim, he should do so with particularity in an amended complaint to afford Defendants the ability to respond, as such a claim would be subject to a different standard for "favorable termination" than a federal malicious prosecution claim.

### III. Summary Judgment Should Be Granted on All Claims Against Defendant Giannina, and He Should Be Dismissed from the Action

Finally, Defendants ask that the Court dismiss Officer Giannina from this action because Plaintiff has not alleged his personal involvement in violations of law.

For a Defendant to be liable under § 1983, he or she must have been personally involved in the conduct at issue. *Singletary v. Russo,* 377 F. Supp. 3d 175, 185 (E.D.N.Y. 2019) ("§ 1983 liability requires a showing that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.' ") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "If no reasonable jury could find a particular defendant was personally involved in causing a constitutional violation alleged by plaintiff, then summary judgement should be awarded to that defendant." *Id.*

Plaintiff refers to Mr. Giannina as "transportation officer" in his complaint. His only mention of the transportation officer in his complaint is that he was "transported to [the] precinct by the uniformed transportation officer." Pl. Compl., 17, ECF No. 1. As he does not allege any personal involvement by Mr. Giannina in the conduct he alleges violated his rights, I recommend Defendants be granted summary judgment on any claims against Mr. Giannina, and he be dismissed from this action.

### CONCLUSION

For the forgoing reasons, I recommend Defendants' motion for summary judgment be granted on the false arrest claim and malicious prosecution claims, that the Court construe the complaint as including § 1983 claims for unlawful stop and search, and excessive force, that any pending state law claims arising out of this incident be dismissed as time-barred with the exception of any potential state-law malicious prosecution claims, and that Defendant Giannina be dismissed from the action. I also recommend the Court grant Plaintiff leave to amend the complaint should he be able to allege additional facts in support of his remaining claims or should he be able to allege any of his remaining claims with greater particularity.

### OBJECTIONS TO THIS REPORT
### AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols.,* *Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

### SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2022 WL 19402512

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2325680
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Henry BANNISTER, Plaintiff,
v.
Detective Marvin LUIS et al., Defendants.

18-CV-7285(EK)(ST)
|
Signed March 2, 2023

**Attorneys and Law Firms**

Henry Bannister, Spartanburg, SC, Pro Se.

Zachary Kalmbach, New York City Law Department, Special
Federal Litigation Division, New York, NY, for Defendants
Detective Marvin Luis, Ryan Giuffre, Police Officer Joseph
Giannina.

**MEMORANDUM & ORDER**

ERIC KOMITEE, United States District Judge:

 *1 The Court has received two Reports and
Recommendations from Magistrate Judge Tiscione in this
case, dated February 16, 2022 and October 28, 2022. Report
& Recommendation ("1st R & R"), ECF No. 49; Report &
Recommendation ("2d R & R"), ECF No. 52. In his first R &
R, Judge Tiscione recommended that Defendants be granted
summary judgment on Bannister's claims of false arrest and
malicious prosecution. 1st R & R 7–11. He also recommended
that Bannister's Complaint be construed as asserting claims
for illegal stop and seizure and excessive force. *Id.* at 11–14.
Given that the defense had not addressed those claims, Judge
Tiscione received additional briefing, 1st R & R 13, following
which he issued the second R & R. In the second R & R, Judge
Tiscione recommended that Defendants be granted summary
judgment on these latter claims as well. 2d R & R 4–6, 8.

Neither party has filed objections to either R & R, and the
time to do so has expired. *See* Fed. R. Civ. P. 72(b) advisory
committee's note to 1983 addition; *accord State Farm Mut.
Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 481 (E.D.N.Y.
2013). Moreover, Bannister submitted no initial opposition
to Defendants' summary-judgment motions, no Rule 56.1
statement, no response to either R & R, and no other filing in

connection with these motions. Having reviewed the record,
I agree with the R & Rs' conclusions and grant summary
judgment to the Defendants on all claims.

**I. Background**

Judge Tiscione sets forth a factual summary of the case in his
first R & R, which is incorporated herein by reference. 1st R
& R 1–5. I adopt the factual and procedural recitations in the
R & Rs in full; their reasoning except as expressly set forth
below; and I adopt the R & Rs' conclusions in their entirety.
Familiarity with both R & Rs is assumed.

**II. Discussion**

As noted, Judge Tiscione addressed four claims under 42
U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3)
excessive force; and (4) illegal stop and seizure. 1st R & R
6. He also construes the Complaint as raising a number of
potential state-law claims. *Id.* at 14–16. As Judge Tiscione
noted, the only state-law claim that is not time-barred is
a claim for malicious prosecution. 2d R & R 6. I discuss
each federal claim, as well as Bannister's state-law malicious-
prosecution claim, below.

**A. Excessive-Force and Illegal-Stop-and-Seizure Claims**
I find no clear error in Judge Tiscione's analysis of the
excessive-force or illegal-stop-and-seizure claims. I therefore
adopt those portions of the R & R in their entirety and grant
Defendants summary judgment on those claims.

**B. False-Arrest Claim**
I agree with the R & Rs' analysis of the false-arrest claim
and adopt their reasoning in full. I add two observations in
support of the conclusion that the false-arrest claim must be
dismissed.

First, in making his probable-cause determination, Judge
Tiscione applied New York's "presumption of possession,"
which permits — but does not require — the inference that
"all occupants" of a vehicle in which a firearm is discovered
"have common constructive possession" of it. *See* 1st R &
R 7–8 (citing N.Y. Penal Law § 265.15(3)). This New York
law has a long history in federal litigation: the Second Circuit
found it unconstitutional on its face in 1977, but the Supreme

Court reversed that holding. *See Cnty. Ct. of Ulster Cnty., N.Y. v. Allen,* 442 U.S. 140, 142 (1979).[1] In doing so, the Court held that the presumption could be constitutionally applied when "there is a rational connection between the *basic facts* that the prosecution proved" — *i.e.* the location of the weapon in relation to a vehicle's occupants, and other circumstances — "and the *ultimate fact* presumed" — *i.e.* common possession. *Id.* at 165 (emphasis added). The party seeking to apply the presumption must demonstrate that "the latter is more likely than not to flow from the former." *Id.* at 165.

[1]   Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

**\*2**  Though the R & Rs do not explicitly assess the rational connection here, it does exist. At the time he was arrested, Bannister was sitting in the driver's seat of the vehicle; another man was in the passenger's seat. 1st R & R 1–2. The firearm was located in the center console of the vehicle, essentially equidistant between the two occupants. *Id.* at 2. No one else was present in the car. *See id.*[2]

[2]   As Judge Tiscione notes, the Plaintiff's DNA was recovered from the firearm, but that recovery of course occurred substantially after the challenged arrest. Defs.' 56.1 Statement ¶¶ 4–5, ECF No. 47-2; State Court Compl. 2, ECF No. 47-8; Laboratory Report 1, ECF No. 47-9.

Moreover, the *Allen* majority's reasoning applies with even more force here. If the presumption may, in proper circumstances, be relied upon by a jury charged with finding guilt beyond a reasonable doubt, then a police officer assessing probable cause may surely be justified in finding *probable cause* based on the same logic. At least one federal court has applied the presumption in the probable-cause context. *See Matthews v. City of New York,* 889 F. Supp. 2d 418, 437 (E.D.N.Y. 2012) (collecting New York state cases relying on the presumption for probable-cause findings).

Accordingly, I grant Defendants summary judgment on Bannister's false-arrest claim.

**C. Malicious Prosecution Claims**
Judge Tiscione construed Bannister's Complaint as asserting federal and state malicious-prosecution claims with respect

to the weapons charges and the bribery charges on which he was prosecuted. (For ease of analysis, I will refer to these claims as the "weapons-arrest claims" and the "bribery-arrest claims," respectively.) He recommends that the state and federal weapons-arrest claims be dismissed because probable cause existed for both sets of charges. 1st R & R 9 (federal); 2d R & R 7 (state). He also recommends that the federal weapons-arrest and bribery-arrest claims be dismissed because Bannister has failed to adduce sufficient evidence that his prosecution ended with a favorable termination. 1st R & R 9–11. (The R & Rs do not, however, explain why the state bribery-arrest claim should be dismissed.)

Although I agree that all these claims are subject to dismissal, I order dismissal for different reasons than the R & Rs recommend.

1. The R & Rs' Favorable-Termination Analysis Has
   Been Superseded by the Supreme Court
In recommending dismissal of Bannister's federal weapons-arrest and bribery-arrest claims, Judge Tiscione relied on the lack of a favorable termination. 1st R & R 9–11 (citing *Lanning v. City of Glens Falls,* 908 F.3d 19, 28 (2d Cir. 2018)). As the R & R recognized, at the time of its issuance, Second Circuit law required that for purposes of Section 1983 malicious-prosecution claims, a favorable termination exists only where the disposition of a plaintiff's case shows "affirmative indications of [his] innocence." *Lanning,* 908 F.3d at 25.

But two months after that R & R was issued, the Supreme Court abrogated that rule in *Thompson v. Clark,* 142 S. Ct. 1332 (2022): "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Id.* at 1335. That new rule applies to this case. As the Supreme Court has explained:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events

2023 WL 2325680

predate or postdate our announcement of the rule.

**\*3** *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993).

Accordingly, because of the intervening change in law, the lack of a favorable termination is no longer a basis on which summary judgment may be granted against Bannister on his federal malicious-prosecution claims.

2. Probable Cause to Prosecute Existed for the Weapons Charges, Though Not for the Reasons Stated in the R & Rs

Nevertheless, the federal and state weapons-arrest claims must still be dismissed on the basis that there was sufficient probable cause to initiate that prosecution. However, the R & Rs' probable-cause analysis is incorrect with respect to these claims.

As the R & Rs recognized, "a plaintiff cannot establish a malicious prosecution claim if there was probable cause for the prosecution." *Danielak v. City of New York*, No. 02-CV-2349, 2005 WL 2347095, at \*10 (E.D.N.Y. Sept. 26, 2005) (Matsumoto, M.J.) (Section 1983 context), *aff'd*, 209 F. App'x 55 (2d Cir. 2006); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) (same, under New York law). But "the existence of probable cause in a malicious prosecution suit is determined as of the time prosecution is commenced." *Tuccillo v. County of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018); *see also Danielak*, 2005 WL 2347095, at \*10 ("[A] claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated.").

Both R & Rs assert that probable cause for the prosecution existed because Bannister's DNA was identified on the firearm located by the police officers. 1st R & R 9 (federal claim); 2d R & R 7 (state claim). But the Defendants' summary-judgment papers indicate that the criminal complaint was filed on May 25, 2016, while the DNA testing report was dated April 19, 2017, nearly a year later. Defs.' 56.1 Statement ¶¶ 4–5, ECF No. 47-2; State Court Compl. 2, ECF No. 47-8; Laboratory Report 1, ECF No. 47-9. Thus, the DNA evidence was not available to the officers at the time the prosecution was "commenced" and therefore

could not have been a valid basis for probable cause. *Tuccillo*, 723 F. App'x at 82.

Nevertheless, probable cause to commence the firearms prosecution remained for the same reasons there was probable cause to arrest Bannister — namely, Bannister's position in the driver's seat; the firearm's location in the center console, within his easy reach; and the rational inference of (at least) common possession flowing therefrom. *See supra* section II.B; 1st R & R 7–8. "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.' " *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007); *see also Lowth*, 82 F.3d at 571 (probable cause "present at the time of the arrest" could still "dissipate" if "the groundless nature of the charges [are] made apparent by the discovery of some intervening fact"). But Bannister has not pointed to any such intervening facts here.

**\*4** Moreover, in his Complaint, Bannister asserted that he had been indicted for firearms possession. Compl. 19. That indictment gave rise to a presumption of probable cause that Bannister has not rebutted. "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (reversing district court's denial of summary judgment where plaintiff failed to produce such evidence). In other words, "for a plaintiff to succeed in a malicious prosecution claim after having been indicted," he must produce "evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004); *see also Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983). Bannister has not produced any such evidence and, thus, has not overcome this presumption.

Thus, the weapons-arrest claims must be dismissed.

3. Probable Cause to Prosecute Also Existed for the Bribery Charges

The R & R recommends dismissal of the federal bribery-arrest claims for the sole reason that Bannister failed to establish favorable termination. 1st R & R 11 ("[H]e provides no details

2023 WL 2325680

on the circumstances under which the bribery charges were dismissed, let alone an allegation that the circumstances were indicative of his innocence."). As discussed, that is no longer a valid basis for dismissal.

Nevertheless, there remains "a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2009). Here, that essential element is the lack of probable cause, and the lack of evidence in support of that element entitles Defendants to summary judgment.

Here, Bannister declined to file any response to any of Defendants' summary-judgment papers at all; he therefore has adduced no evidence in support of his claim. On the contrary, as Judge Tiscione observed, the record contains evidence showing that Bannister "told Officer Luis he did not have to bring him in for the gun and that *Officer Luis could keep* what was in the car." 1st R & R 3 (emphasis added). This uncontested evidence supports the conclusion that the officers had probable cause to arrest Bannister for bribery.

Thus, Defendants are entitled to summary judgment on Bannister's federal and state malicious-prosecution claims.

### III. Conclusion

For these reasons, I adopt the R & Rs in part, specifically, with the addition of the above discussion and with the following modifications:

- In the first R & R, delete the portion of section I.b starting with the sentence that begins with "Even if Plaintiff does plead facts that give rise to malice...." 1st R & R 9–11.

- In the second R & R, Part II, delete the sentence beginning with "After Plaintiff's arrest, DNA found on the gun," as well as the citation that immediately follows. 2d R & R 7.

- In the sentence that follows, replace "during his subsequent prosecution" with "at the time his subsequent prosecution was initiated." *Id.*

Furthermore, for the foregoing reasons, Defendants are granted summary judgment on all claims. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to mail a copy of this Order to Bannister, and to close this case.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 2325680

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.